BELL, BOYD & LLOYD PLLC

1615 L STREET N.W., SUITE 1200
WASHINGTON, D.C. 20036-5610
202.466.6300 FAX 202.463.0678

OFFICES IN WASHINGTON, D.C.
AND CHICAGO

LAWRENCE M. PROSEN
202.955.6830
lprosen@bellboyd.com
DIRECT FAX: 202.835.4127

VIA HAND DELIVERY

July 16, 2004

Domenique Kirchner, Esquire
United States Department of Justice
Civil Division-Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530

Re: L.P. Consulting, Inc. v. United States Postal Service
COFC Case No. 98-CV-868

Dear Domenique:

I am in receipt of your July 15 tome regarding L.P.'s issued U.S. Court of Federal Claims 30(b)(6) Notice of Party Deposition upon Oral Examination. I will attempt to respond to your rather lengthy letter *in seriatim*; however, the bottom line is simple: L.P. has exercised its rights pursuant to the Court's rules and its latest Scheduling Order, requiring that all discovery be concluded by August 6, 2004, and L.P. intends on pursuing both those rights and taking the noticed deposition.

Regardless of what the Joint Status Report and Motion for Enlargement of Discovery may indicate, nowhere do the Court's Rules obligate a party to inform the Court or the opposing party in advance of what discovery that party may desire to take. Until August 6, 2004, as long as any applicable timeframes are met, as they were in this case by providing the USPS with a reasonable amount of time prior to the designated date for deposition, L.P. has preserved and exercised its rights. Nowhere is the undersigned familiar with any requirement that a party somehow pre-notify or otherwise inform the Government or, for that matter, a private party, of its intent to serve a Notice of Deposition.

With regard to the Notice of the Deposition date, unfortunately, I was not provided with your earlier letter until after the Notice was prepared. That notwithstanding, given your rather busy schedule, I am nonetheless obligated to Notice the USPS Deposition. I am, however, willing to work within your schedule to the best of our abilities. Currently, you appear to be unavailable for the final two weeks of the discovery period, and have a few intermittent dates in between where you may be available. As Mr. Stephen Lobaugh, USPS Counsel, is familiar with the case, perhaps he can defend the depositions of the USPS designated deponents. Alternatively, I have no doubt that there are other Department of Justice attorneys available to defend these depositions. As we discussed, I am tentatively available August 16, 17, 18 or 19 for the Puricelli deposition, assuming the Court permits us to take the deposition(s) on those dates.

While I strongly dispute your allegations that the Notice of Deposition is overly broad, in an effort to mitigate your concerns, I am prepared to withdraw the projects identified as "the related projects," which include the items addressed as numbers 13 through 40 on pages 2 and 3 of your July 15 letter. As such, the deposition would focus on the projects which have been the subject of this litigation (numbers 1 through 12 in your letter). I am therefore including Plaintiff's Amended Notice of Party Deposition upon Oral Examination of Defendant The United States Postal Service. Hopefully, with that in mind, you can more easily prepare your witnesses and designate the necessary deponents/agents on behalf of the USPS to attend this deposition. Certainly with this limitation in the scope of the depositions, the DOJ and USPS are capable of providing necessary witness(es) on the USPS's behalf.

Perhaps most importantly, you somehow metamorphosize Plaintiff's Notice of Deposition into a Request for Production of Documents. Nothing could be further from the truth. The documents the USPS has produced are, as represented to the undersigned and my partner, Brian Cohen, those documents which are in the USPS's possession and which relate to the subject projects and litigation. L.P.'s Notice of Deposition does not request "Defendant to locate, review and study countless files and documents, ..." but is exactly what it purports to be—a request for testimony before a court reporter, under oath.

That you have to travel to Illinois, or any other place, is not, unfortunately, L.P.'s problem. As you have previously stated to me, the DOJ and U.S. Government do not care where they send you or the cost involved. Whatever efforts are involved, whether traveling to Illinois to interview witnesses, locate documents or the like, L.P. has complied with Rule 30(b) by giving reasonable notice in writing well in advance of the noticed deposition. In fact, L.P. has provided the USPS almost one full month's notice.

