No. 98-868C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L.P. CONSULTING GROUP, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO QUASH NOTICE OF DEPOSITION, FOR PROTECTIVE ORDER AND REQUEST FOR EXPEDITED CONSIDERATION

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor,
1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

OF COUNSEL:

STEPHEN D. LOBAUGH
UNITED STATES POSTAL SERVICE

July 30, 2004

## TABLE OF CONTENTS

I. LP's Deposition Notice Is Overboard And Unduly Burdensome .......... 1

A. Only Particular Site Visits By LP Are Relevant .......... 3

B. Only Particular Scopes Of Work Are Relevant .. 5

C. Testimony About Contract Administration Is Irrelevant .......... 6

D. Only Certain Ramp And Dock Enclosure Projects Are Relevant .......... 9

E. Testimony Relating Mr. Fernandez's Indictment and Guilty Plea Is Either Unnecessary Or Privileged .......... 10

F. Other Topics Are Overboard And Unduly Burdensome .......... 12

II. Defendant Requires Additional Time To Respond To The Amended Deposition Notice .......... 15

III. LP Should Proceed Through Issuing Interrogatories 18

IV. LP's Rule 30(b)(6) Deposition Was Not Within The Discovery Discussed By The Parties and Raised As Grounds For An Enlargement Of The Discovery Period 20

V. LP's Other Contentions Lack Merit .......... 21

VI. LP'S Request For An Award Of Attorneys Fees Should Be Denied .......... 25

CONCLUSION .......... 25

**TABLE TABLE OF AUTHORITIES**

**FEDERAL CASES**

Alexander v. FBI,
186 F.R.D. 71 (D.D.C. 2001) .............................. 20

Cessna Aircraft Co. v. Dalton,
126 F.3d 1442 (Fed. Cir. 1997) ........................... 2

Exxon Research & Eng. Co. v. United States,
44 Fed. Cl. 597 (1999) ............................. 18, 19

Jennings v. Family Management,
201 F.R.D. 272 (D.D.C. 2001) ............................ 20

Labarge Products, Inc. v. West,
46 F.3d 1547 (Fed. Cir. 1995) ........................... 3

McCormick-Morgan, Inc. v. Teledyne Industries, Inc.,
134 F.R.D. 275 (N.D. Cal.), rev'd in other part,
765 F. Supp. 611 (N.D. Cal. 1991) ...................... 19

Naftchi v. New York Univ. Med. Ctr.,
172 F.R.D. 130 (S.D.N.Y. 1997) .......................... 20

Salter v. Upjohn Co.,
593 F2d 649 (5th Cir. 1979) ............................. 20

SEC v. Morelli,
143 F.R.D. 42 (S.D.N.Y. 1992) .......................... 19

United States v. Taylor,
166 F.R.D. 356 (Eliason, Mag. J.), aff'd,
166 F.R.D. 267 (M.D.N.C. 1996) ......................... 18

Wyatt v. Kaplan,
686 F.2d 276 (5th Cir. 1982) ............................ 20

**FEDERAL STATUTES**

26 U.S.C. § 7206(1) .................................... 10

41 U.S.C. §§ 601 et seq., ................................... 2

41 U.S.C. § 607 (d) ....................................... 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.P. CONSULTING GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 98-868C |
| THE UNITED STATES, | ) | (Judge Allegra) |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO QUASH NOTICE OF DEPOSITION, FOR PROTECTIVE ORDER AND REQUEST FOR EXPEDITED CONSIDERATION

Defendant has moved, pursuant to Rule 26(b)(2) and (c) of the Rules of the United States Court of Federal Claims ("RCFC"), to quash an amended notice of deposition for a Rule 30(b)(6) deposition, served by L.P. Consulting Group, Inc. ("LP") on July 16, 2004 (App. 1-7),[1/] and for issuance of a Protective Order precluding LP from proceeding with such a deposition. LP opposed our motion contending that there is not good cause for issuance of a protective order. As demonstrated below, there is ample good cause for the issuance of a protective order in the circumstances of this case and based upon the over breadth and undue burdensomeness of LP's Rule 30(b)(6) deposition notice.

I. LP's Deposition Notice Is Overboard And Unduly Burdensome

As demonstrated in our motion, the over breath and burdensomeness of LP's Rule 30(b)(6) deposition notice is evident from the numerous topics contained in the notice. Further, the over breadth and unduly burdensome nature of the deposition notice also is plain when the numerous topics set forth in the

[1/] "App." refers to the appendix attached to this motion. "SApp." refers to the appendix attached to this reply.

notice are compared with the facts actually at issue in this controversy.

