No. 98-868C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L.P. CONSULTING GROUP, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT, IN PART

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor,
1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

Of Counsel:

STEPHEN D. LOBAUGH
United States Postal Service

August 3, 2004

## TABLE OF CONTENTS

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT, IN PART . . . . . . . . 1

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

Banknote Corp. v. United States,
365 F.3d 1345 (Fed. Cir. 2004) . . . . . . . . . . . . . . . 4

CRC Marine Services, Inc. v. United States,
41 Fed. Cl. 66 (1998) . . . . . . . . . . . . . . . . . . . . 9

Commercial Drapery Contractors, Inc. v. United States,
133 F.3d 1 (D.C. Cir. 1998) . . . . . . . . . . . . . . 8, 9

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, aff'd,
758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . 9

Galen Medical Associates, Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . . . . . . 4

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . . . . . . . . . 4, 7

Information Technology & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003) . . . . . . . . . . . . . . . 5

Keco Industries Inc. v. United States,
192 Ct. Cl. 773, 428 F.2d 1233 (1970) . . . . . . . . . . . 7

LaBarge Products, Inc. v. West,
46 F.3d 1547 (Fed. Cir. 1995) . . . . . . . . . . . . PASSIM

NVT Technologies, Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . . . . . . . . . . . 4

Paragon Energy Corp. v. United States,
227 Ct. Cl. 176, 190, 645 F.2d 966, 975 (1981) . . . . . . . 8

Stapp Towing, Inc. v. United States,
34 Fed. Cl. 300 (1995) . . . . . . . . . . . . . . . . . 9, 10

TLT Construction Corp. v. United States,
50 Fed. Cl. 212 (2001) . . . . . . . . . . . . . . . . . . . 9

Tech System, Inc. v. United States,
50 Fed. Cl. 216 (2001) . . . . . . . . . . . . . . . . . . . 4

**FEDERAL STATUTES**

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . 4, 5

5 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1491(b) . . . . . . . . . . . . . . . . . . . . PASSIM

41 U.S.C. § 605(a) . . . . . . . . . . . . . . . . . . . 5, 9, 10

**MISCELLANEOUS**

Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870 . . . . . . . . . 3

Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601, et seq . . . 2

General Order 38 Part D. Initial Status Conference, Rule 8 . 7

General Order 38, Part G. The Content and Filing of the Administrative Record, Rules 16-19 . . . . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.P. CONSULTING GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-868C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COMPLAINT, IN PART

Defendant moved, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss for lack of jurisdiction, paragraphs 28 through 34 of the amended complaint of L.P. Consulting Group, Inc. ("LP"). In support of our motion, we showed that LP alleges that the United States Postal Service ("USPS" or "Postal Service") breached implied-in-fact contracts by failing to award LP contracts to perform 12 projects[1/] and claims lost profits. Am. Compl. ¶¶ 13, 39, 46,

---

[1/] The 12 projects enumerated in the amended complaint were described as:

1. Berwick Modular Post Office
2. Hoopeston Ramp Project
3. Downer's Grove Dock Enclosure
4. Brookfield Ramp and Dock Enclosure
5. Aroma Park Interior Lobbies and Building Renovation
6. Beaverville Lobby and Building Renovation
7. Bradley Concrete Ramp, Lobbies and Building Renovation
8. East Lynn Building Renovation
9. Momence Concrete Ramp and Lobby Renovation
10. Papineau Interior Renovation and Concrete Ramp
11. St. Anne Concrete and Asphalt Renovations
12. Union Hill Interior and Exterior Ramp.

Am. Compl. Counts I through XII.

