UNITED STATES POSTAL SERVICE

CERTIFIED MAIL #P 696 350 173
RETURN RECEIPT REQUESTED

May 17, 1994

L. P. Consulting Group, Inc.
10401 South 75th Avenue
Palos Hills, IL 60465-2015

**SUBJECT: NOTICE TO PROCEED**
**Indefinite Quantity Contract - General Construction Work**
**North Central Illinois Area - Zip Codes 604, 605 and 609**
***Contract No. 162640-94-B-0083***

Gentlemen:

Your performance and payment bonds and other contract documents have been received and are acceptable to the U. S. Postal Service. This letter is your authorization to proceed with the work in accordance with the terms and conditions of ***Contract No. 162640-94-B-0083.*** The contract requires completion within 730 calendar days after date of receipt of the Notice to Proceed. Please set your work schedule accordingly to avoid any delay.

Your copy of the executed contract is enclosed.

All work, reviews, and contract administration will be under the direction of the Manager, Administrative Services, Mr. Robert A. Rigsby. Mr. Rigsby has been delegated Contracting Officer for work orders only. His designated representative will be responsible for administration and field supervision of this contract. Copies of the work orders need not be sent to me. Mr. Rigsby's address and telephone number is as follows:

Mr. Robert A. Rigsby
Manager, Administrative Services
Central Illinois District
U. S. Postal Service
6801 West 73rd Street
Bedford Park, IL 60499-9991
(708) 563-7200

The Manager, Administrative Services, will provide Progress Payment Forms PS 4211-B with each work order. An original and two copies, ***all having original signatures***, are to be submitted to Mr. Rigsby for payment, with a copy to the Architect-Engineer firm, if he is performing project surveillance, unless directed otherwise by the project manager designated by the Manager, Administrative Services. For each such pay request, complete, sign, and date Form 4211-B.

continued--

I urge you to thoroughly familiarize yourself with the terms of this contract. I wish to call special attention to the fact that only the contracting officer can authorize changes to the basic contract when total price or time for completion is affected. All correspondence pertaining to the contract should be directed to the contracting officer in writing through the Manager, Administrative Services.

This notification is sent to you in duplicate with the request that you acknowledge receipt of the USPS copy and return it promptly.

Sincerely,

Larry L. Linnenburger

Larry L. Linnenburger
Contracting Officer

Enclosures: Contract No. 162640-94-B-0083

Receipt acknowledged: Linda M. Battaglin

Date: 5/23/94

cc: Manager, Administrative Services
Central Illinois District

jab

U.S. POSTAL SERVICE: OFFER AND AWARD (CONSTRUCTION)

1. CONTRACT NUMBER: 162640-94-B-0083 2. SOLICITATION NUMBER: 162640-94-A-0026

3. a. ISSUED BY:
Facilities Service Office
U.S. Postal Service - Suite 1200
222 S. Riverside Plaza
Chicago, IL 60606-6150

b. FOR INFORMATION CALL:
Name: Frank T. Sugino
Title: Architect/Engineer
Room: Suite 1200
Tel: (312) 765-5342
(No Collect Calls)

4. a. OFFEROR/CONTRACTOR

**L.P. Consulting Group, Inc.**
**10401 S. 75th Ave.**
**Palos Hills, IL 60465-2015**

b. Contact Name: RICHARD BATTAGLIN
c. Telephone No: 708·599·9407
d. TIN: 36·3902211
e. Parent TIN:
TIN=Taxpayer Identification Number

f. Remittance Name and/or Address: (If different from above)

5. DELIVERY/PERFORMANCE REQUIREMENTS:
See Section C

6. ITEMS & PRICES/GENERAL DESCRIPTION OF REQUIREMENT:

INDEFINITE QUANTITY CONTRACT
GENERAL CONSTRUCTION WORK
NORTH CENTRAL ILLINOIS AREA
ZIP CODES 604, 605 and 609

CONTRACT VALUE $300,000.00

The contractor agrees to perform all work included or ordered pursuant to and in accordance with the terms and conditions of the contract for the unit prices listed on the price schedule times the multiplier listed below:

Multiplier: .859 RB POINT EIGHT FIVE NINE RB

7. BILLING INSTRUCTIONS (Submit Invoices to):
Facilities Service Office
222 South Riverside Plaza
U.S. Postal Service - Suite 1200
Chicago, IL 60606-6150

8. SIGNATURE: OFFEROR/CONTRACTOR

Richard Battaglin (signature) — Signature; 2/22/94 — Date

RICHARD BATTAGLIN — Typed or Printed Name of Person Authorized to Sign Offer; VICE PRES. — Title

U.S. POSTAL SERVICE

Larry L. Linnenburger (signature) — Signature; 5/18/94 — Award Date

Larry L. Linnenburger
Name of Contracting Officer

Distribution: Original - File Copy - Contractor

PART 1 - SCHEDULE

## SECTION A - ITEMS AND PRICES

A.1 REQUIRED BOND AMOUNTS (Clause FB-201) (November 1988)

Performance Bond : $300,000.00
Payment Bond : $150,000.00

Additional information on bond requirements is given in the following provisions: performance bond (Provision 7-2), and payment bond (Provision 7-3).

A.2 ACKNOWLEDGMENT OF AMENDMENTS (Clause FB-199) (August 1988)

The offeror acknowledges receipt of amendments to the solicitation numbered and dated as follows:

| Amendment Number | Date | Amendment Number | Date |
|---|---|---|---|
| N.A. | | | |
| | | | |
| | | | |
| | | | |

## SECTION L - REPRESENTATIONS AND CERTIFICATIONS

L.1 TYPE OF BUSINESS ORGANIZATION (Provision A-20) (December 1989)

The offeror, by checking the applicable blocks, represents that it:

a. Operates as [X] a corporation incorporated under the laws of the State of ILLINOIS, [__] an individual, [__] a partnership, [__] a joint venture, [__] a nonprofit organization, [__] or an educational institution; and

b. Is a [__] small business concern, [__] minority-owned business, [X] woman-owned business, [__] labor surplus area concern, [__] educational or other non-profit organization, or [__] none of the above entities.

c. SMALL BUSINESS CONCERN. A small business concern for the purposes of Postal Service procurement means a business, including an affiliate, that is independently owned and operated, is not dominant in producing or performing the supplies or services being purchased, and has no more than 500 employees, unless a different size standard has been established by the Small Business Administration (see 13 CFR 121, particularly for different size standards for airline, railroad, and construction companies). For subcontracts of $50,000 or less, a subcontractor having no more than 500 employees qualifies as a small business without regard to other factors.

d. MINORITY-OWNED BUSINESS. A minority-owned business is a concern that is at least 51 percent owned by, and whose management and daily business operations are controlled by, one or more members of a socially and economically disadvantaged minority group, namely U.S. citizens who are Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, or Asian-Indian Americans. (Native Americans are American Indians, Eskimos, Aleuts, and Native Hawaiians. Asian-Pacific Americans are U.S. citizens whose origins are Japanese, Chinese, Filipino, Vietnamese, Korean, Samoan, Laotian, Kampuchean, Taiwanese or in the U.S. Trust Territories of the Pacific Islands. Asian-Indian Americans are U.S. citizens whose origins are in the Indian subcontinent.)

e. WOMAN-OWNED BUSINESS. A woman-owned business is a concern at least 51 percent of which is owned by a woman (or women) who is a U.S. citizen, controls the firm by exercising the power to make policy decisions, and operates the business by being actively involved in day-to-day management.

f. LABOR SURPLUS AREA. A geographical area which at the time of award is either a section of concentrated unemployment or underemployment, a persistent labor surplus area, or a substantial labor surplus area, as defined in this paragraph.

1. Section of concentrated unemployment or underemployment means appropriate sections of States or labor areas so classified by the Secretary of Labor.

