## SECTION F - PAYMENT AND FUNDING

### F.1 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (Clause FB-272) (May 1994/Interim)

Notwithstanding any other payment terms in this contract, the Postal Service will make invoice payments and contract financing payments under the terms and conditions specified in this clause. payment shall be considered as being made on the day the check is dated or an electronic funds transfer is made. All days referred to in this clause are calendar days, unless otherwise specified.

a. Invoice payments.

1. For purposes of this clause, there are several types of invoice payments which may occur under this contract as follows:

(a) Progress payments, if provided for elsewhere in this contract, based on Contracting Officer approval of the estimated amount and value of the work or services performed, including payments for reaching milestones in any project:

(1) The due date for making payments shall be 14 days after receipt of the payment request by the designated billing office,
except as may be modified in accordance with paragraph FB 272-2 (herein).

(2) The due date for payments retained by the Contracting Officer in accordance with clause FB 272-1, Progress Payments under Fixed-Price Construction Contracts, shall be 30 days after approval for release to the Contractor by the Contracting Officer.

(b) Final payments based on the completion and acceptance of all work and presentation of release of all claims against the Postal Service arising by virtue of the contract, and payments for partial deliveries that have been accepted by the Postal Service (e.g., each separate building, or other division of the contract for which the price is stated separately in the contract).

(1) The due date for making such payments shall be either the thirtieth day after receipt by the designated billing office of a proper invoice from the Contractor, or the thirtieth day after Postal Service acceptance of the work or services completed by the Contractor, whichever is later.

(2) On a final invoice where the payment amount is subject to contract settlement options (e.g., release of claims), acceptance shall deemed to have occurred on the effective date of the contract settlement.

**2.** An invoice is the Contractor's bill or written request for payment under the contract for work or services performed under the contract. An invoice shall be prepared and submitted to the designated billing office. A proper invoice must include the items listed in subdivisions **a.2.(a)** through **a.2.(i)** of this clause. If the invoice does not comply with these requirements, the Contractor will be notified of the defect within seven days after the receipt of the invoice at the designated billing office. Untimely notification will be taken into account in the computation of any interest penalty owed the Contractor in the manner described in paragraph **a.4.** of this clause:

**(a)** Name and address of the Contractor;

**(b)** Invoice date;

**(c)** Contract number or other such authorization for work or services performed (including order number and contract line item number);

**(d)** Description of the work or services performed;

**(e)** Delivery and payment terms (e.g., prompt payment discount terms);

**(f)** Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment);

**(g)** Name (where practical), title, **telephone** number, and mailing address of the person(s) to be notified in the event of a defective invoice;

**(h)** For payment described in subdivision **a.1.(a)** of this clause, substantiation of the amounts requested and certification in accordance with the requirements of clause FB 272-1, Progress payments Under Fixed-Price Construction Contracts; **and**

**(i)** Any other information or documentation required by the contract.

**3.** An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date and the following conditions are met, if applicable:

**(a)** A proper invoice was received by the designated billing office;

**(b)** A receiving report or other Postal Service documentation authorizing payment was processed and there was no disagreement over quantity, quality, Contractor compliance with any contract term or condition, or requested progress payment amount; **and**

(c) In the case of a final invoice for any balance of funds due the Contractor for work or services performed, **and** the amount was not subject to further contract settlement actions between the Postal Service and the contractor.

**4.** The interest penalty shall be at the rate established by the Secretary of the Treasury under Section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the day after the due date, except where the interest penalty is prescribed by other governmental authority. The interest penalty shall accrue daily on the invoice payment amount approved by the Postal Service and be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice payment amount and be subject to interest penalties if not paid in the succeeding 30-day period. If the designated billing office failed to notify the Contractor of a defective invoice within the period prescribed in subparagraph **a.2.** of this clause, then the due date on the corrected invoice will be adjusted by subtracting the number of days taken beyond the prescribed notification of defects period. Any interest penalty owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating penalties,if requested by the Contractor.

(a) For the sole purpose of computing an interest penalty that might be due the Contractor for payments described in subdivision **a.1.(b)** of this clause, Postal Service acceptance or approval shall be deemed to have occurred constructively on the seventh day after the Contractor has completed the work or services in accordance with the terms and conditions of the contract. In the event that actual acceptance or approval occurs within the constructive acceptance or approval period, the determination of an interest penalty shall be based on the actual date of acceptance or approval. Constructive acceptance or constructive approval requirements also do not compel Postal Service officials to accept work or services, approve Contractor estimates, perform contract administration functions, or make payment prior to the Contractor fulfilling responsibilities.

(b) The following periods of time will not be included in the determination of an interest penalty:

**(1)** The periods taken to notify the Contractor of defects in invoices submitted to the Postal Service, but this period may not exceed seven days; **and**

**(2)** The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(c) Interest penalties will not continue to accrue after the filing of a claim for such penalties under the Disputes Clause, or for more than 1 year. Interest penalties of less than $1 need not be paid.

(d) Interest penalties are not required on payment delays due to disagreement between the Postal Service and the Contractor over the payment amount or other issues involving contract compliance, or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes

and any interest that may be payable will be resolved in accordance with the Disputes Clause.

5. An interest penalty shall also be paid automatically by the designated payment office, without request from the Contractor, if a discount for prompt payment is taken improperly. The interest penalty will be calculated on the amount of discount taken for the period beginning with the first day after the end of the discount period through the date when the Contractor is paid.

b. Contract Financing Payments. For purposes of this clause, if applicable "contract financing payments" means a Postal Service disbursement of monies to a Contractor under a contract clause or other authorization prior to acceptance of supplies or services by the Postal Service, other than progress payments based on estimates of amount and value of work performed. Contract financing payments include advance payments and interim payments under cost-type contracts.

If this contract provides for contract financing, requests for payment shall be submitted to the designated billing office as specified in the this contract or as directed by the contracting officer. Contract financing payments shall be made by the thirtieth day after receipt of a proper contract financing request by the designated billing office. In the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the date specified. For advance payments, loans or other arrangements that do not involve recurrent submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer. Contract financing payments shall not be assessed an interest penalty for payment delays.

c. The Contractor shall include in each subcontract for property or services (including a material supplier) for the purposes of performing this contract the following:

1. A payment clause which obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than seven days from the receipt of payment out of such amounts as are paid to the Contractor under this contract;

2. An interest penalty clause which obligates the Contractor to pay an interest penalty for each payment not made in accordance with the payment clause:

(a) For the period beginning the day after the required payment date and ending on the date on which payment of the amount due is made, and

(b) Computed at the interest rate established by the Secretary of the Treasury for interest payments under Section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay and interest penalty, **and**

(c) A clause requiring each subcontractor to include a payment clause and an interest penalty clause in each of its subcontracts and to require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

**d.** The clauses required by paragraph **c.** of this clause shall not be construed to impair the right of Contractor or subcontractor at any tier to negotiate, and to include in their subcontract provisions which:

**1.** Permit the Contractor or subcontractor to retain (without cause)a specified percentage of each progress payment otherwise due to a subcontractor for satisfactory performance under the subcontract without incurring any obligation to pay a late payment interest penalty, in accordance with the terms and conditions agreed to by the parties to the subcontract, giving such recognition as the parties deem appropriate to the ability of a subcontractor to furnish a performance bond and a payment bond;

**2.** Permit the Contractor or a subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the subcontract agreement; and

**3.** Permit such withholding without incurring any obligation to pay a late payment penalty if:

(a) A notice conforming to the standards of paragraph **g.** of this clause has been previously furnished to the subcontractor, and

(b) A copy of any notice issued by a Contractor pursuant to subdivision **d.3.(a)** of this clause has been furnished to the Contracting Officer.

