No. 98-868C
(Judge Allegra)

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**L.P. CONSULTING GROUP, INC.**

**Plaintiff,**

**v.**

**THE UNITED STATES**

**Defendant.**

# PLAINTIFF'S APPENDIX OF EXHIBITS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Brian Cohen, Esq.
BELL, BOYD & LLOYD PLLC
1615 L Street, N.W., Suite 1200
Washington, DC 20036
(202) 955-6836 tel.
(202) 835-4117 fax.
Attorney of Record for Plaintiff
L.P. Consulting Group, Inc. Intervenor

Of Counsel:

Lawrence M. Prosen, Esq.
BELL, BOYD & LLOYD PLLC
1615 L Street, N.W., Suite 1200
Washington, DC 20036
(202) 955-6830 tel.
(202) 835-4127 fax.

# Table of Contents of Appendix


| | Document Title | Page No. |
|---|---|---|
| 1. | Affidavit of Richard A. Battaglin | 1 |
| 2. | Excerpts from Purchasing Manual | 12 |
| 3. | February 25, 1995 L.P. Letter to Rigsby | 18 |
| 4. | June 3, 1996 USPS Authorities & Limitations Letter | 21 |
| 5. | June 6, 1996 USPS Authorities & Limitations Letter | 23 |
| 6. | September 20, 1996 LP Letter to Gunlogson | 26 |
| 7. | December 9, 1996 Work Order for St. David to LP | 27 |
| 8. | April 30, 1997 L.P. Letter to Rigsby | 28 |
| 9. | May 29, 1997 L.P. Letter to Rigsby | 29 |
| 10. | June 4,1997 USPS Letter to L.P | 30 |
| 11. | Battaglin Depo. Ex. 65 – Spreadsheet | 32 |
| 12. | Battaglin Depo. Ex. 94 – Damages Summary | 36 |
| 13. | Jacobsen Depo. Ex. 1 – USPS OIG Fernandez Suspension/Debarment Report | 37 |
| 14. | Excerpts from the Deposition of Richard A. Battaglin | 113 |
| 15. | Excerpts from the Deposition of Robert A. Rigsby | 194 |
| 16. | Excerpts from the Deposition of Samuel W. Southern | 218 |
| 17. | Excerpts from the Deposition of Jesse McNabb | 248 |
| 18. | Excerpts from the Deposition of Andrew M. Fernandez | 260 |

# AFFIDAVIT OF RICHARD A. BATTAGLIN

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **L.P. CONSULTING GROUP, INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 98-868C** |
| | ) | **(Judge Allegra)** |
| **THE UNITED STATES** | ) | |
| **Defendant.** | ) | |

**AFFIDAVIT OF RICHARD A. BATTAGLIN**

I, Richard A. Battaglin, under penalty of perjury, do hereby state that the following statements are true and correct to the best of my knowledge and belief:

1. I am at least 18 years of age and possess first-hand, direct knowledge regarding the averments, facts and statements set forth herein.

2. I am currently, and have been since its 1993 formation, the secretary and treasurer of plaintiff L.P. Consulting Group, Inc. ("LP"), with an office located at 10401 South 75th Avenue, Palos Hills, IL 60465.

3. I have extensive experience in building construction as well as United States Postal Service ("USPS") construction contracts having worked for the USPS as a contract employee for the USPS at the Field Real Estate and Building Office, Illinois Central Region between 1985 and 1988. In that capacity, my job description included developing scopes of work to be issued to IQC contractors, and developing the unit items/prices for solicitation at various facilities. During the course of my employment with the USPS as project manager/architect/engineer, I was involved in approximately twenty (20) indefinite quantity contracts, involving at least 300 individual work orders. In fact, the work that I performed for the USPS involved contracts in which work such as that alleged in the underlying IQC contracts was performed.

4. In 1993, after I had resigned from the USPS, I opened L.P. Consulting Group, Inc. with my wife, Linda Battaglin. LP is a licensed Illinois corporation which performs general construction contracting services in, among other places, Illinois, Wisconsin, Michigan, and Indiana.

5. Since its inception, one of LP's primary sources of business has been the bidding on and receipt of awards for USPS renovation, repair and Americans with Disabilities Act–compliance contracts. LP has been awarded no less than twelve (12) indefinite quantity contracts by the USPS since approximately 1993, for the region consisting of the Great Lakes Area.

6. In total, LP has performed close to 200 work orders under those 12 IQC contracts, including the award of numerous repair and alteration type projects covering the last 12 years, similar in nature to the 12 work orders which constitute the basis of this law suit (the "WOs").

7. In May 1994, the USPS awarded LP an indefinite quantity contract (No. 162640-94-B-0083) which initially contained a two-year performance term (the "94 IQC"). App. 41-49.[1]

8. LP's 94-B-0083 contract was subsequently extended through modification for an additional one-year period of time.

9. Subsequently, LP competed for, and was awarded two indefinite quantity contracts (the "IQCs") by the USPS, numbered 162640-96-B-0094 and 162640-96-B-0098, respectively. App. 52-153, 155-256. These contracts were executed and entered into by the USPS on June 6, 1996, and June 3, 1996, respectively. App. 52, 54, 155, 157.

---

1 All references to "App." refer to the documents contained in the Government's Appendix as part of its Motion for Summary Judgment. All references to "LP App. ____" refer to LP Consulting Group's Appendix as part of its Opposition and Cross Motion for Summary Judgment, of which this Declaration is a part.

