IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.P. CONSULTING GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-868C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Allegra) |
| | ) | |
| Defendant. | ) | |

DECLARATION OF TERRI JACOBSEN

I, Terri Jacobsen, under penalty of perjury, do hereby state that the following statement is true and correct to the best of my knowledge and belief::

1. I previously provided a declaration in this matter dated January 12, 2005.

2. In my prior declaration, I stated in paragraph 20 that the USPS had not awarded a contract for concrete, asphalt, and interior renovations at the St. Anne Post Office, IL. That statement is correct. A work order was issued to A.M. Fernandez, Architect, for design work only, not for any construction. Supporting documents are at pages 690-99.

3. LP has had various indefinite quantity contracts ("IQCs") with the USPS for various areas, generally described below, within the USPS Great Lakes Region; those IQCs were as follows:

162640-02-B-0020, awarded about November 16, 2001, greater IN District, northern IN;

162640-99-B-0050, awarded about January 29, 1999, for Central IL area processing and distribution facilities;

162640-99-B-0039, awarded about January 28, 1999, Central IL area, zip codes 604, 605, 609, 613 through 619, 625 through 627;

162640-98-B-0124, awarded about May 15, 1998, for Northwest IN, zip codes 463-464, 469.

162640-97-B-0111, awarded about April 3, 1997, for Chicago Metro area;

162640-97-B-0062, awarded about January 13, 1997, for Central IL area processing and distribution facilities;

162640-96-B-0096, awarded about June 7, 1996, for Springfield, IL area, zip codes 618, 619, 625 through 627;

162640-96-B-0098, awarded June 3, 1996, for North Central IL area, zip codes 604, 605, 609;

162640-96-B-0094, awarded June 6, 1996, for Peoria, IL area, zip codes 614, 615, 616, 617;

162640-94-B-0083, awarded May 18, 1994, for North Central IL area, zip codes 604, 605, 609.

App. 43, 52-54, 155-57.[1]

4. LP also has had the following two IQCs:

193045-98-B-0149, awarded about February 2, 1998, Gateway District;

193045-93-B-0110, awarded about November 19, 1993.

The last two IQCs were not awarded by the USPS Great Lakes Region. They were awarded by the Kansas City Facilities Services Office.

5. Excerpts from LP's IQC 162640-94-B-0083 are at pages 700-71. The IQC provided that the total quantity of work ordered will not be "more than one million dollars." App. 710. I have reviewed contract documents and financial documents in the Facilities Management System ("FMS") Data Base and, based upon my review of those documents, I can state that the USPS ordered more than the one million dollars of work under IQC 162640-94-B-0083, which was the contract limit.

---

1 "App." refers to pages of the Government's appendix.

6. LP's IQCs contracts numbered 162640-94-B-0083, 162640-96-B-0094, and 162640-96-B-0098 all contained, in the "Time For Completion" clause, the standard USPS contract language providing as follows:

> The contractor is required to perform all work under a work order for which a Notice to Proceed has been issued and received before the expiration date of the contract. If the Notice to Proceed under a work order is not received by the contractor before expiration date of the contract, the work order will be considered terminated for the convenience of the Postal Service.

App. 66, 169.

7. The documents contained in the Government's Supplemental Appendix are true and correct copies of the documents maintained in USPS files.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4/4/05

Terri Jacobsen, USPS Contracting Officer

2/28/2005 ST ANNE MI

UNITED STATES POSTAL SERVICE

# PROJECT AUTHORIZATION

4209

| Date | Control Number |
|---|---|
| 08/11/2004 | JE46522 |

Installation Name
ST ANNE - MAIN OFFICE (166936-002)
SAINT ANNE, IL 60964-9998

Description of Work
Lobby Renov & Ramp

| Project Authorization Number | | Change Code | B/A Finance Number | FMS Project Number |
|---|---|---|---|---|
| 9-4J-166936-C-049 | | 01 | 161550 | J78911 |

From SYED Z AHMED
CENTRAL ILLINOIS DISTRICT
6801 W 73RD ST
BEDFORD PARK IL 60499-9991

To SYED Z AHMED
CENTRAL ILLINOIS DISTRICT
6801 W 73RD ST
BEDFORD PARK IL 60499-9991

| Item Description | Account Number | Index Code | Additional Amount Authorized | Previous Amount Authorized | Total Authorized To Date |
|---|---|---|---|---|---|
| R&A Bldg Design (5BA) | 86125 | 5BA | $-7,128.09 | $15,000.00 | $7,871.91 |
| R&A Bldg Constr (5BC) | 86125 | 5BC | $-65,000.00 | $65,000.00 | $0.00 |
| Total ⇒ | | | ($72,128.09) | $80,000.00 | $7,871.91 |

Remarks and Limitations
Closing project.

No construction dollars

There was a work order issued for design - No construction however.

| Approving Official Name and Signature | Date Signed | Prepared By |
|---|---|---|
| SYED Z AHMED | | IMOGENE B NICKERSON (708) 563-7200 |

Approving Official Title, Address, and Phone Number (708)563-7202
MANAGER ADMINISTRATIVE SERVICES
CENTRAL ILLINOIS DISTRICT
6801 W 73RD ST
BEDFORD PARK IL 60499-9991

Contact Person
SAMUEL W SOUTHERN
SOUTH SUBURBAN DISTRICT
6801 W 73RD ST
BEDFORD PARK IL 60499-9991



PS Form 4209, October 1995 - 20260-6425, Rev 8.00

UNITED STATES POSTAL SERVICE

# FACILITY AND FIXED MECHANIZATION PROJECT CONTRACT COMMITMENT ORDER

4211

Date: 08/11/2004
Control Number: JE46521

Installation Name
ST ANNE - MAIN OFFICE (166936-002)
SAINT ANNE, IL 60964-9998

Description of Work
Lobby Renov & Ramp

| Project Authorization Number | Contract Number | Change Code | B/A Finance Number | FMS Project Number |
|---|---|---|---|---|
| 9-4J-166936-C-049 | 162640-94-J-0136 | 01 | 161550 | J78911 |

| Item Description | Account Number | Index Code | Additional Amount Committed | Previous Amount Committed | Total Committed To Date |
|---|---|---|---|---|---|
| R&A Bldg Design (5BA) | 86125 | 5BA | $-623.97 | $8,495.88 | $7,871.91 |
| **Total:** | | | ($623.97) | $8,495.88 | $7,871.91 |

| Contract Type | Contract Start Date | Contract End Date | Days Allowed for Payment by Prompt Payment Act |
|---|---|---|---|
| T IQ Design | 06/17/1998 | 10/15/1998 | 30 |

Payee Name and Address:
AM FERNANDEZ
9092 S WOLF RD
WILLOW SPRINGS IL 60480-1622

Contractor's Taxpayer ID No.
33-6467812

Parent Company Taxpayer ID No.

- [ ] Contractor Address Change
- [ ] Parent Co. Pays Tax
- [x] Small Business
- [x] Minority Bus. Enterprise
- [ ] Women-owned Business
- [ ] Labor Surplus Area
- [ ] Educ./Non-Profit

Remarks
Created by Completion Balancing Procedure

Contracting Officer Name and Signature
SYED Z AHMED

Date Signed

Prepared By
IMOGENE B NICKERSON
(708) 563-7200

Approving Official Title, Address, and Phone Number (708)563-7202
MANAGER ADMINISTRATIVE SERVICES
CENTRAL ILLINOIS DISTRICT
6801 W 73RD ST
BEDFORD PARK IL 60499-9991

694

Contact Person
MICHELE D MCDANIEL
6801 W 73RD STREET
BEDFORD PARK IL 60499-9991

UNITED STATES POSTAL SERVICE.

# Indefinite Quantity Contract/Services

| Contract Number | Manager | Renewal Option | Work Order Number | Date |
|---|---|---|---|---|
| 162640-94-J-0136 | SAMUEL W SOUTHERN | 3rd Renewal Option | 54.00 | 02/25/2005 |

| Work Description | Facility Location |
|---|---|
| ABC RAMP _LOBBY RENOVATI | ST ANNE, IL - MAIN OFFICE |

| | Base Contract Rate | Quantity of Time | Amount |
|---|---|---|---|
| INVEST. SURVEYS | | | |
| PROJECT MANAGER | $81.65 | 12.00 | $979.80 |
| SENIOR ARCHITECT/ENGINEER | $72.10 | 8.00 | $576.80 |
| CADD OPERATOR | $68.04 | 12.00 | $816.48 |
| | | | $2,373.08 |
| DESIGN SERVICES | | | |
| PROJECT MANAGER | $81.65 | 12.00 | $979.80 |
| SENIOR ARCHITECT/ENGINEER | $72.10 | 30.00 | $2,163.00 |
| CADD OPERATOR | $68.04 | 40.00 | $2,721.60 |
| CLERICAL | $36.70 | 4.00 | $146.80 |
| | | | $6,011.20 |
| **Professional Hours Subtotal:** | | | $8,384.28 |

# Indefinite Quantity Contract/Services

UNITED STATES POSTAL SERVICE.

| Contract Number | Manager | Renewal Option | Work Order Number | Date |
|---|---|---|---|---|
| 162640-94-J-0136 | SAMUEL W SOUTHERN | 3rd Renewal Option | 54.00 | 02/25/2005 |

| Work Description | Facility Location |
|---|---|
| ABC RAMP & LOBBY RENOVATI | ST ANNE, IL - MAIN OFFICE |

| | |
|---|---|
| **List of Miscellaneous Items:** | |
| | $.00 |
| **Total of Miscellaneous Items:** | $0.00 |
| **Travel Expenses:** | |
| **Per Diem Amount** | $.00 |
| **Lodging Amount** | $.00 |
| **Other Expense** | $.00 |
| **Mileage Amount** | $111.60 |
| **Travel Amount Subtotal:** | |
| **Work Order Total:** | $8,495.88 |



IQCSMISC, October 1995

UNITED STATES POSTAL SERVICE.

