## PART 2 - CLAUSES AND ATTACHMENTS

## SECTION G - SPECIAL CLAUSES

G.1 PERFORMANCE AT OCCUPIED POSTAL PREMISES (Clause B-27) (October 1987)

a. In performing this contract, the contractor must -

1. Comply with applicable Occupational Safety and Health Standards (29 CFR 1910) promulgated pursuant to the authority of the Occupational Safety and Health Act of 1970;

2. Comply with any other applicable Federal, State, or local regulations governing workplace safety to the extent they do not conflict with a.1 above; and

3. Take all other proper precautions to protect the safety and health of the contractor's employees, Postal Service employees, and the public.

b. The contractor must coordinate its use of the premises with the installation head or other representative designated by the contracting officer. Subjects of this coordination include the designation of work and storage areas; the extent, if any, of use by the contractor of Postal Service tools and equipment; the furnishing by the contractor of appropriate signs and barricades to exclude unauthorized personnel from the work areas and to call attention to hazards and dangers; and other matters relating to the protection of Postal Service employees and property.

G.2 CONDITIONS AFFECTING THE WORK (Clause 11-1) (October 1987)

The contractor is responsible for having taken steps reasonably necessary to ascertain the nature and location of the work, and the general and local conditions that can affect the work or its cost. Any failure by the contractor to have done so does not relieve the contractor from responsibility for successfully performing the work without additional expense to the Postal Service. The Postal Service assumes no responsibility for any understanding or representations concerning conditions made by any of its officers or agents before execution of this contract, unless such understanding or representations by the Postal Service are expressly stated in the contract.

G.3 DIFFERING SITE CONDITIONS (Clause 11-2) (October 1987)

a. The contractor must promptly, and before the conditions are disturbed, notify the contracting officer in writing of--

1. Subsurface or latent physical conditions at the site differing materially from those indicated in this contract; or

2. Previously unknown physical conditions at the site of an unusual nature differing materially from those ordinarily encountered and generally recognized as inherent in work of the character required in this contract.

G.3 (Continued)

b. The contracting officer will promptly investigate the conditions. If they are found to differ materially from those indicated or anticipated and will cause an increase or decrease in the contractor's cost of, or the time required for, performance of any part of the work under this contract (whether or not changed as a result of such conditions), the contractor will be entitled to an equitable adjustment.

c. No claim by the contractor for an equitable adjustment under this clause will be allowed if asserted after final payment under this contract.

G.4 PERFORMANCE OF WORK BY CONTRACTOR (Clause 11-3) (October 1987)

The contractor must perform on the site, with its own organization, work equivalent to at least 12 percent (unless otherwise set forth in the Schedule) of the total amount of work to be performed under this contract. The percentage of work required to be performed by the contractor may be reduced with written approval of the contracting officer.

G.5 SUPERINTENDENCE BY CONTRACTOR (Clause 11-4) (October 1987)

The contractor must give personal superintendence to the work or have a competent foreman or superintendent, satisfactory to the contracting officer, on the worksite at all times during progress, with authority to act for the contractor.

G.6 MATERIALS AND WORKMANSHIP (Clause 11-5) (June 1988)

a. Unless otherwise specifically provided, all equipment and materials incorporated into the work must be new and of the most suitable grade for the purpose intended. Unless otherwise specifically provided, reference to any equipment, material, or patented process by brand name, make, or catalog number establishes a standard of quality only. The contractor may substitute any equipment, material, or process that the contracting officer finds to be equal to that named. To obtain approval to use a different equipment, material, or process, the contractor must furnish the contracting officer the manufacturer's name, the model number, and other identifying data and information regarding the nature and performance of the proposed substitute. If requested by the contracting officer, samples must be submitted for approval at the contractor's expense, shipping charges prepaid. Materials or processes substituted without approval may be rejected.

b. In the event of substitution in accordance with paragraph a above, the contractor must furnish to the contracting officer for approval the manufacturer's name, the model number, and any other relevant information on the performance, capacity, nature, and rating of equipment or materials proposed for substitution.

c. The contractor must obtain the contracting officer's approval of the machinery and mechanical equipment incorporated into the work. The contractor must submit samples of all materials and equipment as directed by the contracting officer or as required by the specifications.

G.6 (Continued)

d. All work must be performed in a skillful and workmanlike manner. The contracting officer may, in writing, require the contractor to remove from the work any employee the contracting officer deems incompetent, careless, or otherwise objectionable.

G.7 USE OF PREMISES (Clause 11-6) (October 1987)

a. If the premises are occupied, the contractor, any subcontractors, and their employees must comply with the regulations governing access to, operation of, and conduct while on the premises and must perform the work required under this contract so as not to unreasonably interfere with the conduct of Postal Service business or use and occupancy by Postal Service tenants.

b. Any requests received by the contractor from occupants to change the sequence of work must be referred to the contracting officer for determination.

c. The contractor, any subcontractors, and their employees will not have access to any building outside the scope of this contract, without permission of the contracting officer.

G.8 OTHER CONTRACTS (Clause 11-7) (October 1987)

The Postal Service may award other contracts for additional work, and the contractor must cooperate fully with the other contractors and Postal Service employees and carefully fit in its own work as may be directed by the contracting officer. The contractor must not commit or permit any act that will interfere with the performance of work by any other contractor or by Postal Service employees.

G.9 SUBCONTRACTS (CONSTRUCTION) (Clause 11-8) (October 1987)

a. Nothing in this contract may be construed to create any contractual relationship between any subcontractor and the Postal Service. The divisions or sections of the specifications are not intended to control the contractor in dividing the work among subcontractors, or to limit the work performed by any trade.

b. The contractor is responsible to the Postal Service for acts and omissions of its own employees and of subcontractors and their employees. The contractor is also responsible for the coordination of the work of the trades, subcontractors, and suppliers.

c. The Postal Service will not undertake to settle any differences among the contractor, subcontractors, or suppliers.

G.10 PERMITS AND RESPONSIBILITIES (Clause 11-9) (October 1987)

The contractor is responsible, without additional expense to the Postal Service, for obtaining any necessary licenses and permits, and for complying with any applicable Federal, State, and municipal laws, codes, and regulations in connection with the prosecution of the work. The contractor is responsible for all damage to persons or property that occurs as a result of its negligence. The contractor must take proper safety and health precautions to protect the work, the workers, the public, and the property of others. The contractor is

G.10 (Continued)

responsible also for all materials delivered and work performed until completion and acceptance of the entire construction work, except for any completed unit of construction that may have been accepted.

G.11 BUILDING CODES, FEES, AND CHARGES (Clause 11-12) (October 1987)

a. State and local building codes and regulations do not apply as a matter of law to work inside the property lines of Postal Service-owned properties but generally do apply to Postal Service-leased properties. In compliance with Postal Service policy, the contractor must comply with all State and local building code requirements unless otherwise specifically provided.

b. The contractor must pay all fees and charges for connections to outside services and for use of property outside the site.

G.12 PROTECTION OF EXISTING VEGETATION, STRUCTURES, UTILITIES, AND IMPROVEMENTS (Clause 11-13) (October 1987)

a. The contractor will preserve and protect all existing vegetation (such as trees, shrubs, and grass) and structures on or adjacent to the site of work that are not to be removed and that do not unreasonably interfere with the construction work. Care will be taken in removing trees authorized by the contracting officer for removal, to avoid damage to vegetation that will remain in place. Any limbs or branches of trees broken during such operations or by the careless operation of equipment, or by workmen, will be trimmed with a clean cut and painted with an approved tree pruning compound as directed by the contracting officer.

b. The contractor will protect from damage all existing improvements or utilities at or near the site of the work, the location of which is or should have been known, and will repair or restore any damage to these facilities resulting from failure to comply with the requirements of this contract or to exercise reasonable care in performing the work. If the contractor fails or refuses to repair any such damage promptly, the contracting officer may have the necessary work performed and charge the cost to the contractor.

