IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.P. CONSULTING GROUP, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-868C |
| | ) | |
| THE UNITED STATES, | ) | |

DEFENDANT'S REBUTTAL TO PLAINTIFF'S RCFC 56(H)(2) RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Defendant, the United States, respectfully files its Rebuttal to Plaintiff's RCFC 56(h)(2) Responses to Defendant's Proposed Findings of Uncontroverted Fact ("PFUF"), and responds as follows:

1. In May 1994, the USPS awarded LP Consulting Group, Inc. ('LP" an Indefinite Quantity Contract No. 162640-94-B-0083. App. 1, 41-49.[1] The contract had a two-year term. App. 1, 37.

**LP's Response:** Admitted. LP notes, however, that it received a one (1) year time extension via modification from the USPS on its 94-B-0083 contract.

**Gov.'s Rebuttal**: There was no one year time extension and LP fails to provide evidence of a one year time extension modification. See Defendant's response to LP's PFUF No. 7, which is incorporated herein by reference.

2. Thereafter, LP had two Indefinite Quantity Contracts ("IQCs") with the Postal Service, contracts numbered 162640-96-B-0094 and 162640-96-B-0098. App. 1-2, 52-153, 155-256. The USPS entered into these two IQCs with LP on June 6, 1996, and June 3, 1996, respectively.

[1] "App. _" refers to the Defendant's Appendix.

App. 2, 52, 54. 155, 157. Both IQCs had two-year terms and required a mini8mum of $10,000.00 in work during the term. App. 2, 57, 64, 160, 167. All subsequent references to LP's IQCs refer to the 1996 IQCs.

**LP's Response:** Admitted.

3. In this lawsuit, LP and Richard Battaglin are claiming that the Postal Service failed to issue LP work order contracts for 12 project. App. 2. By letter to the contracting officer dated March 3, 1998, LP submitted a claim in connection with (1) the Berwick Modular Post Office, (2) the Hoopeston handicap ramp, (3) the Downers Grove dock enclosure, and (4) the Brookfield ramp and dock enclosure. App. 2, 32-34. This as resubmitted on April 13, 1998 with a certification. App. 2, 26.

**LP's Response:** Plaintiff denies that "Richard Battaglin [is] claiming that the Postal Service failed to issue LP work order contracts for 12 projects." The Plaintiff/Claimant is L.P. Consulting Group, Inc., not Richard Battaglin. Plaintiff also takes issue with Fact 3, as it does not recognize that the USPS failed to issue "final" work orders on these projects despite the parties' course of conduct to the contrary, resulting the underlying breaches of the implied-in-fact contracts. Plaintiff admits the balance of Fact 3.

4. By letter to the contracting officer dated April 13, 1998, LP submitted another claim in connection with (5) the Aroma Park interior lobbies and building renovation, (6) the Beaverville lobby and building renovation, (7) the Bradley concrete ramp, lobbies and building renovation, (8) the East Lynn building renovation, (9) the Momence concrete ramp and lobby renovations,

(10) the Papineau interior renovation and concrete ramp, (11) the St. Anne concrete and asphalt and interior renovations, and (12) the Union Hill interior and exterior ramp. App. 2, 29-31.

**LP's Response**: Admitted.

5. By letter dated August 11, 1998, LP submitted to the contracting officer amended certification for the claims previously submitted in LP's letters dated March 3, 1998 and April 13, 1998. App. 3, 26-28.

**LP's Response**: Admitted.

**<u>LP's IQCs</u>**

6. Former contracting officer Robert Rigsby was designated as the USPS contracting officer with authority to issue work orders under LP's IQCs. App. 3-4, 50, 52, 155, 385-86. During the 1995-1999 time frame, none of the following individuals possessed any contracting authority: Bruce Rothermel, Paul Steiner, Lois Gunlogson, Jesse McNabb, and Catherine Marks. App. 4. Samuel Southern, a USPS Facilities Specialist, first received contracting authority on March 16, 1999 and, prior to that time, he did not have any contracting authority. App. 4, 282-83.

**LP's Response:** LP admits that Mr. Rigsby was designated as the USPS contracting officer with authority to issue work orders under LP's IQCs. LP disputed, however, that Messrs. Rothermel, Steiner, McNabb, and Southern, and Ms. Gunlogson were not authorized by UPSS and/or Mr. Rigsby to: (1) order LP to perform the underlying site visits; or (2) prepare and issue work orders to LP. LP App. 6, Battaglin Aff. at ¶18. In reality, these USPS employees were

acting as Contacting Officer's Representatives, acting with actual authority to bind the USPS. Alternatively, they acted with Mr. Rigsby's knowledge and consent, thereby imputing their actions to Mr. Rigsby and, thus, the USPS.

**Gov.'s Rebuttal**: LP has failed to demonstrate that the project managers had authority to bind the USPS in contract, the project managers had no contracting authority, and LP knew that the project managers did not have authority to bind the USPS in contract. LP also has not demonstrated that the project managers actions were imputed to Rigsby and, thus, the USPS.

7. LP's IQCs were indefinite quantity contracts and both contained the "Quantity of Work" clause which provided as follows:

> a. The initial contract value is $300,000 where the total quantity of work ordered during the term of this contact will not be less than $10,000 nor more than one million dollars ($1,000,000)....
>
> D. The Postal Service reserves the right to undertake, by Postal Service sources or others, the same type of work or similar work as contracted for in this contract, in the area covered by this contract, while this contract is in force.

App. 4, 57, 160.

**LP's Response:** Admitted with the caveat that these clauses are limited geographically. Additionally, it is LP's position that this clause is limited to those situations where the USPS has not decided to issue or request a WO under LP's IQCs. It has been LP's experience that even where the USPS orders work under different contractors IQC contracts, that those work orders are not performed at the same facility, at the same time. Therefore, in practice, the USPS does not hire two indefinite quantity contractors to perform work at the same facility at the same time.

LP Ap. 200, Rigsby Depo at 26:22.

**Gov's Rebuttal**: There is no support in the clause for LP's restrictive interpretation of the contract clause. Further, the USPS decides to issue a IQC work order at the time the USPS contracting officer signs and issues the work order. Only the USPS contracting officer has authority to issue work orders for the USPS.

8. LP's two IQCs contained a price schedule and "the contractor agreed to perform all work included or ordered pursuant to and in accordance with the terms of the conditions of the contract for the unit prices listed on the price schedule times the multiplier listed below: . . . multiplier: .850." App. 4-5, 54, 157.

**LP's Response:** Admitted.

9. LP's IQCs both provided that "work will be done on work orders issued as required" and stated as follows:

> The price per unit of each proposal items in this contract will include all materials, labor, and equipment required to perform the work described in the attached specification. The work will be done on work orders issued as required for various amounts and types of work covered by the specification. The work ordered under this contact will be performed in, on, or adjacent to Postal Service-owned or -leased facilities within the geographic area as specified elsewhere in this solicitation.

