# DEPOSITION OF LARRY LINNENBURGER

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L.P. CONSULTING GROUP, INC., )
Plaintiff, )
vs. ) Case No.
THE UNITED STATES POSTAL ) 98-868 C
SERVICE, ) (Judge Allegra)
Defendant. )

The deposition of LARRY LINNENBURGER, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before NANCY A. GUIDOLIN, CSR No. 84-2531, a Notary Public within and for the County of DuPage, State of Illinois, and a Certified Shorthand Reporter of said state, at the Great Lake Facility of USPS, 65 Stratford Drive, Bloomingdale, Illinois, on the 21st day of October, A.D 2004, at 9:15 a.m.

000423



ORIGINAL

PRESENT:

BELL, BOYD & LLOYD, PLLC,
(1615 L Street, N.W., Suite 1200,
Washington, D.C., 20036-5610,
202-466-6300), by:
MR. LAWRENCE M. PROSEN,
appeared on behalf of the Plaintiff;

UNITED STATES POSTAL SERVICE,
(475 L'Enfant Plaza SW,
Washington, D.C., 20260-1127,
202-268-4089), by:
MR. STEPHEN D. LOBAUGH,
-and-
UNITED STATES DEPARTMENT OF JUSTICE,
CIVIL DIVISION-COMMERCIAL LITIGATION BRANCH,
(1100 L Street, N.W., 8th Floor,
Washington, D.C. 20530,
202-307-0290), by:
MS. DOMENIQUE KIRCHNER,
appeared on behalf of the Defendant.

ALSO PRESENT:

Mr. Richard Battaglin,

L.P. Consulting Group, Inc.

REPORTED BY: NANCY A. GUIDOLIN,

CSR NO. 84-2531.

(WHEREUPON, the witness was duly sworn.)

LARRY LINNENBURGER,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. PROSEN:

Q. Good morning, sir. My name is Larry Prosen. I am an attorney out of Washington, D.C. My client is L.P. Consulting, and I think that you know Mr. Battaglin.

A. Yes.

Q. Why don't we start off by stating your name and current position for the record.

A. My name is Larry Linnenburger. I am an architect engineer for the Great Lakes Facility Service Office.

Q. Just to give you a little background. Have you been in a deposition before? Have you ever been deposed?

A. Yes. I have.

Q. So you are familiar with the process. I will ask a series of questions. If you don't understand anything that I ask or if you are

confused or whatever, you need some clarification, don't hesitate to let me know. I am not trying to trick you. I am just trying to get information.

There may be times where Ms. Kirchner objects. She can object on the record, and then normally you can answer the question, and that's the legalese side of it that gets resolved later on.

We try to have one person talk at a time, because the court reporter can only, you know, type in one person's voice at a time. She will certainly let us know if things are -- if there are any problems along that line.

MR. PROSEN: You are going to reserve signature, I assume?

MS. KIRCHNER: Please, yes.

BY MR. PROSEN:

Q. Okay. Do you have any questions before we get started?

A. No.

Q. Okay. You said that you are currently employed with the U.S. Postal Service as an architect/engineer?

A. Yes.

Q. What are your duties comprised of as an architect/engineer?

A. I am basically a project manager.

Q. For construction projects?

A. Yes. For design and construction.

Q. And what is your educational background?

A. I have an -- I have got a Master's in electrical engineering, and I have got a Master's in engineering administration.

Q. So you are not actually an architect then?

A. No. I am not.

Q. Is an architect/engineer kind of like an all encompassing title that the Postal Service uses?

A. That's a classification of my job.

Q. Do you have any responsibilities for soliciting or issuing contracts?

A. Yes.

Q. Do you have any responsibilities to prepare any solicitations and/or contracts?

A. Yes.

Q. What kind of -- just a little bit of

# DEPOSITION OF SAMUEL W. SOUTHERN

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L.P. CONSULTING GROUP, INC., )
Plaintiff, )
vs. ) Case No.
THE UNITED STATES POSTAL ) 98-868 C
SERVICE, ) (Judge Allegra)
Defendant. )

The deposition of SAMUEL W. SOUTHERN, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions purpose of discovery, taken before Janet L. Robbins, CSR No. 84-2207, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter of said state, at Suite 3300, Three First National Plaza, Chicago, Illinois, on the 9th day of June, A.D. 2004, at 10:47 a.m.

