IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.P. CONSULTING GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-868C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Allegra) |
| | ) | |
| Defendant. | ) | |

DECLARATION OF JOHN BUCHHOLZ

I, John Buchholz, under penalty of perjury, do hereby state that the following statement is true and correct:

1. I have been the owner and president of St. Louis Design and Construction Inc. since 1974.

2. I am making this declaration with regard to the Indefinite Quantity Contracts ("IQCs") that St. Louis Design and Construction Inc. has had with the United States Postal Service ("USPS"). St. Louis Design has had IQCs with the USPS from 1982 to the present. Our IQCs have covered work in seven states, including Missouri, Illinois, and Indiana. Information from the USPS Financial Management System ("FMS") identifying some of our IQCs is attached to my declaration. Our IQCs included contract 162640-94-B-0084, for the North Central IL area, zip codes 604, 605, and 609. The IQCs that St. Louis Design has had with the USPS Central Illinois District were administered by USPS contracting officer Robert Rigsby from about 1993 until his retirement in 1999. Prior to that time, other USPS contracting officers administered our IQCs and, after Mr. Rigsby left the USPS, other USPS contracting officers administered our IQCs. I understand that my declaration will be filed with the Court in a lawsuit brought against the USPS by another IQC contractor, L.P. Consulting Group, Inc. and Mr. Battaglin.

EXHIBIT
ALL-STATE LEGAL®
1

3. As an IQC contractor for the USPS, I often made site visits to USPS facilities to scope out work with USPS Project Managers. At these site visits, the USPS Project Manager and I together would estimate quantities and consider what various items of work would be needed to accomplish a project. I would prepare a draft scope of work, which I call a proposed pricing sheet. I would prepare our proposed pricing sheets using our computer, which has all the various line items of work and prices for an IQC stored in its memory. Shortly after my site visit with the USPS Project Manager, I would provide our proposed pricing sheet to the USPS Project Manager. I have made such site visits with USPS Project Managers and have prepared proposed pricing sheets pursuant to our IQCs countless times, and it was routine for St. Louis Design to do so on its USPS IQCs. The vast majority of the time, I made the site visits and prepared the proposed pricing sheets for St. Louis Design myself, and, only occasionally, did I have an employee of St. Louis Design make such site visits with the USPS Project Managers. The site visits and preparation of the proposed pricing sheets with the USPS Project Manager are a cost of doing business with the USPS under its IQCs.

4. In order for St. Louis Design to receive work orders under its USPS IQCs, I would have to make these site visits and prepare proposed pricing sheets with the USPS Project Managers; the USPS and St. Louis Design would have to agree upon the quantities and the line items of work necessary for each project; the USPS contracting officer would forward to St. Louis Design a written USPS work order, which I would sign and return to the USPS, and the USPS contracting officer would sign the USPS work order beside my signature, making a work order contract for that individual project. Each USPS work order signed by both St. Louis Design and the USPS contracting officer was a contract for the line items of work contained in the work order. In addition, the USPS would

inspect the work after it was completed and, if the quantities of a line item used in the project were less, the USPS would issue a modification in the form of a modified work order consistent with the quantities actually used in the project.

5. When I made a site visit and prepared a proposed pricing sheet with the USPS Project Manager under our IQCs, it was my expectation that St. Louis Design would receive the work if the USPS had the funds available and went forward with the project. However, I was never promised by any USPS official, including Mr. Rigsby and his Project Managers, that St. Louis Design would get the work if it made such site visits and prepared such proposed pricing sheets. I also understood that St. Louis Design was not entitled to the work because it had made the site visit and prepared a proposed pricing sheet for the USPS. In this respect, our IQCs contained the standard contract clause that provided as follows:

> The Postal Service reserves the right to undertake, by Postal Service sources or others, the same type of work or similar work as contracted for in this contract, in the area covered by this contract, while this contract is in force.

I understood that the USPS could use other sources for the same type of work in circumstances where St. Louis Design had made a site visit and prepared a proposed pricing sheet with the USPS Project Manager for the project. On infrequent occasions, St. Louis Design would make site visits and prepare proposed pricing sheets with the USPS Project Manager, but the USPS would not award St. Louis Design a signed USPS work order for the project.

6. Sometimes the work contained in a USPS work order, signed by St. Louis Design and the USPS, was only a portion of the work that I initially had scoped and included in my proposed pricing

sheet. However, sometimes the scope of work had been increased in that the signed USPS work order contained more work than had contained in my proposed pricing sheet. My proposed pricing sheet was only a guide, and it did not determine what work the USPS would contract for in a signed work order contract.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on MARCH 15, 2005

John D. Buchholz President

John Buchholz