Next, with regard to the 30(b)(6) Deposition being conducted in Washington, D.C., as the USPS is based in the District of Columbia, and the deposition seeks to depose the USPS, it appears to me that Washington, D.C. is a proper venue for the taking of this deposition. Nonetheless, I am prepared to discuss this particular issue with you further, reserving our rights to the fullest extent possible.

With regard to the deposition of Mr. Rigsby, Mr. Rigsby was, as you admit, the <u>former</u> Contracting Officer for the USPS. You may also recall that Mr. Rigsby lacked significant recollection and knowledge regarding numerous aspects of the 12 implied-in-fact contract allegations (Counts 1 through 12) in the Amended Complaint. Likewise, much to my chagrin, Mr. Southern and Mr. McNabb lacked recollection and/or knowledge of particular events, occurrences and the like, as well as our discussion regarding USPS procedure.

Otherwise, simply stated, the items attached to the Notice of Deposition, comprising the scope of the deposition, speak for themselves.

With regard to your allegation that L.P. should somehow be forced into pursuing interrogatories and requests for production of documents, interrogatories and requests for production have already been propounded upon and responded to by the Government. Additionally, given that more documents were just last week produced by the Government to

L.P., approximately six years after this case was originally filed, innumerous new issues and potential areas of discussion have been raised. While L.P. does not agree with your statement set forth in the last Joint Status Report, the Government has taken the position that it objects to L.P.'s reservation of its rights to recall the previous deponents to discuss these "new found" documents.

Given L.P.'s agreement herein to withdraw project numbers 13 through 40, L.P. believes that the Court will compel the USPS to produce 30(b)(6) witnesses. As such, given this withdrawal, L.P. does not agree to withdraw its Rule 30(b)(6) Notice.

Quite frankly, at this point in time, approximately six years after this litigation began, the Government has delayed this matter for an irreproachable amount of time. My client and I cannot imagine why it could have possibly taken six years to bring this case to its current disposition. I truly believe that the Court will agree with L.P.'s position.

While the Court has limited the remaining period for discovery, the Government has waited somewhere between four and six years to produce 3½ boxes of documents (which were only produced last Friday). Based upon the Government's numerous representations that the criminal investigation was somehow ongoing and involved witnesses and parties which would plead the Fifth Amendment as a result of this investigation, this case has been stayed, delayed, and "put off" by the Government for an inordinate period of time.

In effect, the Government has forced L.P. to take the current actions, which it has, including, without limitation, noticing the USPS for deposition.

You threaten to file a motion for protective order, which you are entitled to do if you see fit. I believe, however, that the Court will not look favorably upon such motion, given the inexcusable delays and stall tactics which the Government has placed upon this case and, for that matter, the Court.

With that in mind, L.P. is available to take the deposition of the U.S. Postal Service on a mutually agreeable date. Similarly, we are prepared to take Mr. Puricelli's deposition upon a mutually agreed upon time; however, that time cannot be delayed indefinitely.

It appears that the only dates which you currently have available, given your approximately one week delay in responding to the initial Notice, are the 19th, 22nd and 23rd of July. Unfortunately, I have a AAA arbitration hearing scheduled for the 22nd which will likely "bleed over" into the 23rd. As such, given your schedule, it appears that those dates are not available. Again, I suggest that you either obtain substitute counsel from the Department of Justice or have Mr. Lobaugh defend the depositions.

With regard to the privilege log, having reviewed our files, we have no record of receiving a privilege log from the USPS or DOJ at any point in the past. Please forward an additional copy of that privilege log, as well as provide us with an updated privilege log, as soon as possible, given the rapidly approaching discovery deadline date.