According to LP's amended complaint and LP's claims, dated March 3, 1998, and April 13, 1998, submitted to the contracting officer, this case involves the following 12 "Subject Projects":

1. Berwick Modular Post Office
2. Hoopeston Ramp Project
3. Downer's Grove Dock Enclosure
4. Brookfield Ramp and Dock Enclosure[2/]
5. Aroma Park Interior Lobbies and Building Renovation
6. Beaverville Lobby and Building Renovation
7. Bradley Concrete Ramp, Lobbies and Building Renovation
8. East Lynn Building Renovation
9. Momence Concrete Ramp and Lobby Renovation
10. Papineau Interior Renovation and Concrete Ramp
11. St. Anne Concrete and Asphalt Renovations
12. Union Hill Interior and Exterior Ramp

SApp. 1-7. LP contends that the USPS breached implied-in-fact contracts by failing to award LP contracts to perform these 12 projects and LP claims lost profits. Am. Comp. ¶¶ 13, 39, 46, 52, 58, 64, 70, 75, 81, 86, 92, 98, 104. Breach of an implied-in-fact contract is a claim under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601 et seq., that must be submitted to the contracting officer. Cessna Aircraft Co. v. Dalton, 126 F.3d 1442, 1448 (Fed. Cir. 1997). LP also claims that the "implied in fact contracts" at issue arose out of [its two Indefinite Quantity Contracts] IQCs," which are CDA contracts. Am. Compl. ¶¶ 8, 13. Claims "relating to a [CDA] contract shall be in

---

[2/] The Brookfield Post Office ramp and dock enclosure actually is two separate construction projects: (1) the handicap ramp that was constructed by Waner; and (2) the dock enclosure that was constructed by Janice Building Co.

writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 607(d); Labarge Products, Inc. v. West, 46 F.3d 1547, 1550 (Fed. Cir. 1995). Thus, LP's claims are CDA claims which had to be submitted to the contracting officer.

Richard Battaglin, the secretary/treasurer and project superintendent of LP, testified at deposition concerning his site visits to these USPS facilities, and his preparation of what he called "scopes of work" for these projects in accordance with LP's two indefinite quantity contracts ("IQCs") with the USPS, contracts nos. 162640-96-B-0094 and 162640-96-B-0098. Dep. 4. For ease of presentation, we have summarized Mr. Battaglin's deposition testimony on a chart, prepared by counsel, attached to this brief.[3/] SApp. 8-9. The chart summarizes the facts at issue in this proceeding. The comparison of the facts at issue with the scope of LP's intended Rule 30(b)(6) deposition amply demonstrates the over breath and unduly burdensome nature of the deposition notice.

[3/] "Dep." cites in the chart are to the testimony of Mr. Battaglin.

A. Only Particular Site Visits By LP Are Relevant

For example, LP requests testimony on "2. All information regarding site visits performed by USPS personnel, LP, or others regarding any of the Subject Projects" and "8. Any site visits by LP to any of the Subject Projects." App. 4. These requests are blatantly overbroad when compared to Mr. Bataglin's testimony. According to Mr. Bataglin, his site visits that are relevant to LP's claims occurred on the dates set forth in the attached chart (i.e., September 17, 1996, November 14, 1995, August 1, 1996, September 1995, October 17, 1995, May 24, 1996, and August 15, 1995), at which times he allegedly met with the people indicated in the chart. Those are the only site visits at issue.
SApp. 8-9.

In comparison, LP is requesting testimony "on site visits performed by USPS personnel, LP, or others regarding any of the Subject Projects" and "any site visits by LP to any of the Subject Projects," without limiting the topic to the particular site visits alleged by LP and Mr. Battaglin. The over breadth of the deposition topics is plain. There also is no way that the USPS could prepare to address the overbroad topics set forth in the notice. Further, LP, as a contractor performing work for the USPS, made numerous visits to some post offices (e.g., Downers Grove "lock box lobby job," Battaglin Dep. 295, 313, 327). Therefore, LP would have been at such post offices countless times. None of those site visits is at issue. Instead, LP is contending that the USPS should have issued LP contracts to

perform the work, but that other contractors obtained such contracts.