52, 58, 64, 70, 75, 81, 86, 92, 98, 104. LP had two indefinite quantity contracts ("IQCs") with the USPS, contracts nos. 162640-96-B-0094 and 162640-96-B-0098, awarded June 6, 1996, and June 3, 1996, respectively. Am. Compl. ¶¶ 6, 7. Section H.3 of the IQCs provides that the contract is subject to the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601, et seq. Am. Compl. ¶ 8. LP alleges that its "implied-in-fact contracts" arose out of [its] IQCs." Am. Compl. ¶¶ 8, 13. In each of the 12 counts of its amended complaint, LP alleges that the USPS breached its implied-in-fact contract with LP by awarding the work to another contractor, based upon a fixed price contract, and seeks lost profits. Am. Compl. ¶¶ 13, 39, 46, 52, 58, 64, 70, 75, 81, 86, 92, 98, 104. LP alleges a total of $135,337.00 in lost profits.

LP also alleges that "the USPS' conduct toward L.P. Consulting as described herein constituted a de facto debarment of L.P. Consulting from contracting with the USPS." Am. Compl. ¶ 28. According to LP, the de facto debarment consisted of the contracting officer's issuing verbal work orders to LP and allegedly breaching the contracts by awarding the projects to other contractors and not awarding LP the work without finding that LP was "not responsible;" retaliating against LP; violating the debarment regulations; and violating due process. Am. Compl. ¶ 29-33. LP alleges harm to its business reputation as a result of the de facto debarment. Am. Compl. ¶ 34.

In support of our motion to dismiss paragraphs 28 through 34 of the amended complaint, we demonstrated that LP had not submitted its de facto debarment claim to the contracting officer for a decision pursuant to the CDA. LP agrees that it did not submit its de facto debarment claim to the contracting officer.

LP argues, instead, that its de facto debarment claim is not a CDA claim that was required to be submitted to the contracting officer for decision. LP's argument is an attempt to recast the allegations contained in its amended complaint into allegations that could support a post-award bid protest action that falls within the Court's jurisdiction pursuant to 28 U.S.C. § 1491(b). Pl. Response at 3-4. Thus, LP argues that the Postal Service's decision not to award the contracts to LP is to be reviewed "pursuant to the standards set forth in section 706 of title 5." Pl. Response at 4, quoting 28 U.S.C. § 1491(b)(4).

We agree that a bid protest action alleging that the agency's procurement decision violated the standards set forth in 5 U.S.C. § 1491 is not governed by the CDA. Rather, this Court possesses jurisdiction to review bid protest actions pursuant to 28 U.S.C. § 1491(b), enacted as part of the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870. Pursuant to the ADRA, the Court reviews allegations of error in the contract award process under the deferential standard set forth in section 706 of title 5 of the

Administrative Procedure Act. 28 U.S.C. § 1491(b)(4); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001); Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 221 (2001).

However, LP, in its amended complaint, did not plead a cause of action of a post-award bid protest. In a post-award bid protest, an award is set aside where the agency's actions are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706. To prevail pursuant to this standard, a contractor must establish that the contracting officer's decision lacked a rational basis. See Impresa, 238 F.3d at 1332. The test is "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." 238 F.3d at 1332-33 (citations omitted). Of course, LP here does not seek to set aside the award of any contract.

Moreover, bid protest actions are decided based upon an examination of the administrative record, not based upon a de novo trial proceeding. NVT Technologies, Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); Galen Medical Associates, Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004); Banknote Corp. v. United States, 365 F.3d 1345, 1352, 1358 (Fed.

Cir. 2004); Information Technology & Applications Corp. v. United States, 316 F.3d 1312, 1318 (Fed. Cir. 2003).

LP's amended complaint does not contain any allegations that would support a bid protest. LP does not allege that the USPS award of any particular contract or contracts was arbitrary and capricious and in violation of the standards set forth in 5 U.S.C. § 706. LP does not allege that it submitted any bids to the Postal Service. Instead, LP alleges that "the contracting officer would grant LP verbal work orders," promising "to issue the award to L.P. Consulting, if the USPS would go forward with the project," and that LP "would produce a draft work order for the USPS, incorporating the fixed prices to which L.P. Consulting was obligated to utilize under the applicable IQC." Am. Compl. ¶¶ 14, 15.