2. Persistent labor surplus area means an area which is classified by the Department of Labor as an area of substantial and persistent

L.1 (Continued)

labor surplus (also called Area of Substantial and Persistent Unemployment) and is listed as such by that Department in conjunction with its publication, Area Trends in Employment and Unemployment.

3. Substantial labor surplus area means an area which is classified by the Department of Labor as an area of substantial labor surplus (also called Area of Substantial Unemployment) and which is listed as such by that Department in conjunction with its publication Area Trends in Employment and Unemployment.

g. LABOR SURPLUS AREA CONCERN. A firm which will perform or cause to be performed a substantial proportion of a contract in a labor surplus area.

h. EDUCATIONAL OR OTHER NON-PROFIT ORGANIZATION. Any corporation, foundation, trust, or other institution operated for scientific or educational purposes, not organized for profit, no part of the net earnings of which inures to the profits of any private shareholder or individual.

L.2 PARENT COMPANY AND TAXPAYER IDENTIFICATION NUMBER (Provision A-21) (October 1987)

a. A parent company is one that owns or controls the basic business policies of an offeror. To own means to own more than 50 percent of the voting rights in the offeror. To control means to be able to formulate, determine, or veto basic business policy decisions of the offeror. A parent company need not own the offeror to control it; it may exercise control through the use of dominant minority voting rights, proxy voting, contractual arrangements, or otherwise.

b. Enter the offeror's Taxpayer Identification Number (TIN) in the space provided. The TIN is the offeror's Social Security Number or other Employee Identification Number used on the offeror's Quarterly Federal Tax Return, U.S. Treasury Form 941.

Offeror's TIN: 36-3902211

c. [___] Check this block if the offeror is owned or controlled by a parent company.

d. If the block above is checked, provide the following information about the parent company:

Parent Company's Name: ______________________
Parent Company's Main Office Address: ______________________
No. and Street: ______________________
City: ____________ State: ________ Zip Code: ________
Parent Company's TIN: ______________________

L.2 (Continued)

e. If the offeror is a member of an affiliated group that files its federal income tax return on a consolidated basis (whether or not the offeror is owned or controlled by a parent company, as provided above) provide the name and TIN of the common parent of the affiliated group:

Name of Common Parent: ______________________

Common Parent's TIN: ______________________

L.3 AUTHORIZED NEGOTIATORS (Provision A-22) (October 1987)

The offeror represents that the following persons are authorized to negotiate on its behalf with the Postal Service in connection with this solicitation [Offeror list names, titles, and telephone numbers of the authorized negotiators].

LINDA BATTAGLIN PRESIDENT 708-599-9407

RICHARD BATTAGLIN VICE PRESIDENT " "

PAUL MALMGREN SUPERINTENDENT " "

______________________

L.4 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (Provision 1-1) (October 1987)

a. By submitting this proposal, the offeror certifies, and in the case of a joint proposal each party to it certifies as to its own organization, that in connection with this solicitation--

1. The prices proposed have been arrived at independently, without consultation, communication, or agreement, for the purpose of restricting competition, as to any matter relating to the prices with any other offeror or with any competitor;

2. Unless otherwise required by law, the prices proposed have not been and will not be knowingly disclosed by the offeror before award of a contract, directly or indirectly to any other offeror or to any competitor; and

3. No attempt has been made or will be made by the offeror to induce any other person or firm to submit or not submit a proposal for the purpose of restricting competition.

b. Each person signing this proposal certifies that--

1. He or she is the person in the offeror's organization responsible for the decision as to the prices being offered herein and that he or she has not participated, and will not participate, in any action contrary to paragraph a above; or

2. He or she is not the person in the offeror's organization responsible for the decision as to the prices being offered but that he or she has been authorized in writing to act as agent for the persons responsible in certifying that they have not participated, and will not participate, in any action contrary

L.4 (Continued)

to paragraph a above, and as their agent does hereby so certify; and he or she has not participated, and will not participate, in any action contrary to paragraph a above.

c. Modification or deletion of any provision in this certificate may result in the disregarding of the proposal as unacceptable. Any modification or deletion should be accompanied by a signed statement explaining the reasons and describing in detail any disclosure or communication.

L.5 CONTINGENT FEE REPRESENTATION (Provision 1-2) (October 1987)

a. The offeror must complete the following representations:

1. The offeror [__] has [X] has not employed or retained any company or person (other than a full-time bona fide employee working solely for the offeror) to solicit or secure this contract.

2. The offeror [__] has [X] has not paid or agreed to pay any company or person (other than a full-time bona fide employee working solely for the offeror) any fee, commission, percentage, or brokerage fee, contingent upon or resulting from the award of this contract.

b. If either representation is in the affirmative, or upon request of the contracting officer, the offeror must furnish, in duplicate, a completed Form 7319, "Contractor's Statement of Contingent or Other Fees", and any other information requested by the contracting officer. If the offeror has previously furnished a completed Form 7319 to the office issuing this solicitation, it may accompany its proposal with a signed statement--

1. Indicating when the completed form was previously furnished;

2. Identifying the number of the previous solicitation or contract, if any, in connection with which the form was submitted; and

3. Representing that the statement on the form is applicable to this proposal.

L.6 CERTIFICATION OF NONSEGREGATED FACILITIES (Provision 10-3) (October 1987)

a. By submitting this proposal, the offeror certifies that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform services at any location under its control where segregated facilities are maintained. The offeror agrees that a breach of this certification is a violation of the Equal Opportunity clause in this contract.

b. As used in this certification, "segregated facilities" means any waiting rooms, work areas, rest rooms or wash rooms, restaurants or other eating areas, time clocks, locker rooms or other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, or housing facilities provided for employees that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, or national origin, because of habit, local custom, or otherwise.

L.6 (Continued)

c. The offeror further agrees that (unless it has obtained identical certifications from proposed subcontractors for specific time periods) it will obtain identical certifications from proposed subcontractors before awarding subcontracts exceeding $10,000 that are not exempt from the provisions of the Equal Opportunity clause; that it will retain these certifications in its files; and that it will forward the following notice to these proposed subcontractors (except when they have submitted identical certifications for specific time periods):

NOTICE

A certification of nonsegregated facilities must be submitted before the award of a subcontract exceeding $10,000 that is not exempt from the Equal Opportunity clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (quarterly, semiannually, or annually).

L.7 BUY AMERICAN CERTIFICATE--CONSTRUCTION MATERIALS (Provision 10-8) (October 1987)

The offeror certifies that only domestic construction materials (as defined in the *Preference for Domestic Construction Materials clause*) will be used in the performance of this contract, except for foreign construction materials listed below:

| Material | Quality | Estimated Cost |
|---|---|---|
| ______________ | ______________ | ______________ |
| ______________ | ______________ | ______________ |
| ______________ | ______________ | ______________ |

L.8 CLEAN AIR AND WATER CERTIFICATION (Provision 10-9) (October 1987)

a. This certification applies only if (1) the offer exceeds $100,000, (2) the offer is for an indefinite-quantity and indicates that orders for estimating quantities will exceed $100,000 in any year, (3) a facility to be used is listed on the EPA List of Violating Facilities because of a criminal conviction, or (4) the contract is not otherwise exempt.

b. The offeror (1) certifies, by checking the applicable box, that any facility to be utilized in the performance of the proposed contract [_] is, [_] is not, listed on the Environmental Protection Agency List of Violating Facilities as of the date of this proposal, and (2) agrees to notify the contracting officer promptly if any communication is received from the Environmental Protection Agency before contract award indicating that any such facility is under consideration for inclusion on the List.