**e.** If a contractor, after making a request for payment to the Postal Service, but, before making a payment to a subcontractor for the subcontractor's performance covered by the payment request, discovers that all or a portion of the payment otherwise due such subcontractors is subject to withholding from the subcontractor in accordance with the subcontract agreement, then the Contractor shall:

**1.** Furnish the subcontractor a notice conforming to the standards of paragraph **g.** of this clause as soon as practicable upon ascertaining the cause giving rise to a withholding, but, prior to the due date for subcontractor payment;

**2.** Furnish the Contracting Officer, as soon as practicable, a copy of the notice furnished the subcontractor pursuant to subparagraph **e.1.** of this clause;

**3.** Reduce the subcontractor's progress payment by an amount not to exceed the amount specified in the notice of withholding furnished under subparagraph **e.1.** of this clause.

**4.** Pay the subcontractor as soon as practicable after the correction of the identified subcontract performance deficiency, and

(a) Make such payments within:

**(1)** Seven days after correction of the identified subcontract performance deficiency unless funds therefor must be recovered from the Postal Service because of a reduction under subdivision **e.5.(a)** of this clause, or

**(2)** Seven day after the Contractor recovers such funds from the Postal Service; or

**(b)** Incur a late payment interest penalty computed at the interest rate established by the Secretary of the Treasury for interest payments under Section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay and interest penalty;

**5.** Notify the Contracting Officer upon:

**(a)** Reduction of the amount of any subsequent certified application for payment; or

**(b)** Payment to the subcontractor of any withheld amounts of a progress payment specifying:

**(1)** The amounts withheld under subparagraph **e.1.** of this clause; and

**(2)** The dates such withholding began and ended; and

**6.** Be obligated to pay to the Postal Service an amount equal to interest on the withheld payments (computed in the manner provided in 31 U.S.C. 3903 (c)(1)), from the 8th day after receipt of the withheld amounts from the Postal Service until—

(a) The day the identified subcontractor performance deficiency is corrected; or

(b) The date that any subsequent payment is reduced under subdivision e.5.(a) of this clause.

**f.** **1.** If a Contractor, after making payment to a first-tier subcontractor, receives from a supplier or subcontractor of the first-tier subcontractor (hereafter referred to as a "second-tier subcontractor") a written notice in accordance with Section 2 of the Act of August 24, 1935 (40 U.S.C. 2701b, Miller Act), asserting a deficiency in such first-tier subcontractor's performance under the contract for which the Contractor may be ultimately liable and the Contractor determines that all or a portion of future payments otherwise due such first-tier subcontractor is subject to withholding in accordance with the subcontract agreement, then the Contractor may, without incurring an obligation to pay an interest penalty under subparagraph **e.6.** of this clause--

(a) Furnish to the first-tier subcontractor a notice conforming to the standards of paragraph **g.** of this clause as soon as practicable upon making such determination; and

(b) Withhold from the first-tier subcontractor's next available progress payment or payments an amount not to exceed the amount specified in the notice of withholding furnished under subdivision **f.1.(a)** of this clause.

**2.** As soon as practicable, but not later than seven days after receipt of satisfactory written notification that the identified subcontract performance deficiency has been corrected the Contractor shall pay the amount withheld under subdivision **f.1.(a)** of this subparagraph to such first-tier subcontractor, or shall incur an obligation to pay a later payment interest penalty to such first-tier subcontractor computed at the rate of interest established by the Secretary of the Treasury for interest payments under section **12** of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

**g.** A written notice of any withholding shall be issued to a subcontractor (with a copy to the Contracting Officer of any such notice issued by the Contractor), specifying--

(a) The amount to be withheld;

(b) The specific cause for the withholding under the terms of the subcontract; and

(c) The remedial actions to be taken by the subcontractor in order to receive payment of the amounts withheld.

**h.** The Contractor may not request payment from the Postal Service of any amount withheld or retained in accordance with paragraph **(d)** of this clause until such time as the Contractor has

determined and certified to the Contracting Officer that the subcontractor is entitles to the payment of such amount.

i. A dispute between the Contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or a late payment interest penalty under a clause included in the subcontract pursuant to paragraph c. of this clause does not constitute a dispute to which the Postal Service or United States is a party. The Post Service or Untied States may not be interpleaded in any judicial or administrative proceeding involving such a dispute.

j. Except as provided in paragraph i. of this clause, this clause shall not limit or impair any contractual, administrative or judicial remedies otherwise available to the Contractor or subcontractor in the event of a dispute involving late payment or nonpayment by the Contractor or deficient subcontract performance or nonperformance by a subcontractor.

k. The Contractor's obligation to pay an interest penalty to a subcontractor pursuant to the clauses included in a subcontract under paragraph c. of this clause shall not be construed to be an obligation of the Postal Service or United States for such interest penalty. A cost reimbursement claim may not include any amount for reimbursement of such interest penalty.

## FB 272-1 PROGRESS PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS

a. The Contractor shall furnish a breakdown of the total contract price showing the amount included therein for each principal category of work, in such detail as requested by the Contracting Officer, to provide a basis for determining progress payments, or payment shall not be made.

b. Along with each request for progress payments, the contractor shall furnish the following certification, or payment shall not be made:

I hereby certify, to the best of my knowledge and belief, that:

1. The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

2. Payments to subcontractors and suppliers have been made from previous payments received under this contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code; and

3. This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

______________________________
(NAME)

______________________________
(TITLE)

______________________________
(DATE)

**c.** If the Contractor, after making a certified request for progress payments, discovers that a portion, or all of such request constitutes a payment for performance that fails to conform to the specifications, terms, and conditions of the contract(hereinafter referred to as the "unearned amount"), the Contractor shall:

**1.** Notify the Contracting Officer of such performance deficiency; and

**2.** Be obligated to pay the Postal Service an amount (computed by the Contracting Officer in the manner provided in 31 U.S.C. 3903 (c)(1) equal to the interest on the unearned amount from the date of receipt of the unearned amount until:

(a) The date the Contractor notifies the Contracting Officer that the performance deficiency has been corrected; or

(b) The date the Contractor reduces the amount of any subsequent certified request for progress payments by an amount equal to the unearned amount.

**d.** In making these progress payments, the Postal Service shall, upon request, reimburse the Contractor for the amount of premiums paid for performance and payment bonds (including coinsurance and reinsurance agreements when applicable) after surety. The retainage provision in paragraph **e.** of this clause shall not apply to that portion of progress payments attributable to bond premiums.

**FB 272-2 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS**

**a.** Contracting Officer may modify the date in subdivision **a.1.(a)(1)** of the clause to specify a period longer than 14 days if required to afford the Postal Service a practicable opportunity to inspect the work adequately and to determine the adequacy of the Contractor's performance under the contract.

**b.** The Contracting Officer may modify the date in subdivision **a.4.(a)** of the clause to specify a period longer than seven days for constructive acceptance or constructive approval if required to afford the Postal Service a practicable opportunity to adequately inspect the work and to determine the adequacy of the Contractor's performance under the contract.

**F.2 PAYMENT (CONSTRUCTION) (Clause 11-10) (August 1995/Interim)**

a. The Postal Service will make progress payments monthly or at more frequent intervals as determined by the contracting officer. Before the first progress payment becomes due, the contractor must prepare a breakdown of the contract price acceptable to the contracting officer. The values in the breakdown will be used for determining progress payments. The contractor's overhead and profit must be prorated through the life of the contract.

b. If the contract price is more than $50,000, material delivered that will be incorporated into the structure may be taken into consideration in computing progress payments. Before each payment is made, the contractor must furnish to the contracting officer proof of the quantity, value, and delivery of materials.

c. In making progress payments, the contracting officer will ordinarily retain five percent of the progress payments earned. However, if the contracting officer, at any time after 50 percent of the work has been completed, finds that satisfactory progress is being made, the contracting officer may authorize payment in full of all progress payments earned. Also, if the contracting officer considers the amount retained to be in excess of that adequate for the protection of the Postal Service, the contracting officer may release to the contractor all or a portion of the excess whenever the work is substantially complete. On completion and acceptance of each separate building, public work, or other division of the contract, on which the price is stated separately in the contract, payment may be made without retention.

d. All material and work covered by progress payments will be the sole property of the Postal Service. However, this paragraph d does not:

1. relieve the contractor of responsibility for all material and work for which payment has been made or for restoration of any damaged work or

2. waive the right of the Postal Service to require fulfillment of all the contract terms.

e. Before receiving a progress payment or final payment under this contract, the contractor must certify to the contracting officer that payment due subcontractors or suppliers under contractual arrangements with them has been made from the proceeds of prior payments or will be made in timely fashion from the payment then due the contractor.

f. Upon completion and acceptance of all work, the amount due the contractor under this contract must be paid upon the presentation of a properly executed invoice, after the contractor has furnished the Postal Service with a release of all claims against the Postal Service arising by virtue of this contract, other than claims in stated amounts that must be specifically excepted by the contractor from the operation of the release. If the contractor's claim to amounts payable under the contract has been assigned as provided in the Assignment of Claims clause, a release may also be required of the assignee.