10. The 94 IQC was the predecessor to the 1996 IQCs. In fact, I was verbally told by contracting officer Robert Rigsby and one of this Architect/Engineer, Project Managers, Samuel Southern, to perform site visits and submit work orders on a number of projects at the end of the 94 IQC's term with the verbal understanding that those work orders would be performed under the follow-on IQCs.

11. The current lawsuit seeks recovery of damages sustained by LP for, among other things, the Government's breaches of implied-in-fact contracts. More particularly, and as discussed further below, LP filed two claims, one dated March 3, 1998, and one dated April 13, 1998, seeking a total amount of recovery of $135,377.00. The first claim addressed the following projects:

1. The Berwick Modular Post Office;
2. The Hoopeston handicapped ramp;
3. The Downers Grove dock enclosure; and
4. The Brookfield ramp and dock enclosure.

App. 32-34. That claim was subsequently resubmitted with a Contract Disputes Act certification on April 13, 1998. App. 26.

The second April 13, 1998, claim sought recovery for the following projects:

5. Aroma Park interior lobbies and building renovation;
6. Beaverville lobby and building renovation;
7. Bradley concrete ramp, lobby and building renovation;
8. East Lynn building renovation
9. Momence concrete ramp and lobby renovation
10. Papineau interior renovation and concrete ramp;
11. St. Anne concrete, asphalt and interior renovations; and

12. Union Hill interior and exterior ramps.

App. 29-31. Amended certifications were submitted with the claims to the contracting officer, Mr. Robert Rigsby, by letter dated August 11, 1998. App. 26-28.

12. The current action seeks recovery of damages based upon the formation of a series of implied-in-fact contracts arising out of an ongoing course of conduct between LP and the USPS extending over the course of several years.

13. The 12 WOs located in the Government's appendix at 584 *et seq*., constitute the 12 WOs which are the subject of the current litigation.

14. During the more than 10 years during which LP has performed indefinite quantity contracts for the USPS, it has been routine for the USPS, either through the contracting officer on a given contract, or his subordinates, whether they be architects/engineers or project managers, to contact LP, direct LP to travel to a given rural postal facility, meet with either the postmaster and/or project manager/A/E and for LP to self-perform a detailed field survey and develop a scope of work/work order for that project. Thereafter, the work order would be submitted either during the course of the site visit or immediately thereafter by LP to the USPS for its review and issuance of a formal/final work order.

15. It has always been my understanding and interpretation of both the two 1996 IQCs and their predecessor 1994 IQC contracts, that these contracts did not require LP to self-perform or otherwise develop scopes of work, pricing or work orders. Instead, all of the language in the IQCs is couched in terms that the Government will develop and provide scopes of work to the contractor.

16. That notwithstanding, and despite the total lack of an express contractual requirement for LP to perform such work, on the two 1996 and one 1994 IQC contracts (which 1994 contract was the predecessor and was continued in the 1996 contracts by the parties' course

of conduct), and in addition to the twelve subject WOs, LP was directed to perform approximately 96 site visits and submit 96 work orders to the Government. On only two projects which LP performed under the IQCs, those being the La Salle roof and the Princeton floor replacement, did the USPS ever self-develop a scope of work. With those two exceptions, on every other project which LP performed under the IQCs, every single work order which LP received arose out of the USPS personnel contacting LP and instructing LP to perform a site visit and develop a work order. Such work order was then submitted and approved by the contracting officer/USPS.

17. With the exception of the 12 WOs which are the subject of the current action, on every other occasion under the IQCs, the course of conduct was clear: The Government would contact LP and direct LP to perform a field survey at a given facility. On each of those occasions, including the 12 subject WOs, LP would perform the site visit, typically with a USPS project manager or other subordinate of Mr. Rigsby, the contracting officer, and the USPS would thereafter take the LP scope of work and issue a "formal" work order in response thereto.

18. More particularly, during this time LP was contacted either directly by contracting officer Robert Rigsby or his subordinate USPS Project Managers, including Mr. Samuel Southern, Bruce Rothermel, Paul Steiner, Jesse McNabb and Ms. Lois Gunlogson (the "Project Managers"), directing LP to visit USPS facilities that contacting officer Rigsby directed LP to visit.

19. Each time LP received such a contact from one of the Project Managers, directing LP to perform facility site visits, it was LP's reasonable understanding that the USPS Project Manager was either directly authorized by Mr. Rigsby to make such a direction to LP, that the project manager was acting with actual authority or that their actions were otherwise being ratified by Mr. Rigsby.

20. These Project Managers assisted LP in obtaining access to the facility and acted as mediators between LP and the facility Postmasters.

21. As a result of the Project Manager's and/or Mr. Rigsby's instructions, LP would develop a scope of work, provide sketches, negotiate quantities, unit items and construction completion time at or immediately after the subject site visit, produce a draft work order, and submit it to the Project Manager and/or the facility Postmaster.

22. When I received each of these telephone calls and was instructed by Mr. Rigsby or the USPS Project Managers to perform these site visits and develop and submit a WO, I expected and understood that LP would thereafter be given the work for which LP developed the WO.

23. As relates to the current action, this was the routine for 96 work orders under the subject IQC contracts and the predecessor 1994 IQC contract. Out of a total of 98 work orders issued under the IQCs, only two were produced solely by Mr. Rigsby's office themselves, both by Mr. McNabb, for the LaSalle Roof and Princeton Floor Replacement. All other work orders awarded to LP, as well as the subject 12 WOs in this law suit, were prepared by LP at the direction of USPS authorized personnel.