# Indefinite Quantity Contract/Services

| Contract Number | Manager | Renewal Option | Work Order Number | Date |
|---|---|---|---|---|
| 162640-94-J-0136 | SAMUEL W SOUTHERN | 3rd Renewal Option | 54.00 | 02/25/2005 |

| Work Description | Facility Location |
|---|---|
| ABC RAMP & LOBBY RENOVATI | ST ANNE, IL - MAIN OFFICE |

| Project Authorization Number | Project Number | Start Date | Performance Time |
|---|---|---|---|
| 9-4J-166936-C-049 | J78911 | 06/17/1998 | 120 days |

| Contractor | U.S. Postal Service |
|---|---|
| AM FERNANDEZ<br>9092 S WOLF RD<br>WILLOW SPRINGS IL 60480-1622<br>Phone: ( ) - - Fax: ( ) - - | CENTRAL ILLINOIS<br>6801 W 73RD ST<br>BEDFORD PARK IL 60499-9991 |
| Consultant Name Phone ( ) - - | |

| Authorized Signature | Date | Contracting Officer | Date |
|---|---|---|---|
| | | ROBERT A RIGSBY | |

Attachments:

Summary of this Work Order:

| | |
|---|---|
| Total Miscellaneous: | $0.00 |
| Total Items Cost: | $8,384.28 |
| Total Travel Cost: | $111.60 |
| Work Order total for 54.00 | $8,495.88 |
| Work Order History: | |

Scope of Work:

SITE INVESTIGATIONS AND SURVEY DESIGN FOR ABC RAMP & LOBBY RENOVATION:

The A/E shall provide all professional services necessary to include the development of drawings, final working drawings and specifications for the construction of a new Handicap Accessibility Ramp and lobby renovations for subject facility. A detailed construction budget estimate for each phase of work as determined by construction design shall also be a part of this scope.

Note: The A/E shall be required to install on the final drawing and specifications the following:

I CERTIFTY THAT THESE DRAWINGS AND THE ACCOMPANYING SPECIFICATIONS ARE IN COMPLIANCE WITH THE U.S.P.S. STANDARDS AS PROMULGATED IN THE HANDBOOK RE-4 "STANDARDS FOR FACILITY ACCESSIBILITY BY THE PHYSICALLY HANDICAPPED."



IQCSMAIN, October 1995

UNITED STATES POSTAL SERVICE.

# Indefinite Quantity Contract/Services

| Contract Number | Manager | Renewal Option | Work Order Number | Date |
|---|---|---|---|---|
| 162640-94-J-0136 | SAMUEL W SOUTHERN | 3rd Renewal Option | 54.00 | 02/25/2005 |

| Work Description | Facility Location |
|---|---|
| ABC RAMP _LOBBY RENOVATI | ST ANNE, IL - MAIN OFFICE |

| | Base Contract Rate | Quantity of Time | Amount |
|---|---|---|---|
| INVEST. SURVEYS | | | |
| PROJECT MANAGER | $81.65 | 12.00 | $979.80 |
| SENIOR ARCHITECT/ENGINEER | $72.10 | 8.00 | $576.80 |
| CADD OPERATOR | $68.04 | 12.00 | $816.48 |
| | | | $2,373.08 |
| DESIGN SERVICES | | | |
| PROJECT MANAGER | $81.65 | 12.00 | $979.80 |
| SENIOR ARCHITECT/ENGINEER | $72.10 | 30.00 | $2,163.00 |
| CADD OPERATOR | $68.04 | 40.00 | $2,721.60 |
| CLERICAL | $36.70 | 4.00 | $146.80 |
| | | | $6,011.20 |
| **Professional Hours Subtotal:** | | | $8,384.28 |

# Indefinite Quantity Contract/Services

UNITED STATES POSTAL SERVICE.

| Contract Number | Manager | Renewal Option | Work Order Number | Date |
|---|---|---|---|---|
| 162640-94-J-0136 | SAMUEL W SOUTHERN | 3rd Renewal Option | 54.00 | 02/25/2005 |

| Work Description | Facility Location |
|---|---|
| ABC RAMP & LOBBY RENOVATI | ST ANNE, IL - MAIN OFFICE |

| | |
|---|---|
| **List of Miscellaneous Items:** | |
| | $.00 |
| **Total of Miscellaneous Items:** | $0.00 |
| **Travel Expenses:** | |
| **Per Diem Amount** | $.00 |
| **Lodging Amount** | $.00 |
| **Other Expense** | $.00 |
| **Mileage Amount** | $111.60 |
| **Travel Amount Subtotal:** | |
| **Work Order Total:** | $8,495.88 |

19

U.S. POSTAL SERVICE SOLICITATION: CONSTRUCTION

1. SOLICITATION NUMBER: 162640-94-A-0026
2. SOLICITATION INFORMATION:
   a. Issue Date : 01/25/94
   b. Return Date: February 25, 1994
   c. Return Time: 3:00 P.M. local time
   d. Contact : Frank T. Sugino
   e. Telephone : (312) 765-5342

   f. Return to Address:
   Facilities Service Office
   U.S. Postal Service - Suite 1200
   222 S. Riverside Plaza
   Chicago, IL 60606-6150

---

3. ISSUED BY:
   Facilities Service Office
   U.S. Postal Service - Suite 1200
   222 S. Riverside Plaza
   Chicago, IL 60606-6150

4. PROJECT NAME AND LOCATION:
   Indefinite Quanity Contract
   General Construction Work
   North Central Illinois Area
   Zip Codes 604, 605 and 609

---

5. Sealed offers (in original and 1 signed copies) for furnishing the supplies or services described in this solicitation will be received at the place specified (and, if hand-carried, in) until the date and time (local time of the place specified) shown in Block 2. All offers are subject to the provisions, representations, certifications, specifications and contract clauses which follow or which are incorporated by reference, whether or not all of such attached pages are returned with the offer.

---

6. NOTES TO OFFERORS:
Contract period is 24 months. Work will be done on work orders issued for various amounts and types of work. Offer will be mutliplier of the unit prices. Multiplier must contain offeror's overhead, profit and all other cost of doing business. Contract will be for general construction work on various postal facilities at predetermined unit prices. Specific work orders will be issued for not less than $500.00 each nor more than $100,000.00 each during this contract. Total quantity of work under this contract will not be less than $10,000.00 nor more than $300,000.00 for each area.

ONE OR MORE CONTRACTS MAY BE AWARDED AT THE DISCRETION OF THE CONTRACTING OFFICER.

EVALUATION CRITERIA IN ADDITION TO PRICE HAVE BEEN SPECIFIED. REFER TO SECTION M, ITEM M.2 FOR FURTHER DETAILS.

THIS IS NOT A PUBLIC OPENING. NO INFORMATION WILL BE PROVIDED UNTIL TIME OF CONTRACT AWARD.

THE TWO ACCEPTABLE METHODS OF SUBMITTING A PROPOSAL ARE MAILING VIA THE U. S. POSTAL SERVICE OR HAND CARRYING BY A REPRESENTATIVE OF THE SUBMITTING FIRM.

A PROPOSAL BOND IS NOT REQUIRED. ZIP+4 MUST BE INCLUDED IN YOUR PROPOSAL.

---

7. ACCEPTANCE: In compliance with this solicitation the undersigned offers and agrees, this offer is accepted within _______ calendar days (60 calendar days unless a different period is inserted by the offeror) from the solicitation return date, to furnish any or all items upon which prices are offered at the same price set opposite each item, delivered at the designated point(s), within the time(s) specified in the solicitation.

---

Note: - Offers must set forth full, accurate, and complete information as required by this solicitation (including attachments). The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.

Cover Page

1. SOLICITATION NUMBER: 162640-94-A-0026
2. SOLICITATION INFORMATION:
   a. Issue Date : 01/25/94
   b. Return Date: 02/25/94
   c. Return Time: 3:00 pm, local time
   d. Contact : Frank T. Sugino
   e. Telephone : (312) 765-5342
   f. Return to Address:
   Facilities Service Office
   U.S. Postal Service - Suite 1200
   222 S. Riverside Plaza
   Chicago, IL 60606-6150

3. ISSUED BY:
   Facilities Service Office
   U.S. Postal Service - Suite 1200
   222 S. Riverside Plaza
   Chicago, IL 60606-6150

4. PROJECT NAME AND LOCATION:
   Indefinite Quantity Contract
   General Construction Work
   North Central Illinois Area
   Zip Codes 604, 605 and 609

NOTES TO OFFERORS CONTINUED:

THIS IS NOT A PUBLIC OPENING. NO INFORMATION WILL BE PROVIDED UNTIL TIME OF CONTRACT AWARD. AWARDED MAY BE MADE WITH OR WITHOUT DISCUSSIONS.

A PROPOSAL BOND IS NOT REQUIRED. ZIP+4 MUST BE INCLUDED IN OUR PROPOSAL.