G.13 HEAT (Clause 11-14) (October 1987)

Unless otherwise specified, or unless directed otherwise by the contracting officer, the contractor must--

a. Provide heat as necessary to protect all work materials and equipment against injury from dampness and cold;

b. Protect, cover, and/or heat, as may be necessary to produce and maintain a temperature of not less than 50 degrees Fahrenheit in the concrete during the placing, setting, and curing of concrete, and in the plaster during the application, setting, and curing of plaster; and

c. Provide heat as necessary to produce in the area where the work is to be done a temperature of not less than 70 degrees Fahrenheit for the period beginning 10 days before the placing of interior finishes and finish materials and continuing until completion of beneficial occupancy of the area.

G.14 DEBRIS AND CLEANUP (Clause 11-15) (October 1987)

a. The contractor must, during the progress of the work, remove and dispose of the resultant dirt and debris and keep the premises clean.

b. The contractor will, upon completion of the work, remove all construction equipment and surplus materials (except materials or equipment that are to remain Postal Service property as provided by this contract), and leave the premises in a clean, neat, and orderly condition satisfactory to the contracting officer.

G.15 MEASUREMENTS (Clause 11-16) (October 1987)

The contractor must verify all dimensions shown of existing work, and all dimensions required for work that is to connect with work now in place, by actual measurement of the existing work. Any discrepancies between the contract requirements and the existing conditions must be referred to the contracting officer before the contractor performs any work affected by these discrepancies.

G.16 SURVEY MONUMENTS AND BENCH MARKS (Clause 11-17) (October 1987)

a. The Postal Service has established, or will establish, such general reference points as will enable the contractor to proceed with the work. The contractor will provide new monuments where shown or specified. If the contractor finds that any previously established reference points have been destroyed or displaced, or that none has been established, the contractor must promptly notify the contracting officer.

b. The contractor must protect and preserve established bench marks and monuments and make no changes in locations without the written approval of the contracting officer. Established reference points that may be lost, covered, destroyed, or disturbed in the course of performance of the work under this contract, or that require shifting because of necessary changes in grades or locations, must (subject to prior approval of the contracting officer) be replaced and accurately located or relocated (as appropriate) at the contractor's expense, by a licensed engineer or licensed land surveyor.

c. New monuments will be 6 inches square by 3 feet deep (unless otherwise specified), of concrete or stone, with a 3-inch copper or brass pin, 3/8-inch in diameter, in the center, and must be set flush with the ground or pavement in locations indicated on the site plan.

d. Monuments will not be required where lines of buildings are coincident with property lines.

e. The contractor must verify the figures shown on the survey and site plan before undertaking any construction work and will be responsible for the accuracy of the finished work.

f. After completion of construction and before final payment, the contractor must furnish the Postal Service blueprints (in triplicate) of plans showing the exact location of construction survey monuments with reference to true property lines.

G.17 SPECIFICATIONS AND DRAWINGS (Clause 11-18) (October 1987)

a. The contractor must keep, at the site, copies of the drawings and specifications and must at all times give the contracting officer access to them. Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, is of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications will govern.

b. In case of difference between small and large-scale drawings, the large-scale drawings will govern. Schedules on any contract drawing will take precedence over conflicting information on that or any other contract drawing. On any of the drawings in which a portion of the work is detailed or drawn out and the remainder is shown in outline, the parts detailed or drawn out will apply also to all other like portions of the work.

c. When the word "similar" appears on drawings, it has a general meaning and must not be interpreted as meaning identical, and all details must be worked out in relation to their location and connection with other parts of the work.

d. In case of discrepancy either in figures or drawings or specifications, the matter must be promptly submitted to the contracting officer, who will promptly make a determination in writing. Any adjustment by the contractor without such a determination will be at the contractor's own risk and expense. The contracting officer must furnish from time to time such detailed drawings and other information as may be necessary.

G.18 STANDARD REFERENCES (Clause 11-19) (October 1987)

a. All publications and other documents (such as manuals, handbooks, codes, standards, and specifications) cited in this contract for the purpose of establishing requirements applicable to equipment, materials, or workmanship are hereby incorporated by reference in the contract as fully as if printed and bound with the specifications of this contract, in accordance with the following:

1. Wherever reference is made to Standard Specifications of the Public Buildings Service, Interim Federal Specifications, Interim Amendments to Federal Specifications, Interim Federal Standards, or Interim Amendments to Federal Standards, the contractor must comply with the requirements set forth in the issue or edition identified in this contract except as modified or as otherwise provided in the specifications.

2. Wherever reference is made to any document other than those specified in subparagraph a.1 above, the contractor must comply with the requirements set forth in the edition specified in this contract or, if not specified, the latest edition or revision, as well as the latest amendment or supplement in effect on the date of the solicitation except as modified by the specifications of this contract.

b. Federal Specifications, Federal Standards, and Standard Specifications of the Public Buildings Service can be obtained from the Business Service Center at any GSA Regional Office. Inquiries regarding "Commercial Standards," "Product Standards," and "Simplified Practice Recommendations" should be addressed to the Office of Product Standards, National Bureau of Standards, Washington, DC 20234. Publications of associations referred to in the specifications can be obtained

G.18 (Continued)

directly from the associations.

c. Upon request, the contractor must make available at the job site, within a reasonable time, a copy of any trade manual or standard incorporated by reference in this contract that governs quality and workmanship.

G.19 POSTAL SERVICE OCCUPANCY (Clause 11-24) (October 1987)

a. The contracting officer reserves the right of partial occupancy or use of facilities, services, and utilities, before final acceptance, without implying completion or acceptance of any part of the project by the Postal Service. Before such occupancy or use, the contracting officer must furnish the contractor an itemized list of work remaining to be performed or corrected. Failure to list an item will not relieve the contractor of the responsibility for complying with the terms of the contract.

b. Costs incurred as a result of such partial occupancy or use of facilities, services, and utilities are subject to equitable adjustment under the Changes clause.

G.20 CHANGES (CONSTRUCTION) (Clause 11-26) (October 1987)

a. The contracting officer may at any time, without notice to any sureties, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract, including changes--

1. In the specifications (including drawings and designs);

2. In the method or manner of performance of the work;

3. In the Postal Service-furnished facilities, equipment, materials, services, or site; or

4. Directing acceleration in the performance of the work.

b. Any other written or oral order (which, as used in this paragraph b, includes direction, instruction, interpretation, or determination) from the contracting officer that causes a change will be treated as a change order under this clause, provided the contractor gives the contracting officer written notice stating (1) the date, circumstances, and source of the order and (2) that the contractor regards the order as a change order.

c. Except as provided in this clause, no order, statement, or conduct of the contracting officer may be treated as a change under this clause or entitle the contractor to an equitable adjustment.

d. If any change under this clause causes an increase or decrease in the contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any order, the contracting officer will make an equitable adjustment and modify the contract in writing. However, except for claims based on defective specifications, no claim for any change under paragraph b above will be allowed for any costs incurred more than 20 days before the contractor gives written notice as required. In the case of defective specifications for which the Postal Service is responsible, the

G.20 (Continued)

equitable adjustment will include any increased cost reasonably incurred by the contractor in attempting to comply with the defective specifications.

e. The contractor must assert any claim under this clause within 30 days after (1) receipt of a written change order under paragraph a above, or (2) the furnishing of a written notice under paragraph b above, by submitting to the contracting officer a written statement describing the general nature and amount of the claim, unless this period is extended by the Postal Service. The statement of claim may be included in the notice under paragraph b above.

f. No claim by the contractor for an equitable adjustment will be allowed if asserted after final payment under this contract.