App. 5, 64, 167. LP's two IQCs contained specific provisions for the issuance of "Work Orders," which stated as follows:

> a. No work will be performed until a written work order has been signed by the contacting officer and written Notice to Proceed with

> the work under the work order has been issued by the contracting officer and received by the contractor. Any work performed by the contractor under a work order before receipt of the written Notice to Proceed for that work order will be at the contractor's own risk.
>
> b. Each work order will describe the extent of work to be removed and the extent and type of new work to be installed. Descriptions may be written, by sketch or by drawing. Each work order will give the location where work is to be performed, state whether work may be performed during regular working hours, and describe the requirements for submittals. Submittals may include certificates, shop drawings, manufacturer's literature, data, test reports, and/or other documents that provide required information on the material or equipment.
>
> c. Each work order will be limited to work at a single facility....
>
> g. The maximum amount of any one work order is $250,000.
>
> h. No work may be ordered for a new building construction except for site preparation and/or foundation work for a preengineered building purchased directly from the manufacturer.

App. 5-6, 65, 168.

**LP's Response:** Admitted but with the following caveats:

1. The term "work" is defined in the IQCs as:

> "...must be deemed to consist of all labor and operations, transportation, hoisting, materials, tools, equipment, services, inspections investigations, coordination and supervision required and/or reasonable necessary to produce the construction required by the contract documents." App. 1, at 91 (§G.27(f)).

2. LP's IQCs required LP to:

> ... furnish the necessary personnel, material, equipment, services and facilities (except as otherwise specified) to perform the statement of work/specifications incorporated by reference in Section I. App. 1, at 57 (§B.1).

Nowhere do the IQCs require LP to provide or furnish draft work orders, site surveys or

the like.

3. The IQCs also required LP to: "...submit shop drawings, coordination drawings, and schedules for approval...." App. 1, 15 56 (§C.4).

4. IQC Section C.13 mandated that "No work will be performed until a written work order has been signed by the contractor and the contracting officer and written Notice to Proceed with the work under the work order has been issued by the contracting officer and received by the contractor. ..." App. 1, at 65, Neither here, nor anywhere else, do the IQCs reference the "work" LP was required to perform as including LP's developing work orders or work order scopes of work. Therefore, this clause does not apply to the USPS's unilateral decision, and subsequent direction, for LP to perform site visits, field surveys and the preparation and submission of work orders.

5. In actuality, of all the WOs which LP performed under the IQCs, which total 98 on the 1994 and two successor, 1996 IQCs, only two (2) were prepared in house by the USPS, both by Mr. Messe McNabb, for the La Salle Roof project and Princeton Floor replacement. LP App. 7, Battaglin Aff. At ¶23. With these two exceptions, every other work order issued to LP was initiated by a request from USPS personnel for LP to perform a site visit, develop a WO and submit that WO. Each of the 96 other work orders formally issued by the USPS, were prepared by LP as directed by the USPS. *Id.*

Nowhere in the IQCs was LP expressly required to submit proposed Work Orders, instead, it is apparent that the contract contemplated that the USPS would prepare Work Orders

and their appurtenant scopes of work and submit them to LP for its review. In reality, this did not happen, and the USPS personnel, as authorized by Contracting Officer Regsby, required LP to perform site visits and self-develop work orders. As Mr. Rigsby stated in his September 10, 1997 letter to the USPS-Law Department (App. 378-383) "The USPS can use the same [USPS-produced and supplied unit price] book to produce government estimates and would have no need for unsolicited cost estimates from Mr. Battaglin." App. at 382. Exactly. But for the USPS's repeated direction to LP to perform site-visits, self-develop WOs and submit those WOs to the USPS, LP had no reason to prepare and submit unsolicited cost estimated.

**Gov's Rebuttal**: With regard to LP's caveats, see Defendant's Response to LP's PFUF Nos. 13, 14, and 15, which are incorporated herein by reference.

10. LP received more than the contract minimum of $10,000.00 in work during the terms of each IQC. App. 6, 381, 410-22.

**LP's Response:** Admitted.

11. From June 7, 1996 to September 10, 1997, a total of $525,609.28 in IQC work orders were issued to LP and $1,127,144.67 was issued prior to June 7, 1996. App. 381, 410-22. As of September 10, 1997, LP was issued $119,235.67 in simplified contracts for a grand total of $1,7761,989.62. App. 381, 410-22.

**LP's Response:** LP disputes these numbers, and finds it utterly shocking that the USPS does not know its correct internal accounting numbers. It appears that these numbers were merely copied by the Government from the Protest Decision issued by the USPS dated October

1, 1997, Protect No. P.S., 97–25 (App. 438), issued by USPS Counsel, William Jones. These numbers are not accurate based upon LP's records. In actuality, LP's records show (and LP has confirmed) that LP received a total of $1,526,513.77 under the IQCs. These numbers break down as follows: For Contract 94-B-0083, LP was paid $1,082,901.19. For Contract 96-B-0094, LP was paid $187,217.12 and on 96-B-0098, LP was paid $256,395.46.

**Gov's Rebuttal**: The amounts stated were those as of September 10, 1997 and are contained in the September 10, 1997 letter of Mr. Rigsby (App. 381) and in the documentation produced by the USPS Financial Management System ("FMS") at that time, which Rigsby attached to his letter. App. 410-35. The USPS agrees that the 1 million dollar maximum contained in the 1994 IQC was exceeded. App. 691 (Jacobsen ¶ 5).

12. USPS contracts must contain a termination for convenience clause. App. 78. Specifically, the Design and Construction Handbook, RE-14 TL 4, dated June 1991, requires that all contracts contain a termination for convenience clause. App. 7-8, 274, 275, 279. The USPS Purchasing Manual (Issue 1), effective January 31, 1997, also requires that all contracts for commercial items contain a termination for convenience clause. App. 8, 270, 272. LP'S IQCs contained a termination for convenience clause. App. 97-100, 200-02 (clause H.5).

**LP's Response:** Admitted to the extent that the clause exists. At no time, however, were LP's IQCs or individual WOs terminated by the USPS for its convenience, nor has LP ever received the required written notice of such a termination for convenience. App. 97, Clause H.5; App. 200, Clause H.5.

**Gov's Rebuttal**: There was no necessity for USPS to issue a termination for

convenience. The IQCs themselves provided:

> The contractor is required to perform all work under a work order for which a Notice to Proceed has been issued and received before the expiration date of the contract. If the Notice to Proceed under a work order is not received by the contractor before the expiration date of the contract, the work order will be considered terminated for the convenience of the Postal Service.

App. 66, 169. Assuming, as LP contends, that the USPS was obligated to issue LP USPS work orders for the 12 projects, no Notice to Proceed was ever issued before IQC's expiration date, and thus, the work orders "will be considered terminated for the convenience of the Postal Service," and it was not necessary to issue a notice of termination for convenience. LP cannot recover anything more here and cannot recover its anticipated lost profits.