ORIGINAL

PRESENT:

BELL, BOYD & LLOYD PLLC,
(1615 L Street, N.W., Suite 1200,
Washington, D.C. 20036-5610,
202-955-6830), by:
MR. LAWRENCE M. PROSEN,
appeared on behalf of the Plaintiff;

UNITED STATES DEPARTMENT OF JUSTICE,
CIVIL DIVISION-COMMERCIAL LITIGATION BRANCH,
(1100 L Street, N.W., 8th Floor,
Washington, D.C. 20530,
202-307-0290), by:
MS. DOMENIQUE KIRCHNER,
appeared on behalf of the Defendant
and the Deponent.

ALSO PRESENT:

MR. RICHARD BATTAGLIN,
L.P. Consulting Group, Inc.;
MR. STEPHEN LOBAUGH, In-House Counsel,
United States Postal Service.

REPORTED BY: JANET L. ROBBINS, CSR, RPR,
CERTIFICATE NO. 84-2207

10:02 (WHEREUPON, the witness was duly sworn.)

SAMUEL W. SOUTHERN,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

10:47 EXAMINATION

BY MR. PROSEN:

10:47 Q. Good morning, sir. Can you please state
10:48 your name for the record.
10:48 A. Samuel W. Southern.
10:48 Q. Would you provide your work and home
10:48 address and phone numbers?
10:48 A. Yes, 24707 Mulberry Lane, Crete,
10:48 Illinois, 60417. The phone number is 708-672-6387.
10:48 Q. My name is Larry Prosen. I think you
10:48 know Mr. Battaglin and why we're all here today.
10:48 We'll get into the case and everything else.
10:48 Real quick, I would like to start off by
10:48 going through your background educationally, if you
10:48 could give a brief synopsis of your educational
10:48 background.
10:48 A. High school was Central YMCA High
10:48 School. I graduated from Central YMCA High School.
10:48 College, I graduated from Chicago State University

10:54 engineer on detail.

10:54 Q. What does that mean, "architect engineer on detail"? What does that mean?

10:54 A. That means that there's an opening in the -- in our facility office that is vacant for an architect engineer, and I performed duties of the architect engineer, which means that they paid me the money to perform the duties as the architect engineer.

10:54 Q. But you're not a licensed professional engineer or licensed architect, are you?

10:54 A. That's correct.

10:54 Q. Is there a -- generally -- well, let me take you back first.

10:54 In front of you is a list. There's 12 projects on there. I think counsels have stipulated that those are the 12 projects that we're discussing today.

10:54 MR. PROSEN: Can we stipulate to that?

10:54 MS. KIRCHNER: Sure, but I think you need to mark it to have it in the record then. Otherwise, I can't stipulate.

10:55 MR. PROSEN: That's fine. We'll mark this as Exhibit 1. That's fine.

11:12 A. Well, first of all, there may be too many draft work orders, so I can't say generically this is the procedure. There may have been different procedures for different work orders at the request of the contracting officer, so I can't speak on his behalf. And I don't recall exactly how the work orders were handled.

BY MR. PROSEN:

11:13 Q. To your knowledge, did Mr. Rigsby ever request L.P. Consulting to draft scopes of work, and I'll refer you to Exhibit 1, on any of those projects?

11:13 MS. KIRCHNER: Objection, ambiguous, compound.

BY THE WITNESS:

11:13 A. I could really say for certain if I saw the actual draft document.

BY MR. PROSEN:

11:13 Q. Okay. Before we get there, let's walk through -- if you turn to Exhibit 4, it's Page 1 of 2 -- let me see. I guess it's the ninth page into the exhibit.

11:14 A. On Tab 4?

11:14 Q. On Tab 3, referring to Exhibit 4. Just for identity purposes, it says at the top, "United

A. I can't answer that for the contractor. All I can say is that in the contract, it does not provide -- it does not provide anything for the contractor, you know, to go out and scope the work, and it's considered a cost of doing business.

BY MR. PROSEN:

Q. But if the contracting officer on multiple occasions calls up L.P. Consulting -- Mr. Rigsby calls up L.P. Consulting on multiple occasions and says, "Can you go out to a site visit, do a take-off, submit a draft work order," that's a cost of doing business that L.P. can just expect to do it over and over again without any sort of recoupment, either getting the award or at least getting reimbursed for its -- there's a cost involved in that. That's reasonable?

MS. KIRCHNER: Objection, ambiguous --

BY MR. PROSEN:

Q. That's a good business practice?

MS. KIRCHNER: Objection, ambiguous, compound, hypothetical.

BY THE WITNESS:

A. I cannot make any statements as to what Mr. Rigsby --

12:14 work," and it references in progress St. Anne, Momence, Beaverville, Papineau, Aroma Park, Bradley, Union Hill.