Lastly, your allegations that L.P. and/or the undersigned have somehow violated any Rule of Procedure are taken with great personal offense and are simply inaccurate. Simply stated, L.P. has been forced to stand by for an inordinate period of time based upon Government representations that the various witnesses, including Messrs. Rigsby, McNabb and the like, might plead the Fifth Amendment as a result of the alleged ongoing criminal investigation. Shockingly, when asked about their knowledge of this investigation and the resulting guilty plea by Mr. Fernandez at their depositions, not a single witness, other than Mr. Fernandez, had any knowledge of the criminal investigations, the grand jury, or Mr. Fernandez's information and subsequent guilty plea. Rest assured that I do not believe the Court would take this matter lightly.

As I have informed you before, these types of threats, stall tactics and allegations of impropriety or otherwise violating the Rules of Procedure are not the way Brian Cohen or I practice law, are completely inappropriate, and fail to comply with any rule of civility which the Court would expect.

As I have also informed you before, it is our continued hope that we can work through this case in a civil, calm and mutually respectful manner. L.P. has received the significant quantity of discovery recently propounded upon it by the Government. That discovery will be responded to in a timely fashion by L.P.

Lastly, these letter writing campaigns which you have repeatedly initiated are both a waste of time and money on both parties' parts. A telephone call to me or to Brian Cohen would, undoubtedly, have resolved a number of these disputes, to say nothing of wasting what little valuable time each of us has left in this litigation. Similarly, the time it must have taken you to research and draft your July 15 letter could have been used, instead, to depose Mr. Puricelli and/or the USPS. With this in mind, given your incredibly busy schedule, I look to you to propose some additional dates for the depositions of the U.S. Postal Service and Mr. Puricelli. Alternatively, it is my continued belief that this case is ripe for settlement and invite the opportunity to discuss this matter with you and/or the U.S. Postal Service. The next step is yours.

Sincerely yours,

Lawrence M. Prosen

LMP:vfg

Copies to Brian Cohen, Esquire
L.P. Consulting, Inc.



70508/F/10

U. S. Department of Justice

Civil Division

DKirchner
154-98-868C

Telephone:
(202) 307-0290

Washington, D.C. 20530

July 19, 2004

Brian Cohen
Lawrence Prosen
Bell, Boyd & Lloyd
1615 L Street NW, Suite 1200
Washington, D.C. 20036-5610
Tele: (202) 466-6300
FAX: (202) 835-4117
By Facsimile transmission and regular mail

Re: LP Consulting Group, Inc. v. United States,
Fed. Cl. No. 98-868C

Dear Messrs. Cohen and Prosen:

This responds to Mr. Prosen's July 16, 2004 letter. The letter contains numerous misstatements concerning the proceedings in this matter. I will address the most significant misstatements.

First, the amended Rule 30(b)(6) notice of deposition still is unreasonably broad, and no witness could hope to absorb or testify about all the information relevant to the countless topics set forth in the notice.

Second, LP has not provided the Government with a reasonable amount of time to respond to the amended Rule 30(b)(6) notice of deposition, served July 16, 2004. I am essentially unavailable to prepare for or defend such a deposition during the period prior to August 4, 2004, and also am not available on that date. Preparation for a Rule 30(b)(6) deposition would require my traveling to Illinois to work with the designated witness in reviewing, and studying the documents and also in locating additional records. I also would anticipate that any Rule 30(b)(6) deposition would have to take place in Illinois, because witnesses with knowledge of this matter are located there. The deposition topics set out in your amended notice of a Rule 30(b)(6) deposition are broader than LP's requests for production of documents in this matter, requiring us to search for additional documents not previously requested in discovery. Further, I am counsel of record in this matter, and Stephen Lobaugh, USPS Counsel, is not able to defend the deposition.

With regard to Carl Purchelli, he is not available for deposition on August 16-19, 2004. The USPS will make him available at the offices of defendant's counsel in Washington, D.C., on Tuesday, August 10, 2004, assuming the Court permits us to do so. Mr. Prosen previously informed me that he was available on that date for Mr. Purchelli's deposition. This is the earliest date that we can produce him. Please let me know whether you have any objection to a motion to enlarge the discovery period solely to permit his deposition on August 10, 2004.