B. Only Particular Scopes Of Work Are Relevant

Similarly, LP is seeking testimony regarding: "9. Any scopes of work or the like developed by LP for any of the Subject Projects;" "15. Any statements of work developed by LP regarding any of the Subject Projects. . .;" and "16. The provision of any SOW's [scopes of work] prepared by LP for any of the [Subject] Projects." App. 4-5. The three categories appear to be the same, and defendant is unclear how, if at all, they differ. In any event, only Mr. Battaglin knows all of the scopes of work that he prepared regarding each of the Subject Projects. Moreover, in deposition, Mr. Battaglin testified with regard to numerous scopes of work that he had prepared; he identified which particular ones related to LP's claims, and which scopes of work were not the subject of LP's claims. E.g., Battaglin Dep. 82-83 (identifying East Lynn scope of work, Ex. 53, as not what he was claiming here), 304 (stating that his scope of work for the Downers Grove wood frame dock enclosure was not what he was claiming here ("I'm not claiming that project.")). LP's request for testimony, however, is not limited to the particular scopes of work that Mr. Battaglin identified as relevant to LP's claims and, instead, extends too broadly to any scopes of work developed by LP for any of the Subject Projects. As Mr. Battaglin testified, some of his scopes of work were not part of LP's

claims. LP's deposition notice, by extending to all LP scopes/statements of work, is overbroad and unduly burdensome.

Similarly, LP requests testimony on "1. All information surrounding or involving the Subject Projects." App. 4. The scope of this topic area is overboard and extends to anything and everything one could think of regarding the projects, including site visits by anyone, scopes of work prepared by anyone, administration of contracts in those cases where USPS actually went forward with all or part of a project, performance of such contracts, etc. The USPS could never prepare a witness to testify about such overbroad and unduly burdensome topic areas.[4/]

C. Testimony About Contract Administration Is Irrelevant

In its deposition notice, LP also is seeking testimony about matters relating to USPS's administration of contracts awarded to other contractors for construction of the Subject Projects. However, any testimony regarding contract administration matters, as opposed to USPS's decision to award a particular contract, is not relevant here. LP is contending that it should have been awarded the contracts that were awarded to other contractors. How such contractors later performed their contracts, and how the USPS later administered such contracts has no bearing upon LP's claims.

[4/] LP in its response offered to withdraw this topic area "if that would fully resolve the Government's motion." Pl. Op. 8 n.2.

For example, LP is seeking testimony regarding: "7. The development, drafting, preparation, approval, issuance and other administrative tasks involving any task orders, scopes of work or other contracts regarding or relating to any of the [Subject] projects;" "11. Any documents prepared by USPS personnel or contractors/independent contractors, for any of the Subject Projects;" and "22. All SOW's [scopes of work] prepared or otherwise issued by USPS for the [Subject] Projects." App. 4, 6. These requests for testimony are extremely board and burdensome, and extend well beyond the matters that are relevant to this proceeding. Some of the Subject Projects were not even pursued by the USPS, i.e., Beaverville Lobby and Building Renovation; East Lynn Building Renovation; Papineau Interior Renovation and Concrete Ramp; St. Anne Concrete, Asphalt and Interior Renovations; and Union Hill Interior and Exterior Ramp. For each Post Office where the USPS contracted for work, there were numerous administrative tasks and contract-related documents, e.g., the contract award, bonding, change orders, inspection reports, USPS's payment of the contractor, and the contractor's payment of its employees and subcontractors. The breadth of such topics extends far beyond the issues that are pertinent to this matter.

LP also requests testimony concerning "18. Any involvement by any of the following individuals regarding the Subject Projects: Bruce Rothermel, Paul Steiner, Lois Gunlogson, Jesse McNabb, Mary Yates, Robert F. Gibbons, Samuel Southern." App. 5.

This request is blatantly overboard. LP has not made allegations regarding two of the individuals listed, i.e., Mary Yates and Robert F. Gibbons. Further, LP, through its Rule 30(b)(6) notice, is attempting to inquire into the USPS's administration of contracts awarded to other contractors. This is clearly beyond the scope of the litigation, which concerns only the USPS's decisions to award the contracts to contractors other than LP. LP also should have deposed these individuals directly, if it wished to obtain their personal knowledge.

LP also requests testimony concerning "19. Any and all facts involving or relating to Mr. Andrew Fernandez and/or A.M. Fernandez & Associates (collectively "Fernandez") and his involvement in any of the Subject Projects." App. 5. For some of the Subject Projects, Mr. Fernandez performed duties for the USPS after award of the contracts, e.g., making site visits monitoring the contractor's performance. This deposition topic thus presents over breadth and unduly burdensome problems similar to the other requests that deal with administration of contracts for the Subject Projects.