LP pled breaches of "implied-in-fact contracts for various projects," related to its two IQC contracts, which are CDA contracts, and seeks lost profits amounting to $135,337.00. Am. Compl. ¶ 13, and Counts I through XII. Similarly, in claiming de facto debarment, LP alleges that the contracting officer issued "verbal work orders to" LP and breached the implied-in-fact contracts by awarding the projects to other contractors. Am. Compl. ¶¶ 28, 29. These are plainly claims "relating to" a CDA contract, and therefore, CDA claims. 41 U.S.C. § 605(a).

Indeed, throughout this litigation, LP never treated the matter as a post-award bid protest action filed pursuant to 28 U.S.C. § 1491(b). LP did not comply with the Court's rules governing bid protest actions, and did not request that the Postal Service comply with such rules. See RCFC Appendix C, Procedure In Procurement Protest Cases Pursuant to 28 U.S.C. § 1491(b), and USCFC General Order No. 38 for Bid Protest Actions (May 7, 1998).[2/] For example, LP never gave the Department of Justice, Commercial Litigation Branch, the Clerk of the Court, the Postal Service, or the contract awardees notice of the filing of a bid protest case as required by the rules for pre-filing notification. RCFC Appendix C, Rule 2; General Order No. 38, Rule 2.

LP also never sought the filing of an administrative record, and the Postal Service never filed an administrative record. RCFC Appendix C, Rule 21; General Order 38, Part G. The Content and Filing of the Administrative Record, Rules 16-19. LP never requested that this Court treat the matter as a bid protest action by, for example, scheduling "an initial status conference" to address "identification of interested parties," "admission of the successful offeror as an intervenor," "the content and time

[2/] We cite to both USCFC General Order No. 38, which was applicable at the time that LP's complaint, dated November 13, 1998, and first amended complaint, dated February 2, 1999, were filed, and to the current rules, because the applicable provisions are the same.

for filing of the administrative record," whether the administrative record should be supplemented, and so forth. RCFC Appendix C, Rule 8; General Order 38 Part D. Initial Status Conference, Rule 8. In short, LP did not file a bid protest action and never treated this case as a bid protest action.

Finally, the decision not to plead a bid protest action apparently was a strategic one by LP. A post-award bid protest action could never support a claim for lost profits, such as LP seeks here. 28 U.S.C. § 1491(b)(2) ("any monetary relief shall be limited to bid preparation and proposal costs"); see Impresa, 238 F.3d at 1332 (citing Keco Industries Inc. v. United States, 192 Ct. Cl. 773, 428 F.2d 1233, 1203 (1970)).

Instead, LP's filing of its amended complaint is governed by LaBarge Products, Inc. v. West, 46 F.3d 1547 (Fed. Cir. 1995). Plaintiff in LaBarge contended that the Government failed to fairly and honestly consider its original bid, and requested reformation of its contract to a higher price. The Government contended the board of contract appeals did not possess jurisdiction because the claim "was in the nature of a bid protest," rather than a claim arising from a CDA contract. 46 F.3d at 1549. The Court of Appeals for the Federal Circuit held that the board of contract appeals possessed jurisdiction because the claim submitted by LaBarge to the contracting officer was a

claim "relating to" a CDA contract. 46 F.3d at 1550 (quoting 41 U.S.C. § 605(a)).