UNITED STATES POSTAL SERVICE
CHICAGO FACILITIES SERVICE OFFICE

CHICAGO, IL 60606-6150

DATE: May 17, 1994

OUR REF: FSO030:JABalanda:jab

SUBJECT: **Appointment of Contracting Officer for Issuance of Individual Work Orders**
**Indefinite Quantity Contract - General Construction Work**
**North Central Illinois Area - Zip Codes 604, 605 and 609**
***Contract No. 162640-94-B-0083***

TO: Robert A. Rigsby
Manager, Administrative Services
Central Illinois District
6801 West 73rd Street
Bedford Park, IL 60499-9991

Pursuant to the authority vested in me in accordance with the Procurement Manual, Section 5, Procurement Authority, I hereby appoint you as Contracting Officer for individual work orders for the referenced contract subject to the limitations in the Facilities Handbook RE-14.

The above appointment shall be effective on the date of this letter.

The firm is: ***L. P. Consulting Group, Inc.***
***10401 South 75th Avenue***
***Palos Hills, IL 60465-2015***

The amount of Multiplier is 0.859 The contract value is $300,000.00.

Please acknowledge receipt of this letter on the original and two (2) copies. Return the original and one copy to me. The remaining copy is for your file.

Larry L. Linnenburger
Contracting Officer

Enclosure

Receipt of this appointment is acknowledged on:______________________
Date Received

By:______________________
Signature

TYPED NAME:______________________

TITLE:______________________

IQC 162640-96-B-0094

CERTIFIED MAIL #P 252 [illegible] 860
RETURN RECEIPT REQUESTED

CHICAGO FACILITIES SERVICE OFFICE

UNITED STATES POSTAL SERVICE

U.S. POSTAL SERVICE FACILITIES [illegible]

'96 JUN 12 P12:33

CHICAGO, IL [illegible]

June 6, 1996

L. P. Consulting Group, Inc.
10401 S. 75th Avenue
Palos Hills, IL 60465-2015

**SUBJECT: NOTICE TO PROCEED**
**Indefinite Quantity Contract - General Construction Work**
**Peoria Illinois Area - Zip Codes 614, 615, 616 and 617**
**Contract No. 162640-96-B-0094**

Gentlemen:

Your performance and payment bonds and other contract documents have been received and are acceptable to the U. S. Postal Service. This letter is your authorization to proceed with the work in accordance with the terms and conditions of the subject contract. The contract requires completion within 730 calendar days after date of receipt of the Notice to Proceed. Please set your work schedule accordingly to avoid any delay.

Your copy of the executed contract is enclosed.

All work, reviews, and contract administration will be under the direction of the Manager, Administrative Services, Mr. Robert A. Rigsby. Mr. Rigsby has been delegated Contracting Officer for work orders only. His designated representative will be responsible for administration and field supervision of this contract. Copies of the work orders need not be sent to me. Mr. Rigsby's address and telephone number is as follows:

Mr. Robert A. Rigsby
Manager, Administrative Services
Central Illinois District
U. S. Postal Service
6801 West 73rd Street
Bedford Park, IL 60499-9991
(708) 563-7200

The Manager, Administrative Services, will provide Progress Payment Forms PS 4211-B with each work order. An original and two copies, all having original signatures, are to be submitted to Mr. Rigsby for payment, with a copy to the Architect-Engineer firm, if he is performing project surveillance, unless directed otherwise by the project manager designated by the Manager, Administrative Services. For each such pay request, complete, sign, and date Form 4211-B.

I urge you to thoroughly familiarize yourself with the terms of this contract. I wish to call special attention to the fact that only the contracting officer or project manager can authorize changes to the basic contract when total price or time for completion is affected according to the authorities and limitations of contracting authority. All correspondence pertaining to the contract should be directed to the contracting officer in writing.

This notification is sent to you in duplicate with the request that you acknowledge receipt of the USPS copy and return it promptly.

Sincerely,

Larry L. Linnenburger
Contracting Officer

RECEIPT ACKNOWLEDGED:

NAME: ______

DATE: 6/8/96

Enclosures: a/s

cc: Manager, Administrative Services
Central Illinois District

jab

# U.S. POSTAL SERVICE: OFFER AND AWARD (CONSTRUCTION)
## Indefinite Quantity Contract

1. CONTRACT NUMBER: 162640-96-B-0094
2. SOLICITATION NUMBER: 162640-96-A-0282
3. REQUEST NUMBER: #
4. SOC/EC:
5. COMMODITY:

6. a. ISSUED BY:
U.S. Postal Service
Facilities Service Office
222 S. Riverside Plaza, Suite 1200
Chicago, Illinois 60606-6150

b. FOR INFORMATION CALL:
Name: Frank T. Sugino
Title: Project Manager
Tel: 312/669-5942
(No Collect Calls)

7. a. OFFEROR/CONTRACTOR
~~L.P. Consulting Group, Inc.~~
~~10401 S. 75th Ave.~~
Palos Hills, IL 60465-2015

b. Contact Name: RICHARD BATTAGLIN
c. Telephone: 708-599-9407
d. FAX: 708-233-1826
e. TIN*: 36-3902211
Parent TIN:

f. Remittance Name and/or Address (If different from above)

*TIN=Taxpayer Identification Number

8. DELIVERY/PERFORMANCE REQUIREMENTS:
See Section C

CONTRACT TERM: FROM ______________ TO ______________
(Dates to be entered upon award)

9. ITEMS & PRICES/GENERAL DESCRIPTION OF REQUIREMENT:

The contractor agrees to perform all work included or ordered pursuant to and in accordance with the terms and conditions of the contract for the unit prices listed on the price schedule times the multiplier listed below:

IQC-C Type: General Construction Work - Peoria, Illinois - Zip Codes 613, 614, 615, 616 & 617

AREA COVERED BY THIS CONTRACT: See Attachment I.3

Multiplier: .850 (Numbers) POINT EIGHT FIVE ZERO (In Words)

10. BILLING INSTRUCTIONS (Submit Invoices to):
Send invoice as directed by Project Manager.

11. SIGNATURE: OFFEROR/CONTRACTOR
Linda M. Battaglin — Signature; 5-3-96 — Date
LINDA M. BATTAGLIN — Typed or Printed Name of Person Authorized to Sign Offer; PRES. — Title

U.S. POSTAL SERVICE
Larry L. Linnenburger — Signature; 6/6/96 — Award Date
Larry L. Linnenburger — Name of Contracting Officer

Distribution: Original - File; Copy - Contractor

Battaglin DEP. EX. NO. 49
FOR I.D., AS OF 6/10/04

- 54 -

SOLICITATION: 162640-96-A-0282 SECTION A

## PART 1 - SCHEDULE

## SECTION A - ITEMS AND PRICES

**A.1 REQUIRED BOND AMOUNTS**
**(Clause FB-201) ALTERNATE I (September 1995/Interim)**

Required for contracts exceeding $25,000.00

Performance Bond: 100% of the total contract price

Payment Bond: 50% of the total contract price

Additional bonding must be obtained prior to increasing the "Not to Exceed" amount as set in the initial contract order.

Additional information on bond requirements is given in Section K in the following provisions:
Performance Bond (Provision 7-2), and Payment Bond (Provision 7-3).

**A.2 ACKNOWLEDGMENT OF AMENDMENTS (Clause OB-199) (August 1988)**

The offeror acknowledges receipt of amendments to the solicitation numbered and dated as follows:

| Amendment Number | Date | Amendment Number | Date |
|---|---|---|---|
| A-01 | 16 April 1996 | | |
| | | | |
| | | | |
| | | | |

- 55 -

## PART 1 - SCHEDULE

## SECTION A - ITEMS AND PRICES

**A.1 REQUIRED BOND AMOUNTS**
**(Clause FB-201) ALTERNATE I (September 1995/Interim)**

Required for contracts exceeding $25,000.00

Performance Bond: 100% of the total contract price

Payment Bond: 50% of the total contract price

Additional bonding must be obtained prior to increasing the "Not to Exceed" amount as set in the initial contract order.