**F.3 PAYMENTS (INDEFINITE-QUANTITY) (Clause FB-254) (June 1988)**

Clause 11-10, Payment (Construction) applies individually to each work order issued.

**F.4 INVOICES (Clause B-20) (June 1988)**

a. The contractor's invoices must be submitted to the Postal Service before payment can be made.

b. The contractor agrees that the submission of a paid invoice to the Postal Service for payment is certification that:

1. Any services being billed for have been performed in accordance with the contract requirements; and

2. Any supplies for which the Postal Service is being billed have been shipped or delivered in accordance with the shipping instructions issued by the contracting officer in the quantities shown on the invoice, and that the supplies are in the quantity and of the quality specified in the contract.

c. To ensure prompt payment, a paid invoice must be submitted for each destination. Each invoice must contain:

1. Contractor's name and address;
2. The contract number;
3. Any applicable task or delivery order number;
4. A description of the supplies or services and the date delivered or performed;
5. The point of shipment or delivery;
6. Any applicable unit prices and extensions;
7. Shipping and payment terms; and
8. Any additional information required by the contract.

## PART 2 - CLAUSES AND ATTACHMENTS

## SECTION G - SPECIAL CLAUSES

### G.1 PERFORMANCE AT OCCUPIED POSTAL PREMISES (Clause B-27) (October 1987)

a. In performing this contract, the contractor must -

1. Comply with applicable Occupational Safety and Health Standards (29 CFR 1910) promulgated pursuant to the authority of the Occupational Safety and Health Act of 1970;

2. Comply with any other applicable Federal, State, or local regulations governing workplace safety to the extent they do not conflict with a.1 above; and

3. Take all other proper precautions to protect the safety and health of the contractor's employees, Postal Service employees, and the public.

b. The contractor must coordinate its use of the premises with the installation head or other representative designated by the contracting officer. Subjects of this coordination include the designation of work and storage areas; the extent, if any, of use by the contractor of Postal Service tools and equipment; the furnishing by the contractor of appropriate signs and barricades to exclude unauthorized personnel from the work areas and to call attention to hazards and dangers; and other matters relating to the protection of Postal Service employees and property.

### G.2 CONDITIONS AFFECTING THE WORK (Clause 11-1) (October 1987)

The contractor is responsible for having taken steps reasonably necessary to ascertain the nature and location of the work, and the general and local conditions that can affect the work or its cost. Any failure by the contractor to have done so does not relieve the contractor from responsibility for successfully performing the work without additional expense to the Postal Service. The Postal Service assumes no responsibility for any understanding or representations concerning conditions made by any of its officers or agents before execution of this contract, unless such understanding or representations by the Postal Service are expressly stated in the contract.

### G.3 DIFFERING SITE CONDITIONS (Clause 11-2) (October 1987)

a. The contractor must promptly, and before the conditions are disturbed, notify the contracting officer in writing of–

1. Subsurface or latent physical conditions at the site differing materially from those indicated in this contract; or

2. Previously unknown physical conditions at the site of an unusual nature differing materially from those ordinarily encountered and generally recognized as inherent in work of the character required in this contract.

b. The contracting officer will promptly investigate the conditions. If they are found to differ materially from those indicated or anticipated and will cause an increase or decrease in the contractor's cost of, or the time required for, performance of any part of the work under this contract (whether or not changed as a result of such conditions), the contractor will be entitled to an equitable adjustment.

c. No claim by the contractor for an equitable adjustment under this clause will be allowed if asserted after final payment under this contract.

## G.4 PERFORMANCE OF WORK BY CONTRACTOR (Clause 11-3) (October 1987)

The contractor must perform on the site, with its own organization, work equivalent to at least 12 percent (unless otherwise set forth in the Schedule) of the total amount of work to be performed under this contract. The percentage of work to be performed by the contractor may be reduced with the written approval of the contracting officer.

## G.5 SUPERINTENDENCE BY CONTRACTOR (Clause 11-4) (October 1987)

The contractor must give personal superintendence to the work or have a competent foreman or superintendent, satisfactory to the contracting officer, on the worksite at all times during progress, with authority to act for the contractor.

## G.6 MATERIALS AND WORKMANSHIP (Clause 11-5) (June 1988)

a. Unless otherwise specifically provided, all equipment and materials incorporated into the work must be new and of the most suitable grade for the purpose intended. Unless otherwise specifically provided, reference to any equipment, material, or patented process by brand name, make, or catalog number establishes a standard of quality only. The contractor may substitute any equipment, material, or process that the contracting officer finds to be equal to that named. To obtain approval to use a different equipment, material, or process, the contractor must furnish the contracting officer the manufacturer's name, the model number, and other identifying data and information regarding the nature and performance of the proposed substitute. If requested by the contracting officer, samples must be submitted for approval at the contractor's expense, shipping charges prepaid. Materials or processes substituted without approval may be rejected.

b. In the event of substitution in accordance with paragraph a above, the contractor must furnish to the contracting officer for approval the manufacturer's name, the model number, and any other relevant information on the performance, capacity, nature, and rating of equipment or materials proposed for substitution.

c. The contractor must obtain the contracting officer's approval of the machinery and mechanical equipment incorporated into the work. The contractor must submit samples of all

materials and equipment as directed by the contracting officer or as required by the specifications.

d. All work must be performed in a skillful and workmanlike manner. The contracting officer may, in writing, require the contractor to remove from the work any employee the contracting officer deems incompetent, careless, or otherwise objectionable.

**G.7 USE OF PREMISES (Clause 11-6) (October 1987)**

a. If the premises are occupied, the contractor, any subcontractors, and their employees must comply with the regulations governing access to, operation of, and conduct while on the premises and must perform the work required under this contract so as not to unreasonably interfere with the conduct of Postal Service business or use and occupancy by Postal Service tenants.

b. Any requests received by the contractor from occupants to change the sequence of work must be referred to the contracting officer for determination.

c. The contractor, any subcontractors, and their employees will not have access to any building outside the scope of this contract, without permission of the contracting officer.

**G.8 OTHER CONTRACTS (Clause 11-7) (October 1987)**

The Postal Service may award other contracts for additional work, and the contractor must cooperate fully with the other contractors and Postal Service employees and carefully fit in its own work as may be directed by the contracting officer. The contractor must not commit or permit any act that will interfere with the performance of work by any other contractor or by Postal Service employees.

**G.9 SUBCONTRACTS (CONSTRUCTION) (Clause 11-8) (October 1987)**

a. Nothing in this contract may be construed to create any contractual relationship between any subcontractor and the Postal Service. The divisions or sections of the specifications are not intended to control the contractor in dividing the work among subcontractors, or to limit the work performed by any trade.

b. The contractor is responsible to the Postal Service for acts and omissions of its own employees and of subcontractors and their employees. The contractor is also responsible for the coordination of the work of the trades, subcontractors, and suppliers.

c. The Postal Service will not undertake to settle any differences among the contractor, subcontractors, or suppliers.