24. With particular regard to the 12 WOs, when LP was directed by the USPS to meet at the 12 facilities in the subject claim, LP, the Project Managers and the Postmasters went through the usual routine of LP producing the scope of work.

25. Based on the ongoing, continuous procedures established on the previous 96 facilities, LP reasonably anticipated issuance of each WO.

26. LP was contacted by authorized USPS personnel on each and every one of the subject 12 projects to perform a site visit with USPS personnel at each of the facilities, and tasked with developing a scope of work, preparing a work order and submitting that work order

for approval to the USPS. The following chart synopsizes the applicable information for each of the subject projects:

| POST OFFICE NAME | DATE OF SITE VISIT | USPS ORDERED LP TO PERFORM SITE VISIT? | USPS PERSONNEL WHO MET LP AT FACILITY | LP WORK ORDER PREPARED (APP. NO) |
|---|---|---|---|---|
| Hoopeston | 11/14/95 | Yes | Paul Steiner | Yes (App. 654) |
| Momence | 5/24/96 | Yes | Sam Southern | Yes (App. 598) |
| St. Anne | 5/24/96 | Yes | Sam Southern | Yes (App. 584) |
| East Lynn | 10/17/95 | Yes | Paul Steiner/Jesse McNabb | Yes |
| Aroma Park | 9/95 | Yes | Paul Steiner/Catherine Marks | Yes (App. 618) |
| Papineau | 9/95 | Yes | Paul Steiner/Catherine Marks | Yes (App. 626) |
| Beaverville | 9/95 | Yes | Paul Steiner | Yes (App. 615) |
| Union Hill | 8/15/95 | Yes | Paul Steiner/Catherine Marks | Yes (App. 612) |
| Bradley | 9/95 | Yes | Paul Steiner | Yes (App. 629) |
| Berwick | 9/17/96 | Yes | Bruce Rothermal | Yes (App. 639) |
| Downers Grove | | Yes | Jesse McNabb | Yes (App. 652) |
| Brookfield | 8/96 | Yes | Jesse McNabb | Yes (App. 643) |

The majority of this information is further reflected in the document appended as LP App. 29, which was prepared by me. The Notes contained thereon, were made by me in 1997, while my recollection of these site visits was still clear, and denote the date of the site visit and the initials of the USPS personnel with whom I met.

27. Curiously during this same time several other work orders were issued to LP through the same process, including the following projects: Rossville, Sugar Grove, Millbrook, Wellington, and South Holland.

28. When I followed up with the USPS on the 12 subject facilities, I was informed by Mr. Rigsby that Mr. Fernandez A/E was suddenly in the process of soliciting them competitively.

29. LP made repeated attempts to be included in that competitive process.

30. For reasons never explained by USPS, LP was summarily excluded from the solicitation process for those 12 projects.

31. Apparently, only the contractors handpicked by Mr. Rigsby were permitted to bid. App. at 395-96.

32. In late April 1997 for reasons unknown to LP, Mr. Rigsby permitted LP to bid the Paxton facility, apparently after having already gone through a best and final offer phase to determine the successful offeror. Thereafter, Mr. Rigsby awarded the project to LP.

33. Based upon the Paxton award, LP asked Mr. Rigsby for, and received, the bid package for the Hoopeston project.

34. LP provided an offer, as was the practice on Paxton before, which came in substantially lower than the next lowest bidder. Again for reasons unknown to LP, Mr. Rigsby summarily rejected LP's bid on this project.

35. When LP became aware that several of the subject facilities had been solicited, LP protested to Mr. Rigsby. App. 28.

36. Thereafter, LP was no longer contacted by the USPS to produce scopes of work or perform work under its IQCs, without the USPS providing any explanation, excuse or reason.

37. This sudden change in the USPS's contract administration and conduct led LP to believe that there was something different happening in the USPS's regional solicitation process.

38. LP was contacted and interviewed by an USPS Office of Inspector General Agent Mr. Carl Purichelli to discuss possible irregularities with Mr. Rigsby and the A/E Mr. Fernandez.

This OIG investigation resulted in the government's repeated requests that the Court of Federal Claims stay this case citing, among other things, Grand Jury privilege. LP App. 37 *et seq.*

39. The testimony of Messrs. Fernandez, McNabb, Southern, and Rigsby reveal that only Mr. Fernandez ever met with the Grand Jury or were interviewed by the OIG. LP App. 208, Rigsby Depo. 84; LP App. 237, Southern Depo. 81; LP App. 258A, McNabb Depo 44-45.

40. LP's lost profit damages calculation is based upon LP's historical and reasonably anticipated profit on projects of like size and complexity. LP has performed over 200 work orders, most of which were comparable to the 12 WOs which are the subject of this litigation. These percentages of profit are based upon that historical data and LP's experience in this field, for this type of work, and represent reasonable estimates on what profits LP could have reasonably expected to receive minus what its reasonable costs would have been but for the USPS's breaches of the implied-in-fact contracts. LP will produce at trial documentation which supports these percentages of profit. In addition, LP based its .85 (or 85%) multiplier upon which it successfully competed for, and was awarded the IQCs, upon that historical analysis, such that LP could perform the work (based upon the USPS-prepared and provided unit prices) and still earn a reasonable profit.

41. LP has never received any notice of termination for default or convenience on any USPS project, including the 94 IQC or 1996 IQCs.