All offerors are required to submit two sets of the following information when submitting their proposal:

| | | |
|---|---|---|
| 1) | Cover Page: | Complete Block #7 |
| 2) | Page 1: | Complete Blocks 4, 6 and 8 (Include Zip+ 4) |
| 3) | Page 2: | Complete A.2 Acknowledgement of Amendments (if applicable) |
| 4) | Pages 74-78: | All of Section L |

162640-94-A-0026

TABLE OF CONTENTS PAGE


U.S. POSTAL SERVICE SOLICITATION: CONSTRUCTION. . . . . . . . . . . Cover Page

U.S. POSTAL SERVICE: OFFER AND AWARD (CONSTRUCTION). . . . . . . . . . 1

PART 1 - SCHEDULE. . . . . . . . . . . . . . . . . . . . . . . . . 2

SECTION A - ITEMS AND PRICES . . . . . . . . . . . . . . . . . . . . 2
A.1 REQUIRED BOND AMOUNTS (Clause FB-201) (November 1988) . . . 2
A.2 ACKNOWLEDGMENT OF AMENDMENTS (Clause FB-199) (August 1988) 2
A.3 EXAMPLE OF PROPOSAL MULTIPLIER. . . . . . . . . . . . . . . . . . 2A

SECTION B - SPECIFICATIONS/STATEMENT OF WORK . . . . . . . . . . . . . 3
B.1 STATEMENT OF WORK/SPECIFICATIONS (Clause FB-7) (June 1988) 3
B.2 ENGLISH LANGUAGE REQUIREMENT OF ON-SITE SUPERINTENDENT . . 3
(Clause FB-38) (June 1988)
B.3 QUANTITY OF WORK (INDEFINITE-QUANTITY) (Clause FB-248) . . 3
(March 1989)

SECTION C - DELIVERY/PERFORMANCE . . . . . . . . . . . . . . . . . . . 4
C.1 NOTICE OF DELAY (Clause B-15) (October 1987) . . . . . . . . 4
C.2 SUSPENSIONS AND DELAYS (Clause B-16) (October 1987) . . . . 4
C.3 EXCUSABLE DELAYS (Clause B-19) (October 1987) . . . . . . . 4
C.4 SHOP DRAWINGS, COORDINATION DRAWINGS, AND SCHEDULES . . . . 5
(Clause 11-20) (October 1987)
C.5 RECORD "AS BUILT" DRAWINGS (Clause 11-21) (October 1987) . 6
C.6 SPARE-PARTS DATA (Clause 11-22) (October 1987) . . . . . . 7
C.7 WARRANTY (CONSTRUCTION) (Clause 11-25) (October 1987) . . . 7
C.8 SAMPLES (Clause 11-28) (June 1988) . . . . . . . . . . . . . 7
C.9 WORKING HOURS (CONSTRUCTION) (Clause FB-202) . . . . . . . . 9
(June 1988)
C.10 OPTIONAL MATERIALS OR METHODS (CONSTRUCTION) . . . . . . . . 9
(Clause FB-244) (June 1988)
C.11 INDEFINITE-QUANTITY CONTRACT (CONSTRUCTION) . . . . . . . . . 9
(Clause FB-249) (June 1988)
C.12 PROPOSALS (INDEFINITE-QUANTITY) . . . . . . . . . . . . . . . 10
(Clause FB-250) (June 1988)
C.13 WORK ORDERS (INDEFINITE-QUANTITY) (Clause FB-251) . . . . . 10
(June 1988)
C.14 TIME FOR COMPLETION (INDEFINITE-QUANTITY) . . . . . . . . . . 11
(Clause FB-252) (June 1988)
C.15 SCHEDULING WORK (INDEFINITE-QUANTITY) (Clause FB-253) . . . 11
(June 1988)

SECTION D - PACKAGING AND MARKING. . . . . . . . . . . . . . . . . . . 12
D.1 IDENTIFICATION OF CONTRACT DELIVERABLES . . . . . . . . . . . 12
(Clause FB-19) (June 1988)

SECTION E - INSPECTION AND ACCEPTANCE. . . . . . . . . . . . . . . . . 13
E.1 INSPECTION AND ACCEPTANCE--CONSTRUCTION (Clause 11-11) . . 13
(October 1987)
E.2 CONTRACTING OFFICER'S REPRESENTATIVE (COR) . . . . . . . . . 13
(Clause FB-21) (June 1988)

162640-94-A-0026

TABLE OF CONTENTS PAGE


E.3 INSPECTIONS, CONTRACT COMPLETION, AND CLEANING UP . . . . . 13
(INDEFINITE-QUANTITY) (Clause FB-261) (June 1988)

SECTION F - PAYMENT AND FUNDING. . . . . . . . . . . . . . . . . . . . . 14
F.1 PAYMENT (CONSTRUCTION) (Clause 11-10) (August 1988) . . . . 14
F.2 PAYMENTS (INDEFINITE-QUANTITY) (Clause FB-254) (June 1988) 15
F.3 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (Clause FB-272) . 15
(March 1989)

PART 2 - CLAUSES AND ATTACHMENTS . . . . . . . . . . . . . . . . . . . 23

SECTION G - SPECIAL CLAUSES. . . . . . . . . . . . . . . . . . . . . . 23
G.1 PERFORMANCE AT OCCUPIED POSTAL PREMISES (Clause B-27) . . . 23
(October 1987)
G.2 CONDITIONS AFFECTING THE WORK (Clause 11-1) (October 1987) 23
G.3 DIFFERING SITE CONDITIONS (Clause 11-2) (October 1987) . . 23
G.4 PERFORMANCE OF WORK BY CONTRACTOR (Clause 11-3) . . . . . . 24
(October 1987)
G.5 SUPERINTENDENCE BY CONTRACTOR (Clause 11-4) (October 1987) 24
G.6 MATERIALS AND WORKMANSHIP (Clause 11-5) (June 1988) . . . . 24
G.7 USE OF PREMISES (Clause 11-6) (October 1987) . . . . . . . . 25
G.8 OTHER CONTRACTS (Clause 11-7) (October 1987) . . . . . . . . 25
G.9 SUBCONTRACTS (CONSTRUCTION) (Clause 11-8) (October 1987) . 25
G.10 PERMITS ANΓ RESPONSIBILITIES (Clause 11-9) (October 1987) . 25
G.11 BUILDING CODES, FEES, AND CHARGES (Clause 11-12) . . . . . 26
(October 1987)
G.12 PROTECTION OF EXISTING VEGETATION, STRUCTURES, UTILITIES, . 26
AND IMPROVEMENTS (Clause 11-13) (October 1987)
G.13 HEAT (Clause 11-14) (October 1987) . . . . . . . . . . . . . 26
G.14 DEBRIS AND CLEANUP (Clause 11-15) (October 1987) . . . . . 27
G.15 MEASUREMENTS (Clause 11-16) (October 1987) . . . . . . . . . 27
G.16 SURVEY MONUMENTS AND BENCH MARKS (Clause 11-17) . . . . . . 27
(October 1987)
G.17 SPECIFICATIONS AND DRAWINGS (Clause 11-18) (October 1987) . 28
G.18 STANDARD REFERENCES (Clause 11-19) (October 1987) . . . . . 28
G.19 POSTAL SERVICE OCCUPANCY (Clause 11-24) (October 1987) . . 29
G.20 CHANGES (CONSTRUCTION) (Clause 11-26) (October 1987) . . . 29
G.21 ACCIDENT PREVENTION (Clause 11-27) (June 1988) . . . . . . 30
G.22 ACCESS TO SITE (Clause FB-44) (June 1988) . . . . . . . . . 30
G.23 IDENTIFICATION OF CONTRACTOR'S VEHICLES . . . . . . . . . . 30
(Clause FB-45) (June 1988)
G.24 CONTROL OF EROSION, SEDIMENTATION, AND POLLUTION . . . . . 30
(Clause FB-49) (June 1988)
G.25 INDEMNIFICATION (Clause FB-203) (June 1988) . . . . . . . . . 31
G.26 DEFINITION OF TERMS USED IN CONTRACT DOCUMENTS . . . . . . 31
CONSTRUCTION (Clause FB-235) (June 1988)
G.27 U.S.D.A. QUARANTINED AREAS (CONSTRUCTION) . . . . . . . . . 32
(Clause FB-243) (June 1988)
G.28 POSTAL SERVICE-FURNISHED PROPERTY . . . . . . . . . . . . . 32
(Clause FB-255) (March 1989)
G.29 SECURITY REQUIREMENTS (INDEFINITE-QUANTITY) . . . . . . . . . 32
(Clause FB-256) (June 1988)

TABLE OF CONTENTS PAGE

G.30 PROTECTION AND DAMAGE (INDEFINITE-QUANTITY) . . . . . . . . . 32
(Clause FB-257) (June 1988)
G.31 METHOD (INDEFINITE-QUANTITY) (Clause FB-258) (June 1988) . 33
G.32 USE OF BUILDING FACILITIES . . . . . . . . . . . . . . . . . 33
(Clause FB-259) (March 1989)
G.33 INSPECTION OF SITE OR BUILDING (INDEFINITE-QUANTITY) . . . 34
(Clause FB-260) (June 1988)
G.34 SINGULAR NUMBERS (INDEFINITE-QUANTITY) (Clause FB-262) . . 34
(June 1988)
G.35 BUILDER'S RISK INSURANCE . . . . . . . . . . . . . . . . . 34
(Clause FB-263) (March 1989)