G.21 ACCIDENT PREVENTION (Clause 11-27) (June 1988)

a. In performing this contract, the contractor must comply with the Occupational Safety and Health Act of 1970.

b. The contractor will maintain an accurate record of exposure data and all accidents incident to work performed under this contract resulting in death, traumatic injury, occupational disease, or damage to property, material, supplies, or equipment. The contractor must report the exposure data and accidents as prescribed by the contracting officer.

G.22 ACCESS TO SITE (Clause FB-44) (June 1988)

The contractor's access to the site and use of existing roads will be as directed by the contracting officer or a designee.

G.23 IDENTIFICATION OF CONTRACTOR'S VEHICLES (Clause FB-45) (June 1988)

After contract award, the contractor will coordinate with the security officer for the issuance of vehicle passes for construction and private vehicles.

G.24 CONTROL OF EROSION, SEDIMENTATION, AND POLLUTION (Clause FB-49) (June 1988)

a. Operations must be scheduled and conducted to minimize erosion of soils and to prevent silting and muddying of streams, rivers, irrigation systems, and impoundments (lakes, reservoirs, and the like).

b. Pollutants such as fuels, lubricants, bitumens, raw sewage, and other harmful materials must not be discharged onto the ground, into or near rivers, streams, and impoundments, and natural or man-made channels. Wash water or waste from concrete or aggregate operations must not be allowed to enter live streams before treatment by filtration, settling, or other means sufficient to reduce the sediment content to not more then that of the stream into which it is discharged.

c. Mechanized equipment must not be operated in live streams without written approval by the contracting officer.

G.25 INDEMNIFICATION (Clause FB-203) (June 1988)

The contractor must save harmless and indemnify the Postal Service and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, and/or expenses resulting from, brought for, or on account of any personal injury or property damage received or sustained by any persons or property growing out of, occurring, or attributable to any work performed under or related to this contract, resulting in whole or in part from the negligent acts or omissions of the contractor, any subcontractor, or any employee, agent, or representative of the contractor or any subcontractor.

G.26 DEFINITION OF TERMS USED IN CONTRACT DOCUMENTS CONSTRUCTION (Clause FB-235) (June 1988)

This special contract clause supplements PM Clause B-1, Definitions.

a. Wherever in the contract documents the words "Post Office Department", "Department", "POD", "Post Office", "PO", "US Postal Service", "USPS", "Owner", "Government", or words of like import are used, it must be understood that the "United States Postal Service" is intended.

b. Wherever in the contract documents "Project Engineer," "Resident Engineer," "Architect-Engineer", "AE", "Architect", "Supervisory Authority", or other individual or organization is designated, the functions and authorities of such individual or organization must be governed by PM Clause B-1, Definitions.

c. Wherever in the contract documents the words "American Standards Associates", "ASA", "United States Standards", "USA" or "American National" are used, it shall be understood that "American National Standards Institute" is intended.

d. Where throughout the text of Technical Provisions reference is made to "Contractors", "General Contractor", "Installing Contractor", "other Contractors", "another Contractor", "each Contractor", "subcontractor", "site Contractor", "this Contractor", or words of like import are used, it shall be understood that "Contractor" is intended. Where certain special contractors are required to meet certain qualifications, obtain certain permits, or provide certain services particular to a specific skill or license, the word "Contractor" prefixed by a specialty designation is intended to mean the specialty "subcontractor", e.g., fire protection subcontractor, mechanical or electrical subcontractor. (See PM Clauses B-1, and 11-8 of the Section "General Contract Clauses."

e. Where "as directed", "as required", "ordered", "prescribed", "approved", "acceptance", or words of similar nature are used, it must be understood that such words refer to actions to be taken, in writing, by the Contracting Officer unless otherwise stated. The words "necessary", "suitable", "equal", or words of like import must mean necessary or equal in the opinion of the contracting officer.

f. "Work" must be deemed to consist of all labor and operations, transportation, hoisting, materials, tools, equipment, services, inspections investigations, coordination and supervision required and/or reasonably necessary to produce the construction required by the contract documents.

G.26 (Continued)

g. "Furnish" means the design, fabrication, purchase and delivery to the job site or other destination as directed by the Contracting Officer.

h. "Install or Installation" means the act of physically placing, applying, setting, erecting, anchoring, securing, etc., construction materials, equipment, furnishings, appliances, and similar items specified and furnished at the job site. Installation of specified items must be complete in all respects.

i. "Provide" means to furnish and install construction material, equipment, etc. as defined above.

j. The technical specifications may indicate metric units of measurement as a supplement to U. S. customary units. When indicated thus: 1" (25mm), the U. S. customary unit is specific and the metric unit is non-specific. When not shown with parentheses, the unit is specific. The metric units correspond to the "International System of Units (SI)" and generally follow ASTM E 380, "Standard for Metric Practice."

G.27 U.S.D.A. QUARANTINED AREAS (CONSTRUCTION)
(Clause FB-243) (June 1988)

If the work called for by this contract involves activities in counties quarantined by Department of Agriculture to prevent the spreads of certain plant pests which may be present in the soil, the contractor agrees that all construction equipment and tools to be moved from such counties shall be thoroughly cleaned of all soil residues at the construction site with water under pressure. If this contract involves such a quarantined area, the contractor agrees to comply with the regulations of the Department of Agriculture. The contractor agrees to assure compliance with this obligation by all subcontractors.

G.28 POSTAL SERVICE-FURNISHED PROPERTY
(Clause FB-255) (March 1989)

If Postal Service-furnished equipment is to be installed and is not on the worksite, the Postal Service will make separate arrangements to provide delivery to the site. Any costs for labor associated with loading and unloading the Postal Service-furnished property will be negotiated.

G.29 SECURITY REQUIREMENTS (INDEFINITE-QUANTITY)
(Clause FB-256) (June 1988)

a. Contractors must consult the building's manager for permission to inspect the site and for the security regulations in effect.

b. Contractors will be required to comply with security regulations imposed by the Postal Service, or other occupying agencies, including any necessary security clearances.

G.30 PROTECTION AND DAMAGE (INDEFINITE-QUANTITY)
(Clause FB-257) (June 1988)

a. Provide all labor, materials, and equipment necessary for protection of personnel, furnishings, equipment, or building structure from damage. Remove and

G.30 (Continued)

replace movable items, if necessary. Replace or repair any items damaged, due to work performed under this contract equal to their original construction and finish.

b. Use rubber-tired vehicles that use non-volatile fuels for conveying materials inside building and provide temporary covering, as necessary, to protect floors.

c. No materials shall be thrown from windows or doors of buildings. Building waste system shall not be used to remove refuse, emptying paint cans, and the like.

d. Debris shall be removed from the site daily. Premises shall be left neat and clean after each work shift, so that business may proceed the next regular workday without interruption.

e. Dust-proof enclosures or partitions for protection wherever dusty or dirty work is performed and dampening of debris to avoid dusting when removed shall be negotiated into work orders as required.

f. Whenever flammable solvents or adhesives (do not use unless nonflammable items are not suitable for the condition) are used, provide adequate ventilation and fire protection measures. Do not use flammable solvents or adhesives in any case when flame-or-spark-producing operations are being performed in the area.

G.31 METHOD (INDEFINITE-QUANTITY) (Clause FB-258) (June 1988)

a. Existing work shall be cut, drilled, altered, removed, or temporarily removed and replaced, as necessary for the performance of the contract work. Work that is replaced shall match similar existing work. Work remaining in place which is damaged or defaced by reason of work done under this contract shall be restored equal to the condition it was in at the time the contractor commenced performance of work under the work order.

b. The use of impact tools for cutting concrete or for installation of inserts, and the use of power-activated tools will not be permitted in occupied buildings. Impact tools and power- activated tools may be used during nonworking hours with written permission of the contracting officer's representative on each work order.

c. Any items which are to be removed and not to be reused in this contract shall be removed from the project, and shall become the property of the contractor, unless so noted to remain the property of the Postal Service, elsewhere in this contract.