**East Lynn Post Office**

13. The USPS has not awarded a contract for the building renovation project at the East Lynn Post Office, IL. App. 8.

**LP's Response:** LP does not possess first hand, direct knowledge of this allegation. LP cannot, therefore admit or deny this statement.

14. LP and Richard Battaglin do not have a copy of the scope of work that Mr. Battaglin prepared for the East Lynn Post Office. App. 528-32 (Battaglin Dep. 81-84, 86-89, 96-97).

**LP's Response:** Denied. LP did submit a draft work order for East Lynn, which has since been lost.

**Gov.'s Rebuttal**: LP has not effectively disputed Defendant's PFUF 14. Mr. Battaglin admitted that LP does not now have a copy of its alleged scope of work for East Lynn. App. 528-

32 (Battaglin Dep. 81-84, 86-89, 96-97).

**Beaverville Post Office**

15. The USPS has not awarded a contract for a lobby and building renovation project at the Beaverville Post Office, IL. App. 18.

**LP's Response:** LP cannot admit or deny this allegation as it does not posses first hand knowledge of this statement.

16. Battaglin Exhibit No. 66 is a copy of a scope of work in the amount of $24,758.00, that Richard Battaglin prepared for miscellaneous renovations of the Beaverville Post Office. App. 615-17, 551-52 (Battaglin Dep. 211-12).

**LP's Response:** Admitted, with the caveat that Mr. Battaglin prepared and submitted this document on behalf of Plaintiff, LP.

**Gov.'s Rebuttal**: With regard to LP's caveat, Mr. Battaglin claims that he made a site visit at Beaverville with Paul Steiner. The USPS does not have a copy of Ex. 66 in its files, and Mr. Steiner does not recognize Ex. 66 and does not recall a site visit with Mr. Battaglin at Beaverville. App. 1026.

**Papineau Post Office**

17. The USPS has not awarded a contract for interior renovation and concrete ramp at the Papineau Post Office, IL. App. 8.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand

knowledge of this statement.

18. Battaglin Exhibit No. 71 is a copy of a scope of work in the amount of $43,442.00, that Richard Battaglin prepared for the Papineau Post Office. App. 626-28, App. 537 (Battaglin Dep. 236-37).

**LP's Response:** Admitted, with the caveat that Mr. Battaglin prepared and submitted this document on behalf of Plaintiff, LP.

**Gov.'s Rebuttal**: With regard to LP's caveat, Mr. Battaglin claims that he made a site visit at Papineau with Paul Steiner. The USPS does not have a copy of Ex. 71 in its files, and Mr. Steiner does not recognize Ex. 71 and does not recall a site visit with Mr. Battaglin at Papineau. App. 1026.

**St. Anne Post Office**

19. The USPS has not awarded a contract for concrete, asphalt, and interior renovations at the St. Anne Post Office, IL. App. 8.

**LP's Response:** LP believes that St. Anne was awarded in 1999. This information is available in a USPS Form 4211 produced by the Government in discovery.

**Gov.'s Rebuttal**: LP is incorrect and fails to produce any document in support of its assertion. The only work done at St. Anne was design work, and no construction work was done. App. 690 (Jacobsen ¶ 2).

20. Battaglin Exhibits Nos. 59, and 60 are copies of scopes of work that Richard

Battaglin prepared for the St. Anne Post Office. App. 591-97, 538-39 (Battaglin Dep. 149-55). Battaglin Exhibit No. 55 is a copy of two scopes of work in the total amount of $41,691 that Richard Battaglin prepared for the St. Anne Post Office. App. 584,090, 533-34, 537 (Battaglin Dep. 107-09, 122)

**LP's Response:** Admitted, with the caveat that Mr. Battaglin prepared and submitted these documents on behalf of Plaintiff, LP.

**Gov.'s Rebuttal**: With regard to LP's caveat, Mr. Battaglin made a site visit at the St. Anne Post Office with Samuel Southern. However, the scopes of work that were prepared at the time of their site visit are not Battaglin Exs. 59 and 60. The documents that were prepared at the time of their site visit are attached to Mr. Southern's declaration; Mr. Southern has produced the original documents from their site visit. App. 1035, 1047-56. Mr. Southern's documents and Mr. Battaglin's documents are not the same. App. 1035-36.

**Union Hill Post Office**

21. The USPS has not awarded a contract for the interior and exterior ramp at the Union Hill Post Office, IL. App. 8.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

22. Battaglin Exhibit No. 63 is a copy of a scope of work in the amount of $36,110 that Richard Battaglin prepared for the Union Hill Post Office. App. 612-14, 549-50 (Battalgin Dep. 198, 201-02).

**LP's Response:** Admitted, the caveat that Mr. Battaglin prepared and submitted this document on behalf of Plaintiff, LP.

**Gov.'s Rebuttal**: With regard to LP's caveat, Mr. Battaglin claims that he made a site visit at Union Hill with Paul Steiner. The USPS does not have a copy of Ex. 63 in its files, and Mr. Steiner does not recognize Ex. 63 and does not recall a site visit with Mr. Battaglin at Union Hill. App. 1026.

**Berwick Modular Post Office**

23. In 1996, the USPS solicited bids for (1) the site adaption and preparation for the Berwick Modular Post Office and (2) the site adaptation and preparation for the St. David Modular Post Office. App. 8-9, 302-03, 305-07, 466-71. On October 24, 1996, WM. Aupperle and Sons Inc. ("WM. Aupperle") submitted a bid to the USPS for the site adaptation and reparation of the Berwick Post Office. App. 9, 302-03. On October 23, 1996, WM. Aupperle submitted a bid to the USPS in the amount of $43,087.00 for the St. David Post Office. App. 9, 470-71.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

24. On or about September 17, 1996, LP, through Richard Battaglin, prepared and submitted scopes of work to the USPS for (1) the site adaptation and preparation for the Berwick Modular Post Office, and (2) the site adaptation and preparation for the St. David Post Modular Office. App. 9, 305-07, 466-69. LP's scope of work for the Berwick Post Office was in the total

amount of $30,660.83. App. 9, 305-07, 639-42 (Battaglin Ex. 73), 560-62 (Battaglin Dep 256-59, 262-64. LP's scope of work order for the St. David Post Office was in the total amount of $37,904.86. App. 9, 466-69.

**LP's Response:** Admitted.

25. On November 26, 1996, the USPS, through contracting officer Robert Rigsby, awarded a contract in the amount of $29,165.00 for the site adaptation and preparation work for the Berwick Post Office fo WM. Aupperle. App. 9, 304.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess direct, first hand knowledge of this statement. LP further state that on September 16, 1996, LP's Richard Battaglin met with Bruce Rothermel at the Berwick facility site, at the request of the USPS. LP prepared sketches and a WO under its IQC contact and submitted those documents at the end of the visit to Mr. Rothermel. LP never received a formal WO from the USPS for this work which was shortly thereafter awarded through a competitive procurement, to which LP was apparently excluded.