12:14 Do you recall making these notes, sir?

12:14 A. No, I don't recall making them, but that is my handwriting.

12:14 Q. Would it surprise you if I told you these are notes that you made in a meeting with Mr. Battaglin and you handed him a copy of them?

12:14 A. That's very possible.

12:14 Q. So based on your own handwriting, L.P. Consulting was tasked with developing scopes of work on St. Anne, Momence, Beaverville, Papineau, Aroma Park, Bradley and Union Hill, is that correct?

12:15 MS. KIRCHNER: Objection, mischaracterizes testimony given, ambiguous.

BY THE WITNESS:

12:15 A. I would say that -- all I can say is that this document shows my handwriting and indicates these facilities as left to review and develop scope of work. I do not know whether or not I would have been the one that would have been tasked with meeting with L.P. Consulting on these projects. It's been too long ago.

12:19 U.S. government printing office.

12:20 A. I don't recall seeing this type of form. 12:20 I don't believe this is one that we use in our 12:20 office -- or ever used in our office.

12:20 Q. So you've never seen this document. 12:20 Okay, let's move on.

12:20 Tab 19, this will be Exhibit 13.

(WHEREUPON, a certain document was marked Southern Exhibit No. 13 for 12:20 identification, as of 6/9/04.)

BY MR. PROSEN:

12:20 Q. Have you ever seen this document, sir? 12:20 It's called "Term Construction Contract Work Order, 12:20 Berwick P.O. Cite Prep and Foundation Work," dated 12:20 9/17/96.

12:20 A. I don't recall seeing this.

12:20 Q. Who is Bruce Rothermal, 12:21 R-O-T-H-E-R-M-A-L?

12:21 A. Bruce Rothermal is a real estate 12:21 specialist who was working in our office as a 12:21 contract employee.

12:21 Q. When you say "contract employee," does 12:21 that mean that they're not a full-time U.S. Postal 12:21 Service employee; they're like an independent

12:21 contractor?
12:21 A. They're an independent contractor.
12:21 Q. You, sir, are a postal service employee?
12:21 A. That's correct.
12:21 Q. And Mr. Rigsby, to your knowledge, is
12:21 also a postal service employee? Or was, I should
12:21 say. I guess he's not anymore.
12:21 A. That's correct.
12:21 Q. Let's go to Tab 21.
(WHEREUPON, a certain document was
marked Southern Exhibit No. 14 for
12:21 identification, as of 6/9/04.)
BY MR. PROSEN:
12:22 Q. Have you seen this document? It says,
12:22 "Hoopeston," H-O-O-P-E-S-T-O-N, "Illinois, EXT.
12:22 Ramp." I don't see a date on it.
12:22 MS. KIRCHNER: Just for the record, this is
12:22 marked as Exhibit 14.
12:22 MR. PROSEN: Right. I'm sorry, if I didn't
12:22 say that, yes.
BY THE WITNESS:
12:22 A. I'm sorry, what is your question?
BY MR. PROSEN:
12:22 Q. Have you seen this document before?

12:22 A. I don't recall. It's been so long.

12:22 Q. Did you work exclusively with Mr. Rigsby during this time frame, the '96 to, say, '98 time frame? Did you work with multiple contracting officers or just worked predominantly with Mr. Rigsby?

12:22 A. I worked predominantly with Mr. Rigsby, but I was also tasked with doing other assignments, as I mentioned earlier.

12:23 Q. As a part of your duties at that time, did you prepare all the FMS Win documentation or computer screens? I don't know what you all call it there. You said everything is computerized. Did you input all the information into FMS Win or did somebody else do that or was there --

MS. KIRCHNER: Objection --

12:23 MR. PROSEN: I'm sorry, go ahead.

12:23 MS. KIRCHNER: Objection, compound, ambiguous.

BY THE WITNESS:

12:23 A. I did not enter all of the work orders.

BY MR. PROSEN:

12:23 Q. Who else would have done that, other than you, again, at the time that we're talking about, '96 to, say, '98?

12:23 A. During that period of '96 to '98, there were a number of employees that entered information in the FMS system for work orders. Some of those individuals would be Betty Chears, a contract technician during that time --

12:24 Q. C-H-E-E-R-S?

12:24 A. C-H-E-A-R-S.

12:24 -- Lois Gunlogson.

12:24 Q. Would Mr. Rigsby input information into the FMS?

12:24 A. Not to my knowledge.

12:24 Q. Let's go to 22, please, Tab 22, which will be Exhibit 15.