You assert that LP should not have to proceed through interrogatories because it previously propounded interrogatories in this matter. That is incorrect. LP has not issued interrogatories in this case.

You also assert that new issues have been raised by the documents produced by the Government. First, you are incorrect in asserting that new issues have been raised by any documents produced by the Government. The only issues in this case are those raised by LP's amended complaint and the Government's answer. The issues have not changed in any way by our production of documents.

Second, you are incorrect in asserting that the bulk of these documents were only produced recently. Samuel Southern produced his personal diaries at his deposition on June 9, 2004, pursuant to LP's Notice of Deposition, issued May 7, 2004. LP did not previously request that Mr. Southern produce his personal diaries. Mr. Southern timely produced them at his deposition on June 9, 2004. LP's counsel could have examined them at that time, but chose instead to examine Mr. Southern. We made arrangements with Mr. Southern to have his personal diaries transported to Washington, D.C., so that LP's counsel could review them here.

The other three boxes of USPS documents had been within the custody of the USPS Inspection Service during its investigation of Andrew Fernandez and concern projects in which he either was or may have been involved. As I pointed out to Mr. Prosen in our discussion on July 16, 2004, before he wrote the July 16, 2004 letter, most of the material in the three boxes of USPS documents that relates to LP's alleged 12 scopes of work set forth in its amended complaint previously was produced by USPS. The other materials concern projects that do not relate to the 12 scopes of work set forth in LP's amended complaint, and are not relevant to this matter. The Government produced the materials as they were provided by the USPS Inspection Service, and did not separate out

the projects that were unrelated to the 12 scopes of work set forth in the amended complaint.

Your statement that "the Government has delayed this matter" is incorrect. Discovery in this matter was stayed while the criminal matter involving Andrew Fernandez was investigated and resolved by the United States Attorney, as is proper. Discovery was stayed by the Court until January 28, 2002, due to the criminal investigation. By order dated January 28, 2002, the Court lifted the stay of discovery, but neither party received a copy of the Court's order. In December 2002, LP's counsel first learned of the January 28, 2002 order lifting the stay of discovery through a review of PACER, and informed Government counsel. However, the criminal investigation continued, and the criminal matter remained unresolved.

By letter dated February 25, 2004, I recommended that depositions be scheduled for May 5-7, 2004 in Chicago, IL. LP agreed, and the depositions were scheduled for the first week of May 2004. I stated to Mr. Prosen that Mr. Fernandez might assert his Fifth Amendment rights and decline to testify at a deposition while the criminal matter was pending. Mr. Prosen had discussions with Patrick Tuite, Mr. Fernandez's attorney, and then informed me that Mr. Tuite stated that Mr. Fernandez would assert his Fifth Amendment rights and refuse to testify at any deposition conducted prior to the time that he was sentenced. Mr. Fernandez was scheduled to be sentenced on or about May 27, 2004.

On or about April 15, 2004, Mr. Prosen decided not to go forward with the depositions which had been scheduled for the first week of May 2004, in light of Mr. Fernandez's assertion of his Fifth Amendment rights. We did not object to your rescheduling the depositions.

Scheduling of the depositions also was impacted by the medical condition of Samuel Southern. Mr. Southern has not worked for the USPS since February 2003. He also had substantial periods of leave prior to that time because of his medical condition. By letter dated February 25, 2004, I informed you of Mr. Southern's chronic medical condition, including his being scheduled for back surgery, his use of medications to deal with the pain, and his inability to give a deposition at that time. Mr. Southern finally underwent back surgery on March 11, 2004, but continued use of medications to attempt to deal with the pain. By letter dated April 9, 2004, I advised you that a deposition of Mr. Southern would not be fruitful at that time, because of his medical condition. As noted above, LP decided not

to go forward with the May 2004 depositions, because of Mr. Fernandez's assertion of his Fifth Amendment rights.