In sum, LP contends that the contracts that were awarded to other contractors should, instead, have been awarded to LP. The administration of those particular contracts is not relevant to LP's contentions. Although testimony about the award of such contracts might be relevant, all but one of the contract award decisions were made by former USPS Contracting Officer Ronald Rigsby, who already was deposed by LP. Testimony taken in a Rule

30(b)(6) deposition regarding Mr. Rigsby's decisions to award those particular contracts would be duplicative and unnecessary.

The only other contract award decision was made by USPS contracting officer Larry Linnenburger, who, on August 28, 1999, awarded a contract for lobby renovations at the Aroma Park Post Office to PNL Enterprises. App. 37. That contract award was made more than one year after LP filed its claims, dated March 3, 1998 and April 13, 1998, Am. Comp. ¶ 26, and, therefore, is not relevant.

In sum, LP's request, through a Rule 30(b)(6) deposition, to require USPS to testify about the administration of contracts for the Subject Projects is overbroad and extends to topics that are not relevant to this proceeding and that are not likely to lead to the discovery of relevant evidence. Further, it would be unduly burdensome for the USPS to prepare a designated witness to testify about the administration of all of these contracts.

D. Only Certain Ramp And Dock Enclosure Projects Are Relevant

LP also requests testimony upon "5. All USPS handicapped ramp and/or dock enclosure projects located in Illinois, performed between 1995 and 1998 regarding or related to the Subject Projects." (Emphasis added). App. 4. Based upon Mr. Battaglin's testimony, the Subject Projects that involve a handicap ramp or a dock enclosure were: (1) Hoopeston ramp; (2) Downers Grove steel dock enclosure (Ex. 81); (3) Brookfield ramp and dock enclosure (Ex. 76); (4) Bradley ramp (Ex. 72); (5) Momence ramp (Ex. 62); (6) Papineau ramp (Ex. 71); and (7) Union

Hill ramp (Ex. 63). Battaglin Dep. 196, 232, 237, 244, 297, 306. Two of these projects were not even pursued by USPS, i.e., Papineau ramp and Union Hill ramp. LP's request for testimony, however, extends to any handicapped ramp projects or dock enclosure projects that are "related to" the Subject Projects. The deposition topic is inherently ambiguous, and the USPS cannot determine which projects are those that are "related to" the Subject Projects. The request also is overboard and unduly burdensome, because it is not limited to the particular handicapped ramp and dock enclosure projects put at issue by LP and Mr. Battaglin. App. 8-9.

E. Testimony Relating Mr. Fernandez's Indictment and Guilty Plea Is Either Unnecessary Or Privileged

LP also requests testimony concerning "20. Any and all facts involving or relating to the indictment and subsequent guilty plea of Mr. Fernandez." App. 5. The indictment and guilty plea of Mr. Fernandez are a matter of public record, and testimony regarding such public facts is unnecessary. App. 10-12, 13. LP is aware of those public facts. The requested deposition topic, however, also is inherently ambiguous and overboard in referring to "any and all facts involving or relating to" the indictment and guilty plea, and potentially infringes upon matters that are privileged from discovery. It was the decision of the United States Attorney to charge Mr. Fernandez with a criminal violation of 26 U.S.C. § 7206(1). App. 13. This charging decision and plea agreement is essentially immune from judicial review. Thus, the facts "involving or relating to the indictment" and plea agreement are not a proper subject of discovery. Further, LP already has deposed Mr. Fernandez and had ample opportunity to question him regarding any matters pertinent to the litigation. Mr. Fernandez answered all of LP's questions.

LP also requests testimony regarding "3. All information which is not privileged which involves any investigations, reports, analyses, data, information or which refer or relate to this case, LP, or the Subject Projects." App. 4. LP is requesting testimony regarding all non-privileged information regarding any investigations, reports, analyses, data which

presumably refer to relate to this case, LP, or the Subject Projects. LP is the subject of an Inspector General's investigation that has nothing to do with this matter. Other contractors also may be subject of investigations. All of such information, not only is privileged, but has no bearing on the facts at issue in this proceeding. The scope of this deposition topic area is inherently ambiguous and extends far beyond the issues in this matter. Requiring USPS to prepare testimony for a Rule 30(b)(6) deposition upon such undefined, overboard areas also is unduly burdensome.