According to LP's amended complaint, the implied-in-fact contracts that were breached by the USPS relate to the two IQC contracts that LP entered into with the USPS. Am. Compl. ¶ 8 ("The [implied-in-fact] contracts at issue in this action arose out of the IQCs."). Because LP's alleged implied-in-fact contracts relate to its CDA contracts, its claims are CDA claims. LaBarge, 46 F.3d. at 1551. Indeed, "all contractor claims based upon a valid contractual theory" are CDA claims. 46 F.3d at at 1553 (quoting Paragon Energy Corp. v. United States, 227 Ct. Cl. 176, 190, 645 F.2d 966, 975 (1981)). In its de facto debarment claim, LP claims that the contracting officer would issue a "verbal work order" to LP, promising to award the work to LP if the USPS decided to go forward with the project, but the contracting officer awarded the projects to other contractors without finding that LP was "not responsible" and "breaching the [implied-in-fact] contracts" with LP. Am. Compl. ¶ 14, 29. LP's de facto debarment claim relates to its CDA contracts -- the alleged implied-in-fact contracts and the IQCs -- and therefore is a CDA claim.

The cases cited by LP also are not applicable to its amended complaint. Pl. Response at 2-4. In Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1, 4 (D.C. Cir.

1998); CRC Marine Services, Inc. v. United States, 41 Fed. Cl. 66 (1998); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, aff'd, 758 F.2d 665 (Fed. Cir. 1984)(table); Stapp Towing, Inc. v. United States, 34 Fed. Cl. 300 (1995); and TLT Constr. Corp. v. United States, 50 Fed. Cl. 212 (2001), the contractors did not assert claims "relating to" a CDA contract.

Specifically, plaintiff in Commercial Drapery challenged its suspension from Government contracting, and the Government's cancellation of an ongoing contract which it characterized as "blacklisting," but sought only equitable relief. Commercial Drapery, 133 F.3d at 2. The D.C. Circuit held that the claim of blacklisting and the fact that only equitable relief was requested made it not "at its essence" a contract action. 133 F.3d at 4. Also, the plaintiff in Commercial Drapery did not make a claim "relating to" a CDA contract. 41 U.S.C. § 605(a); LaBarge, 46 F.3d at 1550.

Plaintiff in CRC Marine asserted that it was barred from solicitations based upon a prior debarment agency order. CRC Marine, 41 Fed. Cl. at 69. However, the contractor did not make a claim "relating to" a CDA contract. 41 U.S.C. § 605(a); LaBarge, 46 F.3d at 1550.

Plaintiff in Dynalectron Corp. was an unsuccessful bidder that alleged arbitrary and capricious actions by procurement officials, and sought its bid preparation costs. Dynalectron

Corp. v. United States, 4 Cl. Ct. at 426. Plaintiff there also did not make a claim "relating to" a CDA contract. 41 U.S.C. § 605(a); LaBarge, 46 F.3d at 1550.

Plaintiff in Stapp Towing was the low bidder in response to a solicitation, but was denied a certificate of competency ("COC") by the Small Business Administration. Stapp Towing, 34 Fed. Cl. at 302. Plaintiff there challenged the denial of the COC, and sought its bid preparation costs. Plaintiff in Stapp Towing did not make a claim "related to" a CDA contract. 41 U.S.C. § 605(a); LaBarge, 46 F.3d at 1550. Indeed, Stapp Towing did not even allege "de facto debarment," because it had not alleged statements made by the contracting officer "restricting its eligibility for future contracts" or a "systematic effort by the procuring agency to reject all of the bidder's contract bids." Stapp Towing, 34 Fed. Cl. at 312.

Here, because LP's alleged implied-in-fact contracts relate to its CDA contracts, its claims are CDA claims. LP's reliance upon cases brought pursuant to this Court's bid protest jurisdiction should be rejected.

## CONCLUSION

For the reasons set forth above and in our motion to dismiss the complaint, in part, defendant respectfully requests that the Court, pursuant to RCFC 12(b)(1), dismiss paragraphs 28 through 34 of the amended complaint upon the ground that the Court lacks

subject matter jurisdiction to entertain that claim of de facto debarment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

Of Counsel:

STEPHEN D. LOBAUGH
United States Postal
Service

August 3, 2004

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 3rd day of August 2004, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT, IN PART" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s DOMENIQUE KIRCHNER