Additional information on bond requirements is given in Section K in the following provisions:
Performance Bond (Provision 7-2), and Payment Bond (Provision 7-3).

**A.2 ACKNOWLEDGMENT OF AMENDMENTS (Clause OB-199) (August 1988)**

The offeror acknowledges receipt of amendments to the solicitation numbered and dated as follows:

| Amendment Number | Date | Amendment Number | Date |
|---|---|---|---|
| ____________ | ________ | ____________ | ________ |
| ____________ | ________ | ____________ | ________ |
| ____________ | ________ | ____________ | ________ |
| ____________ | ________ | ____________ | ________ |

## SECTION B - SPECIFICATIONS/STATEMENT OF WORK

### B.1 STATEMENT OF WORK/SPECIFICATIONS (Clause OB-7) (June 1988)

The contractor must furnish the necessary personnel, material, equipment, services, and facilities (except as otherwise specified) to perform the statement of work/specifications incorporated by reference in Section I.

### B.2 ATTACHMENTS TO STATEMENT OF WORK/SPECIFICATIONS (Clause OB-31) (June 1988)

The attachments to the statement of work/specifications listed in Section I are hereby made part of this solicitations and any resultant contract.

### B.3 ENGLISH LANGUAGE REQUIREMENT OF ON-SITE SUPERINTENDENT (Clause OB-38) (June 1988)

The contractor's on-site superintendent must be able to speak, read, and write English to the extent necessary to permit reasonable communication with Postal Service personnel.

### B.4 QUANTITY OF WORK (INDEFINITE-QUANTITY) (Clause FB-248) (March 1989)

a. The initial contract value is $300,000 where the total quantity of work ordered during the term of this contract will not be less than $10,000 nor more than one million dollars ($1,000,000). The Postal Service reserves the option to increase the potential value of the contract in increments of $100,000 not to exceed $300,000 not to exceed $1,000.000. Additional consent of surety will be required for each incremental increase.

b. Adjustments, if required, in quantities listed in the work order will be made on the basis of actual, quantities, approved, and installed and/or removed in the final work.

c. The contractor will not be required to perform a job where the value of the work required in any one building is less than $500 per work order.

d. The Postal Service reserves the right to undertake, by Postal Service sources or others, the same type of work or similar work as contracted for in this contract, in the area covered by this contract, while this contract is in force.

## SECTION C - DELIVERY/PERFORMANCE

### C.1 NOTICE OF DELAY (Clause B-15) (May 1994)

Immediately upon becoming aware of any difficulties that might delay deliveries under this contract, the contractor **shall** notify the contracting officer in writing of them. The notification must identify the difficulties, the reasons for them, and the estimated period of delay anticipated. Failure to give notice may preclude later consideration of any request for an extension of contract time.

### C.2 SUSPENSIONS AND DELAYS (Clause B-16) (May 1994/Interim)

a. **A claim under this clause may be allowed** if performance of all or any part of the work of this contract is suspended, delayed, or interrupted by:

1. An order or act of the contracting officer in administering this contract; or

2. Failure of the contracting officer to act within the time specified in this contract, or within a reasonable time if not specified.

**An adjustment, under this clause, may be made for any increase in the cost of performance of this contract caused by the delay or interruption (including the cost incurred during any suspension or interruption). An adjustment may also be made, under this clause, in the delivery or performance dates and any other contractual term or condition affected by the suspension, delay or interruption.**

**However, no adjustment may be made under this clause for any delay or interruption to the extent that performance would have been delayed or interrupted by any other cause, including the fault or negligence of the contractor, or which an adjustment is provided or excluded under any other term or condition of this contract.**

b. A claim under this clause may not be allowed:

1. For any costs incurred more than 20 calendar days before the contractor has notified the contracting officer in writing of the act or failure to act involved; and

2. Unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination of the delay or interruption, but not later than the day of final payment under the contract.

### C.3 EXCUSABLE DELAYS (Clause B-19) (October 1987)

a. Except with respect to defaults of subcontractors, the contractor will not be in default by reason of any failure in performing this contract in accordance with its terms (including any failure by the contractor to make progress in the prosecution of the work that endangers

performance) if the failure arises out of causes beyond the control and without the fault or negligence of the contractor. Such causes may include, but are not restricted to, acts of God or of the public enemy, acts of the Government in its sovereign capacity or the Postal Service its contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather, but in every case the failure to perform must be beyond the control and without the fault or negligence of the contractor.

b. If failure to perform is caused by the failure of a subcontractor to perform or make progress and arises out of causes beyond the control of both the contractor and subcontractor, and without the fault or negligence of either of them, the contractor will not be deemed to be in default, unless –

1. The supplies or services to be furnished by the subcontractor are obtainable from other sources;

2. The contracting officer orders the contractor in writing to procure the supplies or services from other sources; and

3. The contractor fails to comply reasonably with the order.

c. Upon request of the contractor, the contracting officer shall ascertain the facts and extent of failure, and if the contracting officer determines that any failure to perform was occasioned by any of the said causes, the delivery schedule shall be revised accordingly, subject to the rights of the Postal Service under any termination clause included in this contract.

d. As used in this clause, the terms "subcontractor" and "subcontractors" mean subcontractor(s) at any tier.

**C.4 SHOP DRAWINGS, COORDINATION DRAWINGS, AND SCHEDULES (Clause 11-20) (October 1987)**

a. The contractor will submit shop drawings, coordination drawings, and schedules for approval as required by the specifications or requested by the contracting officer, as follows:

1. Shop drawings will include fabrication, erection, and setting drawings, schedule drawings, manufacturer's scale drawings, wiring and control diagrams, cuts or entire catalogs, pamphlets, descriptive literature, and performance and test data.

2. Drawings and schedules, other than catalogs, pamphlets, and similar printed material, must be submitted in reproducible form with two prints made by a process approved by the contracting officer. Upon approval, the reproducible form will be returned to the contractor which must furnish the number of additional prints, not to exceed ten, required by the Special Conditions of the specifications. The contractor must submit shop drawings in catalog, pamphlet, and similar printed form in a

minimum of four copies plus as many additional copies as the contractor may desire or need or for use by subcontractor.

b. Before submitting shop drawings on the mechanical and electrical work, the contractor must obtain the contracting officer's approval of lists of mechanical and electrical equipment and materials as required by the specifications.

c. The contractor will check the drawings and schedules and coordinate them (by means of coordination drawings whenever required) with the work of all trades involved before submission, indicating approval on them. Drawings and schedules submitted without evidence of the contractor's approval may be returned for resubmission.

d. Each shop drawing or coordination drawing must have a blank area 5 by 5 inches, located adjacent to the title block. The title block must display--

1. Number and title of drawing;

2. Date of drawing or revision;

3. Name of project building or facility;

4. Name of contractor and (if appropriate) of subcontractor submitting drawing;

5. Clear identity of contents and location on the work; and

6. Project title and contract number.

e. Unless otherwise provided in this contract, or otherwise directed by the contracting officer, shop drawings, coordination drawings, and schedules must be submitted to the contracting officer, with a letter in triplicate, sufficiently in advance of construction requirements to permit at least 10 working days for checking and appropriate action.

f. Except as otherwise provided in paragraph g below, approval of drawings and schedules will be general and may not be construed as--

1. Permitting any departure from the contract requirements;

2. Relieving the contractor of responsibility for any errors, including details, dimensions, and materials; or

3. Approving departures from full-size details furnished by the contracting officer.

g. If drawings or schedules show variations from the contract requirements because of standard shop practice or for other reasons, the contractor must describe the variations in the letter of transmittal. If acceptable, the contracting officer may approve any or all variations and issue an appropriate change order. If the contractor fails to describe these variations, it will not be relieved of the responsibility for executing the work in accordance with the contract, even though the drawings or schedules have been approved.