**G.10 PERMITS AND RESPONSIBILITIES (Clause 11-9) (October 1987)**

The contractor is responsible, without additional expense to the Postal Service, for obtaining any necessary licenses and permits, and for complying with any applicable Federal, State, and municipal laws, codes, and regulations in connection with the prosecution of the work. The contractor is responsible for all damage to persons or property that occurs as a result of its negligence. The contractor must take proper safety and health precautions to protect the work, the workers, the public, and the property of others. The contractor is responsible also for all materials delivered and work performed until completion and acceptance of the entire construction work, except for any completed unit of construction that may have been accepted.

**G.11 BUILDING CODES, FEES, AND CHARGES (Clause 11-12) (October 1987)**

a. State and local building codes and regulations do not apply as a matter of law to work inside the property lines of Postal Service-owned properties but generally do apply to Postal Service-leased properties. In compliance with Postal Service policy, the contractor must comply with all State and local building code requirements unless otherwise specifically provided.

b. The contractor must pay all fees and charges for connections to outside services and for use of property outside the site.

**G.12 PROTECTION OF EXISTING VEGETATION, STRUCTURES, UTILITIES, AND IMPROVEMENTS (Clause 11-13) (October 1987)**

a. The contractor will preserve and protect all existing vegetation (such as trees, shrubs, and grass) and structures on or adjacent to the site of work that are not to be removed and that do not unreasonably interfere with the construction work. Care will be taken in removing trees authorized by the contracting officer for removal, to avoid damage to vegetation that will remain in place. Any limbs or branches of trees broken during such operations or by the careless operation of equipment, or by workmen, will be trimmed with a clean cut and painted with an approved tree pruning compound as directed by the contracting officer.

b. The contractor will protect from damage all existing improvements or utilities at or near the site of the work, the location of which is or should have been known, and will repair or restore any damage to these facilities resulting from failure to comply with the requirements of this contract or to exercise reasonable care in performing the work. If the contractor fails or refuses to repair any such damage promptly, the contracting officer may have the necessary work performed and charge the cost to the contractor.

**G.13 HEAT (Clause 11-14) (October 1987)**

Unless otherwise specified, or unless directed otherwise by the contracting officer, the contractor must--

a. Provide heat as necessary to protect all work materials and equipment against injury from dampness and cold;

b. Protect, cover, and/or heat, as may be necessary to produce and maintain a temperature of not less than 50 degrees Fahrenheit in the concrete during the placing, setting, and curing of concrete, and in the plaster during the application, setting, and curing of plaster; and

c. Provide heat as necessary to produce in the area where the work is to be done a temperature of not less than 70 degrees Fahrenheit for the period beginning 10 days before the placing of interior finishes and finish materials and continuing until completion of beneficial occupancy of the area.

**G.14 DEBRIS AND CLEANUP (Clause 11-15) (October 1987)**

a. The contractor must, during the progress of the work, remove and dispose of the resultant dirt and debris and keep the premises clean.

b. The contractor will, upon completion of the work, remove all construction equipment and surplus materials (except materials or equipment that are to remain Postal Service property as provided by this contract), and leave the premises in a clean, neat, and orderly condition satisfactory to the contracting officer.

**G.15 MEASUREMENTS (Clause 11-16) (October 1987)**

The contractor must verify all dimensions shown of existing work, and all dimensions required for work that is to connect with work now in place, by actual measurement of the existing work. Any discrepancies between the contract requirements and the existing conditions must be referred to the contracting officer before the contractor performs any work affected by these discrepancies.

**G.16 SURVEY MONUMENTS AND BENCH MARKS (Clause 11-17) (October 1987)**

a. The Postal Service has established, or will establish, such general reference points as will enable the contractor to proceed with the work. The contractor will provide new monuments where shown or specified. If the contractor finds that any previously established reference points have been destroyed or displaced, or that none has been established, the contractor must promptly notify the contracting officer.

b. The contractor must protect and preserve established bench marks and monuments and make no changes in locations without the written approval of the contracting officer. Established reference points that may be lost, covered, destroyed, or disturbed in the course of performance of the work under this contract, or that require shifting because of necessary changes in grades or locations, must (subject to prior approval of the contracting officer) be replaced and accurately located or relocated (as appropriate) at the contractor's expense, by a licensed engineer or licensed land surveyor.

c. New monuments will be 6 inches square by 3 feet deep (unless otherwise specified), of concrete or stone, with a 3-inch copper or brass pin, 3/8-inch in diameter, in the center, and must be set flush with the ground or pavement in locations indicated on the site plan.

d. Monuments will not be required where lines of buildings are coincident with property lines.

e. The contractor must verify the figures shown on the survey and site plan before undertaking any construction work and will be responsible for the accuracy of the finished work.

f. After completion of construction and before final payment, the contractor must furnish the Postal Service blueprints (in triplicate) of plans showing the exact location of construction survey monuments with reference to true property lines.

## G.17 SPECIFICATIONS AND DRAWINGS (Clause 11-18) (October 1987)

a. The contractor must keep, at the site, copies of the drawings and specifications and must at all times give the contracting officer access to them. Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, is of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications will govern.

b. In case of difference between small and large-scale drawings, the large-scale drawings will govern. Schedules on any contract drawing will take precedence over conflicting information on that or any other contract drawing. On any of the drawings in which a portion of the work is detailed or drawn out and the remainder is shown in outline, the parts detailed or drawn out will apply also to all other like portions of the work.

c. When the word "similar" appears on drawings, it has a general meaning and must not be interpreted as meaning identical, and all details must be worked out in relation to their location and connection with other parts of the work.

d. In case of discrepancy either in figures or drawings or specifications, the matter must be promptly submitted to the contracting officer, who will promptly make a determination in writing. Any adjustment by the contractor without such a determination will be at the contractor's own risk and expense. The contracting officer must furnish from time to time such detailed drawings and other information as may be necessary.

## G.18 STANDARD REFERENCES (Clause 11-19) (October 1987)

a. All publications and other documents (such as manuals, handbooks, codes, standards, and specifications) cited in this contract for the purpose of establishing requirements applicable to equipment, materials, or workmanship are hereby incorporated by reference in the contract as fully as if printed and bound with the specifications of this contract, in accordance with the following:

1. Wherever reference is made to Standard Specifications of the Public Buildings Service, Interim Federal Specifications, Interim Amendments to Federal Specifications,

Interim Federal Standards, or Interim Amendments to Federal Standards, the contractor must comply with the requirements set forth in the issue or edition identified in this contract except as modified or as otherwise provided in the specifications.

2. Wherever reference is made to any document other than those specified in subparagraph a.1 above, the contractor must comply with the requirements set forth in the edition specified in this contract or, if not specified, the latest edition or revision, as well as the latest amendment or supplement in effect on the date of the solicitation except as modified by the specifications of this contract.

b. Federal Specifications, Federal Standards, and Standard Specifications of the Public Buildings Service can be obtained from the Business Service Center at any GSA Regional Office. Inquiries regarding "Commercial Standards," "Product Standards," and "Simplified Practice Recommendations" should be addressed to the Office of Product Standards, National Bureau of Standards, Washington, DC 20234. Publications of associations referred to in the specifications can be obtained directly from the associations.

c. Upon request, the contractor must make available at the job site, within a reasonable time, a copy of any trade manual or standard incorporated by reference in this contract that governs quality and workmanship.

**G.19 POSTAL SERVICE OCCUPANCY (Clause 11-24) (October 1987)**

a. The contracting officer reserves the right of partial occupancy or use of facilities, services, and utilities, before final acceptance, without implying completion or acceptance of any part of the project by the Postal Service. Before such occupancy or use, the contracting officer must furnish the contractor an itemized list of work remaining to be performed or corrected. Failure to list an item will not relieve the contractor of the responsibility for complying with the terms of the contract.

b. Costs incurred as a result of such partial occupancy or use of facilities, services, and utilities are subject to equitable adjustment under the Changes clause.