42. It was always my understanding and expectation that the USPS Procurement Manual and Purchasing Manual and their applicable regulations would require that LP be provided with at least the opportunity to compete for the subject work orders and for comparable work which was formally competed.

43. All documents included in this appendix produced by me or LP, are true and accurate copies of those documents.

FURTHER AFFIANT SAYETH NOT.

I Declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief..

Executed on February 18, 2005.

__________________________
Richard L. Battaglin

SUBSCRIBED AND SWORN BEFORE ME, A NOTARY PUBLIC FOR THE STATE OF ILLINOIS, COUNTY OF ___________, THIS 18TH DAY OF FEBRUARY, 2005.

______________________________
Print Name:_____________________

My Commission Expires:

43. All documents included in this appendix produced by me or LP, are true and accurate copies of those documents.

FURTHER AFFIANT SAYETH NOT.

I Declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief..

Executed on February 18, 2005.

Richard A. Battaglin

SUBSCRIBED AND SWORN BEFORE ME, A NOTARY PUBLIC FOR THE STATE OF ILLINOIS, COUNTY OF COOK, THIS 18TH DAY OF FEBRUARY, 2005.

"OFFICIAL SEAL"
ILENE W IGLARSH
Notary Public State of Illinois
My Commission Expires April 6, 2008

Print Name: ILENE W IGLARSH

My Commission Expires: April 6, 2008

# EXCERPTS FROM PURCHASING MANUAL

UNITED STATES
POSTAL SERVICE.

# USPS Procurement Manual

Publication 41

Transmittal Letter 8, July 12, 1995

A. **Explanation.** The Procurement Manual is published and maintained by Policies, Planning and Diversity under the authority of the Vice President, Purchasing and Materials. It represents the Postal Service's official procurement policy.

B. **Material Transmitted.** This Transmittal Letter 8 is a complete revision. It replaces all previous editions, although users are encouraged to retain copies of all transmittals for a complete history of PM policy changes. All changes recommended by the Procurement Policy Committee (PPC) and approved by the Vice President, Purchasing and Materials, since the last Transmittal Letter (TL-7, 6/30/93), including those published previously in the Postal Bulletin, are contained in this revision. This transmittal also contains a number of changes resulting from the Postmaster General's delegation of all contracting and policy-development authority to the Vice President, Purchasing and Materials, and administrative and editorial changes resulting from this consolidation of authorities. All substantive changes are described in the Summary of Changes and are indicated in the text by change bars.

C. **Other Directives.** The changes in this Transmittal Letter 8 concern areas addressed in other purchasing-related directives such as handbooks AS-707, *Procurement Handbook*, RE-14, *Design and Construction Handbook*, and PO-513, *Mail Transportation Procurement Handbook*. If material in this transmittal letter conflicts with material in these handbooks, or any other purchasing-related directive, the material contained in this Transmittal Letter prevails.

D. **Distribution and Requisitioning**

1. **Initial Distribution.** Procurement Manual Transmittal Letters are automatically distributed to all USPS purchasing offices.
2. **Requisitioning Copies.** Other USPS organizations, and purchasing organizations requiring additional copies, may submit requisitions in accordance with chapter 1, section 2.

E. **Sale to the Public.** The PM is available to the public through the

SUPERINTENDENT OF DOCUMENTS
GOVERNMENT PRINTING OFFICE
941 N CAPITOL STREET NE
WASHINGTON DC 20402-9371
PHONE (202) 512-1800

F. **Effective Date.** The changes contained in this Transmittal Letter 8 are effective July 12, 1995.

*D. C. Porter*
*Vice President*
*Purchasing and Materials*

1. The basis for evaluation;
2. An analysis of the acceptable and unacceptable proposals, including an assessment of each offeror's ability to accomplish the solicitation requirements;
3. A narrative statement of the major strengths and weaknesses of the various proposals;
4. A summary, matrix, or quantitative ranking of each proposal in relation to the best rating possible; and
5. A summary of findings, as well as each evaluator's independent findings.

4.2.4.d *Only One Proposal.* If only one proposal is received in response to a competitive solicitation, it may be evaluated and considered for award.

## 4.2.5 Contractor Selection Award

4.2.5.a *Definitions*

1. *Selection.* The selection of an offeror for contract award, with or without discussion of proposals, or for final negotiations leading to contract award following discussion of proposals.
2. *Clarification.* Communication with an offeror for the sole purpose of eliminating minor irregularities, informalities, or apparent clerical mistakes in proposal.
3. *Discussion.* Any oral or written communication between the Postal Service and an offeror (other than communications conducted for the purpose of clarification) that is initiated by the Postal Service and (a) involves information essential for determining the acceptability of a proposal or (b) provides the offeror an opportunity to revise its proposal.
4. *Negotiation.* The process of reaching agreement on final contract terms and conditions with the offeror selected.

4.2.5.b *General*

1. The contract will be awarded to the offeror whose proposal offers the best value to the Postal Service, considering the price, price-related and other evaluation factors identified in the solicitation.
2. The contracting officer must make the contractor selection decision, and is responsible for trade-off judgments involving cost and other evaluation factors. Contractor selection must be made in accordance with the solicitation's stated evaluation factors and must be documented. The documentation must include a determination by the contracting officer that the price is fair and reasonable, and the basis for determination.
3. The contracting officer must consider any rankings and ratings, and any recommendations if specifically requested, prepared by evaluation and advisory groups. However, the findings of the technical and price evaluators are only guides for the final selection decision, and must be presented in sufficient depth to permit the intelligent weighing of alternatives and the making of trade-off judgements by the contracting officer.
4. The supporting documentation prepared for the selection decision must show the relative differences among proposals and their strengths, weaknesses, and risks in terms of the evaluation factors. The supporting documentation must include the basis and reason for the decision.