SECTION H - GENERAL CLAUSES. . . . . . . . . . . . . . . . . . . . . . 35
H.1 DEFINITIONS (Clause B-1) (June 1988) . . . . . . . . . . . 35
H.2 ASSIGNMENT OF CLAIMS (Clause B-8) (October 1987) . . . . . 35
H.3 CLAIMS AND DISPUTES (Clause B-9) (June 1988) . . . . . . . 35
H.4 PRICING OF ADJUSTMENTS (Clause B-10) (October 1987) . . . . 37
H.5 TERMINATION FOR CONVENIENCE (Clause B-11) (October 1987) . 37
H.6 TERMINATION FOR DEFAULT (Clause B-13) (October 1987) . . . 40
H.7 EXAMINATION OF RECORDS (Clause B-14) (October 1987) . . . . 41
H.8 ADVERTISING OF CONTRACT AWARDS (Clause B-25) (June 1988) . 41
H.9 OFFICIALS NOT TO BENEFIT (Clause 1-4) (October 1987) . . . 41
H.10 GRATUITIES (Clause 1-5) (October 1987) . . . . . . . . . . 41
H.11 CONTINGENT FEES (Clause 1-6) (October 1987) . . . . . . . . 42
H.12 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA . . . . 42
(Clause 5-22) (October 1987)
H.13 SUBCONTRACTOR COST OR PRICING DATA (Clause 5-23) . . . . . 42
(October 1987)
H.14 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING . . . . . . . 43
DATA-MODIFICATIONS (Clause 5-24) (October 1987)
H.15 SUBCONTRACTOR COST OR PRICING DATA-MODIFICATIONS . . . . . 43
(Clause 5-25) (June 1988)
H.16 BANKRUPTCY (Clause 6-1) (January 1991) . . . . . . . . . . 43
H.17 ADDITIONAL BOND SECURITY (Clause 7-2) (October 1987) . . . 44
H.18 DEPOSIT OF ASSETS INSTEAD OF SURETY BONDS (Clause 7-3) . . 44
(December 1989)
H.19 INSURANCE (Clause 7-4) (June 1988) . . . . . . . . . . . . 44
H.20 FEDERAL, STATE, AND LOCAL TAXES (SHORT FORM) (Clause 7-7) . 45
(June 1988)
H.21 AUTHORIZATION AND CONSENT (Clause 9-2) (October 1987) . . . 45
H.22 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT . . . 45
INFRINGEMENT (Clause 9-3) (October 1987)
H.23 PATENT INDEMNITY (Clause 9-4) (October 1987) . . . . . . . 46
H.24 PARTICIPATION OF SMALL, MINORITY-OWNED, . . . . . . . . . . 46
AND WOMAN-OWNED BUSINESSES
(Clause 10-1) (December 1989)
H.25 CONVICT LABOR (Clause 10-3) (October 1987) . . . . . . . . 47
H.26 CONTRACT WORK HOURS AND SAFETY STANDARDS . . . . . . . . . 47
ACT--OVERTIME COMPENSATION (Clause 10-4) (April 1989)
H.27 DAVIS-BACON ACT (Clause 10-5) Alternate I (April 1989) . . 48
H.28 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--SAFETY . . . 52
STANDARDS (Clause 10-7) (April 1989)

TABLE OF CONTENTS PAGE


H.29 EQUAL OPPORTUNITY (Clause 10-9) (October 1987) . . . . . . . 52

H.30 AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (Clause 10-10) (October 1987) 53

H.31 AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (Clause 10-15) . (October 1987) 58

H.32 AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS . . . OF THE VIETNAM ERA (Clause 10-16) (October 1987) 59

H.33 PREFERENCE FOR DOMESTIC CONSTRUCTION MATERIALS . . . . . . . (Clause 10-18) (December 1989) 61

H.34 CLEAN AIR AND WATER (Clause 10-19) (October 1987) . . . . . . 62

H.35 DRUG-FREE WORKPLACE (Clause 10-20) (December 1989) . . . . 62

SECTION I - LIST OF ATTACHMENTS. . . . . . . . . . . . . . . . . . . . 64

PART 3 - SOLICITATION PROVISIONS . . . . . . . . . . . . . . . . . . . 65

SECTION J - INSTRUCTIONS TO OFFERORS . . . . . . . . . . . . . . . . . 65

J.1 PREPARATION OF PROPOSALS (Provision A-1) . . . . . . . . . . ALTERNATE II (March 1989) 65

J.2 SUBMISSION OF PROPOSALS (Provision A-2) (October 1987) . . 65

J.3 MODIFICATION OR WITHDRAWAL OF PROPOSALS (Provision A-3) . . (October 1987) 65

J.4 LATE SUBMISSIONS AND MODIFICATIONS OF PROPOSALS . . . . . . (Provision A-4) (October 1987) 66

J.5 ACKNOWLEDGMENT OF SOLICITATION AMENDMENTS (Provision A-5) . (October 1987) 66

J.6 EXPLANATION TO PROSPECTIVE OFFERORS (Provision A-6) . . . . (October 1987) 66

J.7 RESTRICTION ON DISCLOSURE AND USE OF DATA . . . . . . . . . . (Provision A-7) (June 1988) 66

J.8 INFORMATION ON "EQUAL" PRODUCTS (Provision OA-1) (June 1988) 67

J.9 SUBMISSION OF FINANCIAL STATEMENTS (Provision OA-27) . . . (July 1988) 67

SECTION K - SOLICITATION NOTICES AND PROVISIONS. . . . . . . . . . . . 69

K.1 AWARD WITHOUT DISCUSSIONS (Provision A-9) . . . . . . . . . . (October 1987) 69

K.2 POSTAL-FURNISHED PROPERTY OR SERVICES (Provision A-12) . . (October 1987) 69

K.3 LABOR INFORMATION (Provision A-13) (October 1987) . . . . 69

K.4 FAILURE TO SUBMIT PROPOSAL (Provision A-14) (October 1987) 69

K.5 PROTESTS (Provision A-15) (October 1987) . . . . . . . . . . 69

K.6 BRAND NAME OR EQUAL (Provision 2-4) (February 1992) . . . . 69

K.7 TYPE OF CONTRACT (Provision 5-1) (October 1987) . . . . . . . 70

K.8 PERFORMANCE BOND REQUIREMENTS (Provision 7-2) (October 1987) 70

K.9 PAYMENT BOND REQUIREMENTS (Provision 7-3) (October 1987) . 71

K.10 DEPOSIT OF ASSETS REQUIREMENTS (Provision 7-5) . . . . . . . (October 1987) 71

K.11 NOTICE OF REQUIREMENT FOR EQUAL OPPORTUNITY AFFIRMATIVE . . ACTION (Provision 10-6) (October 1987) 71

K.12 POSTAWARD ORIENTATION CONFERENCE (Provision OA-5) . . . . . ALTERNATE I (March 1989) 72

TABLE OF CONTENTS PAGE

K.13 ACCESS TO POSTAL BUILDING (Provision OA-12) (March 1989) . 72
K.14 NOTICE OF PREAWARD SURVEY (Provision OA-34) (June 1988) . . 72

SECTION L - REPRESENTATIONS AND CERTIFICATIONS . . . . . . . . . . . . 74
L.1 TYPE OF BUSINESS ORGANIZATION (Provision A-20) (December 1989) . . . . . . . 74
L.2 PARENT COMPANY AND TAXPAYER IDENTIFICATION NUMBER (Provision A-21) (October 1987) . . . . . . 75
L.3 AUTHORIZED NEGOTIATORS (Provision A-22) (October 1987) . . 76
L.4 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (Provision 1-1) (October 1987) . . . . . . . 76
L.5 CONTINGENT FEE REPRESENTATION (Provision 1-2) (October 1987) 77
L.6 CERTIFICATION OF NONSEGREGATED FACILITIES (Provision 10-3) (October 1987) 77
L.7 BUY AMERICAN CERTIFICATE--CONSTRUCTION MATERIALS (Provision 10-8) (October 1987) . . . . . 78
L.8 CLEAN AIR AND WATER CERTIFICATION (Provision 10-9) (October 1987) . . . . 78

SECTION M - EVALUATION AND AWARD FACTORS . . . . . . . . . . . . . . . . 79
M.1 CONTRACT AWARD (Provision A-8) ALTERNATE II (February 1992) 79
M.2 CONTRACT AWARD AND PROPOSAL EVALUATION. . . . . . . . . . . . 79A

No. of Pages

U.S. POSTAL SERVICE PERFORMANCE BOND . . . . . . . . . . . . . . . . . . 4

U.S. POSTAL SERVICE PAYMENT BOND. . . . . . . . . . . . . . . . . . . . . 3

# U.S. POSTAL SERVICE: OFFER AND AWARD (CONSTRUCTION)

1. CONTRACT NUMBER:

2. SOLICITATION NUMBER: 162640-94-A-0026

---

3. a. ISSUED BY:
Facilities Service Office
U.S. Postal Service - Suite 1200
222 S. Riverside Plaza
Chicago, IL 60606-6150

b. FOR INFORMATION CALL:
Name: Frank T. Sugino
Title: Architect/Engineer
Room: Suite 1200
Tel: (312) 765-5342
(No Collect Calls)

---

4. a. OFFEROR/CONTRACTOR

b. Contact Name:
c. Telephone No:
d. TIN:
e. Parent TIN:
TIN=Taxpayer Identification Number

f. Remittance Name and/or Address: (If different from above)

---

5. DELIVERY/PERFORMANCE REQUIREMENTS:
See Section C

---

6. ITEMS & PRICES/GENERAL DESCRIPTION OF REQUIREMENT:

INDEFINITE QUANTITY CONTRACT
GENERAL CONSTRUCTION WORK
NORTH CENTRAL ILLINOIS AREA
ZIP CODES 604, 605 and 609

CONTRACT VALUE $300,000.00

The contractor agrees to perform all work included or ordered pursuant to and in accordance with the terms and conditions of the contract for the unit prices listed on the price schedule times the multiplier listed below:

Multiplier: __________ ______________________________

---

7. BILLING INSTRUCTIONS (Submit Invoices to):
Facilities Service Office
222 South Riverside Plaza
U.S. Postal Service - Suite 1200
Chicago, IL 60606-6150

---

8. SIGNATURE: OFFEROR/CONTRACTOR

| | | | |
|---|---|---|---|
| Signature | Date | Signature | Award Date |

U.S. POSTAL SERVICE

| | | |
|---|---|---|
| Typed or Printed Name of Person Authorized to Sign Offer | Title | Larry L. Linnenburger<br>Name of Contracting Officer |

---

Distribution: Original - File    Copy - Contractor

## PART 1 - SCHEDULE

## SECTION A - ITEMS AND PRICES

A.1 REQUIRED BOND AMOUNTS (Clause FB-201) (November 1988)

| | | |
|---|---|---|
| Performance Bond | : | $300,000.00 |
| Payment Bond | : | $150,000.00 |

Additional information on bond requirements is given in the following provisions: performance bond (Provision 7-2), and payment bond (Provision 7-3).