G.32 USE OF BUILDING FACILITIES
(Clause FB-259) (March 1989)

a. Utility services of the building will be used in this work. Toilet facilities are available on the site, and may be used by the workmen, subject to the regulations of the Postal Service. No cleaning of tools is permitted.

b. Any temporary use of an existing elevator shall be by arrangement with the buildings manager of the building and subject to the manager's control. The contractor shall provide and maintain suitable and adequate protective coverings

G.32 (Continued)

for the elevator machinery, the hatchway entrances, and the interior of elevator during the period of temporary use. Loads in excess of the rated capacity of the elevator will not be permitted. The Postal Service will bear the cost of electric current for the operation of the elevator. On completion of the work, the contractor shall remove the protective coverings together with any resultant dirt and debris, and leave the equipment in a condition equal to the condition it was in at the time the contractor commenced performance of work under the work order.

G.33 INSPECTION OF SITE OR BUILDING (INDEFINITE-QUANTITY) (Clause FB-260) (June 1988)

It shall be the contractor's responsibility to inspect conditions at each site, including such things as elevator size and capacities, existing building materials and components, and the like, before finalizing work orders (see Clause 11-1).

G.34 SINGULAR NUMBERS (INDEFINITE-QUANTITY) (Clause FB-262) (June 1988)

a. Where any item, device, or part of equipment is referred to in singular number, this reference shall apply to as many items and devices as are required for complete installation as outlined in this specification for each work order.

b. Where any reference is made herein to "the contract", or to "contract work", the meaning shall apply to each work order individually and collectively.

G.35 BUILDER'S RISK INSURANCE (Clause FB-263) (March 1989)

The Postal Service does not carry Builder's Risk Insurance coverage. The contractor, at its own option and expense, may elect to provide this insurance for its work.

## SECTION H - GENERAL CLAUSES

H.1 DEFINITIONS (Clause B-1) (June 1988)

As used in this contract, the following terms have the following meanings:

a. "Contracting officer" means the person executing this contract on behalf of the Postal Service, and any other officer or employee who is a properly designated contracting officer; the term includes, except as otherwise provided in the contract, the authorized representative of a contracting officer acting within the limits of the authority conferred upon that person.

b. Except as otherwise provided in the contract, the term "subcontracts" includes purchase orders under this contract.

H.2 ASSIGNMENT OF CLAIMS (Clause B-8) (October 1987)

a. If this contract provides for payments aggregating $10,000 or more, claims for moneys due or to become due from the Postal Service under it may be assigned to a bank, trust company, or other financing institution, including any Federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any assignment or reassignment must cover all amounts payable and must not be made to more than one party, except that assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in financing this contract. No assignment or reassignment will be recognized as valid and binding upon the Postal Service unless a written notice of the assignment or reassignment, together with a true copy of the instrument of assignment, is filed with -

1. The contracting officer;

2. The surety or sureties upon any bonds; and

3. The office, if any, designated to make payment, and the contracting officer has acknowledged the assignment in writing.

b. Assignment of this contract or any interest in this contract other than in accordance with the provisions of this clause will be grounds for termination of the contract for default at the option of the Postal Service.

H.3 CLAIMS AND DISPUTES (Clause B-9) (June 1988)

a. This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) ("the Act").

b. Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

c. "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the

H.3 (Continued)

payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph d.2 below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

d. 1. A claim by the contractor must be made in writing and submitted to the contracting officer for a written decision. A claim by the Postal Service against the contractor is subject to a written decision by the contracting officer.

2. For contractor claims exceeding $50,000, the contractor must submit with the claim a certification that -

(a) The claim is made in good faith;

(b) Supporting data are accurate and complete to the best of the contractor's knowledge and belief; and

(c) The amount requested accurately reflects the contract adjustment for which the contractor believes the Postal Service is liable.

3. (a) If the contractor is an individual, the certification must be executed by that individual.

(b) If the contractor is not an individual, the certification must be executed by-

(1) A senior company official in charge at the contractor's plant or location involved; or

(2) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

e. For contractor claims of $50,000 or less, the contracting officer must, if requested in writing by the contractor, render a decision within 60 days of the request. For contractor-certified claims over $50,000, the contracting officer must, within 60 days, decide the claim or notify the contractor of the date by which the decision will be made.

f. The contracting officer's decision is final unless the contractor appeals or files a suit as provided in the Act.

g. The Postal Service will pay interest on the amount found due and unpaid from -

1. The date the contracting officer receives the claim (properly certified if required); or

2. The date payment otherwise would be due, if that date is later, until the date of payment.

H.3 (Continued)

h. Simple interest on claims will be paid at a rate determined in accordance with the Interest clause.

i. The contractor must proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the contracting officer.

H.4 PRICING OF ADJUSTMENTS (Clause B-10) (October 1987)

When costs are a factor in determining any contract price adjustment under the Changes clause or any other provision of this contract, chapter 5 of the USPS Procurement Manual in effect on the date of this contract will serve as a guide in negotiating the adjustment.

H.5 TERMINATION FOR CONVENIENCE (Clause B-11) (October 1987)

a. Performance under this contract may be terminated by the Postal Service in whole or in part whenever the contracting officer determines that termination is in the interest of the Postal Service. A termination may be effected by delivery to the contractor of a notice of termination specifying the extent of work terminated, and the effective date of the termination.

b. Upon receipt of a notice of termination, unless otherwise directed by the contracting officer, the contractor must take the following actions:

1. Stop work to the extent specified in the notice.

2. Place no further orders or subcontracts for materials, services, or facilities except as may be necessary for completion of the unterminated work.

3. Terminate all orders and subcontracts to the extent that they relate to the work terminated.

4. Assign to the Postal Service, as directed by the contracting officer, all right, title, and interest of the contractor under the orders and subcontracts terminated. The Postal Service has the right, in its discretion, to settle or pay claims arising out of these terminations.

5. Settle all outstanding liabilities and claims arising out of the termination of orders and subcontracts, with the approval or ratification of the contracting officer. The contracting officer's decision is final for the purposes of this clause.

6. Transfer title to the Postal Service and deliver as directed by the contracting officer -

(a) Work in process, completed work, and other material produced as a part of or acquired for the work terminated; and

(b) The completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would have been furnished to the Postal Service.

H.5 (Continued)

7. Use its best efforts to sell as directed by the contracting officer any property of the types referred to in subparagraph b.6 above, provided that the contractor may acquire property under the conditions prescribed and at prices approved by the contracting officer, and the proceeds of any such transfer will be applied in reduction of any payments to be made by the Postal Service to the contractor, or be credited to the price or cost of the work covered by this contract, or be paid in any manner directed by the contracting officer.