**Gov.'s Rebuttal**: With regard to LP's caveat, LP was not excluded from consideration for the site preparation work at Berwick. LP was asked to provide its prices for the site preparation work at both the Berwick and the St. David Modular Post Offices. App. 985. LP did so in the form of draft work orders. Id. LP's prices for Berwick and St. David were considered. LP's price for Berwick was higher than the awardee's price. Id.

26. In December 1996, the USPS, through contracting officer Robert Rigsby, awarded

the site adaptation and preparation work for the St. David Post Office to LP as a work order under its IQC contract no. 162640-96-B-0094, for the total amount of $31,932.63. App. 9, 472-77. By letter dated December 17, 1996, contracting officer Robert Rigsby directed LP to begin work and to complete the work in 30 days from its receipt of the notice to proceed. App. 9-10, 478.

**LP's Response:** On the same date as the Berwick site visit discussed in LP's response to SOF 25, above, LP also met with Bruce Rothermel at the St. David site. As with the other projects discussed herein, LP was instructed to perform this site visit, do a detailed field survey, self-develop and submit a WO. Without explanation, LP was issued a Work Order under its 96-B-0094 contract for the St. David Post Office (but not on the Berwick site, which was shortly after the site visit competitively awarded). That WO has a start date of November 6, 1996, but was not signed by Mr. Rigsby until December 17, 1996. LP App. 15, 27.

**Gov's Rebuttal**: LP does not dispute our PFUF. With regard to LP's caveat, LP fails to support for its assertions. No "detailed site survey" was necessary or performed at Berwick or St. David. Both sites were dirt. The St. David work order was signed by Rigsby on December 9, 1996. LP App. 27. LP was invited to submit bids for both Berwick and St. David and submitted its prices as draft work orders/scopes of work. App. 985.

**Hoopeston Post Office Handicap Ramp**

27. By letter dated August 12, 1996, in response to an oral request from contracting officer Robert Rigsby, the Architect/Engineer firm of A.M. Fernandez and Associates ("A.M. Fernandez"), which held a Basic A/E Indefinite Quantity Contract with the USPS, wrote the

contracting officer confirming that it would determine the best location for an accessibility ramp, prepare design drawings, and obtain at least three estimates from prospective contractors to enable the contracting officer to award a contract for the installation of a ramp at various postal facilities, all by September 4, 1996. App. 10, 387-94. The postal offices identified in the letter included the Hoopeston Post Office, the Bradley Post Office, and the Paxton Post Office. App. 10, 393-94.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand, direct knowledge of this statement. More importantly, as in LP's case, the underlying document issued by Mr. Fernandez, a wholly separate IQC contractor (albeit for the provision of architecture services) for which Mr. Rigsby was the contracting officer, states, in part: "Complete all phases of the scope of work no later than Wednesday, September 4, 1996. We understand that a work order will be issued shortly after completion of the scope of work" App. at 393 (emphasis added). As with LP's claims in this litigation, Mr. Fernandez was also apparently directed by Mr. Rigsby to perform and develop scopes of work, which would then be submitted and a "formal" work order would thereafter be issued by Mr. Rigsby to Fernandez. This further supports LP's claims regarding the course of conduct between the USPS and LP.

**Gov.'s Rebuttal**: LP's caveat is not material. Also see Defendant's Response to LP's PFUF No. 48, which is incorporated herein by reference.

28. Bids were submitted by September 4, 1996 for the installation of a handicap ramp at the Hooperston Post Office. App. 10, 393, 355-58. By letter dated September 3, 1996, Ulbrich & Associates, Inc. ("Ulbrich") bid $88,179.00 for the project. App. 10, 358. By letter dated

August 28, 1996, PNL Enterprises, Inc. ("PNL Enterprises") bid $88,500.00 for the project. App. 10, 357. By letter dated September 3, 1996, Phoenix Construction Co., Inc. ("Phoenix") bid $88,350.00 for the project. App. 10-11, 356. By letter dated August 31, 1996, Ramcorp, Inc. ("Ramcorp") bid $97,854.00 for the project. App. 11, 355.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess direct, first hand knowledge of this statement.

29. On September 5 and 6, 1996, the USPS solicited best and final offers for installation of the handicap ramp at the Hoopeston Post Office. App. 11, 359-68. The responses to the USPS's request for the best and final offers for installation of the handicap ramp at the Hoopeston Post Office were bids ranging between $85,000.00 and $97,854.00: Ulbrich bid $85,000.00; PNL Enterprises bid $85,500.00; Ramcorp bid $97,854.00 (no change); and Phoenix bid $88,350 (no change). Ap. 11, 359-68.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess direct, first hand knowledge of this statement.

30. By letter to the USPS dated September 20, 1996, A.M. Fernandez estimated the costs for installation of a handicap ramp at the Hoopeston Post Office to be $96,600.00. App. 11, 369.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess direct, first hand knowledge of this statement.

31. By letter dated May 28, 1997, the USPS, through contracting officer Robert Ridsby,

notified Ulbrich of its intent to award it a contract for $85,000.00 for installation of the handicap ramp at the Hoopeston Post Office. App. 11, 370a.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

32. On July 25, 1997, the USPS awarded a contract in the amount of $85,000.00 to Ulbrich for installation of the handicap ramp at the Hoopeston Post Office. App. 11, 371-72, 401-06.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

33. LP was not invited to bid on the installation of the ramp at the Hoopeston Post Office. App. 11, 379.

**LP's Response:** Admitted.

34. In late April 1997, Mr. Battaglin visited the office of contracting officer Robert Rigsby and noticed a drawing for the Hoopeston handicap ramp and asked if he could take the drawing. App. 11, 379. Mr. Rigsby informed Mr. Battaglin that it was too late to bid on the Hoopeston handicap ramp, but allowed Mr. Battaglin to take the drawing. App. 11-12, 379.

**LP's Response:** Admitted.

35. On or about May 29, 1997, Mr. Battaglin provided to Mr. Rigsby a price of

$62,752.00 for installation of the handicap ramp at the Hoopeston Post Office. App. 112, 370, 379. Mr. Rigsby informed Mr. Battaglin that his bid for installation for the handicap ramp at the Hoopeston Post Office Office was too late. App. 12, 379, 582-83 (Battaglin Dep 378, 381)(Mr. Rigsby "said it's too late."). By letter dated May 21, 197, Mr. Battaglin reiterated LP's price of $62,752.00 for installation of the handicap ramp at the Hoopeston Post Office. App. 12, 370.

**LP's Response:** Admitted.

36. By letter dated July 25, 1997, LP submitted to the USPS a bid protest of its award of the contact for the handicap ramp at the Hoopeston Post Office. App. 12, 373-75.

**LP's Response:** Admitted.

37. By letter dated September 10, 1997, contracting officer Robert Rigsby responded to LP's bid protest. App. 12, 378-437. In his letter, contracting officer Rigsby among other things stated.