(WHEREUPON, a certain document was marked Southern Exhibit No. 15 for
12:24 identification, as of 6/9/04.)

BY MR. PROSEN:

12:25 Q. It says, "Hoopeston PO Ramp, 8/1/96," the date. There's another one several pages back dated 11/14/95. The first one is to Ms. Gunlogson. The second one is to Mr. Steiner, S-T-E-I-N-E-R. Have you seen either of these? There's also some handwritten diagrams.

12:25 MS. KIRCHNER: It appears to be at least three

12:25 that are in this tab. What's the question now?

BY MR. PROSEN:

12:25 Q. Have you seen these documents before?

12:25 MS. KIRCHNER: Objection, ambiguous, compound.

BY THE WITNESS:

12:25 A. I do not recall actually seeing these
12:25 documents. It's been a long time. And it would
12:26 appear that at some of these dates, I may not have
12:26 been working at the post office at that time.

BY MR. PROSEN:

12:26 Q. Okay.

12:26 A. I may have been off on a medical leave
12:26 with my back. And I'm not sure of the dates, when
12:26 some of these things had occurred.

12:26 Q. I understand.

12:26 Can you go to Tab 24? That will be
12:26 Exhibit 16.

(WHEREUPON, a certain document was marked Southern Exhibit No. 16 for
12:26 identification, as of 6/9/04.)

BY MR. PROSEN:

12:26 Q. Sir, what is this? What is this page?
12:27 What is this?

12:27 A. This is a computer printout from the FMS

12:50 MR. PROSEN: Off the record.

(WHEREUPON, a discussion was had

12:57 off the record.)

(WHEREUPON, a certain document was marked Southern Exhibit No. 19 for

12:57 identification, as of 6/9/04.)

BY MR. PROSEN:

12:57 Q. Brookfield ramp and dock enclosure, from

12:57 L.P. Consulting, Term Construction Contract Work

12:57 Order. Have you seen this document before?

12:57 MS. KIRCHNER: Objection. It appears to be a

12:57 collection of documents.

BY THE WITNESS:

12:57 A. It's been a long time. I don't recall.

BY MR. PROSEN:

12:57 Q. Or a series of three documents?

12:57 That's a no?

12:57 A. No, I don't recall. It's been a long

12:57 time.

12:58 I'd like to also say that there's a

12:58 possibility that during this time frame, sometime in

12:58 '96, on various occasions I had back surgery and I

12:58 was not in the office. And that would have been

12:58 about -- I believe may have been about August of '96

13:03 you stated, yes.
BY MR. PROSEN:
13:03 Q. It wouldn't go to a third party, another
13:03 architect?
13:03 MS. KIRCHNER: Objection, ambiguous, compound,
13:03 hypothetical.
BY THE WITNESS:
13:03 A. There is a possibility because it's up
13:03 to the discretion of the contracting officer. If
13:03 there were some variables that he had decided that
13:04 the -- I don't know what -- for whatever reason, the
13:04 contracting officer decided that he did not want
13:04 this particular architect engineer to do the work,
13:04 it's very possible that he could utilize another AE
13:04 to do the work.
BY MR. PROSEN:
13:04 Q. Let's move on. 36.
13:04 I'll try to get you out of here as soon
13:04 as we can, sir.
(WHEREUPON, a certain document was
marked Southern Exhibit No. 20 for
13:04 identification, as of 6/9/04.)
BY MR. PROSEN:
13:04 Q. Exhibit 20, sir, have you seen this

13:04 document, Term Construction Contract Work Order for
13:04 Aroma Park, Illinois? It consists of, I think,
13:05 eight pages. Have you seen this document?
13:05 A. It's been a long time. I'm not sure.
13:05 Q. With the exception -- I think we went
13:05 through the St. Anne handwritten Term Construction
13:05 Contract Work Order before, Exhibit 6.
13:05 Do you recall seeing other handwritten
13:05 Term Construction Contract Work Orders from
13:05 L.P. Consulting Group on any project?
13:05 A. Yes, I do recall seeing handwritten
13:05 construction projects, yes.
13:05 Q. Do you remember any specific project for
13:05 which one of those would have been submitted?
13:05 MS. KIRCHNER: Objection, ambiguous.
BY THE WITNESS:
13:05 A. It's been a long time. I can't say for
13:05 certain a specific project. I can't say a specific
13:06 project.
BY MR. PROSEN:
13:06 Q. Do you recall, were any of the ones you
13:06 did see these Term Construction Contract Work
13:06 Orders, the handwritten ones, were they approved or
13:06 accepted by Mr. Rigsby and resulted in the issuance