On May 7, 2004, LP noticed the depositions of Mr. Southern, Robert Rigsby, Jesse McNabb, and Mr. Fernandez for June 9 and 10, 2004. In sum, it was LP's decision not to conduct the depositions in this matter until after the sentencing of Mr. Fernandez, which occurred on May 27, 2004.

Further, in preparation for the scheduled June 2004 depositions, I wrote you letters dated May 13, 2004 and June 3, 2004, pointing out among other things, that LP had failed to respond to the Government's request for production of documents, dated April 11, 2000, and that, when LP finally produced its documents to defendant on May 18, 2004, the documents produced by LP failed to contained the scopes of work that were set forth in its amended complaint, except for two scopes of work. By letter dated June 3, 2004, LP produced additional documents.

On the eve of the depositions scheduled for June 9-11, 2004, Mr. Prosen suggested to me that those depositions be postponed, and asked if we would object. I noted the problems involved in a postponement, including the rescheduling of witnesses and counsel for any rescheduled depositions. Upon reflection, Mr. Prosen decided to go ahead with the depositions scheduled for June 9-11, 2004, and those depositions were conducted as scheduled.

Further, the statements that the Government made numerous representations that the criminal investigation "involved numerous witnesses and parties which would plead the Fifth Amendment" and that "various witnesses, including Messrs. Rigsby, McNabb and the like, might plead the Fifth Amendment as a result of the alleged ongoing criminal investigation" also are false. I pointed out to Mr. Prosen solely that Mr. Fernandez might assert his Fifth Amendment rights, if he was deposed while the criminal matter was pending. We never discussed whether other witnesses were involved in the criminal investigation, and the Government never asserted that any witness, other than Mr. Fernandez, might assert his Fifth Amendment right at a deposition and refuse to testify. As noted above, Mr. Tuite, Mr. Fernandez's attorney, confirmed to Mr. Prosen that Mr. Fernandez would assert his Fifth Amendment rights at a deposition prior to his sentencing.

Finally, I wrote you both because of the serious concerns that we expressed in our July 9, 2004 letter. Given all the misstatements contained in your July 16, 2004 letter, it is clear that was the proper response. In addition, I telephoned both Mr. Prosen and Mr. Cohen to discuss this matter. Mr. Cohen did not

return my phone calls, and, on July 16, 2004, I discussed this matter with Mr. Prosen before he wrote his letter. I have again discussed this matter with Mr. Prosen, and LP has not withdrawn its amended notice of a Rule 30(b)(6) deposition. It is apparent that we can not resolve this matter. Accordingly, we are seeking the Court's assistance in resolving this discovery dispute.

Very truly yours,

DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **L.P. CONSULTING GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 98-868 C** |
| **v.** | ) | **(Judge Allegra)** |
| | ) | |
| **THE UNITED STATES POSTAL SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**NOTICE OF PARTY DEPOSITION UPON ORAL EXAMINATION OF DEFENDANT THE UNITED STATES POSTAL SERVICE**

Plaintiff, L.P. Consulting, Inc., through undersigned counsel and pursuant to United States Court of Federal Claims Rule 30(b)(6), hereby notices the deposition of party Defendant, The United States Postal Service ("Government"), upon oral examination for a party or "corporate" oral deposition.

This noticed deposition of the Government shall take place at the offices of Bell, Boyd & Lloyd PLLC, 1615 L Street, N.W., Washington, D.C. 20036 or such other place and time as may be mutually agreed upon by counsel for the parties on August 4, 2004 at 10:00 a.m. Pursuant thereto, L.P. hereby demands that the Government designate one or more officers, directors, managing agents, authorized agent(s), or other persons who consent to testify on the Government's behalf, and to set forth, for each person so designated, the matters on which those persons will testify.

## I. DEFINITIONS AND INSTRUCTIONS

As used herein, the following Definitions and Instructions shall apply, unless the context clearly calls for a different meaning.