F. Other Topics Are Overboard And Unduly Burdensome

LP also requests testimony concerning "12. USPS Purchasing Manual in existence between 1996 and 1999, and the procedures, statements, and requirements set forth therein." This request is overboard and unduly burdensome. First, Mr. Battaglin's site visits at issue occurred in the 1995 and 1996 timeframe. LP's deposition topic is overboard and unduly burdensome in extending beyond the 1996 timeframe. Further, there were two USPS Purchasing Manuals in effect during the 1996 to 1999 timeframe. The first, called Publication 41, was approximately 585 pages and had 12 chapters and five appendices. The second, Purchasing Manual Issue 1, was 560 pages, with nine chapters and six appendices. Both of these versions of the Purchasing Manual have been subject to periodic revisions. No USPS employee could be prepared to testify about all of these USPS procedures.

The import of such requested testimony also is unclear. LP is contending that it did not obtain contracts for the Subject Projects set forth in its two claims. Only limited portions of the USPS Manual could possibly have a bearing upon the issuance of a contract.

LP also requests testimony concerning "10. USPS standard procedures at the time of the Contracts, for the preparation of statements of work and/or task orders such as those which are the subject of this litigation." App. 4. This area is completely irrelevant to the litigation. LP is contending that it prepared scopes of work for the Subject Projects, but that USPS failed to issue LP a statement of work/task order for the Subject Projects. LP contends that it should have received the contracts that were awarded to other contractors. Thus, it is USPS's contract award decisions that are at issue, not USPS's issuance of any statement of work/task order.

Finally, LP requests testimony upon: "4. All documents produced either previously or in the future by the USPS;" and "6. The destruction, removal, archiving or other disposition of any USPS documents, materials or other items requested by LP in its Requests For Production of Documents, whether produced or not produced by the USPS." App. 4. These requests are inherently unduly burdensome. The USPS has produced approximately 1000 pages of documents that directly related to the Subject Projects. No witness could be adequately prepared to testify about all of those documents.

In addition, the USPS produced numerous documents that have no bearing upon the specific facts at issue in the litigation. For example, defendant produced three boxes of original USPS records that had been in the custody of the USPS Inspection Service officials who were investigating Mr. Fernandez. Some of the records contained in those boxes already had been produced, e.g., the files regarding: (1) Hoopeston installation of a handicap ramp; (2) Bradley installation of a handicap ramp; (3) Brookfield installation of a ramp; and (4) Brookfield construction of a enclosure, all of which were previously produced. However, the Postal Inspectors had custody of files regarding numerous other matters which are not relevant to LP's claims in this case, including:

(1) Beardstown lockbox and lobby renovation;
(2) Buckley ramp;
(3) Bushnell handicap ramp;
(4) Canton handicap ramp;
(5) Carlinville handicap ramp;
(6) LaGrange handicap ramp:
(7) Marseilles handicap ramp;
(8) Mason City handicap ramp;
(9) Mendota handicap ramp;
(10) Millbrook handicap ramp;
(11) Morris handicap ramp;
(12) Oglesby handicap ramp;
(13) Pana handicap ramp;
(14) Princeton handicap ramp;
(15) Rusville ramp;
(16) Serena handicap ramp;
(17) Shelbyville handicap ramp;
(18) Spring Valley handicap ramp;
(19) Streator handicap ramp;
(20) Virden handicap ramp;
(21) Marseilles fire repairs;
(22) Sandwich carrier access ramp and dock;
(23) Aurora emergency flood work;
(24) Tinely Park west parking alteration;
(25) Homewood redo ceiling.

Indeed, the three boxes also contained files relating to contracts that were awarded to LP, i.e., (1) Paxton handicap ramp; (2) Millbrook handicap ramp; and (3) Serena handicap ramp. LP has no complaint here about the contracts that it obtained from the USPS. Defendant made all this material available for LP's inspection and review. To require defendant now to prepare a Rule 30(b)(6) witness to testify regarding all of these irrelevant matters is unduly burdensome as well as unlikely to lead to discovery of relevant evidence.

LP's Rule 30(b)(6) deposition notice also refers to its previous Requests for Production of Documents and requests testimony "whether the documents [were] produced or not produced by the USPS." App. 4. With the exception of the aforementioned three boxes of documents that had been within the custody of the Postal Service Inspectors, defendant, in responding to LP's document production requests, focused its production of documents on the 12 Subject Projects contained in LP's claims, and objected to producing documents regarding projects other than the 12 Subject Projects. Accordingly, any deposition should be limited to the 12 Subject Projects and documents directly related to the awards of contracts for those projects.