## C.5 RECORD "AS BUILT" DRAWINGS (Clause 11-21) (October 1987)

a. The contractor must, during the progress of the work, keep a master set of prints on the job site, on which is kept a careful and neat record of all deviations from the contract drawings prepared by the architect-engineer made during the course of the work.

b. Upon completion of the project, these "as built" prints must be certified as to their correctness by the signature of the contractor and turned over to the architect-engineer for use in preparing a permanent set of "as built" drawings.

## C.6 SPARE-PARTS DATA (Clause 11-22) (October 1987)

a. The contractor must furnish spare-parts data for each different item of equipment furnished. The data must include a complete list of parts and supplies, with current unit prices and sources of supply; a list of parts and supplies that are either normally furnished at no extra cost with the purchase of the equipment, or specified to be furnished as part of the contract; and a list of additional items recommended by the manufacturer to ensure efficient operation for a period of 180 days at the particular installation.

b. The foregoing does not relieve the contractor of any responsibilities under the guarantees specified.

## C.7 WARRANTY (CONSTRUCTION) (Clause 11-25) (October 1987)

a. Unless otherwise provided in the specifications, the contractor warrants that all work is in accordance with contract requirements and free from defective or inferior materials, equipment, and workmanship for one year after the date of final acceptance under this contract.

b. If, within the warranty period, the contracting officer finds that warranted work needs to be repaired or changed because the materials, equipment, or workmanship were inferior, defective, or not in accordance with the contract terms, the contractor must promptly and without additional expense to the Postal Service--

1. Place in a satisfactory condition all of the warranted work;

2. Satisfactorily correct all damage to equipment, the site, the building, or its contents that is the result of such unsatisfactory work; and

3. Satisfactorily correct any work, materials, or equipment disturbed in fulfilling the warranty.

c. Should the contractor fail to proceed promptly in accordance with the warranty, the Postal Service may have the work performed at the contractor's expense.

d. The contractor must obtain each transferable guarantee or warranty of equipment, materials, or installation furnished by any manufacturer, supplier, or installer in the ordinary course of the business or trade. The contractor must obtain and furnish to the Postal Service all information required to make any such guarantee or warranty legally binding and effective, and must submit both the information and the guarantee or warranty to the Postal Service in sufficient time to permit the Postal Service to meet any time limit requirements specified in the guarantee or warranty or, if no time limit is specified, before completion and acceptance of all work under this contract.

**C.8 SAMPLES (Clause 11-28) (June 1988)**

a. After contract award, the contractor must furnish samples required by the specifications or by the contracting officer, for the contracting officer's approval. They must be delivered to the contracting officer or to the architect as specified or as directed. The contractor must prepay all shipping charges on samples. Materials or equipment for which samples are required may not be used in the work until the contracting officer approves in writing.

b. Each sample must be labeled to show--

1. Name of project building or facility, project title, and contract number;

2. Name of contractor and (if appropriate) subcontractor;

3. Identification of material or equipment, with specification requirement;

4. Place of origin; and

5. Name of producer and brand (if any).

c. Samples of finish materials must have additional markings that will identify them under the finish schedules.

d. The contractor must mail under separate cover a letter in triplicate submitting each shipment of samples and containing the information required in paragraphs b and c above. The contractor must also enclose a copy of that letter with the shipment and send a copy to the Postal Service representative on the project. Approval of a sample is only for the characteristics or use named in the approval and may not be construed to change or modify any contract requirement. Substitutions are not permitted unless approved in writing by the contracting officer.

e. Approved samples not destroyed in testing will be sent to the Postal Service representative at the project. Approved samples of hardware in good condition will be marked for identification and may be used in the work. Materials and equipment incorporated in the work shall match the approved samples. Samples not destroyed in testing and not approved will be returned at the contractor's expense if the contractor so requests at time of submission.

f. Failure of any material to pass the specified tests will be sufficient cause for refusal to consider, under this contract, any further samples of the same brand or make of that material. The Postal Service reserves the right to disapprove any material or equipment that has previously proved unsatisfactory in service.

g. Samples of materials or equipment delivered on the site or in place may be taken by the Postal Service representative for testing. Failure of a sample to meet contract requirements will automatically void previous approvals of the item tested. The contractor must replace materials or equipment found not to have met contract requirements, or there will be a proper adjustment of the contract price as determined by the contracting officer.

h. Except as otherwise specified, if tests are called for in the specifications, the contractor must pay all costs of these tests. When tests are not specifically called for in the specifications but are required by the Postal Service, the Postal Service will pay all costs of the tests and related engineering services unless the tests indicate that the workmanship or materials used by the contractor are not in conformance with drawings, specifications, approved shop drawings, or the approved materials. In this event, the contractor must pay for the tests, remove all work and material failing to conform, and replace with work and materials in full conformity. All tests pertaining to physical or chemical properties of materials must be made in a laboratory approved by the contracting officer.

**C.9 WORKING HOURS (CONSTRUCTION) (Clause FB-202) (June 1988)**

a. It is contemplated that all work will be performed during the customary working hours of the trades involved unless otherwise specified in this contract. Work performed by the contractor at its own volition outside such customary working hours shall be at no additional expense to the Postal Service.

b. The contractor must refer to the contracting officer any requests from occupants of buildings included in the contractor's work area to change the hours of work.

**C.10 OPTIONAL MATERIALS OR METHODS (CONSTRUCTION) (Clause FB-244) (June 1988)**

Where the technical provisions permit the Contractor to select optional materials, items, systems or equipment, the selection of such options is subject to the following conditions:

a. Once an option has been selected and approved, it must be used for the entire contract.

b. The contractor must coordinate its selection with the drawings and specifications and make all necessary adjustments without additional cost to the Postal Service.

## C.11 INDEFINITE-QUANTITY CONTRACT (CONSTRUCTION) (Clause FB-249) (June 1988)

a. This indefinite-quantity contract will include all services described in Section B, Specifications or Statement of Work, ordered during the 24-month period beginning on the day following the date on which the contract is signed by the latter of the parties to sign it.

b. The price per unit of each proposal item in this contract will include all materials, labor, and equipment required to perform the work described in the attached specification. The work will be done on work orders issued as required for various amounts and types of work covered by the specification. The work ordered under this contract will be performed in, on, or adjacent to Postal Service-owned or -leased facilities within the geographic area as specified elsewhere in this solicitation.

c. The contracting officer may designate a contracting officer's representative for this work.

## C.12 PROPOSALS (INDEFINITE-QUANTITY) (Clause FB-250) (June 1988)

a. It is estimated that some of the work required under this contract will be performed during premium time (not regular working hours). For the purpose of this contract, regular working hours are between 8:00 a.m. and 5:00 p.m., Monday through Friday. Work ordered to be accomplished during premium time will be paid at a higher rate. The individual items of such work will be increased by 25 percent when listed on the work order. Those items will be identified as premium time prices" by an increased unit price and noted in the scope of work to the work order form.

b. The contract amount for each work order will be the total of each unit price included in that order, times the quantity required, times the multiplier entered on the proposal. This amount includes all profit, overhead, bonds, insurance, and other contingencies and no allowance for such items will be made after contract award.

c. Any change in the applicable minimum hourly rates of wages as determined by the Secretary of Labor pursuant to the Davis-Bacon Act during the contract period will not affect the unit price to be paid by the Postal Service for work performed under the contract

d. Proposals may include all items as listed on the price schedule. Deletion of or changes to the unit prices or items of work shown on the price schedule will be cause for rejection of the proposal.