**G.20 CHANGES (CONSTRUCTION) (Clause 11-26) (October 1987)**

a. The contracting officer may at any time, without notice to any sureties, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract, including changes--

1. In the specifications (including drawings and designs);

2. In the method or manner of performance of the work;

3. In the Postal Service-furnished facilities, equipment, materials, services, or site; or

4. Directing acceleration in the performance of the work.

b. Any other written or oral order (which, as used in this paragraph b, includes direction, instruction, interpretation, or determination) from the contracting officer that causes a change will be treated as a change order under this clause, provided the contractor gives the contracting officer written notice stating

1. the date, circumstances, and source of the order and

2. that the contractor regards the order as a change order.

c. Except as provided in this clause, no order, statement, or conduct of the contracting officer may be treated as a change under this clause or entitle the contractor to an equitable adjustment.

d. If any change under this clause causes an increase or decrease in the contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any order, the contracting officer will make an equitable adjustment and modify the contract in writing. However, except for claims based on defective specifications, no claim for any change under paragraph b above will be allowed for any costs incurred more than 20 days before the contractor gives written notice as required. In the case of defective specifications for which the Postal Service is responsible, equitable adjustment will include any increased cost reasonably incurred by the contractor in attempting to comply with the defective specifications.

e. The contractor must assert any claim under this clause within 30 days after (1) receipt of a written change order under paragraph a above, or (2) the furnishing of a written notice under paragraph b above, by submitting to the contracting officer a written statement describing the general nature and amount of the claim, unless this period is extended by the Postal Service. The statement of claim may be included in the notice under paragraph b above.

f. No claim by the contractor for an equitable adjustment will be allowed if asserted after final payment under this contract.

## G.21 ACCIDENT PREVENTION (Clause 11-27) (June 1988)

a. In performing this contract, the contractor must comply with the Occupational Safety and Health Act of 1970.

b. The contractor will maintain an accurate record of exposure data and all accidents incident to work performed under this contract resulting in death, traumatic injury, occupational disease, or damage to property, material, supplies, or equipment. The contractor must report the exposure data and accidents as prescribed by the contracting officer.

## G.22 ACCESS TO SITE (Clause OB-44) (June 1988)

The contractor's access to the site and use of existing roads will be as directed by the contracting officer or a designee.

**G.23 IDENTIFICATION OF CONTRACTOR'S VEHICLES (Clause OB-45) (June 1988)**

After contract award, the contractor will coordinate with the security officer for the issuance of vehicle passes for construction and private vehicles.

**G.24 CONTROL OF EROSION, SEDIMENTATION, AND POLLUTION (Clause OB-49) (June 1988)**

a. Operations must be scheduled and conducted to minimize erosion of soils and to prevent silting and muddying of streams, rivers, irrigation systems, and impoundment's (lakes, reservoirs, and the like).

b. Pollutants such as fuels, lubricants, bitumens, raw sewage, and other harmful materials must not be discharged onto the ground, into or near rivers, streams, and impoundment's, and natural or man-made channels. Wash water or waste from concrete or aggregate operations must not be allowed to enter live streams before treatment by filtration, settling, or other means sufficient to reduce the sediment content to not more then that of the stream into which it is discharged.

c. Mechanized equipment must not be operated in live streams without written approval by the contracting officer.

**G.25 INDEMNIFICATION (Clause FB-203) (June 1988)**

The contractor must save harmless and indemnify the Postal Service and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, and/or expenses resulting from, brought for, or on account of any personal injury or property damage received or sustained by any persons or property growing out of, occurring, or attributable to any work performed under or related to this contract, resulting in whole or in part from the negligent acts or omissions of the contractor, any subcontractor, or any employee, agent, or representative of the contractor or any subcontractor.

**G.26 POSTAL SERVICE–PROPERTY (Construction) (Clause FB-234) (June 1988)**

a. Within 45 calendar days after receipt of Notice to Proceed, the contractor must submit to the contracting officer a schedule in quadruplicate verifying quantities, if appropriate, and giving desired dates for delivery of items and property furnished by the Postal Service. Schedule will be subject to written approval of the contracting officer. Approved dates of delivery must be confirmed by the contractor thirty calendar days prior to delivery on the established dated or will be responsible for suitable storage and protection of items delivered, including all expenses incidental thereto.

DELETED

b. The contractor must receive the Postal Service - Furnished Property, off load, receipt for, provide additional transportation required, uncrate, assemble, locate in place and install or connect ready for operation or use. Assembly must include such parts and loose fittings as are usually shipped detached. Installation and connection must be in accordance with the specifications for such work, including fitting to adjacent work and any additional labor and material required.

c. Postal Service property will be furnished f.o.b truck at the project site and the contractor must accept delivery when made, paying any demurrage incurred, and unload the property at his own expense. All such property must be installed or incorporated into the work at the expense of the contractor, unless otherwise indicated herein.

d. The contractor must report to the contracting officer, in writing, within 45 working hours after accepting delivery of the Postal Service property, any shortage in, or damage to materials when delivered. If actual inspection of the property is not practical in this time limit, it should be so noted in the report. Failure to make such report will be interpreted to mean that there were no shortages and all property was in good condition when delivered. Noticeable minor defects which may be expected to occur in the ordinary manufacture of materials must be repaired.

**G.27 DEFINITION OF TERMS USED IN CONTRACT DOCUMENTS (CONSTRUCTION) (Clause FB-235) (June 1988)**

This special contract clause supplements PM Clause B-1, Definitions.

a. Wherever in the contract documents the words "Post Office Department", "Department", "POD", "Post Office", "PO", "US Postal Service", "USPS", "Owner", "Government", or words of like import are used, it must be understood that the "United States Postal Service" is intended.

b. Wherever in the contract documents "Project Engineer," "Resident Engineer," "Architect-Engineer", "AE", "Architect", "Supervisory Authority", or other individual or organization is designated, the functions and authorities of such individual or organization must be governed by PM Clause B-1, Definitions.

c. Wherever in the contract documents the words "American Standards Associates", "ASA", "United States Standards", "USA" or "American National" are used, it shall be understood that "American National Standards Institute" is intended.

d. Where throughout the text of Technical Provisions reference is made to "Contractors", "General Contractor", "Installing Contractor", "other Contractors", "another Contractor", "each Contractor", "subcontractor", "site Contractor", "this Contractor", or words of like import are used, it shall be understood that "Contractor" is intended. Where certain special contractors are required to meet certain qualifications, obtain certain permits, or provide certain services particular to a specific skill or license, the word "Contractor" prefixed by a specialty designation is intended to mean the specialty "subcontractor", e.g., fire protection subcontractor, mechanical or electrical subcontractor. (See PM Clauses B-1, and 11-8 of the Section "General Contra Clauses."

e. Where "as directed", "as required", "ordered", "prescribed", "approved", "acceptance", or words of similar nature are used, it must be understood that such words refer to actions to be taken, in writing, by the Contracting Officer unless otherwise stated. The words "necessary", "suitable", "equal", or words of like import must mean necessary or equal in the opinion of the contracting officer.

f. "Work" must be deemed to consist of all labor and operations, transportation, hoisting, materials, tools, equipment, services, inspections investigations, coordination and supervision required and/or reasonably necessary to produce the construction required by the contract documents.

g. Furnish" means the design, fabrication, purchase and delivery to the job site or other destination as directed by the Contracting Officer.

h. "Install or Installation" means the act of physically placing, applying, setting, erecting, anchoring, securing, etc., construction materials, equipment, furnishings, appliances, and similar items specified and furnished at the job site. Installation of specified items must be complete in all respects.

i. "Provide" means to furnish and install construction material, equipment, etc. as defined above.

j. *The technical specifications may indicate metric units of measurement as a supplement to* U. S. customary units. When indicated thus: 1" (25mm), the U. S. customary unit is specific and the metric unit is non-specific. When not shown with parentheses, the unit is specific. The metric units correspond to the "International System of Units (SI)" and generally follow ASTM E 380, "Standard for Metric Practice."

**G-28 FUEL STORAGE TANKS (CONSTRUCTION) (Clause FB-241) (June 1988)**

a. The contractor must, within thirty (30) calendar days after final testing and certification of fuel storage tanks, notify the contracting officer that the tanks are ready for filling.