5. Award may be made only after the contracting officer makes an affirmative determination of responsibility (see 3.3.1).

4.2.5.c *Discussions*

1. A contractor may be selected and award made with or without discussing proposals with the offerors, depending upon the circumstances of the purchase, such as the complexity of the requirement, the extent of competition, and the quality of the proposals received (see paragraph f below).
2. Whenever price or price-related factors are the most important or the only evaluation factors, award will normally be made without discussions if adequate competition exists, to ensure that offerors submit their most favorable proposals at the outset. However, even when award will be based on price alone, discussions may be held as necessary to determine that the price is fair and reasonable.
3. The decision to make an award without discussions, based on initial proposals, or to make an award based on revised proposals following written or oral discussions, must be made by the contracting officer.

4.2.5.d *Cost-Reimbursement Contracts.* In awarding a cost-reimbursement contract, the cost proposal is not controlling, since advance estimates of cost may not be valid indicators of final actual costs. There is no requirement that cost-reimbursement contracts be awarded on the basis of lowest proposed cost, lowest proposed fee, or lowest total proposed cost plus fee. Proposed costs must be evaluated for realism in terms of the work to be done. The award of cost-reimbursement contracts primarily on the basis of estimated costs may encourage the submission of unrealistically low estimates and increase the likelihood of cost overruns. The primary consideration must be which offeror offers the best value to the Postal Service as determined by evaluation of proposals according to the established evaluation factors.

4.2.5.e *Rejection of All Proposals.* All proposals received must be rejected if the contracting officer determines that:

1. Prices proposed are unreasonable and discussions have not resulted in a reasonable price or prices;
2. All proposals are technically unacceptable;
3. Proposals were not independently arrived at in open competition, were collusive, or were submitted in bad faith (see 1.8.2 for required reports); or
4. The solicitation must be cancelled as provided in 4.1.2.j.

4.2.5.f *Award Without Discussions*

1. Award may be made without discussion of proposals whenever the existence of adequate competition or price analysis (see 5.3.3) makes it clear that acceptance of the most favorable initial proposal will result in a reasonable price. (See A.2.3, which requires that Provision A-9, *Award Without Discussions*, be included in all solicitations.)
2. Whenever there is uncertainty as to the pricing, technical, or other aspects of the most favorable initial proposal, award may not be made without discussions, unless the uncertainty can be resolved by clarification. Discussions must be held under such circumstance even if the solicitation contains Provision A-19, *Notice of Intent to Award Without Discussions* (see A.2.3.b.4).

# Chapter 6 Contract Administration

## SECTION 1 GENERAL

### 6.1.1 Responsibilities

6.1.1.a *Contracting Officer.* While contract administration requires the efforts and skills of many people, the contracting officer is ultimately responsible for all contract administration functions.

6.1.1.b *Contracting Officer's Representatives*

1. The contracting officer may appoint in writing one or more representatives to perform any administrative function that does not involve a change in the cost or duration of contract performance (see 1.6.2.e).
2. Representatives of the contracting officer may not themselves appoint representatives without the prior written approval of the contracting officer.
3. Representatives of the contracting officer may not perform any function or exercise any authority not specifically delegated by the contracting officer.
4. The contracting officer must notify the contractor in writing of the appointment of any representative or representatives, specifying the authority delegated and cautioning the contractor to notify the contracting officer any time the contractor believes the representative is exceeding the authority granted by the delegation.

6.1.1.c *Relationship Between Postal Service and Contractor Representatives*

1. The objective of any purchase action is performance of the contract objectives, not control of the contractor's business. Postal Service administrative personnel should devote their efforts to tasks associated with that objective, such as quality assurance, cost monitoring, and other activities intended to ensure compliance with contract terms. Except when required by contract terms, they may not direct the contractor's management activities or intervene to supervise, train, or discipline contractor personnel.
2. Disputes with contractors are an obstacle to contract performance. Contracting officers and their supporting staffs should seek to resolve contract disputes through a businesslike approach that promotes efficiency and cost-effectiveness and enforces the Postal Service's interests.

### 6.1.2 Contract Administration Functions

6.1.2.a The contracting officer is responsible for:

1. Ensuring timely contract performance in accordance with the contract specifications and clauses, with due regard to the need for quality and the legal rights of the parties;

2. Ensuring that the contractor is compensated promptly and in proper amount consistent with the protection of Postal Service interests;
3. Making changes, carrying out terminations, and taking other necessary actions outside the normal course of contract performance;
4. Making decisions and determinations that affect contract performance fairly, impartially, and in accordance with Postal Service policy and applicable law; and
5. Maintaining complete documentation of contract performance or nonperformance to protect the Postal Service's rights.

6.1.2.b The specific functions required to be performed under any contract are determined by the contract clauses and the particular contract situation, as well as the policies in this manual. The contracting officer and each representative should together carefully review the contract immediately after award to determine the functions to be performed and the person or persons responsible for performance.