A.2 ACKNOWLEDGMENT OF AMENDMENTS (Clause FB-199) (August 1988)

The offeror acknowledges receipt of amendments to the solicitation numbered and dated as follows:

| Amendment Number | Date | Amendment Number | Date |
|---|---|---|---|
| ____________ | ______ | ____________ | ______ |
| ____________ | ______ | ____________ | ______ |
| ____________ | ______ | ____________ | ______ |
| ____________ | ______ | ____________ | ______ |

708

A.3 Example of Proposal Multiplier

The following is an example of how the multiplier is to be shown, based on an arbitrary Postal Service Unit Price of $20.

1. If the offeror's price is $23 (increase):

MULTIPLIER IS: $23 / $20 = 1.15 (Decimal); OR: ONE-POINT.ONE-FIVE (In Words)

2. If the offeror's price is $15 (decrease):

MULTIPLIER IS: $15 / $20 = 0.75 (Decimal); OR: ZERO-POINT.SEVENTY-FIVE (In Words)

The following is an example of how the multiplier is to be shown, based on a percentage difference:

1. If the offeror's price is the SAME as the unit price:

1.0 (Decimal); OR: ONE-POINT.ZERO (In Words)

2. If the offeror's price is 12 percent lower than the unit price (MINUS):

0.88 (Decimal); OR: ZERO-POINT.EIGHTY-EIGHT (In Words)

3. If the offeror's price is 12 percent higher than the unit price (PLUS)

1.12 (Decimal); OR: ONE-POINT.ONE-TWO (In Words)

Regardless of the number of unit prices shown, only one multiplier may be shown. This multiplier will be used against all unit prices.

DO NOT use percentages to show the multiplier.

WAGE RATES: For the purposes of determining the prevailing rates for corresponding classes of laborers and mechanics as required by the Davis-Bacon Act, the "Building" construction sections of the applicable wage determination shall be used for all work under this contract. Section Section "I".

## SECTION B - SPECIFICATIONS/STATEMENT OF WORK

B.1 STATEMENT OF WORK/SPECIFICATIONS (Clause FB-7) (June 1988)

The contractor must furnish the necessary personnel, material, equipment, services, and facilities (except as otherwise specified) to perform the statement of work/specifications incorporated by reference in Section I.

B.2 ENGLISH LANGUAGE REQUIREMENT OF ON-SITE SUPERINTENDENT (Clause FB-38) (June 1988)

The contractor's on-site superintendent must be able to speak, read, and write English to the extent necessary to permit reasonable communication with Postal Service personnel.

B.3 QUANTITY OF WORK (INDEFINITE-QUANTITY) (Clause FB-248) (March 1989)

a. The initial contract value is $300,000.00 where the total quantity of work ordered during the term of this contract will not be less than $10,000 nor more than one million dollars ($1,000,000). The Postal Service reserves the option to increase the potential value of the contract in increments of $300,000 not to exceed $1,000,000. Additional consent of surety will be required for each incremental increase.

b. Adjustments, if required, in quantities listed in the work order will be made on the basis of actual, quantities, approved, and installed and/or removed in the final work.

c. The contractor will not be required to perform a job where the value of the work required in any one building is less than $500 per work order.

d. The Postal Service reserves the right to undertake, by Postal Service sources or others, the same type of work or similar work as contracted for in this contract, in the area covered by this contract, while this contract is in force.

# SECTION C - DELIVERY/PERFORMANCE

C.1 NOTICE OF DELAY (Clause B-15) (October 1987)

Immediately upon becoming aware of any difficulties that might delay deliveries under this contract, the contractor will notify the contracting officer in writing of them. The notification must identify the difficulties, the reasons for them, and the estimated period of delay anticipated. Failure to give notice may preclude later consideration of any request for an extension of contract time.

C.2 SUSPENSIONS AND DELAYS (Clause B-16) (October 1987)

a. If the performance of all or any part of the work of this contract is suspended, delayed, or interrupted by--

1. An order or act of the contracting officer in administering this contract; or

2. By a failure of the contracting officer to act within the time specified in this contract--or within a reasonable time if not specified--an adjustment will be made for any increase in the cost of performance of this contract caused by the delay or interruption (including the costs incurred during any suspension or interruption). An adjustment will also be made in the delivery or performance dates and any other contractual term or condition affected by the suspension, delay, or interruption. However, no adjustment may be made under this clause for any delay or interruption to the extent that performance would have been delayed or interrupted by any other cause, including the fault or negligence of the contractor, or for which an adjustment is provided or excluded under any other term or condition of this contract.

b. A claim under this clause will not be allowed--

1. For any costs incurred more than 20 calendar days before the contractor has notified the contracting officer in writing of the act or failure to act involved; and

2. Unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination of the delay or interruption, but not later than the day of final payment under the contract.

C.3 EXCUSABLE DELAYS (Clause B-19) (October 1987)

a. Except with respect to defaults of subcontractors, the contractor will not be in default by reason of any failure in performing this contract in accordance with its terms (including any failure by the contractor to make progress in the prosecution of the work that endangers performance) if the failure arises out of causes beyond the control and without the fault or negligence of the contractor. Such causes may include, but are not restricted to, acts of God or of the public enemy, acts of the Government in its sovereign capacity or the Postal Service in

C.3 (Continued)

its contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather, but in every case the failure to perform must be beyond the control and without the fault or negligence of the contractor.

b. If failure to perform is caused by the failure of a subcontractor to perform or make progress and arises out of causes beyond the control of both the contractor and subcontractor, and without the fault or negligence of either of them, the contractor will not be deemed to be in default, unless -

1. The supplies or services to be furnished by the subcontractor are obtainable from other sources;

2. The contracting officer orders the contractor in writing to procure the supplies or services from other sources; and

3. The contractor fails to comply reasonably with the order.

c. Upon request of the contractor, the contracting officer shall ascertain the facts and extent of failure, and if the contracting officer determines that any failure to perform was occasioned by any of the said causes, the delivery schedule shall be revised accordingly, subject to the rights of the Postal Service under any termination clause included in this contract.

d. As used in this clause, the terms "subcontractor" and "subcontractors" mean subcontractor(s) at any tier.

C.4 SHOP DRAWINGS, COORDINATION DRAWINGS, AND SCHEDULES (Clause 11-20) (October 1987)

a. The contractor will submit shop drawings, coordination drawings, and schedules for approval as required by the specifications or requested by the contracting officer, as follows:

1. Shop drawings will include fabrication, erection, and setting drawings, schedule drawings, manufacturer's scale drawings, wiring and control diagrams, cuts or entire catalogs, pamphlets, descriptive literature, and performance and test data.

2. Drawings and schedules, other than catalogs, pamphlets, and similar printed material, must be submitted in reproducible form with two prints made by a process approved by the contracting officer. Upon approval, the reproducible form will be returned to the contractor which must furnish the number of additional prints, not to exceed ten, required by the Special Conditions of the specifications. The contractor must submit shop drawings in catalog, pamphlet, and similar printed form in a minimum of four copies plus as many additional copies as the contractor may desire or need or for use by subcontractors.

b. Before submitting shop drawings on the mechanical and electrical work, the contractor must obtain the contracting officer's approval of lists of mechanical and electrical equipment and materials as required by the specifications.

c. The contractor will check the drawings and schedules and coordinate them (by means of coordination drawings whenever required) with the work of all trades

C.4 (Continued)

involved before submission, indicating approval on them. Drawings and schedules submitted without evidence of the contractor's approval may be returned for resubmission.

d. Each shop drawing or coordination drawing must have a blank area 5 by 5 inches, located adjacent to the title block. The title block must display--

1. Number and title of drawing;

2. Date of drawing or revision;

3. Name of project building or facility;

4. Name of contractor and (if appropriate) of subcontractor submitting drawing;

5. Clear identity of contents and location on the work; and

6. Project title and contract number.

e. Unless otherwise provided in this contract, or otherwise directed by the contracting officer, shop drawings, coordination drawings, and schedules must be submitted to the contracting officer, with a letter in triplicate, sufficiently in advance of construction requirements to permit at least 10 working days for checking and appropriate action.

f. Except as otherwise provided in paragraph g below, approval of drawings and schedules will be general and may not be construed as--

1. Permitting any departure from the contract requirements; 2. Relieving the contractor of responsibility for any errors, including details, dimensions, and materials; or

3. Approving departures from full-size details furnished by the contracting officer.

g. If drawings or schedules show variations from the contract requirements because of standard shop practice or for other reasons, the contractor must describe the variations in the letter of transmittal. If acceptable, the contracting officer may approve any or all variations and issue an appropriate change order. If the contractor fails to describe these variations, it will not be relieved of the responsibility for executing the work in accordance with the contract, even though the drawings or schedules have been approved.

C.5 RECORD "AS BUILT" DRAWINGS (Clause 11-21) (October 1987)

a. The contractor must, during the progress of the work, keep a master set of prints on the job site, on which is kept a careful and neat record of all deviations from the contract drawings prepared by the architect-engineer made during the course of the work.

b. Upon completion of the project, these "as built" prints must be certified as to their correctness by the signature of the contractor and turned over to the

C.5 (Continued)

architect-engineer for use in preparing a permanent set of "as built" drawings.