8. Complete performance of the work not terminated.

9. Take any action that may be necessary, or that the contracting officer may direct, for protecting and preserving any property related to this contract that is in the possession of the contractor and in which the Postal Service has or may acquire an interest.

c. At any time, the contractor may submit to the contracting officer a list, certified as to quantity and quality, of termination inventory not previously disposed of and may request the Postal Service to remove inventory items or enter into a storage agreement covering them. Not later than 15 days after receiving this request, the Postal Service will accept title to the items and remove them or enter into a storage agreement. The list will be subject to verification by the contracting officer upon removal of the items or, if the items are stored, within 45 days after submission of the list.

d. After termination, the contractor must submit to the contracting officer a termination claim in the form and with the certification prescribed by the contracting officer. The claim must be submitted promptly, but in no event more than one year after the effective date of termination, unless an extension in writing is granted by the contracting officer. However, if the contracting officer determines that the facts justify such action, any termination claim may be received and acted upon at any time after the one-year period. Upon failure of the contractor to submit a termination claim within the time allowed, the contracting officer may determine, on the basis of the information available, the amount, if any, due the contractor by reason of the termination and will pay that amount.

e. If the contractor and the contracting officer fail to agree on the amount to be paid to the contractor by reason of the termination, the contracting officer will determine the amount, if any, due the contractor and pay the contractor the contract price for completed and accepted supplies or services not previously paid for (adjusted for any saving of freight and other charges) and, with respect to all other contract work performed before the effective date of termination, the total of -

1. The cost of such work;

2. The cost of settling and paying claims arising out of the termination of work under subcontracts; and

3. A profit on e.1 above, determined by the contracting officer to be fair and reasonable; but if it appears that the contractor would have sustained a loss on the entire contract had it been completed, no profit will be included, and an appropriate adjustment will be made reducing the amount of the settlement to

H.5 (Continued)

reflect the indicated rate of loss.

f. The total sum to be paid to the contractor may not exceed the total contract price as reduced by the payments made and as further reduced by the contract price of work not terminated. Except for normal spoilage, and except to the extent that the Postal Service expressly assumed the risk of loss, there will be excluded from the amounts payable to the contractor under paragraph e above, the fair value, as determined by the contracting officer, of property destroyed, lost, stolen, or damaged so as to become undeliverable to the Postal Service, or to a buyer.

g. Any determination of costs will be governed by the cost principles set forth in chapter 5 of the USPS Procurement Manual in effect on the effective date of termination.

h. The contractor has the right of review under the Claims and Disputes clause of any determination made by the contracting officer under paragraph d or e above, except that, if the contractor has failed to submit its termination claim within the time provided in paragraph d above and has failed to request an extension of time, there may be no right of review.

i. In arriving at the amount due the contractor, there must be deducted -

1. All unliquidated advance or other payments to the contractor applicable to the terminated portion of this contract;

2. Any claim that the Postal Service may have against the contractor under this contract; and

3. The agreed price for or the proceeds of sale of materials, supplies, or other things kept by the contractor or sold and not recovered by or credited to the Postal Service.

j. If the termination is partial, the contractor must file with the contracting officer a request in writing for an equitable adjustment of the price specified in the contract relating to the continued portion of the contract.

k. The Postal Service may, under the terms and conditions it prescribes, make partial payments and payments on account in connection with the terminated portion of this contract whenever the aggregate of these payments is within the amount to which the contractor is entitled.

l. Unless otherwise provided in this contract, or by statute, the contractor, for a period of three years after final settlement, must preserve and make available to the Postal Service at all reasonable times at the contractor's office, all books, records, documents, and other evidence bearing on the costs and expenses of the contractor under this contract and relating to the work terminated. If the contracting officer approves, photographs, microphotographs, or other authentic reproductions may be maintained instead of the originals.

H.6 TERMINATION FOR DEFAULT (Clause B-13) (October 1987)

a. 1. The Postal Service may, subject to paragraphs c and d below, by written notice of default to the contractor, terminate this contract in whole or in part if the contractor fails to -

(a) Complete the requirements of this contract within the time specified in the contract or any extension;

(b) Make progress, so as to endanger performance of this contract (but see paragraph d below); or

(c) Perform any of the other provisions of this contract (but see subparagraph a.2 following).

2. The Postal Service's right to terminate this contract under a.1(b) and (c) above may be exercised if the contractor does not cure the failure within ten days (or more if authorized in writing by the contracting officer) after receipt of the notice from the contracting officer specifying the failure.

b. If the Postal Service terminates this contract in whole or in part, it may acquire similar supplies or services or complete the work, and the contractor will be liable to the Postal Service for any excess costs. However, the contractor must continue the work not terminated.

c. Except for defaults of subcontractors at any tier, the contractor is not liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the contractor.

d. If the failure to perform is caused by the default of a subcontractor at any tier, and if the cause of the default is beyond the control of both the contractor and subcontractor, and without the fault or negligence of either, the contractor is not liable for any excess costs for failure to perform, unless the subcontracted supplies or services were obtainable from other sources in sufficient time for the contractor to meet the required delivery schedule.

e. If this contract is terminated for default, the Postal Service may require the contractor to transfer title and deliver to the Postal Service, as directed by the contracting officer, any completed supplies, partially completed supplies, and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights that the contractor has specifically produced or acquired for the terminated portion of this contract. Upon direction of the contracting officer, the contractor must also protect and preserve property in its possession in which the Postal Service has an interest.

f. The Postal Service will pay the contract price for completed items delivered and accepted. The contractor and contracting officer may agree on the amount of payment for items delivered and accepted under paragraph e above for the protection and preservation of the property. Failure to agree will be a dispute under the Claims and Disputes clause. The Postal Service may withhold from these amounts any sum the contracting officer determines to be necessary to protect the Postal Service against loss because of outstanding claims.

g. If, after termination, it is determined that the contractor was not in default, or that the delay was excusable, the rights and obligations of the

H.6 (Continued)

parties will be the same as if the termination had been issued for convenience.

h. The rights and remedies of the Postal Service under this clause are in addition to any other rights and remedies provided by law or under this contract.

H.7 EXAMINATION OF RECORDS (Clause B-14) (October 1987)

a. The Postal Service and its authorized representatives will, until three years after final payment under this contract, or for any shorter period specified for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the contractor involving transactions related to this contract.

b. The contractor agrees to include in all subcontracts under this contract a provision to the effect that the Postal Service and its authorized representatives will, until three years after final payment under the subcontract, or for any shorter specified period for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the subcontractor involving transactions related to the subcontract. The term "subcontract" as used in this clause excludes:

1. Purchase orders; and

2. Subcontracts for public utility services at rates established for uniform applicability to the general public.

H.8 ADVERTISING OF CONTRACT AWARDS (Clause B-25) (June 1988)

Except with the contracting officer's prior approval, the contractor agrees not to refer in its commercial advertising to the fact that it was awarded a Postal Service contract or to imply in any manner that the Postal Service endorses its products.

H.9 OFFICIALS NOT TO BENEFIT (Clause 1-4) (October 1987)

No member of or delegate to Congress may be admitted to any part or share of this contract, or to any benefit arising from it. This prohibition does not apply to the extent this contract is with a corporation for the corporation's general benefit.

H.10 GRATUITIES (Clause 1-5) (October 1987)

a. The Postal Service may terminate this contract for default if, after notice and a hearing, the Postal Service Board of Contract Appeals determines that the contractor or the contractor's agent or other representative -

1. Offered or gave a gratuity (such as a gift or entertainment) to an officer or employee of the Postal Service; and

2. Intended by the gratuity to obtain a contract or favorable treatment under a contract.

b. The rights and remedies of the Postal Service provided in this clause are

H.10 (Continued)

in addition to any other rights and remedies provided by law or under this contract.

H.11 CONTINGENT FEES (Clause 1-6) (October 1987)

a. The contractor warrants that no person or selling agency has been employed or retained to solicit or obtain this contract for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide, established commercial or selling agencies employed by the contractor for the purpose of obtaining business.

b. For breach or violation of this warranty, the Postal Service has the right to annul this contract without liability or to deduct from the contract price or otherwise recover the full amount of the commission, percentage, brokerage fee, or contingent fee.