> 1.... The attached solicitation documentation clearly shows that in early August 1996 the USPS acquired the services of A.M. Fernandez & Associates, Architects/Engineers to prepare design drawings for 28 ramps, make distribution to contractors, obtain a minimum of three cost estimates for each facility, and complete all work by September 4, 1996. All bids were received by the USPS by the September 4, 1996 deadline and best and final bids were solicited by an acting contract technician on September 5 and 6, 1996....
>
> 2. The Hoopeston ramp was awarded on July 25, 1997 for $85,000 to Ulbrich & Associates, Inc. who offered the best value to the USPS. The reason for the delay in awarding the Hoopeston ramp was due to an excessively heavy workload and a backlog or other projects.

> 3. L.P. Consulting Group, Inc. was not invited to bid during this solicitation process. However, in late April, 1997 Mr. Battaglin (L.P. Consulting Group, Inc.) Visited my office to drop off some documents and as he was leaving he noticed a drawing for the Hoopeston Ramp on a table near the door and said, "Can I take one of these," and I replied, "It is too late to bid, all decisions have been made," and he said, "Oh that's okay, I just want to see the difference between this and Paxton." In the spirit of cooperation, I permitted him to take the drawing, and on May 19, 1997 I received a bid for the project. I later saw Mr. Battaglin and again explained to him that his bid was "too late" and he replied, "I know, I just wanted you to have it anyway."
>
> * * *
>
> 10.... Since June 7, 1996 to present, a total of $525,609.28 in IQC work orders have been issued to L.P. Consulting Group, Inc. and $1,127,144.67 was issued prior to June 7, 1996. In addition, our records indicate that $119,235.67 was issued in simplified contract for a grand total of $1,771,989.62.

App. 12-13, 379-81. Mr. Rigsby also stated that, on June 4, 1997, he had issued LP "a letter demanding that <u>no visits be made</u> to any post office unless directed to do so by the Contracting Officer." App. 13, 381, 437.

**LP's Response:** LP takes issue with the numbers set forth in ¶10, quoted above as being wholly inaccurate. This is further supported by the government's claimed finding in SOF 47-52, *infra*. The correct numbers are set forth above in LP's response to SOF 11. The remaining aspects of SOF 37 are admitted.

**Gov.'s Rebuttal**: LP's disagrees only with the specific numbers in ¶ 10. <u>See</u> Gov's Rebuttal to LP's response to Gov. PFUF No. 11, above.

38. On October 1, 1997, the USPS issued its decision on LP's bid protest. App. 14, 438-

40. The USPS dismissed the bid protest. App. 15.

**LP's Response:** Admitted with the understanding that LP's protest was dismissed based upon a finding that it was untimely.

39. Battaglin Exhibits Nos. 87, 90, 91, and 92 are copies of scopes of work prepared by Richard Battaglin for the Hoopeston Post Office. App. 654-64. Battaglin Exhibit No. 87 is for interior work and Battaglin Exhibit No. 90 is for a handicap ramp; both are dated November 14, 1995. App. 654-60, 575-77 (Battaglin Dep 351-56). Battaglin Exhibit No. 91 is in the amount of $45,472.00 and is for the Hoopeston ramp; it is dated August 1, 1996; Richard Battaglin prepared that scope of work using the price schedule for his 1996 IQCs. App. 661-62, 577-79 (Battaglin Dep 359-67 (Ex. 91 is a "replication for my contract for '96")). Battaglin Exhibit No. 92 is for the Hoopeston exterior ramp and is in the amount of $62,000. App. 669-75, 581 (Battaglin Dep 372-75).

**LP's Response:** Admitted.

**Bradley Post Office Handicap Ramp**

40. The USPS, through A.M. Fernandez, solicited bids for the installation of a handicap ramp at the Bradley Post Office to be submitted by September 4, 1996. App. 15, 309-12. By letter dated August 30, 1996, Phoenix submitted a bid in the amount of $51,700.00 for installation of the handicap ramp at the Bradley Post Office. App. 15, 312. By letter dated August 28, 1996, Ramcorp submitted a bid in the amount of $53,210.00 for installation of the

handicap ramp at the Bradley Post Office. App. 15, 310. By letter dated August 28, 1996, PNL Enterprises submitted a bid in the amount of $48,500.00 for installation of the handicap ramp at the Bradley Post Office. App. 15, 309. By letter dated August 29, 1996, Ulbrich submitted a bid in the amount of $47,420.00 for installation of the handicap ramp at the Bradley Post Office. App. 15, 311.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

41. In September 1996, the USPS solicited best and final offers for installation of the handicap ramp at the Bradley Post Office. App. 15, 313-15, 312. The contractors responded to the USPS's request for best and final offers for installation of the handicap ramp at the Bradley Post Office as follows: Ulbrich bid $47,400.00; PNL Enterprises bid $48,300.00; Ramcorp bid $53,210.00 (no change), and Phoenix bid $51,700.00 (no change). App. 15-16, 313-15, 312.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement. LP further notes that there are no written solicitations or other documents produced in the Appendix or during discovery which support the claim that "In September 1996, the USPS solicited best and final offers for installation of the handicap ramp at the Bradley Post Office".

**Gov.'s Rebuttal**: In September 1996, the USPS orally solicited best and final offers for numerous handicap ramps, including Hoopeston and Bradley. The documentation is contained in our Appendix at the pages cited and Mr. Rigsby explained in his September 10, 1997 letter that best and final offers were solicited on September 5 and 6, 1996. App. 379.

42. In August and September 1996, LP was not invited to bid on the installation of the ramp at the Bradley Post Office. App. 16, 379.

**LP's Response:** Admitted.

43. By letter dated August 22, 1997, the USPS, through contracting officer Robert Rigsby, notified Ramcorp of its intent to award a contract in the amount of $53,210.00n for installation of the handicap ramp at the Bradley Post Office. App. 16, 316. By letter dated October 23, 1997 and acknowledged by Ramcorp on November 21, 1997 the USPS, through contracting officer Robert Rigsby, provided Ramcorp with an executed contract in the amount of $53,210.00 for installation of the handicap ramp at the Bradley Post Office and directed Ramcorp to proceed with the work. App. 16, 317-22.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

44. Battaglin Exhibit No. 72 is copies of two scopes of work in the total amount of $187,352.00 prepared by Richard Battaglin for the handicap ramp and interior lobby renovations at the Bradley Post Office. App. 629-38, 558-89 (Battaglin Dep 247-51). The project proposed in Battaglin Exhibit No. 782 includes interior lobby renovations in additional to the installation of a handicap ramp. Id. In 1996, the USPS solicited bids for the installation of a handicap ramp at the Bradley Post Office, and its contract award to Ramcorp in 1997 was for only installation of the handicap ramp and did not include the interior lobby renovations proposed in LP's scope of work. App. 629-38.

**LP's Response:** LP admits the first two sentences of this Statement No. 44. LP cannot admit or deny the last two sentences as it does not possess first hand knowledge of those statements.