1. "Document" means the complete original or the true, correct and complete copy of any non-identical copies of any written or graphic matter, no matter how produced, recorded,

stored or reproduced, including, but not limited to, any writing, letter, telegram, meeting minute, memorandum, statement, book, record, survey, map, study, handwritten note, working paper, chart, tabulation, graph, tape, data sheet, data processing card, printout, microfilm, index, diary entry, book, analysis, summary, study, job record, check, chart, invoice, schedule, financial and accounting record, plans, specifications, photograph, video, report, agenda, log, contract, agreement, memoranda of meetings and telephone conversations, position papers, stored computerized data and printouts thereof, and papers of any nature, including drafts and proposed drafts of each, and all copies of documents by whatever means made, except for exact duplications which do not differ from the original or from any other copy by way of color, interlineation, markings, notations or otherwise.

2. The terms "USPS", "Government" or "United States Postal Service" means the United States Postal Service, its officers, directors, employees, agents, representatives and independent contractors or any one of them.

3. The "Contract" means IQC Contract No. 162640-96-B-0094 and Contract No. 162640-96-B-0098 unless otherwise noted.

4. All terms defined herein refer to the singular as well as to the plural, as the context requires.

5. To the extent any of the following areas or subject matters of the noticed deposition are objectionable, separately state the part of each subject matter area/item to which an objection has been raised and each ground for each such objection.

6. Any documents shall be produced in the manner in which they are kept in the normal course of business and shall be identified by the particular request to which they are responsive.

7. This Notice of Deposition is continuing in character, and, therefore, any additional informational responsive to this Notice or the subject matters set forth below shall be produced as it becomes known, available, or is generated, received or located.

8. The terms "refer or relate" mean reflect, contain, pertain to, refer to, indicate, show, concern, evidence, describe, discuss, mention, bear upon, or comprise in whole or in part.

9. The terms "you," "your," or "Defendant" shall mean and refer to USPS and its agents, servants, employees, representatives, attorneys or any other person or entity acting on its or their behalf.

10. The term "Projects" shall refer to and relate to a collective reference to the Related Projects and Subject Projects as defined below.

11. The term "SOW" shall mean and refer to any task order, delivery order, scope of work, or other description of the work to be performed on any of the Projects as defined under the previous paragraph.

12. The term "Related Projects" shall refer to any and all construction projects performed between the years 1996 and 1998 on the following USPS post offices:

a. Glenwood
b. Bradley
c. Hoopeston
d. Paxton
e. Lincoln
f. Marseilles
g. Mendota
h. Oglesby
i. Peru
j. Princeton
k. Spring Valley
l. Streator
m. Canton
n. Bushnell
o. Macomb
p. Lewistown

A 46

q. Normal
r. Charleston
s. Tuscola
t. Pana
u. Shelbyville
v. Taylorville
w. Beardstown
x. Carlinville
y. Havana
z. Mason City
aa. Rushville
bb. Virden

13. The term "Subject Projects" shall mean and refer to each of the projects identified below which are the subject of the current litigation.

a. Berwick Modular Post Office
b. Hoopeston Ramp Project
c. Downer's Grove Dock Enclosure
d. Brookfield Ramp and Dock Enclosure
e. Aroma Park Interior Lobbies and Building Renovation
f. Beaverville Lobby and Building Renovation
g. Bradley Concrete Ramp, Lobbies and Building Renovation
h. East Lynn Building Renovation
i. Momence Concrete Ramp and Lobby Renovation
j. Papineau Interior Renovation and Concrete Ramp
k. St. Anne Concrete and Asphalt Material Renovations
l. Union Hill Interior and Exterior Ramp

## II. SUBJECT MATTER

The subject matter of the Rule 30(b)(6) Deposition shall include, without limitation, the following:

1. All information surrounding or involving the Related Projects and/or Subject Projects.

2. All information regarding site visits performed by USPS personnel, L.P., or others regarding any of the Projects.

3. All information which is not privileged which involves any investigations, reports, analyses, data, information or which refer or relate to this case, L.P., or the Projects.