## II. Defendant Requires Additional Time To Respond To The Amended Deposition Notice

LP's amended notice of deposition requested testimony on August 4, 2004. In our motion, we demonstrated that defendant would need extensive time to prepare a witness to testify in

response to the Rule 30(b)(6) deposition notice. Defendant would have to locate, review, and study numerous documents that have not previously been requested or produced in the litigation. Defendant also would have to work with its designated witness to study all of the available information regarding the numerous topics set out in the deposition notice, which would also require that the witness review all of the pertinent documents and read all of the deposition testimony. Defendant's counsel also would have to travel to Illinois to accomplish this preparatory work with the designated witness, who then would be produced for LP's deposition in Illinois. Defendant's best estimate is that this would require a week of preparation time with the witness to go over and prepare to testify regarding the numerous subject matters. Defendant's counsel also was previously committed to depositions in Brooklyn, N.Y., on July 20-22, and to preparation for and conducting depositions in Otisville, N.Y., between July 26 and August 6, 2004. Accordingly, there was not sufficient time allowed for defendant to coordinate and complete this matter by the August 4, 2004, deposition date.

Further, although LP claims to have offered five dates for completion of the Rule 30(b)(6) deposition, i.e., July 26, and 29, August 2, 4, or 5, all of those dates presented the same problems for defendant. Pl. Op. at 4. As we explained in our motion, an enlargement of the discovery period through September 2004 would be required to complete this deposition.

LP argues that defendant could lessen the burdens imposed by LP's Rule 30(b)(6) deposition notice by designating multiple persons to testify in response to LP's notice. Pl. Opp. at 11-12. However, that approach would result in additional work and preparation time in the circumstances of this case. Most of the individuals involved in this matter no longer work for the USPS. Robert Rigsby, the contracting officer who made most of the contract award decisions at issue, retired in March 1999 (Rigsby Dep. 7); Mr. Rigsby also was deposed by LP. Samuel Southern, who worked for Mr. Rigsby, has been seriously ill and on numerous medications for pain, and has not worked for the USPS since February 2003; he also had substantial periods of absence before that time. App. 41. Mr. Southern also was deposed by LP. Jesse McNabb was a contract employee for the USPS, and was deposed by LP. Paul Steiner retired from the USPS on November 3, 1992, and subsequently worked as a contract employee for the USPS. Bruce Rothermel was a contract employee for the USPS. Mr. McNabb, Mr. Steiner and Mr. Rothermel no longer work for the USPS.

Lois Gunlogson is the only individual mentioned by Mr. Battaglin in deposition who currently works for USPS. Mr. Battaglin testified that Ms. Gunlogson was at his November 14, 1995 site visit to the Hoopeston Post Office. Other than this alleged site visit, Ms. Gunlogson apparently has no involvement in these matters. In any event, LP could have deposed Ms. Gunlogson, if it believed she has relevant information.

In sum, defendant would have to prepare a designated witness, who does not possess personal knowledge of the events at issue, to testify in response to the Rule 30(b)(6) notice. In such circumstances, the work required to prepare a witness to testify at a Rule 30(b)(6) deposition would not be lessened by working with multiple designees. Pl. Opp. at 10-11.

III. <u>LP Should Proceed Through Issuing Interrogatories</u>

In our motion, we also demonstrated that, if LP wishes to obtain additional discovery upon numerous detailed factual matters, LP should proceed through the issuance of interrogatories. Interrogatories would allow defendant an opportunity to gather the necessary information in response to LP's particular questions. Interrogatories in the circumstances of this case in all likelihood could provide LP with more information than the information which could be memorized and regurgitated by a designated witness in response to a Rule 30(b)(6) deposition.

LP contends that "a party is free to employ whatever discovery tools it has at its disposal" and that it is a litigant's choice as to whether to proceed by a Rule 30(b)(6) deposition or the issuance of interrogatories. Pl. Opp. at 5. However, that is not correct. The Court possesses ample authority and discretion to issue orders regarding the methods of discovery. RCFC 26(c)(3)(authority to issue order "that discovery may be had only by a method of discovery other than that selected by the party seeking discovery"); <u>Exxon Research &</u>

Eng. Co. v. United States, 44 Fed. Cl. 597, 601 (1999); United States v. Taylor, 166 F.R.D. 356, 362 n.7 (Eliason, Mag. J.), aff'd, 166 F.R.D. 267 (M.D.N.C. 1996). In some cases, courts have directed a requesting party to proceed by interrogatories, rather than a Rule 30(b)(6) deposition. Exxon, 44 Fed. Cl. at 601 (barring the United States' request for a Rule 30(b)(6) deposition and directing it to proceed through contention interrogatories as a less expensive and less invasive method of allowing it to learn the required information); SEC v. Morelli, 143 F.R.D. 42, 48 (S.D.N.Y. 1992) (directing party to proceed by contention interrogatories and barring a Rule 30(b)(6) deposition); McCormick-Morgan, Inc. v. Teledyne Industries, Inc., 134 F.R.D. 275, 278 (N.D. Cal.) (directing party to respond to interrogatories rather than produce a Rule 30(b)(6) witness), rev'd in other part, 765 F. Supp. 611 (N.D. Cal. 1991).