**C.13 WORK ORDERS (INDEFINITE-QUANTITY) (Clause FB-251) (June 1988)**

a. No work will be performed until a written work order has been signed by the contractor and the contracting officer and written Notice to Proceed with the work under the work order has been issued by the contracting officer and received by the contractor. Any work performed by the contractor under a work order before receipt of the written Notice to Proceed for that work order will be at the contractor's own risk.

b. Each work order will describe the extent of work to be removed and the extent and type of new work to be installed. Descriptions may be written, by sketch or by drawing. Each work order will give the location where work is to be performed, state whether work may be performed during regular working hours, and describe the requirements for submittals. Submittals may include certificates, shop drawings, manufacturer's literature, data, test reports, and/or other documents that provide required information on the material or equipment.

c. Each work order will be limited to work at a single facility.

d. The date for beginning work under a work order may not be less than three calendar days nor more than ten calendar days from the date of receipt the contractor of the Notice to Proceed. Upon beginning work, the contractor will proceed diligently toward contract completion. Any delay in the work beyond the contractor's control, may be reported to the contracting officer or a designated representative, immediately,

e. Each work order will be considered separately for all items in the contract, such as scope of work and time for completion.

f. Schedule will be negotiated for each work order before the work order is issued, provided, however, that the cost of work not covered by the price schedule may not exceed 25 percent of the total amount of any work order.

g. The maximum amount of any one work order is $250,000.

h. No work may be ordered for a new building construction except for site preparation and/or foundation work for a preengineered building purchased directly from the manufacturer

**C.14 TIME FOR COMPLETION (INDEFINITE-QUANTITY) (Clause FB-252) (June 1988)**

a. The time for completion of the work required by each work order will be stated on each work order before the work order is issued.

b. The contractor may be required to work during premium time, as well as during regular working hours for work orders requiring urgent completion. Unit prices will be applied accordingly.

c. The contractor is required to perform all work under a work order for which a Notice to Proceed has been issued and received before the expiration date of the contract. If the Notice to Proceed under a work order is not received by the contractor before the expiration date of the contract, the work order will be considered terminated for the convenience of the Postal Service.

## C.15 SCHEDULING WORK (INDEFINITE-QUANTITY) (Clause FB-253) (June 1988)

a. Before any work is started, the contractor must confer with the contracting officer's representatives and agree on a sequence of procedures: means of access to premises and building, delivery of materials, and use of approaches; use of corridors, stairways, elevators, and similar means of communications; and the location of partitions, eating spaces for contractor's employees, and the like.

b. Mail docks will not be made available for loading, unloading, storage, or fabrication of material except during hours specifically approved by the Postmaster.

c. Contractor's employees must not park vehicles in customer parking areas. Contractor's employees may park vehicles in Postal parking areas only if spaces are available and only with prior approval of the Station Manager/Postmaster.

## SECTION D - PACKAGING AND MARKING

### D.1 IDENTIFICATION OF CONTRACT DELIVERABLES (Clause OB-19) (June 1988)

Unless otherwise specified, the cover page of each document prepared and submitted by the contractor to the Postal Service under this contract must include the following information:

a. Name and business address of the contractor.

b. Contract number.

c. Name, position, and office location of the Postal Service's contracting officer's representative.

d. Date of report.

## SECTION E - INSPECTION AND ACCEPTANCE

### E.1 INSPECTION AND ACCEPTANCE--CONSTRUCTION (Clause 11-11) (October 1987)

a. Postal Service inspection of material and workmanship will be made at reasonable times at the site or off-site as the contracting officer may direct.

b. If the contractor does not promptly replace rejected material or correct rejected workmanship, the Postal Service may, by contract or otherwise, replace or correct it and charge the cost to the contractor.

c. The contractor must furnish (without charge) all facilities, labor, and materials needed to conduct inspections and tests as required by the contracting officer. The contractor will be charged any additional costs of inspection if material and workmanship are not ready at the time specified by the contractor for inspection.

d. The Postal Service may examine completed work by removing or tearing it out. The contractor must replace or correct any work found not to conform to contract requirements. If work is torn out and found to comply with contract requirements, the contracting officer must make an equitable adjustment for the services provided for the inspection and replacement of the work.

e. The Postal Service will inspect the work as soon as practicable after completion. Acceptance by an authorized Postal Service representative is conclusive except in the case of latent defects, fraud, gross mistakes amounting to fraud, or Postal Service rights under any warranty or guarantee.

### E.2 CONTRACTING OFFICER'S REPRESENTATIVE (Clause OB-21) Alternate IV (May 1994)

a. A contracting officer's representative (COR) will be appointed by the contracting officer. The name, address, telephone number, and specific responsibilities and limitations of the COR will be provided to the contractor in writing by the contract start date.. The COR may be changed at any time by the Postal Service without prior notice to the design/build entity. Notification of the change of the COR, including the name and address of the successor COR, will be promptly provided in writing to the contractor by the contracting officer.

**b. The Postal Service reserves the right to use Construction Management Support Services Contractor (CMSSC) personnel, and/or other qualified personnel under contract to the Postal Service, to perform the duties as the COR.**

**E.3 INSPECTIONS, CONTRACT COMPLETION, AND CLEANING UP (INDEFINITE-QUANTITY) (Clause FB-261) (June 1988)**

Notification of completion and request for inspection of work will be required for each work order. See the Inspection and Acceptance (Construction) clause of this contract.

## SECTION F - PAYMENT AND FUNDING

### F.1 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (Clause FB-272) (May 1994/Interim)

Notwithstanding any other payment terms in this contract, the Postal Service will make invoice payments and contract financing payments under the terms and conditions specified in this clause. payment shall be considered as being made on the day the check is dated or an electronic funds transfer is made. All days referred to in this clause are calendar days, unless otherwise specified.

**a.** Invoice payments.

**1.** For purposes of this clause, there are several types of invoice payments which may occur under this contract as follows:

**(a)** Progress payments, if provided for elsewhere in this contract, based on Contracting Officer approval of the estimated amount and value of the work or services performed, including payments for reaching milestones in any project:

**(1)** The due date for making payments shall be 14 days after receipt of the payment request by the designated billing office,
except as may be modified in accordance with paragraph FB 272-2 (herein).

**(2)** The due date for payments retained by the Contracting Officer in accordance with clause FB 272-1, Progress Payments under Fixed-Price Construction Contracts, shall be 30 days after approval for release to the Contractor by the Contracting Officer.

**(b)** Final payments based on the completion and acceptance of all work and presentation of release of all claims against the Postal Service arising by virtue of the contract, and payments for partial deliveries that have been accepted by the Postal Service (e.g., each separate building, or other division of the contract for which the price is stated separately in the contract).

**(1)** The due date for making such payments shall be either the thirtieth day after receipt by the designated billing office of a proper invoice from the Contractor, or the thirtieth day after Postal Service acceptance of the work or services completed by the Contractor, whichever is later.

**(2)** On a final invoice where the payment amount is subject to contract settlement options (e.g., release of claims), acceptance shall deemed to have occurred on the effective date of the contract settlement.