DELETED

b. All fuel for the initial filling will be furnished and installed by the Postal Service. The cost of replacement of any fuel up to final acceptance of the facility will be the responsibility of the contractor.

**G.29 U.S.D.A. QUARANTINED AREAS (CONSTRUCTION) (Clause FB-243) (June 1988)**

If the work called for by this contract involves activities in counties quarantined by Department of Agriculture to prevent the spreads of certain plant pests which may be present in the soil, the contractor agrees that all construction equipment and tools to be moved from such counties shall be thoroughly cleaned of all soil residues at the construction site with water under pressure. If this contract involves such a quarantined area, the contractor agrees to comply with the regulations of the Department of Agriculture. The contractor agrees to assure compliance with this obligation by all subcontractors.

**G.30 POSTAL SERVICE-FURNISHED PROPERTY (CONSTRUCTION) (Clause FB-255) Alternate I (September 1995/Interim)**

**a. The Postal Service will provide item(s) of Postal Service property to the contractor for use in the performance of this contract. This property will be identified in the applicable Work Order. This property must be used and maintained by the contractor in accordance with the Postal Service Property clause of this contract.**

**b.** If Postal Service-furnished equipment is to be installed and is not on the worksite, the Postal Service will make separate arrangements to provide delivery to the site. Any costs for labor associated with loading and unloading the Postal Service-furnished property will be negotiated.

**G.31 SECURITY REQUIREMENTS (INDEFINITE-QUANTITY) (Clause FB-256) (June 1988)**

a. Contractors must consult the building's manager for permission to inspect the site and for the security regulations in effect.

b. Contractors will be required to comply with security regulations imposed by the Postal Service, or other occupying agencies, including any necessary security clearances.

**G.32 PROTECTION AND DAMAGE (INDEFINITE-QUANTITY) (Clause FB-257) (June 1988)**

a. Provide all labor, materials, and equipment necessary for protection of personnel, furnishings, equipment, or building structure from damage. Remove and replace movable items, if necessary. Replace or repair any items damaged, due to work performed under this contract equal to their original construction and finish.

b. Use rubber-tired vehicles that use non-volatile fuels for conveying materials inside building and provide temporary covering, as necessary, to protect floors.

c. No materials shall be thrown from windows or doors of buildings. Building waste system shall not be used to remove refuse, emptying paint cans, and the like.

d. Debris shall be removed from the site daily. Premises shall be left neat and clean after each work shift, so that business may proceed the next regular workday without interruption.

e. Dust-proof enclosures or partitions for protection wherever dusty or dirty work is performed and dampening of debris to avoid dusting when removed shall be negotiated into work orders as required.

f. Whenever flammable solvents or adhesives (do not use unless nonflammable items are not suitable for the condition) are used, provide adequate ventilation and fire protection measures. Do not use flammable solvents or adhesives in any case when flame-or-spark-producing operations are being performed in the area.

### G.33 METHOD (INDEFINITE-QUANTITY) (Clause FB-258) (June 1988)

a. Existing work shall be cut, drilled, altered, removed, or temporarily removed and replaced, as necessary for the performance of the contract work. Work that is replaced shall match similar existing work. Work remaining in place which is damaged or defaced by reason of work done under this contract shall be restored equal to the condition it was in at the time the contractor commenced performance of work under the work order.

b. The use of impact tools for cutting concrete or for installation of inserts, and the use of power-activated tools will not be permitted in occupied buildings. Impact tools and power-activated tools may be used during non-working hours with written permission of the contracting officer's representative on each work order.

c. Any items which are to be removed and not to be reused in this contract shall be removed from the project, and shall become the property of the contractor, unless so noted to remain the property of the Postal Service, elsewhere in this contract.

### G.34 USE OF BUILDING FACILITIES (Clause FB-259) (September 1995/Interim)

a. ***Where available, utility services of the building will be used in this work. Toilet*** **facilities are not to be used by contractor employees.**

b. Any temporary use of an existing elevator shall be by prior arrangement with the building manager of the building and subject to the building manager's control. The contractor shall provide and maintain suitable and adequate protective coverings for the elevator machinery, the hatchway entrances, and the interior of the elevator during the period of temporary use. Loads in excess of the rated capacity of the elevator shall not be permitted. The Postal Service will bear the cost of the electric current for the operation of the elevator. On completion of the work, the contractor shall remove the protective coverings together with any resultant dirt and debris, and leave the equipment in a condition equal to the condition it was in at the time the contractor commenced **using the elevator**.

### G.35 INSPECTION OF SITE OR BUILDING (INDEFINITE-QUANTITY) (Clause FB-260) (June 1988)

It shall be the contractor's responsibility to inspect conditions at each site, including such things as elevator size and capacities, existing building materials and components, and the like, before finalizing work orders (see Clause 11-1).

### G.36 SINGULAR NUMBERS (INDEFINITE-QUANTITY) (Clause FB-262) (June 1988)

a. Where any item, device, or part of equipment is referred to in singular number, this reference shall apply to as many items and devices as are required for complete installation as outlined in this specification for each work order.

b. Where any reference is made herein to "the contract", or to "contract work", the meaning shall apply to each work order individually and collectively.

**G.37 BUILDER'S RISK INSURANCE (Clause FB-263) (March 1989)**

The Postal Service does not carry Builder's Risk Insurance coverage. The contractor, at its own option and expense, may elect to provide this insurance for its work.

## SECTION H - GENERAL CLAUSES

**H.1 DEFINITIONS (Clause B-I) (June 1988)**

As used in this contract, the following terms have the following meanings:

a. "Contracting officer" means the person executing this contract on behalf of the Postal Service, and any other officer or employee who is a properly designated contracting officer; the term includes, except as otherwise provided in the contract, the authorized representative of a contracting officer acting w;thin the limits of the authority conferred upon that person.

b. Except as otherwise provided In the contract, the term "subcontracts" includes purchase orders under this contract.

**H.2 ASSIGNMENT OF CLAIMS (Clause B-8) (October 1987)**

a. If this contract provides for payments aggregating $10,000 or more, claims for moneys due or to become due from the Postal Service under it may be assigned to a bank, trust company, or other financing institution, including any Federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any assignment or reassignment must cover all amounts payable and must not be made to more than one party, except that assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in financing this contract. No assignment or reassignment will be recognized as valid and binding upon the Postal Service unless a written notice of the assignment or reassignment, together with a true copy of the instrument of assignment, is filed with

1. The contracting officer;

2. The surety or sureties upon any bonds; and

3. The office, if any, designated to make payment, and the contracting officer has acknowledged the assignment in writing.

b. Assignment of this contract or any interest in this contract other than in accordance with the provisions of this clause will be grounds for termination of the contract for default at the option of the Postal Service.

***H.3 CLAIMS AND DISPUTES (Clause B-9) (June 1988)***

a. This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) ("the Act").

b. Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

c. "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right; the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph d.2 below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

d. 1. A claim by the contractor must be made in writing and submitted to the contracting officer for a written decision. A claim by the Postal Service against the contractor is subject to a written decision by the contracting officer.

2. For contractor claims exceeding $50,000, the contractor must submit with the claim a certification that -

(a) The claim is made in good faith;

(b) Supporting data are accurate and complete to the best of the contractor's knowledge and belief; and

(c) The amount requested accurately reflects the contract adjustment for which the contractor believes the Postal Service is liable.

3. (a) If the contractor is an individual, the certification must be executed by that individual.

(b) If the contractor is not an individual, the certification must be executed by

(1) A senior company official in charge at the contractor's plant or location involved; or

(2) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

e. For contractor claims of $50,000 or less, the contracting officer must, if requested in writing by the contractor, render a decision within 60 days of the request. For contractor-certified claims over $50,000, the contracting officer must, within 60 days, decide the claim or notify the contractor of the date by which the decision will be made.

f. The contracting officer's decision is final unless the contractor appeals or files a suit as provided in the Act.

g. The Postal Service will pay interest on the amount found due and unpaid from

1. The date the contracting officer receives the claim (properly certified if required); or

2. The date payment otherwise would be due, if that date is later, until the date of payment.

h. Simple interest on claims will be paid at a rate determined in accordance with the Interest clause.

i. The contractor must proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the contracting officer.