## SECTION 2 CONTRACT PERFORMANCE

### 6.2.1 Postaward Orientation

6.2.1.a The contracting officer should hold a postaward orientation when such a session will be useful in enabling contractor and Postal Service personnel to:

1. Achieve a clear, mutual understanding of all contract requirements; and
2. Identify and resolve potential problems.

6.2.1.b In deciding whether a postaward orientation is necessary, the contracting officer should consider the:

1. Nature and extent of any preaward survey or other previous discussions with the contractor;
2. Contract type, value, and complexity;
3. Procurement history of the required supplies or services;
4. Requirements for spare parts and related equipment;
5. Urgency of the delivery schedule and relationship of the supplies or services to critical programs;
6. Length of the planned production cycle;
7. Extent of subcontracting;
8. Contractor's performance history and experience with the supplies or services;
9. Contractor's status as a small or minority business concern;
10. Safety precautions required for hazardous materials or operations;
11. Financing arrangements contemplated, such as progress payments; and
12. Whether changes are anticipated that will require special accounting for change orders (see 6.5.2.b).

# CORRESPONDENCE

**L. P. Consulting Group**

*Construction Services*

28 Feb. 1995

Mr. BobRigsby
Manager, Admin. Svcs.
Bedford Park, Il. 60499

Re : Various remodeling projects update

Dear Bob :

We are attempting to track our work and keep you aware of their various stages. The following is a review of projects pending or under construction as of 1 January.

MANTENO --100% Complete awaiting 4211b
HERSCHER-100% Complete awaiting 4211b
STEGER - 85% Complete awaiting 4211b
LANSING - 90% Complete awaiting 4211b
MAZON - 100% Complete awaiting payment

The following are under w.o. review :

BUCKINGHAM
BONFIELD
WILLOW SPRINGS
ODELL

The following have 4211b's and will begin shortly, with possible mods. :

REDDICK
KEMPTON

The following have been visited and have a scope of work approval by yourself :

ST. ANNE
AROMA PARK
GRANT PARK
CISSNA PARK
SHELDON



Smitheim DEP. EX. NO. 9
FOR I.D., AS OF 6/9/04 

Cont'd.

ESSEX
IROQUOIS

The following have been visited and have pending scope of work approval :

| | | | |
|---|---|---|---|
| BRACEVILLE | CAMPUS | VERONA | |
| SO. WILMINGTON | ASHKUM | KINSMAN | |
| CHATSWORTH | CHEBANSE | NEWARK | 604-605 Zip |
| BUCKLEY | CRESCENT CITY | LE LAND | " |
| DANFORTH | CABERY | MILLINGTON | " |
| RANKIN | CULLOM | MILBROOK | " |
| ONARGA | PAPINEAU | SERENA | " |
| THAWVILLE | BRADLEY | SOMONAUK | " |
| CLIFTON | MOMENCE | | |
| EMINGTON | KANKAKEE | | |

The following have not been visited to the best of our knowlege:

| | |
|---|---|
| CLATONVILLE | EAST LYNN |
| ELLIOTT | GIBSON CITY |
| GOODWINE | HOOPESTON |
| LUDLOW | MELVIN |
| MILFORD | PAXTON |
| ROBERTS | ROSSVILLE |
| STOCKLAND | WELLINGTON |
| WOODLAND | |

These facilities are mostly in 609 zip. There are several in 604-605 that have not been visited for handicap access or R&A work.

Several of the above facilities have equipment on site or on order. (ie; lockboxes,IRT workstations, etc.) Others need assistance in placing their orders. Be advised that ALL of the above need to be made RE-4 accessible in some form or another.

Please advise us as to what direction you would like to take. The "construction season" for outside work will begin soon and it would help all parties to plan soon.

Sincerely,

Richard Battaglin
V. President

CHICAGO FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

June 3, 1996

L. P. Consulting Group, Inc.
10401 S. 75th Avenue
Palos Hills, IL 60465-2015

SUBJECT: **Authorities and Limitations**
**Indefinite Quantity contract - General Construction Work**
**North Central Illinois Area - Zip Codes 604, 605 and 609**
**Contract No. 162640-96-B-0098**

Gentlemen:

This letter is to notify you of my designated representatives and their current authorities and limitations for administering the referenced contract.

Mr. Dennis L. Bryan, Manager, Facilities Service Office, is a Contracting Officer with contracting authority up to $5,000,000.

I, Larry Linnenburger, Architect-Engineer, am a Contracting Officer with contracting authority up to $1,000,000.

Mr. Robert A. Rigsby, Manager, Administrative Services, Central Illinois District, is a Contracting Officer with contracting authority up to $100,000.

In accordance with the contracting authorities published in the Procurement Manual, Chapter 1, "Authority Responsibility and Policy," Section 5, dated February 1, 1992, the USPS Design and Construction Handbook, Facilities Department, Procedure 01.05, "Delegation of Authority," dated June 1991, Robert A. Rigsby, Manager, Administrative Services, Central Illinois district, has been delegated Contracting Officer for complete contract administration, including issuance and administration of individual work orders according to the limitations above.

The above delegation shall be effective on the date of this letter.

The authority that I have designated to Mr. Rigsby may not be redelegated, in whole or in part, and is subject to the limitations and conditions set forth in the Procurement Manual and the Design and Construction Handbook, and all other instructions and regulations relating to Facilities Contracting.