C.6 SPARE-PARTS DATA (Clause 11-22) (October 1987)

a. The contractor must furnish spare-parts data for each different item of equipment furnished. The data must include a complete list of parts and supplies, with current unit prices and sources of supply; a list of parts and supplies that are either normally furnished at no extra cost with the purchase of the equipment, or specified to be furnished as part of the contract; and a list of additional items recommended by the manufacturer to ensure efficient operation for a period of 180 days at the particular installation.

b. The foregoing does not relieve the contractor of any responsibilities under the guarantees specified.

C.7 WARRANTY (CONSTRUCTION) (Clause 11-25) (October 1987)

a. Unless otherwise provided in the specifications, the contractor warrants that all work is in accordance with contract requirements and free from defective or inferior materials, equipment, and workmanship for one year after the date of final acceptance under this contract.

b. If, within the warranty period, the contracting officer finds that warranted work needs to be repaired or changed because the materials, equipment, or workmanship were inferior, defective, or not in accordance with the contract terms, the contractor must promptly and without additional expense to the Postal Service--

1. Place in a satisfactory condition all of the warranted work;

2. Satisfactorily correct all damage to equipment, the site, the building, or its contents that is the result of such unsatisfactory work; and

3. Satisfactorily correct any work, materials, or equipment disturbed in fulfilling the warranty.

c. Should the contractor fail to proceed promptly in accordance with the warranty, the Postal Service may have the work performed at the contractor's expense.

d. The contractor must obtain each transferable guarantee or warranty of equipment, materials, or installation furnished by any manufacturer, supplier, or installer in the ordinary course of the business or trade. The contractor must obtain and furnish to the Postal Service all information required to make any such guarantee or warranty legally binding and effective, and must submit both the information and the guarantee or warranty to the Postal Service in sufficient time to permit the Postal Service to meet any time limit requirements specified in the guarantee or warranty or, if no time limit is specified, before completion and acceptance of all work under this contract.

C.8 SAMPLES (Clause 11-28) (June 1988)

a. After contract award, the contractor must furnish samples required by the specifications or by the contracting officer, for the contracting officer's

C.8 (Continued)

approval. They must be delivered to the contracting officer or to the architect as specified or as directed. The contractor must prepay all shipping charges on samples. Materials or equipment for which samples are required may not be used in the work until the contracting officer approves in writing.

b. Each sample must be labeled to show--

1. Name of project building or facility, project title, and contract number;

2. Name of contractor and (if appropriate) subcontractor;

3. Identification of material or equipment, with specification requirement;

4. Place of origin; and

5. Name of producer and brand (if any).

c. Samples of finish materials must have additional markings that will identify them under the finish schedules.

d. The contractor must mail under separate cover a letter in triplicate submitting each shipment of samples and containing the information required in paragraphs b and c above. The contractor must also enclose a copy of that letter with the shipment and send a copy to the Postal Service representative on the project. Approval of a sample is only for the characteristics or use named in the approval and may not be construed to change or modify any contract requirement. Substitutions are not permitted unless approved in writing by the contracting officer.

e. Approved samples not destroyed in testing will be sent to the Postal Service representative at the project. Approved samples of hardware in good condition will be marked for identification and may be used in the work. Materials and equipment incorporated in the work shall match the approved samples. Samples not destroyed in testing and not approved will be returned at the contractor's expense if the contractor so requests at time of submission.

f. Failure of any material to pass the specified tests will be sufficient cause for refusal to consider, under this contract, any further samples of the same brand or make of that material. The Postal Service reserves the right to disapprove any material or equipment that has previously proved unsatisfactory in service.

g. Samples of materials or equipment delivered on the site or in place may be taken by the Postal Service representative for testing. Failure of a sample to meet contract requirements will automatically void previous approvals of the item tested. The contractor must replace materials or equipment found not to have met contract requirements, or there will be a proper adjustment of the contract price as determined by the contracting officer.

h. Except as otherwise specified, if tests are called for in the specifications, the contractor must pay all costs of these tests. When tests are not specifically called for in the specifications but are required by the Postal Service, the Postal Service will pay all costs of the tests and related engineering services unless the tests indicate that the workmanship or materials

C.8 (Continued)

used by the contractor are not in conformance with drawings, specifications, approved shop drawings, or the approved materials. In this event, the contractor must pay for the tests, remove all work and material failing to conform, and replace with work and materials in full conformity. All tests pertaining to physical or chemical properties of materials must be made in a laboratory approved by the contracting officer.

C.9 WORKING HOURS (CONSTRUCTION) (Clause FB-202) (June 1988)

a. It is contemplated that all work will be performed during the customary working hours of the trades involved unless otherwise specified in this contract. Work performed by the contractor at its own volition outside such customary working hours shall be at no additional expense to the Postal Service.

b. The contractor must refer to the contracting officer any requests from occupants of buildings included in the contractor's work area to change the hours of work.

C.10 OPTIONAL MATERIALS OR METHODS (CONSTRUCTION) (Clause FB-244) (June 1988)

Where the technical provisions permit the Contractor to select optional materials, items, systems or equipment, the selection of such options is subject to the following conditions:

a. Once an option has been selected and approved, it must be used for the entire contract.

b. The contractor must coordinate its selection with the drawings and specifications and make all necessary adjustments without additional cost to the Postal Service.

C.11 INDEFINITE-QUANTITY CONTRACT (CONSTRUCTION) (Clause FB-249) (June 1988)

a. This indefinite-quantity contract will include all services described in Section B, Specifications or Statement of Work, ordered during the 24-month period beginning on the day following the date on which the contract is signed by the latter of the parties to sign it.

b. The price per unit of each proposal item in this contract will include all materials, labor, and equipment required to perform the work described in the attached specification. The work will be done on work orders issued as required for various amounts and types of work covered by the specification. The work ordered under this contract will be performed in, on, or adjacent to Postal Service-owned or -leased facilities within North Central, Illinois.

c. The contracting officer may designate a contracting officer's representative for this work.

C.12 PROPOSALS (INDEFINITE-QUANTITY)
(Clause FB-250) (June 1988)

a. It is estimated that some of the work required under this contract will be performed during premium time (not regular working hours). For the purpose of this contract, regular working hours are between 8:00 a.m. and 5:00 p.m., Monday through Friday. Work ordered to be accomplished during premium time will be paid at a higher rate. The individual items of such work will be increased by 25 percent when listed on the work order. Those items will be identified as "premium time prices" by an increased unit price and noted in the scope of work to the work order form.

b. The contract amount for each work order will be the total of each unit price included in that order, times the quantity required, times the multiplier entered on the proposal. This amount includes all profit, overhead, bonds, insurance, and other contingencies and no allowance for such items will be made after contract award.

c. Any change in the applicable minimum hourly rates of wages as determined by the Secretary of Labor pursuant to the Davis-Bacon Act during the contract period will not affect the unit price to be paid by the Postal Service for work performed under the contract.

d. Proposals may include all items as listed on the price schedule. Deletion of or changes to the unit prices or items of work shown on the price schedule will be cause for rejection of the proposal.

C.13 WORK ORDERS (INDEFINITE-QUANTITY) (Clause FB-251)
(June 1988)

a. No work will be performed until a written work order has been signed by the contractor and the contracting officer and written Notice to Proceed with the work under the work order has been issued by the contracting officer and received by the contractor. Any work performed by the contractor under a work order before receipt of the written Notice to Proceed for that work order will be at the contractor's own risk.

b. Each work order will describe the extent of work to be removed and the extent and type of new work to be installed. Descriptions may be written, by sketch or by drawing. Each work order will give the location where work is to be performed, state whether work may be performed during regular working hours, and describe the requirements for submittals. Submittals may include certificates, shop drawings, manufacturer's literature, data, test reports, and/or other documents that provide required information on the material or equipment.

c. Each work order will be limited to work at a single facility.

d. The date for beginning work under a work order may not be less than three calendar days nor more than ten calendar days from the date of receipt the contractor of the Notice to Proceed. Upon beginning work, the contractor will proceed diligently toward contract completion. Any delay in the work beyond the contractor's control, may be reported to the contracting officer or a designated representative, immediately,

e. Each work order will be considered separately for all items in the contract,

C.13 (Continued)

such as scope of work and time for completion.

f. Items of work required by any work order that are not covered by the price schedule will be negotiated for each work order before the work order is issued, provided, however, that the cost of work not covered by the price schedule may not exceed 25 percent of the total amount of any work order.

g. The maximum amount of any one work order is $100,000.

h. No work may be ordered for a new building construction except for site preparation and/or foundation work for a pre- engineered building purchased directly from the manufacturer.

C.14 TIME FOR COMPLETION (INDEFINITE-QUANTITY) (Clause FB-252) (June 1988)

a. The time for completion of the work required by each work order will be stated on each work order before the work order is issued.

b. The contractor may be required to work during premium time, as well as during regular working hours for work orders requiring urgent completion. Unit prices will be applied accordingly.

c. The contractor is required to perform all work under a work order for which a Notice to Proceed has been issued and received before the expiration date of the contract. If the Notice to Proceed under a work order is not received by the contractor before the expiration date of the contract, the work order will be considered terminated for the convenience of the Postal Service.

C.15 SCHEDULING WORK (INDEFINITE-QUANTITY) (Clause FB-253) (June 1988)

a. Before any work is started, the contractor must confer with the contracting officer's representatives and agree on a sequence of procedures: means of access to premises and building, delivery of materials, and use of approaches; use of corridors, stairways, elevators, and similar means of communications; and the location of partitions, eating spaces for contractor's employees, and the like.

b. Mail docks will not be made available for loading, unloading, storage, or fabrication of material except during hours specifically approved by the Postmaster.

c. Contractor's employees must not park vehicles in customer parking areas. Contractor's employees may park vehicles in Postal parking areas only if spaces are available and only with prior approval of the Station Manager/Postmaster.