H.12 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (Clause 5-22) (October 1987)

a. If any price, including profit or fee, negotiated in connection with this contract, or any cost reimbursable under this contract, was increased by any significant amount because -

1. The contractor or subcontractor furnished cost or pricing data that were not complete, accurate, and current as of the date of final agreement on price;

2. A subcontractor or prospective subcontractor furnished the contractor cost or pricing data that were not complete, accurate, and current as of the date of final agreement on price; or

3. Any of these parties furnished data of any description that were not accurate, then the price or cost will be reduced accordingly and the contract will be modified to reflect the reduction.

b. Any reduction in the contract price under paragraph a above due to defective data from a prospective subcontractor that was not awarded the subcontract will be limited to the amount, plus applicable overhead and profit markup, by which the actual subcontract, or the actual cost to the contractor if there was no subcontract, was less than the prospective subcontract cost estimate submitted by the contractor (provided that the actual subcontract price was not itself affected by defective cost or pricing data).

H.13 SUBCONTRACTOR COST OR PRICING DATA (Clause 5-23) (October 1987)

a. Before awarding any subcontract or pricing any subcontract modification, the contractor must require the subcontractor to submit cost or pricing data whenever cost or pricing data are required by chapter 5 of the USPS Procurement Manual.

b. If the subcontractor is required to submit cost or pricing data under paragraph a above, then the contractor must insert the substance of this clause, including this paragraph b, in the subcontract.

H.14 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA-MODIFICATIONS (Clause 5-24) (October 1987)

a. This clause applies to any modification to this contract for which cost or pricing data are required by chapter 5 of the USPS Procurement Manual.

b. If any price, including profit or fee, negotiated in connection with any modification under this clause, or any cost reimbursable under this contract, was increased by any significant amount because -

1. The contractor or subcontractor furnished cost or pricing data that were not complete, accurate, and current;

2. A subcontractor or prospective subcontractor furnished the contractor cost or pricing data that were not complete, accurate, and current; or

3. Any of these parties furnished data of any description that were not accurate-then the price or cost will be reduced accordingly and the contract will be modified to reflect the reduction.

c. Any reduction in the contract price under paragraph b above due to defective data from a prospective subcontractor that was not awarded the subcontract will be limited to the amount, plus applicable overhead and profit markup, by which the actual subcontract, or the actual cost to the contractor if there was no subcontract, was less than the prospective subcontract cost estimate submitted by the contractor (provided that the actual subcontract price was not itself affected by defective cost or pricing data).

H.15 SUBCONTRACTOR COST OR PRICING DATA-MODIFICATIONS (Clause 5-25) (June 1988)

a. This clause applies to any modification to this contract for which cost or pricing data are required by chapter 5 of the USPS Procurement Manual.

b. Before awarding any subcontract or pricing any subcontract modification, the contractor must require the subcontractor to submit cost or pricing data whenever cost or pricing data are required by chapter 5 of the USPS Procurement Manual.

c. The contractor must insert the substance of this clause, including this paragraph c, in each subcontract for which cost or pricing data are required by chapter 5 of the USPS Procurement Manual.

H.16 BANKRUPTCY (Clause 6-1) (January 1991)

In the event the contractor enters into proceedings relating to bankruptcy, whether voluntary or involuntary, the contractor will furnish, by certified mail, written notification of the bankruptcy to the contracting officer responsible for administering the contract. The notification must be furnished within five days of the initiation of the bankruptcy proceedings. The notification must include the date on which the bankruptcy petition was filed, the court in which the petition was filed, and a list of Postal Service contracts and contracting officers for all Postal Service contracts for which final payment has not yet been made. This obligation remains in effect until final payment under this contract.

H.17 ADDITIONAL BOND SECURITY (Clause 7-2) (October 1987)

If any surety furnishing a bond in connection with this contract becomes unacceptable to the Postal Service or fails to furnish reports on its financial condition as requested by the contracting officer, or if the contract price increases to the point where the security furnished becomes inadequate in the contracting officer's opinion, the contractor must promptly furnish additional security as required to protect the interests of the Postal Service and of persons supplying labor or materials in performance of this contract.

H.18 DEPOSIT OF ASSETS INSTEAD OF SURETY BONDS (Clause 7-3) (December 1989)

a. If the contractor has deposited assets instead of furnishing sureties for any bond required under this contract and the assets are in the form of checks, currency, or drafts, the contracting officer will hold the assets in an account for the contractor's benefit.

b. Upon contract completion, the contractor's funds will be returned as soon as possible, unless the contracting officer determines that part or all of the account is required to compensate the Postal Service for costs it incurs as a result of the contractor's delay, default, or failure to perform. In such a case, the entire account will be available to compensate the Postal Service.

H.19 INSURANCE (Clause 7-4) (June 1988)

a. During the term of this contract and any extension, the contractor must maintain at its own expense the insurance required by this clause. Insurance companies must be acceptable to the Postal Service. Policies must include all terms and provisions required by the Postal Service.

b. The contractor must maintain and furnish evidence of workers' compensation, employers' liability insurance, and the following general public liability and automobile liability insurance:

| | Bodily Injury | Property Damage |
|---|---|---|
| General Liability | $100,000 per person<br>$500,000 per accident | $10,000 per occurrence<br>$10,000 aggregate |
| Automobile Liability | $100,000 per person<br>$500,000 per accident | $10,000 per occurrence<br>$10,000 aggregate |

c. Each policy must include substantially the following provision:

"It is a condition of this policy that the company furnish written notice to the U.S. Postal Service 30 days in advance of the effective date of any reduction in or cancellation of this policy".

d. The contractor must furnish a certificate of insurance or, if required by the contracting officer, true copies of liability policies and manually countersigned endorsements of any changes. Insurance must be effective, and evidence of acceptable insurance furnished, before beginning performance under this contract. Evidence of renewal must be furnished not later than five days before a policy expires.

H.19 (Continued)

e. The maintenance of insurance coverage as required by this clause is a continuing obligation, and the lapse or termination of insurance coverage without replacement coverage being obtained will be grounds for termination for default.

H.20 FEDERAL, STATE, AND LOCAL TAXES (SHORT FORM) (Clause 7-7) (June 1988)

Except as this contract may otherwise provide, the contract price includes all applicable Federal, State, and local taxes and duties in effect on the contract date but does not include any taxes from which the Postal Service, the contractor, or this transaction is exempt. Upon request of the contractor, the Postal Service must furnish a tax exemption certificate or similar evidence of exemption from any tax not included in the contract price. "Contract date" means the date of the contractor's proposal or quotation or, if no proposal or quotation, the date of this purchase order.

H.21 AUTHORIZATION AND CONSENT (Clause 9-2) (October 1987)

a. Research and Development Work. The Postal Service authorizes and consents to all use and manufacture of any invention covered by a U.S. patent in the performance of research, development, or experimental work called for, or performed as a necessary activity, in the performance of this contract or any subcontract, at any tier.

b. Supplies and Construction. The Postal Service authorizes and consents to all use and manufacture of any invention covered by a U.S. patent in performing this contract or subcontract, at any tier, that is:

1. Embodied in the structure or composition of any article, the delivery of which is accepted by the Postal Service under this contract; or

2. Used in machinery, tools, or methods whose use necessarily results from compliance by the contractor or subcontractor with (a) specifications or written provisions forming a part of this contract or (b) specific written instructions given by the contracting officer directing the manner of performance.

c. Determination of Liability. The liability of the Postal Service for patent infringement or for the unauthorized use of any patent will be determined by the provisions of any patent indemnity clause included in this contract or in any subcontract under this contract (at any tier) and by any indemnification or warranty (express or implied) otherwise provided by the contractor or subcontractor for similar products or services when supplied to commercial buyers.

d. Flowdown. The contractor must include, and require inclusion of, this clause, suitably modified to identify the parties, in all subcontracts under this contract at any tier that are expected to exceed $50,000.

H.22 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (Clause 9-3) (October 1987)

a. The contractor must report to the contracting officer, in writing, promptly and in reasonable detail, any notice, claim, or suit regarding patent or

H.22 (Continued)

copyright infringement (or unauthorized use of a patent or copyright) based on performance of this contract.

b. At the contracting officer's request, the contractor must furnish all evidence and information in its possession pertaining to the suit or claim. The evidence and information will be furnished at the expense of the Postal Service except when the contractor has agreed to indemnify the Postal Service.

c. This clause must be included in all subcontracts under this contract, at any tier, over $50,000.