45. The total amount of $187,352.00 set forth in Battaglin Exhibit No. 72 exceeded the contracting authority of Robert Rigsby. Mr. Rigsby's contracting authority was limited to $100,000.00. App. 509

**LP's Response:** Admitted. LP notes, however, that LP's LQCs limited the issuance of work orders to $250,000.00. In any instance in which Mr. Rigsby's $100,000 warrant of authority was exceeded, a more senior contracting officer with a larger warrant would be available to sign such a work order. This happened at Aroma Park, for example, where Mr. Rigsby had Mr. Linnenburger sign a WO/contract in excess of $100,000. See, App. 291-292; 293 (in the amount of $154,719.00). Other times, its was LP's experience that the USPS personnel would simply divide or split up a WO in excess of Mr. Rigsby's $100,000 limitation of authority into two or more WOs, each worth an amount less that said $100,000 figure, with one being for capital account and the other being an expense charge.

**Gov.'s Rebuttal**: LP's additional assertions are false in that Mr. Rigsby did not have Mr. Linnenburger sign a WO/contract for Aroma Park. Mr. Rigsby retired in March 1999. Contracting Officer Linnenberger made award decision for the Aroma Park Contract and signed the award document, and so testified. The facts regarding Aroma Park are stated in Gov. PFUF Nos. 63-67.

**Paxton Post Office Handicap Ramp**

46. In August 1996, A.M. Fernandez supplied the USPS with drawings for a handicap ramp at the Paxton Post Office, IL. App. 16, 481-84.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

47. The USPS, through A.M. Fernancez, solicitd bids for installation of the handicap ramp at the Paxton Post Office. App. 16, 481-85. By letter dated August 28, 1996, PNL Enterprises submitted a bid in the amount of $46,250.00 for installation of the handicap ramp at the Paxton Post Office. App. 16, 481-82. By letter dated August 29, 1996, Ramcorp submitted a bid in the amount of $51,975.00 for installation of the handicap ramp at the Paxton Post Office. App. 17, 483. By letter dated August 30, 1996, Ulbrich submitted a bid in the amount of $45,604.00 for installation of the handicap ramp at the Paxton Post Office. App. 17, 484. By letter dated September 3, 1996, Phoenix submitted a bid in the amount of $52,000.00 for installation of the handicap ramp at te Paxton Post Office. App. 17, 485.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

48. In September 1996, the USPS solicited best and final offers for installation of the handicap ramp at the Paxton Post Office. App. 17, 486-88, 485. The contractors responded to the USPS's request for best and final offers for installation of the handicap ramp at the Paxton Post Office as follows: Ulbrich bid $45,600.00; PNL Enterprises bid $47,000.00; Ramcorp bid

$51,975.00 (no change); and Phoenix bid $52,000.00 (no change). App. 17, 486-88, 485.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

49. By letter dated April 30, 1997, LP submitted to contracting officer Robert Rigsby a bid in the amount of $42,000.00 for installation of the handicap ramp at the Paxton Post Office in accordance with the drawings of A.M. Fernandez. Ap. 17, 489. By letter dated June 12, 1997, contracting officer Robert Rigsby notified LP that the USPS intended to award it a contract for installation of the handicap ramp at the Paxton Post Office. App. 17-18, 490. On June 28, 1997, the USPS, through contracting officer Robert Rigsby, awarded LP a contract in the amount of $42,000.00 for installation of the handicap ramp at the Pxton Post Office. App. 18, 491.

**LP's Response:** Denied. Mr. Rigsby's conduct on Paxton was the same as Hoopeston, in that Rigsby let LP submit a bid on Paxton. Mr. Rigsby knew that LP intended to review the drawings/bid package and submit a package, despite the fact that he would not allow LP to participate in the other solicitations, including Hoopeston. Therefore, in response to Mr. Rigsby's invitation, LP took the bid package, prepared and submitted a bid. LP did not do this merely out of a desire to disclose its pricing, but based upon the representations of, and invitation by, Mr. Rigsby for LP to submit a bid.

**Gov.'s Rebuttal**: LP has not effectively disputed our PFUF. In fact, LP agrees that it submitted a bid for the Paxton ramp to Mr. Rigsby and that the USPS, through Mr. Rigsby, awarded LP a fixed price contract for the Paxton ramp.

LP's conduct was not the same on Paxton as it was on Hoopeston. As LP has admitted,

Mr. Rigsby told Mr. Battaglin that it was too late for LP to bid for the Hoopeston ramp, and Mr. Battaglin submitted a bid for LP knowing that it was already too late to bid the Hoopeston ramp.

## **Downers Grove Post Office Dock Enclosure**

50. In November 1996, A.M. Fernandez provided the USPS with sketches concerning the dock area at the Downers Grove Post Office. App. 18, 341-42. The USPS, through A.M. Fernandez, solicited bids for construction of a dock enclosure at the Downers Grove Post Office. App. 18, 341-42. By letter dated November 20, 1996, Ulbrigh submitted a bid in the amount for $45,550.00 for construction of a dock enclosure at the Downers Grove Post Office. App. 18, 341. By letter dated November 25, 1996, Waners Enterprises, Inc. ("Waner") submitted a bid in the amount of $46,890.00 for construction of a dock enclosure at the Downers Grove Post Office. App. 18, 342.

**LP's Response:** Denied. No such drawings were ever produced by the USPS to LP during the course of this litigation, nor do the items at App. 341 or 342 evidence or provide such documents.

**Gov's Rebuttal**: LP disputes only whether drawings were prepared for Downers Grove. The documents at Appendix pages 341-42 state that the bids were based upon Mr. Fernandez's drawings.

51. By letter dated November 26, 1996, contracting officer Robert Rigsby issued a notice of intent to award a contract in the amount of $46,890.00 to Waner for construction of a dock enclosure at the Downers Grove Post Office. App. 18, 343. On January 10, 1997, the USPS,

through contracting officer Robert Rigsby, awarded a contract in the amount of $46,890.00 to Waner for construction of a dock enclosure at the Downers Grove Post Office. App. 18-19, 344.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

52. LP, through Richard Battaglin, prepared a scope of work dated August 1, 1996 regarding the Downers Grove Post Office dock enclosure in the total amount of $36,564.99 and provided it to the USPS; Battaglin Exhibit No. 81 is a copy fo this scope of work. App. 19, 348-49, 652-53, 567-68, 571 (Battaglin Dep 302-10, 320-23). By letter dated December 3, 1996, Mr. Battaglin requested the bid results for the solicitation for the Downers Grove Post Office dock enclosure. App. 19, 345. Contracting of officer Robert Rigsby did not respond in writing to the December 3, 1996 LP letter. App. 19, 346. By letter dated December 17, 1996, LP, through its attorney, submitted "a claim concerning the Downers Grove Post Office dock enclosure." App. 19, 346-50. In its letter, LP made a claim for damages in the amount of $10,000.00, the profit it allegedly would have earned had the contract been awarded to LP. App. 19, 347. By letter dated January 31, 1997, LP, through its attorney, withdrew its claim "with respect to the Downers Grove Dock Enclosure." App. 19, 351. As of January 31, 1997 the USPS had received only one claim from LP regarding the Downers Grove Post Office dock enclosure, i.e., the letter of LP's attorney dated December 17, 1996. App. 19, 346-50. On January 31, 1997, LP, through its attorney, also withdrew its claim regarding the Paxton Post Office. App. 19, 492-504.