4. All documents produced either previously or in the future by the USPS.

5. All USPS handicapped ramp and/or dock enclosure projects located in Illinois, performed between 1995 and 1998.

6. The destruction, removal, archiving or other disposition of any USPS documents, materials or other items requested by L.P. in its Requests for Production of Documents, whether produced or not produced by the USPS.

7. The development, drafting, preparation, approval, issuance and other administrative tasks involving any task orders, scopes of work or other contracts regarding or relating to any of the Projects.

8. Any site visits by L.P. to any of the Subject Projects.

9. Any scopes of work or the like developed by L.P. for any of the Subject Projects.

10. USPS standard procedures at the time of the Contracts, for the preparation of statements of work and/or task orders such as those which are the subject of this litigation.

11. Any documents prepared by USPS personnel or contractors/independent contractors, for any of the Subject Projects.

12. The USPS Purchasing Manual in existence between 1996 and 1999, and the procedures, statements, and requirements set forth therein.

13. Any decisions made by the USPS to exclude L.P. from participation in any of the Projects.

14. Any requests, whether written, verbal, or otherwise, made by the USPS to L.P., to perform site surveys, take-offs, analyses, develop scopes or work or perform other work/tasks on any of the Projects.

15. Any statements of work developed by L.P. regarding any of the Subject Projects or Projects.

16. The provision of any SOWs prepared by L.P. for any of the Projects.

17. Any discussions with L.P. regarding the Projects.

18. Any involvement by any of the following individuals regarding the Subject Projects:

Bruce Rothmel
Paul Steiner
Lois Gunlogson
Jesse McNabb
Mary Yates
Robert F. Gibbons
Samuel Southern

19. Any and all facts involving or relating to Mr. Andrew Fernandez and/or A.M. Fernandez & Associates (collectively "Fernandez") and his involvement in any of the Projects.

20. Any and all facts involving or relating to the indictment and subsequent guilty plea of Mr. Fernandez.

21. With regard to the Subject Projects subsequently awarded to the other contractors, including, without limitation, Ulbrich & Associates; Ramcorp Inc.; Concrete by Wagner, Inc.; R.J. Custom Builders and/or Somer Construction:

a. Any determinations or discussion of unusual urgency, emergency conditions or the like, regarding USPS's need for the services ordered by the USPS, such that the issuance or award of a task order or delivery order under a given IQC contract would result in unacceptable delay in fulfilling that need; and any justification documents regarding same.

b. Any determination or discussions by USPS that there was only one contractor under each of the contracts referenced above as part of this section 21, which USPS awarded, capable of providing the services or work required at the level of quality required because the services ordered are unique and/or highly specialized; and any justification documents regarding same.

c. Any determination or discussions by USPS regarding any reason why each or any of these tasks or delivery orders had to be issued on a sole-source basis in the interest of the economy and/or efficiency, if in fact that occurred; and any justification documents regarding same.

d. Any determination or discussions by USPS that it was necessary to place any contract or task/delivery order with a particular contractor in order to satisfy a minimum guarantee; and any justification documents regarding same.

22. All SOWs prepared or otherwise issued by USPS for the Projects.

Dated: July 9, 2004

Respectfully submitted,

Brian Cohen, Esquire
BELL, BOYD & LLOYD PLLC
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036-5610
(202) 466-6300

Attorney for Plaintiff

Of Counsel:

Lawrence M. Prosen, Esquire
BELL, BOYD & LLOYD PLLC
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036-5610
(202) 466-6300

Attorney for Plaintiff

A 50

CERTIFICATE OF SERVICE

I hereby certify that I have this 9th day of July, 2004 delivered by hand delivery, Plaintiff's NOTICE OF PARTY DEPOSITION UPON ORAL EXAMINATION OF DEFENDANT THE UNITED STATES POSTAL SERVICE to counsel for Defendant:

Domenique Kirchner, Esquire
United States Department of Justice
Civil Division-Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530

Brian Cohen