LP also contends that the complete prohibition of a deposition is an "extraordinary measure," citing Jennings v. Family Management, 201 F.R.D. 272, 275 (D.D.C. 2001); Alexandr v. FBI, 186 F.R.D. 71, 75 (D.D.C. 2001); Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982); Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979); Naftchi v. New York Univ. Med. Ctr., 172 F.R.D. 130, 132 (S.D.N.Y. 1997). Pl. Op. at 7. All these cases, however, deal with depositions of an individual to obtain their upon personal knowledge, not the issue of whether a Rule 30(b)(6) deposition or interrogatories is appropriate.

As demonstrated above, USPS has demonstrated ample good cause for the Court's issuance of an order protecting it from responding to the undue burdens imposed by LP's overboard Rule 30(b)(6) deposition notice. In such circumstances, LP should be directed to proceed by the issuance of interrogatories if it wishes to obtain additional information.

## IV. LP's Rule 30(b)(6) Deposition Was Not Within The Discovery Discussed By The Parties and Raised As Grounds For An Enlargement Of The Discovery Period

In preparation of their July 1, 2004 "Joint Status Report and Motion For Enlargement Of Discovery," the parties through counsel discussed their remaining discovery needs. LP, through Lawrence Prosen, insisted that the enlargement of the discovery period not be open-ended and be only for the purpose of wrapping up the pre-existing discovery. Based upon that understanding, the parties set forth their discovery needs in the joint status report and motion. At no time did LP's counsel ever mention a possible Rule 30(b)(6) deposition.

LP's issuance of a notice for a Rule 30(b)(6) deposition is in marked contrast with its previous dealings with defendant's counsel wherein LP identified the individuals it wished to depose, and sought, and received, the assistance of defendant's counsel in notifying LP's deponents and scheduling their depositions.

## V. LP's Other Contentions Lack Merit

LP, in opposing our motion for a protective order, makes numerous allegations without factual support and contrary to the

record of discussions with defendant's counsel. LP argues that the "Government has deliberately engaged in delay tactis in an effort to prevent L.P. Consulting from prosecuting its case." Pl. Opp. at 1, 3. Discovery in this matter was stayed while the criminal matter involving Andrew Fernandez was investigated and resolved by the United States Attorney, as is proper. Discovery was stayed by the Court until January 28, 2002, due to the criminal investigation. By order dated January 28, 2002, the Court lifted the stay of discovery, but neither party received a copy of the Court's order. In December 2002, LP's counsel first learned of the January 28, 2002 order lifting the stay of discovery through a review of PACER, and informed Government counsel. However, the investigation continued, and the criminal matter remained unresolved.

By letter dated February 25, 2004, defendant recommended that depositions be scheduled for May 5-7, 2004 in Chicago, IL. App. 8, 41. LP agreed, and the depositions were scheduled for the first week of May 2004. Defendant's counsel also stated to LP's counsel Mr. Prosen that Mr. Fernandez might assert his Fifth Amendment rights and decline to testify at a deposition while the criminal matter was pending. App. 41. Mr. Prosen subsequently had discussions with Patrick Tuite, Mr. Fernandez's attorney, and informed defendant's counsel that Mr. Tuite had stated that Mr. Fernandez would assert his Fifth Amendment rights and refuse to testify at any deposition conducted prior to the time that he was

sentenced. App. 41. Mr. Fernandez was scheduled to be sentenced on or about May 27, 2004.

On or about April 15, 2004, Mr. Prosen decided not to go forward with the depositions which had been scheduled for the first week of May 2004, in light of Mr. Fernandez's assertion of his Fifth Amendment rights. App. 15, 41. We did not object to LP's rescheduling the depositions.