**2.** An invoice is the Contractor's bill or written request for payment under the contract for work or services performed under the contract. An invoice shall be prepared and submitted to the designated billing office. A proper invoice must include the items listed in subdivisions **a.2.(a)** through **a.2.(i)** of this clause. If the invoice does not comply with these requirements, the Contractor will be notified of the defect within seven days after the receipt of the invoice at the designated billing office. Untimely notification will be taken into account in the computation of any interest penalty owed the Contractor in the manner described in paragraph **a.4.** of this clause:

**(a)** Name and address of the Contractor;

**(b)** Invoice date;

**(c)** Contract number or other such authorization for work or services performed (including order number and contract line item number);

**(d)** Description of the work or services performed;

**(e)** Delivery and payment terms (e.g., prompt payment discount terms);

**(f)** Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment);

**(g)** Name (where practical), title, **telephone** number, and mailing address of the person(s) to be notified in the event of a defective invoice;

**(h)** For payment described in subdivision **a.1.(a)** of this clause, substantiation of the amounts requested and certification in accordance with the requirements of clause FB 272-1, Progress payments Under Fixed-Price Construction Contracts; **and**

**(i)** Any other information or documentation required by the contract.

**3.** An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date and the following conditions are met, if applicable:

**(a)** A proper invoice was received by the designated billing office;

**(b)** A receiving report or other Postal Service documentation authorizing payment was processed and there was no disagreement over quantity, quality, Contractor compliance with any contract term or condition, or requested progress payment amount; **and**

(c) In the case of a final invoice for any balance of funds due the Contractor for work or services performed, **and** the amount was not subject to further contract settlement actions between the Postal Service and the contractor.

**4.** The interest penalty shall be at the rate established by the Secretary of the Treasury under Section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the day after the due date, except where the interest penalty is prescribed by other governmental authority. The interest penalty shall accrue daily on the invoice payment amount approved by the Postal Service and be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice payment amount and be subject to interest penalties if not paid in the succeeding 30-day period. If the designated billing office failed to notify the Contractor of a defective invoice within the period prescribed in subparagraph **a.2.** of this clause, then the due date on the corrected invoice will be adjusted by subtracting the number of days taken beyond the prescribed notification of defects period. Any interest penalty owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating penalties,if requested by the Contractor.

(a) For the sole purpose of computing an interest penalty that might be due the Contractor for payments described in subdivision **a.1.(b)** of this clause, Postal Service acceptance or approval shall be deemed to have occurred constructively on the seventh day after the Contractor has completed the work or services in accordance with the terms and conditions of the contract. In the event that actual acceptance or approval occurs within the constructive acceptance or approval period, the determination of an interest penalty shall be based on the actual date of acceptance or approval. Constructive acceptance or constructive approval requirements also do not compel Postal Service officials to accept work or services, approve Contractor estimates, perform contract administration functions, or make payment prior to the Contractor fulfilling responsibilities.

(b) The following periods of time will not be included in the determination of an interest penalty:

(1) The periods taken to notify the Contractor of defects in invoices submitted to the Postal Service, but this period may not exceed seven days; **and**

(2) The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(c) Interest penalties will not continue to accrue after the filing of a claim for such penalties under the Disputes Clause, or for more than 1 year. Interest penalties of less than $1 need not be paid.

(d) Interest penalties are not required on payment delays due to disagreement between the Postal Service and the Contractor over the payment amount or other issues involving contract compliance, or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes

and any interest that may be payable will be resolved in accordance with the Disputes Clause.

5. An interest penalty shall also be paid automatically by the designated payment office, without request from the Contractor, if a discount for prompt payment is taken improperly. The interest penalty will be calculated on the amount of discount taken for the period beginning with the first day after the end of the discount period through the date when the Contractor is paid.

b. Contract Financing Payments. For purposes of this clause, if applicable "contract financing payments" means a Postal Service disbursement of monies to a Contractor under a contract clause or other authorization prior to acceptance of supplies or services by the Postal Service, other than progress payments based on estimates of amount and value of work performed. Contract financing payments include advance payments and interim payments under cost-type contracts.

If this contract provides for contract financing, requests for payment shall be submitted to the designated billing office as specified in the this contract or as directed by the contracting officer. Contract financing payments shall be made by the thirtieth day after receipt of a proper contract financing request by the designated billing office. In the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the date specified. For advance payments, loans or other arrangements that do not involve recurrent submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer. Contract financing payments shall not be assessed an interest penalty for payment delays.

c. The Contractor shall include in each subcontract for property or services (including a material supplier) for the purposes of performing this contract the following:

1. A payment clause which obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than seven days from the receipt of payment out of such amounts as are paid to the Contractor under this contract;

2. An interest penalty clause which obligates the Contractor to pay an interest penalty for each payment not made in accordance with the payment clause:

(a) For the period beginning the day after the required payment date and ending on the date on which payment of the amount due is made, and

(b) Computed at the interest rate established by the Secretary of the Treasury for interest payments under Section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay and interest penalty, **and**

(c) A clause requiring each subcontractor to include a payment clause and an interest penalty clause in each of its subcontracts and to require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

**d.** The clauses required by paragraph **c.** of this clause shall not be construed to impair the right of Contractor or subcontractor at any tier to negotiate, and to include in their subcontract provisions which:

**1.** Permit the Contractor or subcontractor to retain (without cause)a specified percentage of each progress payment otherwise due to a subcontractor for satisfactory performance under the subcontract without incurring any obligation to pay a late payment interest penalty, in accordance with the terms and conditions agreed to by the parties to the subcontract; giving such recognition as the parties deem appropriate to the ability of a subcontractor to furnish a performance bond and a payment bond;

**2.** Permit the Contractor or a subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the subcontract agreement; and

**3.** Permit such withholding without incurring any obligation to pay a late payment penalty if:

(a) A notice conforming to the standards of paragraph **g.** of this clause has been previously furnished to the subcontractor, and

(b) A copy of any notice issued by a Contractor pursuant to subdivision **d.3.(a)** of this clause has been furnished to the Contracting Officer.

**e.** If a contractor, after making a request for payment to the Postal Service, but, before making a payment to a subcontractor for the subcontractor's performance covered by the payment request, discovers that all or a portion of the payment otherwise due such subcontractors is subject to withholding from the subcontractor in accordance with the subcontract agreement, then the Contractor shall:

**1.** Furnish the subcontractor a notice conforming to the standards of paragraph **g.** of this clause as soon as practicable upon ascertaining the cause giving rise to a withholding, but, prior to the due date for subcontractor payment;

**2.** Furnish the Contracting Officer, as soon as practicable, a copy of the notice furnished the subcontractor pursuant to subparagraph **e.1.** of this clause;

**3.** Reduce the subcontractor's progress payment by an amount not to exceed the amount specified in the notice of withholding furnished under subparagraph **e.1.** of this clause.

**4.** Pay the subcontractor as soon as practicable after the correction of the identified subcontract performance deficiency, and

**(a)** Make such payments within:

**(1)** Seven days after correction of the identified subcontract performance deficiency unless funds therefor must be recovered from the Postal Service because of a reduction under subdivision **e.5.(a)** of this clause, or

**(2)** Seven day after the Contractor recovers such funds from the Postal Service; or

**(b)** Incur a late payment interest penalty computed at the interest rate established by the Secretary of the Treasury for interest payments under Section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay and interest penalty;

**5.** Notify the Contracting Officer upon:

**(a)** Reduction of the amount of any subsequent certified application for payment; or

**(b)** Payment to the subcontractor of any withheld amounts of a progress payment specifying:

**(1)** The amounts withheld under subparagraph **e.1.** of this clause; and

**(2)** The dates such withholding began and ended; and

**6.** Be obligated to pay to the Postal Service an amount equal to interest on the withheld payments (computed in the manner provided in 31 U.S.C. 3903 (c)(1)), from the 8th day after receipt of the withheld amounts from the Postal Service until–

(a) The day the identified subcontractor performance deficiency is corrected; or

(b) The date that any subsequent payment is reduced under subdivision e.5.(a) of this clause.