**H.4 PRICING OF ADJUSTMENTS (Clause B-10) (October 1987)**

When costs are a factor in determining any contract price adjustment under the Changes clause or any other provision of this contract, chapter 5 of the USPS Procurement Manual in effect on the date of this contract will serve as a guide in negotiating the adjustment.

**H.5 TERMINATION FOR CONVENIENCE (Clause B-11) (October 1987)**

a. Performance under this contract may be terminated by the Postal Service in whole or in part whenever the contracting officer determines that termination is in the interest of the Postal Service. A termination may be effected by delivery to the contractor of a notice of termination specifying the extent of work terminated, and the effective date of the termination.

b. Upon receipt of a notice of termination, unless otherwise directed by the contracting officer, the contractor must take the following actions:

1. Stop work to the extent specified in the notice.

2. Place no further orders or subcontracts for materials, services, or facilities except as may be necessary for completion of the unterminated work.

3. Terminate all orders and subcontracts to the extent that they relate to the work terminated.

4. Assign to the Postal Service, as directed by the contracting officer, all right, title, and interest of the contractor under the orders and subcontracts terminated. The Postal Service has the right, in its discretion, to settle or pay claims arising out of these terminations.

5. Settle all outstanding liabilities and claims arising out of the termination of orders and subcontracts, with the approval or ratification of the contracting officer. The contracting officer's decision is final for the purposes of this clause.

6. Transfer title to the Postal Service and deliver as directed by the contracting officer

(a) Work in process, completed work, and other material produced as a part of or acquired for the work terminated; and

(b) The completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would have been furnished to the Postal Service.

7. Use its best efforts to sell as directed by the contracting officer any property of the types referred to in subparagraph b.6 above, provided that the contractor may acquire property under the conditions prescribed and at prices approved by the contracting officer, and the proceeds of any such transfer will be applied in reduction of any payments to be made by the Postal Service to the contractor, or be credited to the price or cost of the work covered by this contract, or be paid in any manner directed by the contracting officer.

8. Complete performance of the work not terminated.

9. Take any action that may be necessary, or that the contracting officer may direct, for protecting and preserving any property related to this contract that is in the possession of the contractor and in which the Postal Service has or may acquire an interest.

c. At any time, the contractor may submit to the contracting officer a list, certified as to quantity and quality, of termination inventory not previously disposed of and may request the Postal Service to remove inventory items or enter into a storage agreement covering them. Not later than 15 days after receiving this request, the Postal Service will accept title to the items and remove them or enter into a storage agreement. The list will be subject to verification by the contracting officer upon removal of the items or, if the items are stored, within 45 days after submission of the list.

d. After termination, the contractor must submit to the contracting officer a termination claim in the form and with the certification prescribed by the contracting officer. The claim must be submitted promptly, but in no event more than one year after the effective date of termination, unless an extension in writing is granted by the contracting officer. However, if the contracting officer determines that the facts justify such action, any termination claim may be received and acted upon at any time after the one-year period. Upon failure of the contractor to submit a termination claim within the time allowed, the contracting officer may determine, on the basis of the information available, the amount, if any, due the contractor by reason of the termination and will pay that amount.

e. If the contractor and the contracting officer fail to agree on the amount to be paid to the contractor by reason of the termination, the contracting officer will determine the amount, if any, due the contractor and pay the contractor the contract price for completed and accepted supplies or services not previously paid for (adjusted for any saving of freight and other charges) and, with respect to all other contract work performed before the effective date of termination, the total of –

1. The cost of such work;

2. The cost of settling and paying claims arising out of the termination of work under subcontracts; and

3. A profit on e.l above, determined by the contracting officer to be fair and reasonable; but if it appears that the contractor would have sustained a loss on the entire contract had it been completed, no profit will be included, and an appropriate adjustment will be made reducing the amount of the settlement to reflect the indicated rate of loss.

f. The total sum to be paid to the contractor may not exceed the total contract price as reduced by the payments made and as further reduced by the contract price of work not terminated. Except for normal spoilage, and except to the extent that the Postal service expressly assumed the risk of loss, there will be excluded from the amounts payable to the contractor under paragraph e above, the fair value, as determined by the contracting officer, of property destroyed, lost, stolen, or damaged so as to become undeliverable to the Postal Service, or to a buyer.

g. Any determination of costs will be governed by the cost principles set forth in chapter 5 of the USPS Procurement Manual in effect on the effective date of termination.

h. The contractor has the right of review under the Claims and Disputes clause of any determination made by the contracting officer under paragraph d or e above, except that, if the contractor has failed to submit its termination claim within the time provided in paragraph d above and has failed to request an extension of time, there may be no right of review.

i. In arriving at the amount due the contractor, there must be deducted

1. All unliquidated advance or other payments to the contractor applicable to the terminated portion of this contract;

2. Any claim that the Postal Service may have against the contractor under this contract; and

3. The agreed price for or the proceeds of sale of materials, supplies, or other things kept by the contractor or sold and not recovered by or credited to the Postal Service.

j. If the termination is partial, the contractor must file with the contracting officer a request in writing for an equitable adjustment of the price specified in the contract relating to the continued portion of the contract.

k. The Postal Service may, under the terms and conditions it prescribes, make partial payments and payments on account in connection with the terminated portion of this contract whenever the aggregate of these payments is within the amount to which the contractor is entitled.

I. Unless otherwise provided in this contract, or by statute, the contractor, for a period of three years after final settlement, must preserve and make available to the Postal Service at all reasonable times at the contractor's office, all books, records, documents, and other evidence bearing on the costs and expenses of the contractor under this contract and relating to the work terminated. If the contracting officer approves, photographs, microphotographs, or other authentic reproductions may be maintained instead of the originals.

**H.6 TERMINATION FOR DEFAULT (Clause B-13) (October 1987)**

a. 1. The Postal Service may, subject to paragraphs c and d below, by written notice of default to the contractor, terminate this contract in whole or in part if the contractor fails to

(a) Complete the requirements of this contract within the time specified in the contract or any extension;

(b) Make progress, so as not to endanger performance of this contract (but see paragraph d below); or

(c) Perform any of the other provisions of this contract (but see subparagraph a.2 following).

2. The Postal Service's right to terminate this contract under a.I(b) and (c) above may be exercised if the contractor does not cure the failure within ten days (or more if authorized in writing by the contracting officer) after receipt of the notice from the contracting officer specifying the failure.

b. If the Postal Service terminates this contract in whole or in part, it may acquire similar supplies or services or complete the work, and the contractor will be liable to the Postal Service for any excess costs. However, the contractor must continue the work not terminated.

c. Except for defaults of subcontractors at any tier, the contractor is not liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the contractor.

d. If the failure to perform is caused by the default of a subcontractor at any tier, and if the cause of the default is beyond the control of both the contractor and subcontractor, and without the fault or negligence of either, the contractor is not liable for any excess costs for failure to perform, unless the subcontracted supplies or services were obtainable from other sources in sufficient lime for the contractor to meet the required delivery schedule.

e. If this contract is terminated for default, the Postal Service may require the contractor to transfer title and deliver to the Postal Service, as directed by the contracting officer, any completed supplies, partially completed supplies, and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights that the contractor has specifically produced or acquired for the terminated portion of this contract. Upon direction of the contracting officer, the contractor must also protect and preserve property in its possession in which the Postal Service has an interest.

f. The Postal Service will pay the contract price for completed items delivered and accepted. The contractor and contracting officer may agree on the amount of payment for items delivered and accepted under paragraph e above for the protection and preservation of the property. Failure to agree will be a dispute under the Claims and Disputes clause. The Postal Service may withhold from these amounts any sum the contracting officer determines to be necessary to protect the Postal Service against loss because of outstanding claims.

g. If, after termination, it is determined that the contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for convenience.

h. The rights and remedies of the Postal Service under this clause are in addition to any other rights and remedies provided by law or under this contract.