222 SO. RIVERSIDE PLAZA, SUITE 1200
CHICAGO, IL 60606-6150
(312) 669-5990
FAX: (312) 669-5959

CHICAGO FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

June 6, 1996

L. P. Consulting Group, Inc.
10401 S. 75th Avenue
Palos Hills, IL 60465-2015

SUBJECT: **Authorities and Limitations**
**Indefinite Quantity Contract - General Construction Work**
**Peoria Illinois Area - Zip Codes 614, 615, 616 and 617**
**Contract No. 162640-96-B-0094**

Gentlemen:

This letter is to notify you of my designated representatives and their current authorities and limitations for administering the referenced contract.

Mr. Dennis L. Bryan, Manager, Facilities Service Office, is a Contracting Officer with contracting authority up to $5,000,000.

I, Larry Linnenburger, Architect-Engineer, am a Contracting Officer with contracting authority up to $1,000,000.

Mr. Robert A. Rigsby, Manager, Administrative Services, Central Illinois District, is a Contracting Officer with contracting authority up to $100,000.

In accordance with the contracting authorities published in the Procurement Manual, Chapter 1, "Authority Responsibility and Policy," Section 5, dated February 1, 1992, the USPS Design and Construction Handbook, Facilities Department, Procedure 01.05, "Delegation of Authority," dated June 1991, Robert A. Rigsby, Manager, Administrative Services, Central Illinois district, has been delegated Contracting Officer for complete contract administration, including issuance and administration of individual work orders according to the limitations above.

The above delegation shall be effective on the date of this letter.

The authority that I have designated to Mr. Rigsby may not be redelegated, in whole or in part, and is subject to the limitations and conditions set forth in the Procurement Manual and the Design and Construction Handbook, and all other instructions and regulations relating to Facilities Contracting.

222 SO. RIVERSIDE PLAZA, SUITE 1200
CHICAGO, IL 60606-6150
(312) 669-5990
FAX: (312) 669-5959

Modifications shall remain within my authority. therefore, direct all modification correspondence to me with a copy to the Contracting Officer. copies of work orders need not be sent to me.

All contract correspondence will be with or through the project manager, except as specifically provided elsewhere in your contract.

Sincerely,

Larry L. Linnenburger

Larry L. Linnenburger
Contracting Officer

cc: Manager Administrative Services
Central Illinois District

jab

**L. P. Consulting Group, Inc.**

*Construction Services*

FBE/WBE

20 Sept. 1996

Ms. Lois Gunlogson
Admin. Svcs.
6801 w. 73rd St.
Bedford Park, Il. 60499-9991

Subject : Various Modifications

We are checking the status of the following P.O. mods sent in 7-22-96 :

Essex, Melvin, Paxton, and Woodland.

Also, the following 4211b's processing for payment sent in 8-20-96 :

Milford, Essex (capital & expense).& Melvin.

We would also like to schedule site visits the week of Oct. 4th to review w.o.'s we scoped with Mr. Stiener earlier this year : Hoopeston, Roberts, Thawville,& Wellington. And with Mr. Southern : Momence & St. Anne.
At our previous pace we can complete all the above by 12-9-96.( Assuming a start date of 10-7-96.)

Attached for your review is the 609 facility progress chart. As you see we are close to completing the remain facilities. Also included is the 613 facility progress chart for review.

If you have additional questions call me at 708-599-9407.

Sincerely,

Richard Battaglin

cc: ~~Mr. Fernandez~~
File

Southern DEP. EX. NO. 7
FOR I.D., AS OF 6/9/04

10401 South 78th Avenue • Palos Hills, IL 60465 • Phone (708) 599-9407 •
Fax (708) 598-1866

| Contract Number | Manager | Renewal Option | Work Order Number | Date |
|---|---|---|---|---|
| 52640-96-B-0094 | DENNIS E MANESCALCHI | Base Year | 2.00 | 11/27/1996 |

| Work Description | Facility Location |
|---|---|
| SITE PREP FOUNDATION WORK | ST DAVID, IL - MAIN OFFICE |

| Project Authorization Number | Project Number | Start Date | Performance Time |
|---|---|---|---|
| 6-4J-166954-C-009 | J37301 | 11/06/1996 | 30 days |

| Contractor | U.S. Postal Service |
|---|---|
| L P CONSULTING GROUP INC<br>10401 S 75TH AVE<br><br>PALOS HILLS IL 60465-2015 | CENTRAL ILLINOIS<br>6801 W 73RD ST<br>BEDFORD PARK IL 60499-9991 |

| Authorized Signature | Date | Contracting Officer | Date |
|---|---|---|---|
| [signature] | 11/29/96 | ROBERT A RIGSBY [signature] | 12.9.96 |

Attachments: SITE UTILIZATION PLANS BY THE SCHEMMER ASSOCIATES

Summary of this Work Order:

| | | |
|---|---|---|
| Default Multiplier: | 0.8500 | |
| Total Miscellaneous: | | $8,520.00 |
| Total Items Cost: | | $23,412.72 |
| Total Travel Cost: | | |
| Work Order Total for 2.00 | | $31,932.72 |
| Work Order History: | | |

Scope of Work:

THE FIRM IS DIRECTED TO ADAPT THE USPS CONTROLLED SITE TO RECIEVE A PRE FABRICATED MODULAR OFFICE BUILDING.

THE FIRM WILL BE REQIRED TO EXCAVATE FORM AND POUR THE FOOTINGS AND FOUNDATIONS ACCORDING TO PLAN AND SPECIFICATION.
PERFORM THE NECESSARY UTILITY CONNECTIONS (WATER,GAS,ELECTRIC),FORM AND POUR CURBS, PAVE THE MANUVERING/PARKING AREAS AS PRESCRIBED.