## SECTION D - PACKAGING AND MARKING

D.1 IDENTIFICATION OF CONTRACT DELIVERABLES
(Clause FB-19) (June 1988)

Unless otherwise specified, the cover page of each document prepared and submitted by the contractor to the Postal Service under this contract must include the following information:

a. Name and business address of the contractor.

b. Contract number.

c. Name, position, and office location of the Postal Service's contracting officer's representative.

d. Date of report.

# SECTION E - INSPECTION AND ACCEPTANCE

E.1 INSPECTION AND ACCEPTANCE--CONSTRUCTION (Clause 11-11) (October 1987)

a. Postal Service inspection of material and workmanship will be made at reasonable times at the site or off-site as the contracting officer may direct.

b. If the contractor does not promptly replace rejected material or correct rejected workmanship, the Postal Service may, by contract or otherwise, replace or correct it and charge the cost to the contractor.

c. The contractor must furnish (without charge) all facilities, labor, and materials needed to conduct inspections and tests as required by the contracting officer. The contractor will be charged any additional costs of inspection if material and workmanship are not ready at the time specified by the contractor for inspection.

d. The Postal Service may examine completed work by removing or tearing it out. The contractor must replace or correct any work found not to conform to contract requirements. If work is torn out and found to comply with contract requirements, the contracting officer must make an equitable adjustment for the services provided for the inspection and replacement of the work.

e. The Postal Service will inspect the work as soon as practicable after completion. Acceptance by an authorized Postal Service representative is conclusive except in the case of latent defects, fraud, gross mistakes amounting to fraud, or Postal Service rights under any warranty or guarantee.

E.2 CONTRACTING OFFICER'S REPRESENTATIVE (COR) (Clause FB-21) (June 1988)

A contracting officer's representative (COR) will be appointed by the contracting officer. The name, address, telephone number, and specific responsibilities and limitations of the COR will be provided to the contractor in writing by the contract start date. The COR may be changed at any time by the Postal Service without prior notice to the contractor but notification of the change, including the name and address of the successor COR, will be promptly provided to the contractor by the contracting officer in writing.

E.3 INSPECTIONS, CONTRACT COMPLETION, AND CLEANING UP (INDEFINITE-QUANTITY) (Clause FB-261) (June 1988)

Notification of completion and request for inspection of work will be required for each work order. See the Inspection and Acceptance (Construction) clause of this contract.

SECTION F - PAYMENT AND FUNDING

F.1 PAYMENT (CONSTRUCTION) (Clause 11-10) (August 1988)

a. The Postal Service will make progress payments monthly or at more frequent intervals as determined by the contracting officer. Before the first progress payment becomes due, the contractor must prepare a breakdown of the contract price acceptable to the contracting officer. The values in the breakdown will be used for determining progress payments. The contractor's overhead and profit must be prorated through the life of the contract.

b. If the contract price is more than $50,000, material delivered that will be incorporated into the structure may be taken into consideration in computing progress payments. Before each payment is made, the contractor must furnish to the contracting officer proof of the quantity, value, and delivery of materials.

c. In making progress payments, the contracting officer will ordinarily retain five percent of the progress payments earned. However, if the contracting officer, at any time after 50 percent of the work has been completed, finds that satisfactory progress is being made, the contracting officer may authorize payment in full of all progress payments earned. Also, if the contracting officer considers the amount retained to be in excess of that adequate for the protection of the Postal Service, the contracting officer may release to the contractor all or a portion of the excess whenever the work is substantially complete. On completion and acceptance of each separate building, public work, or other division of the contract, on which the price is stated separately in the contract, payment may be made without retention.

d. All material and work covered by progress payments will be the sole property of the Postal Service. However, this paragraph d does not (1) relieve the contractor of responsibility for all material and work for which payment has been made or for restoration of any damaged work or (2) waive the right of the Postal Service to require fulfillment of all the contract terms.

e. Before receiving a progress payment or final payment under this contract, the contractor must certify to the contracting officer that payment due subcontractors or suppliers under contractual arrangements with them has been made from the proceeds of prior payments or will be made in timely fashion from the payment then due the contractor.

f. Upon completion and acceptance of all work, the amount due the contractor under this contract must be paid upon the presentation of a properly executed invoice, after the contractor has furnished the Postal Service with a release of all claims against the Postal Service arising by virtue of this contract, other than claims in stated amounts that must be specifically excepted by the contractor from the operation of the release. If the contractor's claim to amounts payable under the contract has been assigned as provided in the Assignment of Claims clause, a release may also be required of the assignee.

F.2 PAYMENTS (INDEFINITE-QUANTITY) (Clause FB-254) (June 1988)

Clause 11-10, Payment (Construction) applies individually to each work order issued.

F.3 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (Clause FB-272) (March 1989)

Notwithstanding any other payment terms in this contract, the Postal Service will make invoice payments and contract financing payments under the terms and conditions specified in this clause. Payment shall be considered as being made on the day a check is dated or an electronic funds transfer is made. All days referred to in this clause are calendar days, unless otherwise specified.

(a) Invoice Payments.

(1) For purposes of this clause, there are several types of invoice payments which may occur under this contract, as follows:

(i) Progress payments, if provided for elsewhere in this contract, based on Contracting Officer approval of the estimated amount and value of work or services performed, including payments for reaching milestones in any project:

(A) The due date for making such payments shall be 14 days after receipt of the payment request by the designated billing office, except as may be modified in accordance with paragraph FB 272-2 (herein).

(B) The due date for payment of any amounts retained by the Contracting Officer in accordance with the clause, FB 272-1, Progress Payments Under Fixed-Price Construction Contracts, shall be 30 days after approval for release to the Contractor by the Contracting Officer.

(ii) Final payments based on completion and acceptance of all work and presentation of release of all claims against the Postal Service arising by virtue of the contract, and payments for partial deliveries that have been accepted by the Postal Service (e.g., each separate building, or other division of the contract for which the price is stated separately in the contract):

(A) The due date for making such payments shall be either the thirtieth day after receipt by the designated billing office of a proper invoice from the Contractor, or the thirtieth day after Postal Service acceptance of the work or services completed by the Contractor, whichever is later.

(B) On a final invoice where the payment amount is subject to contract settlement actions (e.g., release of claims), acceptance shall be deemed to have occurred on the effective date of the contract settlement.

(2) An invoice is the Contractor's bill or written request for payment under the contract for work or services performed under the contract. An invoice shall be prepared and submitted to the designated billing office. A proper invoice must include the items listed in subdivisions (a)(2)(i) through (a)(2)(ix) of this clause. If the invoice does not comply with these requirements, the Contractor will be notified of the defect within seven days after receipt of the invoice at the designated billing office. Untimely notification will be taken into account in the computation of any interest penalty owed the Contractor in

F.3 (Continued)

the manner described in paragraph (a)(4) of this clause:

(i) Name and address of the Contractor.

(ii) Invoice date.

(iii) Contract number or other such authorization for work or services performed (including order number and contract line item number).

(iv) Description of work or services performed.

(v) Delivery and payment terms (e.g., prompt payment discount terms).

(vi) Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment).

(vii) Name (where practicable), title, phone number, and mailing address of persons to be notified in event of a defective invoice.

(viii) For payments described in subdivision (a)(1)(i) of this clause, substantiation of the amounts requested and certification in accordance with the requirements of the clause, FB 272-1, Progress Payments Under Fixed-Price Construction Contracts.

(ix) Any other information or documentation required by the contract.

(3) An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date and the following conditions are met, if applicable:

(i) A proper invoice was received by the designated billing office.

(ii) A receiving report or other Postal Service documentation authorizing payment was processed and there was no disagreement over quantity, quality, Contractor compliance with any contract term or condition, or requested progress payment amount.

(iii) In the case of a final invoice for any balance of funds due the Contractor for work or services performed, the amount was not subject to further contract settlement actions between the Postal Service and the contractor.

(4) The interest penalty shall be at the rate established by the Secretary of the Treasury under Section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the day after the due date, except where the interest penalty is prescribed by other governmental authority. The interest penalty shall accrue daily on the invoice payment amount approved by the Postal Service and be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice payment amount and be subject to interest penalties if not paid in the succeeding 30-day period. If the designated billing office failed to notify the Contractor of a defective invoice within the periods prescribed in subparagraph (a)(2) of this clause, then the due date on the corrected invoice will be adjusted by subtracting the number of days taken beyond the prescribed notification of defects period. Any interest penalty

F.3 (Continued)

owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating interest penalties, if requested by the Contractor.

(i) For the sole purpose of computing an interest penalty that might be due the Contractor for payments described in subdivision (a)(1)(ii) of this clause, Postal Service acceptance or approval shall be deemed to have occurred constructively on the seventh day after the Contractor has completed the work or services in accordance with the terms and conditions of the contract. In the event that actual acceptance or approval occurs within the constructive acceptance or approval period, the determination of an interest penalty shall be based on the actual date of acceptance or approval. Constructive acceptance or constructive approval requirements do not apply if there is a disagreement over quantity, quality, or Contractor compliance with a contract provision. These requirements also do not compel Postal Service officials to accept work or services, approve Contractor estimates, perform contract administration functions, or make payment prior to the Contractor fulfilling its responsibilities.

(ii) The following periods of time will not be included in the determination of an interest penalty:

(A) The periods taken to notify the Contractor of defects in invoices submitted to the Postal Service, but this period may not exceed seven days.