H.23 PATENT INDEMNITY (Clause 9-4) (October 1987)

a. Except as provided in paragraph d below, the contractor indemnifies the Postal Service, its employees, and its agents against liability, including costs and fees, for patent infringement (or unauthorized use) arising from the manufacture, use, or delivery of supplies, the performance of services, the construction or alteration of real property, or the disposal of property by or for the Postal Service, if the supplies, services, or property (with or without relatively minor modifications) have been or are being offered for sale or use in the commercial marketplace by the contractor.

b. The Postal Service must promptly notify the contractor of any claim or suit subject to the indemnity of paragraph a above alleging patent infringement or unauthorized use of a patent.

c. To the extent allowed by law, the contractor may participate in the defense of any suit to which this clause applies.

d. This indemnification does not apply to -

1. Infringements for the unauthorized use of a private patent covered by this indemnity resulting from the contracting officer's specific written directions, compliance with which requires an infringement; or

2. Infringement or unauthorized use claims that are unreasonably settled without the contractor's consent before litigation.

e. This clause must be included in all subcontracts under this contract, at any tier, over $50,000.

H.24 PARTICIPATION OF SMALL, MINORITY-OWNED, AND WOMAN-OWNED BUSINESSES (Clause 10-1) (December 1989)

a. The policy of the Postal Service is to encourage the participation of small, minority-owned, and woman-owned businesses in its purchases of supplies and services to the maximum extent practicable consistent with efficient contract performance. The contractor agrees to follow the same policy in performing this contract.

b. The contractor will submit a report to the contracting officer within 10 calendar days after the end of each quarter, describing all subcontract awards to small, minority-owned, or woman-owned businesses. The contractor agrees to

H.24 (Continued)

cooperate in any studies or surveys related to small, minority-owned, and woman-owned business subcontracting that may be conducted by the Postal Service.

H.25 CONVICT LABOR (Clause 10-3) (October 1987)

In connection with the work under this contract, the contractor agrees not to employ any person undergoing sentence of imprisonment, except as provided by Public Law 89-176, September 10, 1965 (18 U.S.C. 4082(c)(2)) and Executive Order 11755, December 29, 1973.

H.26 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (Clause 10-4) (April 1989)

a. Overtime Requirements. No contractor or subcontractor contracting for any part of the contract work may require or permit any laborer or mechanic to work more than 40 hours in any workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act, unless the laborer or mechanic receives compensation at a rate not less than one-and-one-half times the laborer's or mechanic's basic rate of pay for all such hours worked in excess of 40 hours.

b. Violation, Liability for Unpaid Wages, and Liquidated Damages. In the event of any violation of paragraph a above, the contractor and any subcontractor responsible for the violation are liable to any affected employee for unpaid wages. The contractor and subcontractor are also liable to the Postal Service for liquidated damages, which will be computed for each laborer or mechanic at $10 for each day on which the employee was required or permitted to work in violation of paragraph a above.

c. Withholding for Unpaid Wages and Liquidated Damages. The contracting officer may withhold from the contractor, from any monies payable to the contractor or subcontractor under this or any other contract with the same prime contractor, or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same prime contractor, sums as may administratively be determined necessary to satisfy any liabilities of the contractor or subcontractor for unpaid wages and liquidated damages pursuant to paragraph b above.

d. Records. The contractor or subcontractor must maintain for three years from the completion of the contract for each laborer and mechanic (including watchmen and guards) working on the contract payroll records which contain the name, address, social security number, and classification(s) of each such employee, hourly rates of wages paid, number of daily and weekly hours worked, deductions made, and actual wages paid. The contractor or subcontractor must make these records available for inspection, copying, or transcription by authorized representatives of the contracting officer and the Department of Labor, and must permit such representatives to interview employees during working hours on the job. (The Department of Labor information collection and recordkeeping requirements in this paragraph d have been approved by the Office of Management and Budget under OMB control numbers 1215-0140 and 1215-0017.)

e. Subcontracts. The contractor must insert paragraphs a through d of this clause in all subcontracts, and must require their inclusion in all subcontracts at any tier.

H.27 DAVIS-BACON ACT (Clause 10-5) Alternate I (April 1989)

a. Minimum Wages

1. All mechanics and laborers employed in the contract work (other than maintenance work of a recurring, routine nature necessary to keep the building or space in condition to be continuously used at an established capacity and efficiency for its intended purpose) must be paid unconditionally, and not less than once a week, without deduction or rebate (except for deductions permitted by the Copeland Regulations (29 CFR Part 3)), the amounts due at the time of payment computed at rates not less than the aggregate of the basic hourly rates and rates of payments, contributions, or costs for any fringe benefits contained in the wage-determination decision of the Secretary of Labor, attached hereto, regardless of any contractual relationship alleged to exist between the contractor, or subcontractor and these laborers and mechanics. A copy of the wage-determination decision must be kept posted by the contractor at the site of the work in a prominent place where it can easily be seen by the workers.

2. The contractor may discharge its obligation under this clause to workers in any classification for which the wage-determination decision contains -

(a) Only a basic hourly rate of pay, by making payment at not less than that rate, except as otherwise provided in the Copeland Regulations (29 CFR Part 3); or

(b) Both a basic hourly rate of pay and fringe-benefit payments, by paying in cash, by irrevocably contributing to a fund, plan, or program for, or by assuming an enforceable commitment to bear the cost of, bona fide fringe benefits contemplated by 40 U.S.C. 276a, or by a combination of these.

3. Contributions made, or costs assumed, on other than a weekly basis (but not less often than quarterly) are considered as having been constructively made for a weekly period. When a fringe benefit is expressed in a wage determination in any manner other than as an hourly rate and the contractor pays a cash equivalent or provides an alternative fringe benefit, the contractor must furnish information with the contractor's payrolls showing how the contractor determined that the cost incurred to make the cash payment or to provide the alternative fringe benefit is equal to the cost of the wage-determination fringe benefits. When the contractor provides a fringe benefit different from that contained in the wage determination, the contractor must show how the hourly rate was arrived at. In the event of disagreement as to an equivalent of any fringe benefit, the contracting officer must submit the question, together with the contracting officer's recommendation, to the Secretary of Labor for final determination.

4. If the contractor does not make payments to a trustee or other third person, the contractor may consider as payment of wages the costs reasonably anticipated in providing bona fide fringe benefits, but only with the approval of the Secretary of Labor pursuant to a written request by the contractor. The Secretary of Labor may require the contractor to set aside assets in a separate account, to meet the contractor's obligations under any unfunded plan or program.