**LP's Response:** Admitted. For the record, the withdrawal of the claim discussed in SOF 52 had nothing to do with the current action pending before the court.

**Gov.'s Rebuttal**: There is no support for LP's caveat.

**Brookfield Post Office Handicap Ramp**

53. In June 1996, A.M. Fernandez prepared drawings for the handicap ramp at the Brookfield Post Office. App. 19-20, 332, 334. The USPS, through A.M. Fernandez, solicited the submission of bids for the installation of a handicap ramp at the Brookfield Post Office. App. 20, 332-34. By letter dated August 23, 1996, Ulbrich submitted a bid in the amount of $58,500.00 for installation of the handicap ramp at the Brookfield Post Office. App. 20, 332. By letter dated August 26, 1996, Janice Building Corp. submitted a bid in the amount of $64,500.00 for installation of the handicap ramp at the Brookfield Post Office. App. 20, 333. By letter dated August 26, 1996, Warner submitted a bid in the amount of $59,874.00 for installation of the handicap ramp at the Brookfield Post Office. App. 20, 334.

**LP's Response:** Denied. No such drawings were ever produced by the USPS to LP during the course of this litigation, nor do items at App. 332 *et seq.* evidence or provide such documents.

**Gov's Rebuttal**: LP disputes only whether drawings were prepared for Brookfield. The documents at Appendix pages 332, 334 state that the bids were based upon Mr. Fernandez's drawings. Copies of Mr. Fernandez's drawings for Brookfield are contained in our Appendix at pages 961-65.

54. On September 10, 1996, the USPS, through contracting officer Robert Rigsby awarded a contract in the amount of $59,874.000 to Waner for installation of the handicap ramp

at the Brookfield Post Office. App. 20, 335-38. By letter dated September 18, 1996, the USPS directed Waner to proceed the installation of the handicap ramp at the Brookfield Post Office. App. 20, 339.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

55. Battaglin Exhibit No. 76 is copies of scopes of work prepared by Richard Battaglin for the Brookfield dock enclosure and ramp in the total amount of $89,168.28 ($63,120.00 plus $26,048.28). App. 643-52, 563-64 (Battaglin Dep. 274-77). The first two pages of Battaglin Ex. 76 is a copy of LP's scope of work for the Brookfield concrete ramp and is in the amount of $63,120.00. Id.

**LP's Response:** Admitted, with the caveat that Mr. Battaglin prepared Battaglin Ex. No. 76 for and on behalf of LP.

## Brookfield Dock Enclosure

56. In 1996, A.M. Fernandez prepared drawing for the dock enclosure at the Brookfield Post Office. App. 20, 325. The USPS solicited the submission of bids for the construction of the dock enclosure at the Brookfield Post Office. App. 20, 325, 329. By letter dated July 12, 1996, Janice Building Corp. submitted a bid in the amount of $64,632.00 for construction of the cock enclosure at the Brookfield Post Office. App. 20-21, 325, 328. By letter dated July 23, 1996, Ulbrich submitted a bid in the amount of $77,512,00 for construction of the dock enclosure at the Brookfield Post Office. App. 21, 329.

**LP's Response:** Denied. No such drawings were ever produced by the USPS to LP during the courts of this litigation, nor do items at App. 225, 328, *et seq.* evidence or provide such documents.

**Gov's Rebuttal**: LP disputes only whether drawings were prepared for Brookfield. The document at Appendix page 325 states that the bid was based upon Mr. Fernandez's drawings.

57. On August 2, 1996, the USPS, through contracting officer Robert Rigsby, awarded a contract in the amount of $64,632.00 to Janice Building Co. for construction of the dock enclosure at the Brookfield Post Office. App. 21, 324.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

**Momence Post Office**

58. In August 1998, A.M. Fernandez supplied the USPS with drawings for the handicap ramp at the Momence Post Office, IL. App. 21, 443.

**LP's Response:** Denied. No such drawings were ever produced by the USPS to LP during the course of this litigation, nor do items at App. 422 *et seq.* evidence or provide such documents.

**Gov's Response**: The documents at Appendix pages 21, 443 evidence the drawings. By letter dated March 14, 2005, the USPS provided LP with copies of the August 1998 drawings for the Momence handicap ramps. App. 1057.

59. In 1998, the USPS solicited bids for the installation of a handicap ramp at the Momence Post Office. App. 21, 442-46. By letter dated September 8, 1998, Ulbrich submitted its bid in the amount of $60,900.00 for installation of the handicap ramp at the Momence Post Office. App. 21, 443. By letter dated August 28, 1998, PNL Enterprises submitted its bid in the amount of $64,990.00 for installation of the handicap ramp at the Momence Post Office. App. 21, 442. On September 8, 1998, Somers Co., Inc. ("Somers") submitted its bid in the amount of $35,932.38 for installation of the handicap ramp at the Momnence Post Office. Ap. 21, 444.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

60. On or about September 21, 1998, the USPS, through contracting officer Robert Rigsby awarded a contract in the amount of $35,932.28 to Somers for installation of the handicap ramp at the Momence Post Office. App. 21-22, 449-54. By letter dated October 5, 1998, the USPS directed Somers to proceed with the installation of the ramp at the Momence Post Office. App. 22, 448. Prior to this contract award, the USPS had not awarded any contracts for the installation of the handicap ramp at the Momence Post Office. App. 22. At the time of the award of handicap ramp contract at te Momence Post Office in September 1998, LP's IQCs referred to in paragraph 2 both had lapsed. App. 22.

**LP's Response:** Admitted, with the following explanation. LP's 96-B-0098 expired on June 6, 1998, but then LP was awarded another, follow-on IQC contract for the same jurisdiction/zip codes which became effective on January 28, 1999 by the USPS (contract No. 99-B-0039) with an initial two year term and $500,000.00 initial limit. Based upon LP's

experience and USPS prior conduct, LP bid these projects knowing that it was placing its bond capacity and related costs at risk, with the understanding that the USPS and Mr. Rigsby would continue his prior actions of carrying work orders over from one contract to the next, as he did under the 94-B-0083 contract to the IQCs.

**Gov's Rebuttal**: LP's additional assertions are irrelevant because the Momence contract was awarded on September 21, 1998, at a time when LP's 1996 IQCs had expired and the 1999 IQC cited was not in existence. There also is no support in the record for LP's additional assertion that LP bid for the IQC with the understanding that the USPS and Mr. Rigsby would continue his prior actions of carrying work orders over from one contract to the next, as he did under the 1994 IQC.