Scheduling of the depositions also was impacted by the medical condition of Samuel Southern. App. 8, 15. Mr. Southern has not worked for the USPS since February 2003, and had substantial periods of leave prior to that time because of his medical condition. Id. By letter dated February 25, 2004, defendant's counsel informed LP's counsel of Mr. Southern's chronic medical condition, including his being scheduled for back surgery, his use of medications to deal with the pain, and his inability to give a deposition at that time. App. 8. Mr. Southern finally underwent back surgery on March 11, 2004, but continued use of medications to attempt to deal with the pain. App. 15. By letter dated April 9, 2004, defendant's counsel advised LP's counsel that a deposition of Mr. Southern would not be fruitful at that time, because of his medical condition. App. 14-15. As noted above, LP decided not to go forward with the scheduled May 2004 depositions, because of Mr. Fernandez's assertion of his Fifth Amendment rights. App. 41.

On May 7, 2004, LP noticed the depositions of Mr. Southern, Robert Rigsby, Jesse McNabb, and Mr. Fernandez for June 9 and 10,

2004. It was LP's decision not to conduct any of the depositions until after the sentencing of Mr. Fernandez, which occurred on May 27, 2004. App. 41.

Further, in preparation for the scheduled June 2004 depositions, defendant's counsel wrote LP letters dated May 13, 2004 and June 3, 2004, pointing out among other things, that LP had not responded to the Government's request for production of documents, dated April 11, 2000, and that, when LP finally produced its documents on May 18, 2004, the documents produced failed to contain the scopes of work that were set forth in LP's amended complaint, except for two scopes of work. App. 20, 22-23.

On the eve of the depositions scheduled for June 9-11, 2004, Mr. Prosen suggested to defendant's counsel that those depositions be postponed, and asked if defendant would object. App. 41. Defendant's counsel noted the problems involved in a postponement, including the rescheduling of witnesses and counsel for any rescheduled depositions. App. 41. Upon further reflection, Mr. Prosen decided to forward with those depositions, and those depositions were conducted as scheduled. Id.

LP also asserts that the Government made representations that the criminal investigation "involved witnesses and parties who would plead the Fifth Amendment" and that various witnesses, including Messrs. Rigsby, McNabb and the like, might plead the Fifth Amendment as a result of the alleged ongoing criminal investigation. Pl. Op. at 1. Those assertions are false.

Defendant's counsel pointed out to Mr. Prosen solely that Mr. Fernandez might assert his Fifth Amendment rights, if he was deposed while the criminal matter was pending. LP counsel and defendant's counsel did not discuss whether other witnesses were involved in the criminal investigation or might plead the Fifth Amendment, and the Government never asserted that any witness, other than Mr. Fernandez, might assert his Fifth Amendment right at a deposition and refuse to testify. Indeed, at the request of LP's counsel, defendant's counsel notified the deponents of their requested depositions by LP and facilitated LP's scheduling of the depositions. SApp. . Further, as noted above, Mr. Tuite, Mr. Fernandez's attorney, confirmed to Mr. Prosen that Mr. Fernandez would assert his Fifth Amendment rights at a deposition taken prior to his sentencing. LP chose to go forward with all these depositions at the same time, after Mr. Fernandez had been sentenced.

VI. LP's Request For An Award Of Attorneys Fees Should Be Denied

LP requests that the Court award it attorneys fees incurred in opposing this motion pursuant to RCFC 37(a)(4)(B). Pl. Op. at 12. LP's request is premature because the Court has not yet considered the Government's motion. Further, the Government had substantial grounds for making its motion in the circumstances of this case, and an award of attorneys fees also would be unjust.

## CONCLUSION

For the reasons set forth above and in our motion, defendant respectfully requests that, pursuant to RCFC 26(b)(2) and (c), the Court quash LP's amended notice of a Rule 30(b)(6) deposition

served July 16, 2004, and preclude LP from proceeding with such a deposition. Defendant also respectfully requests that, if the Court deems additional discovery warranted, it direct LP to proceed by issuing interrogatories and allow defendant the full 30 day period to respond.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

Of Counsel:
STEPHEN D. LOBAUGH
United States Postal Service

July 30, 2004

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 30th day of July 2004, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO QUASH NOTICE OF DEPOSITION, FOR PROTECTIVE ORDER AND REQUEST FOR EXPEDITED CONSIDERATION" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s DOMENIQUE KIRCHNER

## Table of Contents of Appendix

Pages

1. March 3, 1998 letter to contracting officer................1
2. April 13, 1998 letter to contracting officer...............5
3. Chart......................................................8
4. Excerpts from deposition of Richard Battaglin.............10
5. Aroma Park contract commitment order......................37