**f.** **1.** If a Contractor, after making payment to a first-tier subcontractor, receives from a supplier or subcontractor of the first-tier subcontractor (hereafter referred to as a "second-tier subcontractor") a written notice in accordance with Section 2 of the Act of August 24, 1935 (40 U.S.C. 2701b, Miller Act), asserting a deficiency in such first-tier subcontractor's performance under the contract for which the Contractor may be ultimately liable and the Contractor determines that all or a portion of future payments otherwise due such first-tier subcontractor is subject to withholding in accordance with the subcontract agreement, then the Contractor may, without incurring an obligation to pay an interest penalty under subparagraph **e.6.** of this clause–

(a) Furnish to the first-tier subcontractor a notice conforming to the standards of paragraph **g.** of this clause as soon as practicable upon making such determination; and

(b) Withhold from the first-tier subcontractor's next available progress payment or payments an amount not to exceed the amount specified in the notice of withholding furnished under subdivision **f.1.(a)** of this clause.

**2.** As soon as practicable, but not later than seven days after receipt of satisfactory written notification that the identified subcontract performance deficiency has been corrected the Contractor shall pay the amount withheld under subdivision **f.1.(a)** of this subparagraph to such first-tier subcontractor, or shall incur an obligation to pay a later payment interest penalty to such first-tier subcontractor computed at the rate of interest established by the Secretary of the Treasury for interest payments under section **12** of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

**g.** A written notice of any withholding shall be issued to a subcontractor (with a copy to the Contracting Officer of any such notice issued by the Contractor), specifying–

(a) The amount to be withheld;

(b) The specific cause for the withholding under the terms of the subcontract; and

(c) The remedial actions to be taken by the subcontractor in order to receive payment of the amounts withheld.

**h.** The Contractor may not request payment from the Postal Service of any amount withheld or retained in accordance with paragraph **(d)** of this clause until such time as the Contractor has

determined and certified to the Contracting Officer that the subcontractor is entitles to the payment of such amount.

**i.** A dispute between the Contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or a late payment interest penalty under a clause included in the subcontract pursuant to paragraph **c.** of this clause does not constitute a dispute to which the Postal Service or United States is a party. The Post Service or Untied States may not be interpleaded in any judicial or administrative proceeding involving such a dispute.

**j.** Except as provided in paragraph **i.** of this clause, this clause shall not limit or impair any contractual, administrative or judicial remedies otherwise available to the Contractor or subcontractor in the event of a dispute involving late payment or nonpayment by the Contractor or deficient subcontract performance or nonperformance by a subcontractor.

**k.** The Contractor's obligation to pay an interest penalty to a subcontractor pursuant to the clauses included in a subcontract under paragraph **c.** of this clause shall not be construed to be an obligation of the Postal Service or United States for such interest penalty. A cost reimbursement claim may not include any amount for reimbursement of such interest penalty.

## FB 272-1 PROGRESS PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS

**a.** The Contractor shall furnish a breakdown of the total contract price showing the amount included therein for each principal category of work, in such detail as requested by the Contracting Officer, to provide a basis for determining progress payments, or payment shall not be made.

**b.** Along with each request for progress payments, the contractor shall furnish the following certification, or payment shall not be made:

I hereby certify, to the best of my knowledge and belief, that:

1. The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

2. Payments to subcontractors and suppliers have been made from previous payments received under this contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code; and

3. This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

____________________________
(NAME)

____________________________
(TITLE)

____________________________
(DATE)

**c.** If the Contractor, after making a certified request for progress payments, discovers that a portion, or all of such request constitutes a payment for performance that fails to conform to the specifications, terms, and conditions of the contract(hereinafter referred to as the "unearned amount"), the Contractor shall:

1. Notify the Contracting Officer of such performance deficiency; and

2. Be obligated to pay the Postal Service an amount (computed by the Contracting Officer in the manner provided in 31 U.S.C. 3903 (c)(1) equal to the interest on the unearned amount from the date of receipt of the unearned amount until:

   **(a)** The date the Contractor notifies the Contracting Officer that the performance deficiency has been corrected; or

   **(b)** The date the Contractor reduces the amount of any subsequent certified request for progress payments by an amount equal to the unearned amount.

**d.** In making these progress payments, the Postal Service shall, upon request, reimburse the Contractor for the amount of premiums paid for performance and payment bonds (including coinsurance and reinsurance agreements when applicable) after surety. The retainage provision in paragraph **e.** of this clause shall not apply to that portion of progress payments attributable to bond premiums.

**FB 272-2 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS**

**a.** Contracting Officer may modify the date in subdivision **a.1.(a)(1)** of the clause to specify a period longer than 14 days if required to afford the Postal Service a practicable opportunity to inspect the work adequately and to determine the adequacy of the Contractor's performance under the contract.

**b.** The Contracting Officer may modify the date in subdivision **a.4.(a)** of the clause to specify a period longer than seven days for constructive acceptance or constructive approval if required to afford the Postal Service a practicable opportunity to adequately inspect the work and to determine the adequacy of the Contractor's performance under the contract.

**F.2 PAYMENT (CONSTRUCTION) (Clause 11-10) (August 1995/Interim)**

a. The Postal Service will make progress payments monthly or at more frequent intervals as determined by the contracting officer. Before the first progress payment becomes due, the contractor must prepare a breakdown of the contract price acceptable to the contracting officer. The values in the breakdown will be used for determining progress payments. The contractor's overhead and profit must be prorated through the life of the contract.

b. If the contract price is more than $50,000, material delivered that will be incorporated into the structure may be taken into consideration in computing progress payments. Before each payment is made, the contractor must furnish to the contracting officer proof of the quantity, value, and delivery of materials.

c. In making progress payments, the contracting officer will ordinarily retain five percent of the progress payments earned. However, if the contracting officer, at any time after 50 percent of the work has been completed, finds that satisfactory progress is being made, the contracting officer may authorize payment in full of all progress payments earned. Also, if the contracting officer considers the amount retained to be in excess of that adequate for the protection of the Postal Service, the contracting officer may release to the contractor all or a portion of the excess whenever the work is substantially complete. On completion and acceptance of each separate building, public work, or other division of the contract, on which the price is stated separately in the contract, payment may be made without retention.

d. All material and work covered by progress payments will be the sole property of the Postal Service. However, this paragraph d does not:

1. relieve the contractor of responsibility for all material and work for which payment has been made or for restoration of any damaged work or

2. waive the right of the Postal Service to require fulfillment of all the contract terms.

e. Before receiving a progress payment or final payment under this contract, the contractor must certify to the contracting officer that payment due subcontractors or suppliers under contractual arrangements with them has been made from the proceeds of prior payments or will be made in timely fashion from the payment then due the contractor.

f. Upon completion and acceptance of all work, the amount due the contractor under this contract must be paid upon the presentation of a properly executed invoice, after the contractor has furnished the Postal Service with a release of all claims against the Postal Service arising by virtue of this contract, other than claims in stated amounts that must be specifically excepted by the contractor from the operation of the release. If the contractor's claim to amounts payable under the contract has been assigned as provided in the Assignment of Claims clause, a release may also be required of the assignee.

**F.3 PAYMENTS (INDEFINITE-QUANTITY) (Clause FB-254) (June 1988)**

Clause 11-10, Payment (Construction) applies individually to each work order issued.

**F.4 INVOICES (Clause B-20) (June 1988)**

a. The contractor's invoices must be submitted to the Postal Service before payment can be made.

b. The contractor agrees that the submission of a paid invoice to the Postal Service for payment is certification that:

1. Any services being billed for have been performed in accordance with the contract requirements; and

2. Any supplies for which the Postal Service is being billed have been shipped or delivered in accordance with the shipping instructions issued by the contracting officer in the quantities shown on the invoice, and that the supplies are in the quantity and of the quality specified in the contract.

c. To ensure prompt payment, a paid invoice must be submitted for each destination. Each invoice must contain:

1. Contractor's name and address;

2. The contract number;

3. Any applicable task or delivery order number;

4. A description of the supplies or services and the date delivered or performed;

5. The point of shipment or delivery;

6. Any applicable unit prices and extensions;

7. Shipping and payment terms; and

8. Any additional information required by the contract.