## H.7 EXAMINATION OF RECORDS (Clause B-14) (October 1987)

a. The Postal Service and its authorized representatives will, until three years after final payment under this contract, or for any shorter period specified for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the contractor involving transactions related to this contract.

b. The contractor agrees to include in all subcontracts under this contract a provision to the effect that the Postal Service and its authorized representatives will, until three years after final payment under the subcontract, or for any shorter specified period for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the subcontractor involving transactions related to the subcontract. The term "subcontract" as used in this clause excludes:

1. Purchase orders; and

2. Subcontracts for public utility services at rates established for uniform applicability to the general public.

## H.8 ADVERTISING OF CONTRACT AWARDS (Clause B-25) (June 1988)

Except with the contracting officer's prior approval, the contractor agrees not to refer in its commercial advertising to the fact that it was awarded a Postal Service contract or to imply in any manner that the Postal Service endorses its products.

## H.9 ORDER OF PRECEDENCE (Clause B-29) (September 1995/Interim)

Any inconsistency in the provisions of a solicitation, a contract awarded under solicitation, or a contract awarded without the issuance of a written solicitation will be resolved by giving precedence in the following order:

a. The Schedule (Part 1 of this contract).

b. The solicitation provisions and instructions.

c. Special clauses and general clauses.

d. Provisions contained in attachments or incorporated by reference.

**H.10 GRATUITIES (Clause 1-5) (October 1987)**

a. The Postal Service may terminate this contract for default if, after notice and a hearing, the Postal Service Board of Contract Appeals determines that the contractor or the contractor's agent or other representative -

1. Offered or gave a gratuity (such as a gift or entertainment) to an officer or employee of the Postal Service; and

2. Intended by the gratuity to obtain a contract or favorable treatment under a contract.

b. The rights and remedies of the Postal Service provided in this clause are in addition to any other rights and remedies provided by law or under this contract.

**H.11 CONTINGENT FEES (Clause 1-6) (October 1987)**

a. The contractor warrants that no person or selling agency has been employed or retained to solicit or obtain this contract for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide, established commercial or selling agencies employed by the contractor for the purpose of obtaining business.

b. For breach or violation of this warranty, the Postal Service has the right to annul this contract without liability or to deduct from the contract price or otherwise recover the full amount of the commission, percentage, brokerage fee, or contingent fee.

**H.12 POSTAL SERVICE PROPERTY--FIXED PRICE (Clause 2-11) (October 1987)**

a. Postal Service-Furnished Property

1. The Postal Service will deliver to the contractor, for use in conjunction with and under the terms of this contract, the property described as Postal Service-furnished property in the Schedule or specifications, together with any related information the contractor may request that may reasonably be required for the intended use of the property (hereinafter referred to as "Postal Service-furnished property").

2. The contract delivery or performance dates are based on the expectation that Postal Service-furnished property suitable for use (except for property furnished "as is") will be delivered at the times stated in the Schedule or, if not so stated, in sufficient time to enable the contractor to meet these delivery or performance dates. If Postal Service-

furnished property is not delivered by these times, the contracting officer will, upon timely written request from the contractor, make a determination of any delay occasioned by the contractor and will equitably adjust the delivery date or performance dates or the contract price, or both, and any other contractual provisions affected by the delay, in accordance with the Changes clause.

3. Except for Postal Service-furnished property furnished "as is", if the Postal Service-furnished property is received in a condition not suitable for its intended use, the contractor must notify the contracting officer and (as directed by the contracting officer) either (a) return it at the expense of the Postal Service or otherwise dispose of it, or (b) effect repairs or modifications. Upon the completion of (a) or (b), the contracting officer (upon written request from the contractor) will equitably adjust the delivery or performance dates or the contract price, or both, and any other affected contractual provision, in accordance with the changes clause.

4. The provisions for adjustment in this paragraph a are exclusive, and the Postal Service is not liable to suit for breach of contract by reason of any delay in delivery of Postal Service-furnished property or its delivery in a condition not suitable for its intended use.

b. Changes in Postal Service-Furnished Property

1. By written notice, the contracting officer may (a) decrease the property provided or to be provided by the Postal Service under this contract, or (b) substitute other Postal Service-owned property for the property to be provided by the Postal Service, or to be acquired by the contractor for the Postal Service under this contract. The contractor must promptly take any action the contracting officer may direct regarding the removal and shipping of the property covered by this notice.

2. In the event of any decrease in or substitution of property pursuant to subparagraph b.1 above, or any withdrawal of authority to use property provided under any other contract or lease, which property the Postal Service had agreed in the Schedule to make available for the performance of this contract, the contracting officer, upon the contractor's written request (or - if substitution causes a decrease in the cost of performance - on the contracting officer's own initiative) will equitably adjust any contractual provisions affected by the decrease, substitution, or withdrawal, in accordance with the Changes clause.

c. Title. Title to all Postal Service-furnished property remains in the Postal Service. To define the obligations of the parties under this clause, title to each item of facilities, special test equipment, or special tooling (other than that subject to a special tooling clause) acquired by the contractor for the Postal Service under this contract will pass and vest in the Postal Service when its use in the performance of this contract begins, or upon payment for it by the Postal Service, whichever is earlier, whether or not title was previously vested. All Postal Service-furnished property, together with all property acquired by the contractor, title to which vests in the Postal Service under this paragraph c, is subject to the provisions of this clause and is hereinafter collectively referred to as "Postal Service property." Title to Postal Service property in not

affected by its incorporation into or attachment to any property not owned by the Postal Service, nor does it become a fixture or lose its identity as personal property by being attached to any real property.

d. Use of Postal Service Property. The Postal Service property, unless otherwise provided in this contract or approved by the contracting officer, must be used only for performing this contract.

e. Utilization, Maintenance, and Repair of Postal Service property. The contractor must maintain and administer, in accordance with sound industrial practice, a program or system for the utilization, maintenance, repair, protection, and preservation of Postal Service property until it is disposed of in accordance with this clause. If any damage occurs to Postal Service property, the risk of which has been assumed by the Postal Service under this contract, the Postal Service will replace the items or the contractor must make such repairs as the Postal Service directs; provided, however, that if the contractor cannot effect these repairs within the time required, the contractor will dispose of the property in the manner directed by the contracting officer. The contract price includes no compensation to the contractor for performing any repair or replacement for which the Postal Service is responsible, and an equitable adjustment will be made in any contractual provisions affected by such repair or replacement made at the direction of the Postal Service, in accordance with the Changes clause. Any repair or replacement for which the contractor is responsible under the provisions of this contract must be accomplished by the contractor at the contractor's own expense.

f. Risk of Loss. Unless otherwise provided in this contract, the contractor assumes the risk of, and becomes responsible for, any loss or damage to Postal Service property provided under this contract upon its delivery to the contractor or upon passage of title to the Postal Service as provided in paragraph c above, except for reasonable wear and tear and except to the extent that it is consumed in performing this contract.

g. Access. The Postal Service, and any person designated by it, must at reasonable times have access to premises where any Postal Service property is located, for the purpose of inspecting it.

h. *Final Accounting for and Disposition of Postal Service property. Upon contract* completion, or at such earlier dates as may be fixed by the contracting officer, the contractor must submit, in a form acceptable to the contracting officer, inventory schedules covering all items of Postal Service property not consumed in performing this contract (including any resultant scrap) or not previously delivered to the Postal Service, and will prepare for shipment, deliver f.o.b. origin, or dispose of this property, as the contracting officer may direct or authorize. The net proceeds of the disposal will be credited to the contract price or will be paid in such a manner as the contracting officer may direct.

i. Restoration of Contractor's Premises and Abandonment. Unless otherwise provided in this contract, the Postal Service -

1. May abandon any Postal Service property in place, whereupon all obligations of the Postal Service regarding it will cease; and