PAR 15

128

ICCMAIN, October 1995

RECEIVED

**L. P. Consulting Group, Inc.** MAY 1 11 4= AM '97

*Construction Services* SOUTH SUB... DIV. PROCUREMENT SECTION *FBE/WBE*

30 April 1997

Mr. Bob Rigsby, Manager
U.S.P.S. Admin. Services
6801 W. 73rd St.
Bedford Park, Il. 60499-9991

Subject : Solicitation Bid Listing

Mr. Rigsby :

Our firm is interested in being placed on A.M Femandez, Arch. solicitation bid list for the facilities in your jurisdiction. Of particular interest to us are the facilities we have provided a scope of work and a work order thru members of your staff. Should these facilities not be handled thru our I.Q.C. Contract, for any reason, we would like to be included in A. M. Fernandez's, Arch. solicitation process.

Tho the following is not a complete list these are of immediate interest :

Hoopeston; interior remodeling and exterior concrete and landscaping.
Momence; interior remodeling and exterior concrete and landscaping.

As we continue to monitor the above facilities, as well as others we have submitted to you work orders, we await notice of our place in this process.

Thank you in advance for your cooperation. Feel free to contact us at 708-599-9407.

Sincerely,

Richard Battaglin
V. President

cc: J. Rohlfing
S. Southern
file

0141

10401 South 75th Avenue • Palos Hills, IL 60465 • Phone (708) 599-9407 •
Fax (708) 233-1836

000028

Rigsby DEP. EX. NO. 41
FOR I.D., AS OF 10/9/04

**L. P. Consulting Group, Inc.**

*Construction Services*

*FBE/WBE*

29 May 1997

Mr. Bob Rigsby, Manager
U.S.P.S. Admin. Services
6801 W. 73rd St.
Bedford Park, Il. 60499-9991

Subject : I.Q.C. Scoping Visits

Mr. Rigsby :

As we discussed per telecon the following are facilities we scoped with USPS personel and a draft work order w / sketch furnished for contract issuance.

PS 11/14/95 Hoopeston; interior remodeling and exterior concrete and landscaping.
5/24/96 Momence; interior remodeling and exterior concrete and landscaping.
St. Anne ; interior remodeling and exterior concrete and landscaping.
P.S. East Lynn ; interior remodeling and exterior concrete and landscaping.
10/17/95 Goodwine ; interior remodeling and exterior concrete and landscaping. ( no toilet )
Claytonville ; interior remodling and exterior concrete. ( no toilet )
12/95 Verona ; interior remodeling and exterior concrete.

Other sites visited by your request :
609 sites visited ; Aroma Pk., Gibson City, Papineau, Beaverville, Union Hill, Bradley.
Various ; Wilmington, Grand Ridge, Blackstone, Leonore, Bishop Hill, Lee, DePue,
10/95 Peru.

As we continue to monitor the above facilities, as well as others we have submitted to you work orders, we await notice of our place in this process.

Thank you in advance for your cooperation. Feel free to contact us at 708-599-9407.

Sincerely,

Richard Battaglin
V. President

cc: J. Rohlfing
S. Southern
file

10401 South 78th Avenue • Palos Hills, IL 60465 • Phone (708) 599-9407 • Fax (708) 598-1896

000029

Southern DEP. EX. NO. 10
FOR I.D., AS OF 6/9/04

P798 365 486
CERTIFIED RETURN RECEIPT

CENTRAL ILLINOIS DISTRICT

UNITED STATES POSTAL SERVICE

June 4, 1997

L P CONSULTING
10401 S 75TH AVE
PALOS HILLS IL 60465-2015

Mr. Richard Battaglin:

This is in response to your memo dated May 29, 1997, regarding I. Q. C. Scoping Visits. Please be advised that you will be given consideration for these offices, as well as others, when the USPS determines your services are needed. The USPS is not obligated to award work orders/contracts based on a contractors previous visit or scope of work. As you are aware, design drawings are being produced for all facilities to insure compliance with USPS renovation requirements. This includes the 21 facilities you listed in your memo which are listed below:

| | | |
|---|---|---|
| 1. Hoopeston* | 8. Aroma Park | 15.Grand Ridge |
| 2. Momence | 9. Gibson City | 16.Blackstone |
| 3. St. Anne | 10.Papineau | 17.Leonore |
| 4. East Lynn | 11.Beaverville | 18.Bishop Hill |
| 5. Goodwine | 12.Union Hill | 19.Lee |
| 6. Claytonville | 13.Bradley | 20.DePue |
| 7. Verona | 14.Wilmington | 21.Peru |

*Hoopeston handicapped ramp has been awarded.

No site visits will be permitted under **any** circumstances unless directed by the Contracting Officer through the USPS project manager. This includes sending subcontractors to sites to do preliminary surveys without an issued work order/contract.

Again, this means no **unauthorized** visits will be made to postal facilities by contractors. Your full cooperation in this matter is appreciated.

Sincerely,

Robert A. Rigsby
Contracting Officer

cc: J. Rohlfing
S. Southern
L. Gunlogson
J. McNabb

6801 W 73RD STREET
BEDFORD PARK, IL 60499

DELIVERING EXCELLENCE...EVERY STEP OF THE WAY!

Rigsby DEP. EX. NO. 26
FOR I.D., AS OF 6/9/04