(B) The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(iii) Interest penalties will not continue to accrue after the filing of a claim for such penalties under the Disputes Clause, or for more than 1 year. Interest penalties of less than $1 need not be paid.

(iv) Interest penalties are not required on payment delays due to disagreement between the Postal Service and Contractor over the payment amount or other issues involving contract compliance, or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes and any interest that may be payable will be resolved in accordance with the Disputes Clause.

(5) An interest penalty shall also be paid automatically by the designated payment office, without request from the Contractor, if a discount for prompt payment is taken improperly. The interest penalty will be calculated on the amount of discount taken for the period beginning with the first day after the end of the discount period through the date when the Contractor is paid.

(a) Contract Financing Payments. For purposes of this clause, if applicable, "contract financing payments" means a Postal Service disbursement of monies to a Contractor under a contract clause or other authorization prior to acceptance of supplies or services by the Postal Service, other than progress payments based on estimates of amount and value of work performed. Contract financing payments include advance payments and interim payments under cost-type contracts.

(b) If this contract provides for contract financing, requests for payment

F.3 (Continued)

shall be submitted to the designated billing office as specified in this contract or as directed by the Contracting Officer. Contract financing payments shall be made by the thirtieth day after receipt of a proper contract financing request by the designated billing office. In the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the due date specified. For advance payments, loans or other arrangements that do not involve recurrent submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer. Contract financing payments shall not be assessed an interest penalty for payment delays.

(c) The Contractor shall include in each subcontract for property or services (including a material supplier) for the purpose of performing this contract the following:

(1) A payment clause which obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than seven days from receipt of payment out of such amounts as are paid to the Contractor under this contract.

(2) An interest penalty clause which obligates the Contractor to pay to the subcontractor an interest penalty for each payment not made in accordance with the payment clause.

(i) For the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made and

(ii) Computed at the rate of interest established by the Secretary of the Treasury for interest payments under Section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(3) A clause requiring each subcontractor to include a payment clause and an interest penalty clause conforming to the standards set forth in subparagraphs (c)(1) and (c)(2) of this clause in each of its subcontracts and to require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

(d) The clauses required by paragraph (c) of this clause shall not be construed to impair the right of Contractor or a subcontractor at any tier to negotiate, and to include in their subcontract, provisions which--

(1) Permit the Contractor or a subcontractor to retain (without cause) a specified percentage of each progress payment otherwise due to a subcontractor for satisfactory performance under the subcontract without incurring any obligation to pay a late payment interest penalty, in accordance with terms and conditions agreed to by the parties to the subcontract, giving such recognition as the parties deem appropriate to the ability of a subcontractor to furnish a performance bond and a payment bond;

(2) Permit the Contractor or subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the subcontract agreement; and

F.3 (Continued)

(3) Permit such withholding without incurring any obligation to pay a late payment penalty if--

(i) A notice conforming to the standards of paragraph (g) of this clause has been previously furnished to the subcontractor, and

(ii) A copy of any notice issued by a Contractor pursuant to subdivision (d)(3)(i) of this clause has been furnished to the Contracting Officer.

(e) If a Contractor, after making a request for payment to the Postal Service but before making a payment to a subcontractor for the subcontractor's performance covered by the payment request, discovers that all or a portion of the payment otherwise due such subcontractors is subject to withholding from the subcontractor in accordance with the subcontract agreement, then the Contractor shall--

(1) Furnish to the subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon ascertaining the cause giving rise to a withholding, but prior to the due date for subcontractor payment:

(2) Furnish to the Contracting Officer, as soon as practicable, a copy of the notice furnished to the subcontractor pursuant to subparagraph (e)(1) of this clause:

(3) Reduce the subcontractor's progress payment by an amount not to exceed the amount specified in the notice of withholding furnished under subparagraph (e)(1) of this clause.

(4) Pay the subcontractor as soon as practicable after the correction of the identified subcontract performance deficiency, and

(i) Make such payment within--

(A) Seven days after correction of the identified subcontract performance deficiency unless the funds therefor must be recovered from the Postal Service because of a reduction under subdivision (e)(5)(i) of this clause, or;

(B) Seven days after the Contractor recovers such funds from the Postal Service; or

(ii) Incur an obligation to pay a late payment interest penalty computed at the rate of interest established by the Secretary of the Treasury, for interest payments under Section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty;

(5) Notify the Contracting Officer upon--

(i) Reduction of the amount of any subsequent certified application for payment; or

(ii) Payment to the subcontractor of any withheld amounts of a progress

F.3 (Continued)

payment specifying--

(A) The amounts withheld under subparagraph (e)(1) of this clause; and

(B) The dates that such withholding began and ended; and

(6) Be obligated to pay to the Postal Service an amount equal to interest on the withheld payments (computed in the manner provided in 31 U.S.C. 3903 (c)(1)), from the 8th day after receipt of the withheld amounts from the Postal Service until--

(i) The day the identified subcontractor performance deficiency is corrected; or

(ii) The date that any subsequent payment is reduced under subdivision (e)(5)(i) of this clause.

(f)(1) If a Contractor, after making payment to a first-tier subcontractor, receives from a supplier or subcontractor of the first-tier subcontractor (hereafter referred to as a "second-tier subcontractor") a written notice in accordance with Section 2 of the Act of August 24, 1935 (40 U.S.C. 2701b, Miller Act), asserting a deficiency in such first-tier subcontractor's performance under the contract for which the Contractor may be ultimately liable and the Contractor determines that all or a portion of future payments otherwise due such first-tier subcontractor is subject to withholding in accordance with the subcontract agreement, then the Contractor may, without incurring an obligation to pay an interest penalty under subparagraph (e)(6) of this clause-

(i) Furnish to the first-tier subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon making such determination; and

(ii) Withhold from the first-tier subcontractor's next available progress payment or payments an amount not to exceed the amount specified in the notice of withholding furnished under subdivision (f)(1)(i) of this clause.

(2) As soon as practicable, but not later than seven days after receipt of satisfactory written notification that the identified subcontract performance deficiency has been corrected, the Contractor shall pay the amount withheld under subdivision (f)(1)(i) of this subparagraph to such first-tier subcontractor, or shall incur an obligation to pay a later payment interest penalty to such first-tier subcontractor computed at the rate of interest established by the Secretary of the Treasury for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(g) A written notice of any withholding shall be issued to a subcontractor (with a copy to the Contracting Officer of any such notice issued by the Contractor), specifying--

(1) The amount to be withheld;

(2) The specific cause for the withholding under the terms of the subcontract; and

F.3 (Continued)

(3) The remedial actions to be taken by the subcontractor in order to receive payment of the amounts withheld.

(h) The Contractor may not request payment from the Postal Service of any amount withheld or retained in accordance with paragraph (d) of this clause until such time as the Contractor has determined and certified to the Contracting Officer that the subcontractor is entitled to the payment of such amount.

(i) A dispute between the Contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or a late payment interest penalty under a clause included in the subcontract pursuant to paragraph (c) of this clause does not constitute a dispute to which the Postal Service or United States is à party. The Postal Service or United States may not be interpleaded in any judicial or administrative proceeding involving such a dispute.

(j) Except as provided in paragraph (i) of this clause, this clause shall not limit or impair any contractual, administrative or judicial remedies otherwise available to the Contractor or Subcontractor in the event of a dispute involving late payment or nonpayment by the Contractor or deficient subcontract performance or nonperformance by a subcontractor.

(k) The Contractor's obligation to pay an interest penalty to a subcontractor pursuant to the clauses included in a subcontract under paragraph (c) of this clause shall not be construed to be an obligation of the Postal Service or United States for such interest penalty. A cost reimbursement claim may not include any amount for reimbursement of such interest penalty.

FB272-1 PROGRESS PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS

(a) The Contractor shall furnish a breakdown of the total contract price showing the amount included therein for each principal category of the work, in such detail as requested by the Contracting Officer, to provide a basis for determining progress payments, or payment shall not be made.

(b) Along with each request for progress payments, the contractor shall furnish the following certification, or payment shall not be made:

I hereby certify, to the best of my knowledge and belief, that--

(1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code; and

(3) This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

F.3 (Continued)

(NAME)

---

(TITLE)

---

(DATE)

(c) If the Contractor, after making a certified request for progress payments, discovers that a portion or all of such request constitutes a payment for performance that fails to conform to the specifications, terms, and conditions of this contract (hereinafter referred to as the "unearned amount"), the Contractor shall--

(1) Notify the Contracting Officer of such performance deficiency; and

(2) Be obligated to pay the Postal Service an amount (computed by the Contracting Officer in the manner provided in 31 U.S.C. 3903 (c)(1)) equal to interest on the unearned amount from the date of receipt of the unearned amount until--

(i) The date the Contractor notifies the Contracting Officer that the performance deficiency has been corrected; or

(ii) The date the Contractor reduces the amount of any subsequent certified request for progress payments by an amount equal to the unearned amount.

(d) In making these progress payments, the Postal Service shall, upon request, reimburse the Contractor for the amount of premiums paid for performance and payment bonds (including coinsurance and reinsurance agreements when applicable) after surety. The retainage provision in paragraph (e) of this clause shall not apply to that portion of progress payments attributable to bond premiums.

FB 272-2 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS

(a) Contracting Officer may modify the date in subdivision (a)(1)(i)(A) of the clause to specify a period longer than 14 days if required to afford the Postal Service a practicable opportunity to inspect the work adequately and to determine the adequacy of the Contractor's performance under the contract.

(b) The Contracting Officer may modify the date in subdivision (a)(4)(i) of the clause to specify a period longer than seven days for constructive acceptance or constructive approval if required to afford the Postal Service a practicable opportunity to adequately inspect the work and to determine the adequacy of the Contractor's performance under the contract.