5. The contracting officer will require that any class of laborers or mechanics not listed in the wage-determination but to be employed under the contract will be classified in conformance with the wage-determination and report the action taken to the Administrator of the Wage and Hour Division, Employment

H.27 (Continued)

Standards Administration, U.S. Department of Labor, Washington, D.C. 20210-0001, for approval. The contracting officer will approve an additional classification and wage rate and fringe benefits therefor only if-

(a) The work to be performed by the classification requested is not performed by a classification in the wage-determination;
(b) The classification is utilized in the area by the construction industry; and
(c) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

6. If the contractor, the laborers or mechanics to be employed in the classification or their representatives, and the contracting officer do not agree on the proposed classification and wage rate and fringe benefits therefor, the contracting officer must submit the question, together with the views of the interested parties and the contracting officer's recommendation, to the Wage and Hour Administrator for final determination. The Administrator or authorized representative will, within 30 days of receipt, approve, modify, or disapprove every proposed additional classification action, or issue a final determination if the parties disagree, and so advise the contracting officer or advise that additional time is necessary. The final approved wage rate (and fringe benefits if appropriate) must be paid to all workers performing work in the classification under the contract from the first day work is performed in the classification. The contractor will post a copy of the final determination of the conformance action with the wage-determination determination at the site of the work. (The Department of Labor information collection and reporting requirements contained in subparagraph a.5 above and in this subparagraph a.6 have been approved by the Office of Management and Budget under OMB control number 1215-0140.)

b. Apprentices and Trainees

1. Apprentices may be permitted to work only when (a) registered, individually, under a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, U.S. Department of Labor, or, if no such recognized agency exists in a State, under a program registered with the Bureau of Apprenticeship and Training, or (b) if not individually registered in the program, certified by the Bureau of Apprenticeship and Training or State agency (as appropriate) to be eligible for probationary employment as an apprentice. Trainees may be permitted to work only if individually registered in a program approved by the Employment and Training Administration, U.S. Department of Labor.

2. The ratio of apprentices to journeymen or trainees to journeymen in any craft classification must not be greater than that permitted for the contractor's entire work force under the registered apprenticeship or trainee program. Apprentices and trainees must be paid at least the applicable wage rates and fringe benefits specified in the approved apprenticeship or trainee program for the particular apprentice's or trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage-determination. If the apprenticeship or trainee program does not specify fringe benefits, apprentices or trainees must be paid in the full amount of fringe benefits listed on the wage-determination for the applicable classification unless the Administrator of Wage and Hour Division determines that

H.27 (Continued)

a different practice prevails. Any employee listed on a payroll at an apprentice or trainee wage rate but not registered, or performing work on the job site in excess of the ratio permitted under the registered program, must be paid the wage rate on the wage-determination for the classification of work actually performed.

3. If the Bureau of Apprenticeship and Training or State agency recognized by the Bureau (as appropriate) withdraws approval of an apprenticeship program, or if the Employment and Training Administration withdraws approval of a trainee program, the contractor will no longer be permitted to utilize apprentices or trainees (as appropriate) at less than the the applicable predetermined rate for the work performed until an acceptable program is approved. (See 29 CFR 5.16 for special provisions that apply to training plans approved or recognized by the Department of Labor prior to August 20, 1975.)

4. The utilization of apprentices, trainees, and journeymen must be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

c. Overtime Compensation

1. The contractor may not require or permit any laborer or mechanic employed on any work under this contract to work more than 40 hours in any workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333), unless the laborer or mechanic receives compensation at a rate not less than one-and-one-half times the laborer's or mechanic's basic rate of pay for all such hours worked in excess of 40 hours.

2. For violations of subparagraph c.1 above, the contractor is liable for liquidated damages, which will be computed for each laborer or mechanic at $10 for each day on which the employee was required or permitted to work in violation of subparagraph c.1 above.

3. The contracting officer may withhold from the contractor sums as may administratively be determined necessary to satisfy any liabilities of the contractor for unpaid wages and liquidated damages pursuant to subparagraph c.2 above.

d. Payroll and Other Records

1. For all laborers and mechanics employed in the work covered by this clause, the contractor must maintain payrolls and related basic records and preserve them for a period of three years after contract completion. The records must contain the name, address, and social security number of each employee, the employee's correct classification, rate of pay (including rates of contributions for, or costs assumed to provide, fringe benefits), the daily and weekly number of hours worked, deductions made, and actual wages paid. Whenever the contractor has obtained approval from the Secretary of Labor to assume a commitment to bear the cost of fringe benefits under subparagraph a.4 above, the contractor must maintain records showing the commitment and its approval, communication of the plan or program to the employees affected, and the costs anticipated or incurred under the plan or program. Contractors employing apprentices or trainees under approved programs must maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the

H.27 (Continued)

applicable programs.

2. The contractor must submit weekly, for each week in which any work covered by this clause is performed, a copy of all payrolls to the contracting officer. The contractor is responsible for the submission of copies of payrolls of all subcontractors. The copy must be accompanied by a statement signed by the contractor indicating that the payrolls are correct and complete, that the wage rates contained in them are not less than those determined by the Secretary of Labor, and that the classifications set forth for each laborer or mechanic conform with the work the laborer or mechanic performed. Submission of the Weekly Statement of Compliance (see 29 CFR 5.5(a)(3)(ii)) required under this agreement satisfies this requirement. As required by this clause, the contractor must submit a copy of any approval by the Secretary of Labor. (The Department of Labor information collection and reporting requirements in this subparagraph d.2 have been approved by the Office of Management and Budget under OMB control numbers 1215-0149.)

3. The contractor's records required under this clause must be available for inspection by authorized representatives of the contracting officer and the Department of Labor, and the contractor must permit the representative to interview employees during working hours on the job.

4. The contractor must comply with the Copeland Regulations of the Secretary of Labor (29 CFR Part 3), which are hereby incorporated in this contract by reference.

e. Withholding of Funds. The contracting officer may withhold from the contractor under this or any other contract with the contractor so much of the accrued payments or advances as is considered necessary to pay all laborers and mechanics the full amount of wages required by this contract or any other contract subject to the Davis-Bacon prevailing wage requirements that is held by the contractor.

f. Subcontracts

1. If the contractor or any subcontractor fails to pay any laborer or mechanic employed on the site of the work any of the wages required by the contract, the contracting officer may, after written notice to the contractor, suspend further payments or advances to the contractor until violations have ceased.

2. The contractor agrees to insert this clause, including this paragraph f, in all subcontracts hereunder. The term "contractor," as used in this clause in any subcontract, is deemed to refer to the lower-tier subcontractor.

g. Compliance with Davis-Bacon and Related Act Requirements. All rulings and interpretations of the Davis-Bacon Act and related acts contained in 29 CFR Parts 1, 3, and 5 are hereby incorporated by reference in this contract.

h. Certification of Eligibility

1. By entering into this contract, the contractor certifies that neither it nor any person or firm having an interest in the contractor is ineligible to be awarded contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR

H.27 (Continued)

5.12(a)(1).

2. No part of this contract will be subcontracted to any person or firm ineligible for contract award by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

3. The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

i. Contract Termination and Debarment. A breach of this Davis-Bacon Act clause may be grounds for termination of the contract and debarment as a contractor and subcontractor as provided in 29 CFR 5.12.

j. Disputes Concerning Labor Standards. Disputes arising out of the labor standards provisions of this contract are not subject to the Claims and Disputes clause. They will be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the Postal Service, the U.S. Department of Labor, or the employees or their representatives.

H.28 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--SAFETY STANDARDS (Clause 10-7) (April 1989)

a. To the extent that the work includes construction, alteration, repair, painting, or decorating, the contractor may not require any laborer or mechanic to work in surroundings or under conditions that are unsanitary, hazardous, or dangerous to the laborer's or mechanic's health or safety, as provided under standards promulgated by the Secretary of Labor under the authority of 40 U.S.C. 333 (see 29 CFR 1910 and 1926).

b. If the contractor fails to comply with this clause, the Postal Service, at its discretion, may cancel this contract, contract for the balance of the work or term, and charge to the contractor any additional costs incurred.

c. The contractor agrees to insert this clause, including this paragraph c, in all subcontracts and to require its inclusion in all subcontracts at any tier. The term "contractor," as used in this clause in any subcontract, is deemed to refer to the lower-tier subcontractor.

H.29 EQUAL OPPORTUNITY (Clause 10-9) (October 1987)

a. The contractor may not discriminate against employees or applicants because of race, color, religion, sex, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to race, color, religion, sex, or national origin. This action must include, but not be limited to, employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants, notices provided by the contracting officer setting forth the provisions of this clause.

b. The contractor must, in all solicitations or advertisements for employees