61. On February 8, 1999, the USPS awarded a work order contract in the total amount of $34,895.63 to Somers for lobby renovation at the Momence Post Office under Somers's IQC with the USPS. App. 22, 457-64. Prior to this contract award, the USPS had not awarded any contracts for lobby renovation at the Momence Post Office. App. 22. At the time of the award of the lobby renovation contract at the Momence Post Office in February 1999, LP's IQCs referred t in paragraph 2 both had lapsed. App. 22

**LP's Response:** Admitted, with the following explanation. LP's 96-B-0098 expired on June 6, 1998, but then LP was awarded another follow-on IQC contract for the same jurisdiction/zip codes which became effective on January 28, 1999 by the USPS (Contract No. 99-B-0039) with an initial two year term and $500,000.00 initial limit. Based upon LP's experience and USPS prior conduct, LP bid these project knowing that it was placing its bond

capacity and related costs at risk, with the understanding that the USPS and Mr. Rigsby would continue his prior actions of carrying work orders over from one contract to the next, as he did under the 94-B-0083 contract to the IQCs.

**Gov's Rebuttal**: Defendant incorporates its Rebuttal to LP's response to Gov. PFUF No. 60, by reference.

62. Battaglin Exhibit No. 61 is a copy of a scope of work prepared by Richard Battaglin for the Momence Post Office. App. 598-03, 545 (Battaglin Dep. 181-83). Battaglin Exhibit No. 62 is copies of two scopes of work in the total amount of $46,388.00 ($28,533.40 plus $17,854.60), prepared by Richard Battaglin for the Momence Post Office. App. 604-11, 546-49 (Battaglin Dep. 184-97).

**LP's Response:** Admitted, with the caveat that Mr. Battaglin prepared Battaglin Exhibits 61 & 62 for and on behalf of LP.

**Aroma Park Post Office**

63. In May 1999, A.M. Fernandez supplied the USPS with drawings for the renovation of the Aroma Park Post Office, IL. App. 22, 286-88.

**LP's Response:** Denied. No such drawings were ever produced by the USPS to LP during the course of this litigation, nor do items at App. 22, 286-88 evidence or provide such documents.

**Gov's Rebuttal**: LP's assertion is incorrect. At the deposition of Larry Linnenberger, LP and its counsel were shown the drawings prepared by Mr. Fernandez for Aroma Park. LP's

counsel has acknowledged in conversations with Government counsel that the drawings were produced at the deposition and the deposition transcript references the Fernandez drawings.

64. In June 1999, the USPS solicited bids for the renovation of the Aroma Park Post Office per the drawings prepared by A.M. Fernandez. App. 22, 285-90. By letter dated June 10, 1999, Ulbrich submitted a bid in the amount of $163,900.00 for the renovation of the Aroma Park Post Office. App. 23, 286. By letter dated June 11, 1999, Phoenix submitted a bid in the amount of $169,725.00 for the renovation of the Aroma Park Post Office. App. 23, 287. By letter dated June 14, 1999, PNL Enterprises submitted a bid in the amount of $154,719.00 for the renovation of the Aroma Park Post Office. App. 23, 288-89.

**LP's Response:** LP cannot admit or deny this allegation as it does not possess first hand knowledge of this statement.

65. On August 28, 1999, the USPS, through contracting officer Larry Linnenburger of the Great Lakes Facilities Service Office, awarded a contract in the amount of $154,719.00 to PNL Enterprises for renovations at the Aroma Park Post Office per the drawings prepared by A.M. Fernandez. App. 23, 291-98. Prior to that time, the USPS had not awarded any contracts for the renovation of the Aroma Park Post Office. App. 23.

**LP's Response:** LP cannot admit or deny this allegation as it does not posses first hand knowledge of this statement. LP notes, however, that Mr. Linnenburger signed this WO presumably because of Mr. Rigsby's not having a sufficiently large warrant of authority. LP's IQCs list Linnenburger and Mr. Dennis Bryan as the signatories to cover LP's higher dollar

limits.

**Gov's Rebuttal**: LP's caveat is incorrect. See Gov's Rebuttal to LP's response to Gov. PFUF No. 45, which is incorporated herein by reference.

66. At the time of the award of the renovations contract at the Aroma Park Post Office in August 1999, LP's IQCs referred to in paragraph 2 both had lapsed. App. 23.

**LP's Response:** LP's 96-B-0098 expired on June 6, 19989, but then LP was awarded another, follow-on IQC contract for the same jurisdiction/zip codes which became effective on January 28, 1999 by the USPS (Contract No. 99-B-0039) with an initial two year term and $500,000.00 initial limit. Based upon LP's experience and USPS prior conduct, LP bid these projects knowing that it was placing its bond capacity and related costs at risk, with the understanding that the USPS and Mr. Rigsby would continue his prior actions of carrying work orders over from one contract to the next, as he did under the 94-B-0083 contract to the IQCs.

**Gov's rebuttal**: Defendant incorporates its Rebuttal to LP's Response to Gov. PFUF No. 60, by reference.

67. The amount of the contract award for the renovations at the Aroma Park Post Office - $154,719.00 - exceeded the level of contracting authority of the contracting officer at the USPS Central Illinois District and the award could not have been made by that office. App. 23-24, 283, 386.

**LP's Response:** LP believes this statement to be wholly inaccurate. As discussed elsewhere herein, including SOF 45 & 65, it was LP's experience that if a work order exceeded

Mr. Rigsby's $100,000 warrant of authority, then there were other contacting officers in place with higher warrants, who would sign-off on such work orders. This is made clear by the IQCs themselves (*see* App. 156, signed by Mr. Linnenburger). Likewise, the June 3, 1996 and June 6, 1996 authorities and limitations letters provided to LP by the USPS denoted the relative warrants of authority of Mr. Dennis L. Bryan ($5,000,000), Mr. Linnenburger ($1,000,0000) and Mr. Rigsby ($100,000). LP App. 21-24.

**Gov's Rebuttal**: LP has misconstrued our PFUF. In our PFUF, we stated simply that the award could not be made by the contracting officer in the Central IL District office, whose warrant was limited to $100,000.00. App. 4, 282-83 (Samuel Southern). We agree that Mr. Linnenburger had the authority and he made the award. Mr. Linnenburger works in the Great Lakes Facilities Services Office, which is a different office.

68. Battaglin Exhibit No. 68 is a copy of a scope of work in the amount of $62,000, prepared by Richard Battaglin in September 1995 for the Aroma Park Post Office. App. 618-25, 554-44 (Battaglin Dep. 221-24). The project proposed by LP in Battaglin Exhibit No. 68 is more limited than the work done by PNL Enterprises under its USPS contract for the Aroma Park Post Office in the total amount of $154,719.00. App. 665 (Linnenberger Dep. 25)({Q....[D]o these work descriptions [referring to Southern Ex. 20, LP's scope of work for Aroma Park (App. 669-75)] generally mirror the work that you oversaw on the Aroma Park project that you were project manager for? A. I would say no.")

**LP's Response:** Admitted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624
Attorneys For Defendant

April 6, 2005

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 6th day of April 2005, a copy of the foregoing "DEFENDANT'S REBUTTAL TO PLAINTIFF'S RCFC 56(H)(2) RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s DOMENIQUE KIRCHNER