IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.P. CONSULTING GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 98-868C |
| THE UNITED STATES, | ) | (Judge Allegra) |
| Defendant. | ) | |

DECLARATION OF SAMUEL W. SOUTHERN

I, Samuel W. Southern, under penalty of perjury, do hereby state that the following statement is true and correct:

1. I have been employed by the USPS Central Region, Central Illinois District, located in Bedford Park, IL, as a Facilities Specialist from August 1986. I worked as a Facilities Specialist for contracting officer Robert Rigsby from the time that he became Manager of Administrative Services for the USPS Central Illinois District Office, Bedford Park, in about December 1992 until his retirement in March 1999. I am making this declaration with regard to my work as a Facilities Specialist for Mr. Rigsby.

2. Because of medical problems, I have been on leave from the USPS for extended periods of time, especially in 1996. I was on leave for part of January 1996, and from approximately March 6 to 12, 1996. I was hospitalized for back surgery and was on leave from approximately July 17, 1996 to September 13, 1996. I was on leave from approximately December 28, 1996 to January 3, 1997. I was on leave again in 2000 for another surgery. I also was out of work for disability from February 2003 until October 22, 2005, when I returned to work on a part time basis. I had back surgery again in March 2004.

3. As a Facilities Specialist, I made site visits for the purpose of preparing draft work



EXHIBIT 3

ALL-STATE LEGAL®

orders/scopes of work. I also made site visits for the purpose of preparing draft work orders/scopes of work with contractors that had Indefinite Quantity Contracts ("IQCs"), including L.P. Consulting Group, Inc. ("LP"). In those cases where I made a site visit with an IQC contractor, we together would estimate the quantities of each item for a proposed project. I made site visits with Mr. Battaglin of LP for the purpose of scoping out projects that might be done at the site. Mr. Battaglin also made site visits on his own, without USPS project managers. I never told Mr. Battaglin that LP would get the work or receive a USPS work order, if LP made site visits on its own, or with my assistance, and prepared draft work orders/scopes of work. I told Mr. Battaglin that there was no guarantee that LP would get the work that we were scoping, and Mr. Bataglin knew that there was no guarantee that LP would receive a USPS work order for a project that LP had scoped.

4. I remember making a site visit with Mr. Battaglin to the St. Anne Post Office, but do not recall the date of that site visit. I understand that Mr. Battaglin asserts that he and I made site visits to both the St. Anne and Momence Post Offices on May 24, 1996. I kept a diary with regard to my work, and have reviewed my diary with regard to this allegation by Mr. Battaglin. My dairy for May 6, 1996 states "meet" with Mr. Battaglin, but does not mention St. Anne or Momence, or any site visits. My diary for May 21, 1996, mentions LP but does not mention St. Anne or Momence. My diary for May 24, 1996, does not indicate any site visits on that date and does not mention St. Anne or Momence. My diary for May 31, 1996, states "Go to Milford-Rich Bataglin." My diary for June 5, 1996 refers to LP site visits and Paxton, Rantoul, Milford, and Chebanse. My diary for June 6, 1996 states "site left to visit" and mentions Momence and St. Anne. According to my appointment schedule for June 6, 1996, I was supposed to be at St. Anne

at 10:00 a.m. My diary for July 3, 1996 states "Today Review Momence Facility." Copies of these pages of my diary are attached to my declaration. App. 1038-46.[1]

5. I am unsure as to whether I made a site visit with Mr. Battaglin at the Momence Post Office. I have searched by records and I cannot find any field notes or draft work orders that indicating that I made a site visit at Momence with Mr. Battaglin.

6. In our site visit at the St. Anne Post Office, Mr. Battaglin and I prepared field notes, which might also be called draft work orders, copies of which are attached to my declaration; the first one was for interior work and the second was for a handicap ramp. App.1047-56. At the site visit, Mr. Battaglin provided me with the form which already had information printed in the item, number, unit measure, and unit price columns. The quantity column and extend price columns were blank when Mr. Battaglin gave me the form at the site visit. During our site visit, Mr. Battaglin and I together estimated the quantities for the various items and I wrote the quantity amounts in the quantity column on the form during the site visit. When we estimated that a particular item would not be needed, I wrote zero in the quantity column for that item. On my original documents, the numbers in the quantity columns are written in pencil and are in my handwriting. I kept these original field notes in my personal file.

7. I have compared my field notes, which might also be called draft work orders, with the draft work orders that are contained in the Government's appendix at pages 584-97, which I understand to be documents that Mr. Battaglin claims to have prepared for the St. Anne Post Office. My field notes and Mr. Battaglin's draft work orders are not identical. My document

1 "App." refers to pages of the Government's appendix.

(App. 1047) states "32" hours of "misc. hourly labor carpenter" while Mr. Battaglin's document states "160" hours for the same item at page 584 of the Government's Appendix. My document (App. 1048) state "32" hours of rough carpentry hourly labor while Mr. Battaglin's document states "160" hours for the same item at page 585 of the Government's Appendix. My document (App.1049) states zero for drywall casing bead, while Mr. Battaglin's document states "275" for the same item at page 586 of the Government's Appendix. My document (App. 1051) states "68" for furnish and install #12 wire, while Mr. Battaglin's documents state "78" for the same item at pages 588 and 597 of the Government's Appendix.

8. With regard to a proposed St. Anne handicap ramp, my field notes and Mr. Battaglin's document are not identical. For the "demolition backhoe" item, my document (App.1053) states "8" hours while Mr. Battaglin's document states "16" hours at page 589 of the Government's Appendix. For the "misc. hourly labor mason" item, my document (App.1053) states 10 hours while Mr. Battaglin's document states "36" hours at page 589 of the Government's Appendix. For the "mis. hourly labor carpenter" item, my document (App. 1053) states "8" hours while Mr. Battaglin's document states "40" hours at page 589 of the Government's Appendix. For the "hauling, truck, driver" item, my document (App.1054) states "8" hours while Mr. Battaglin's document states "16" hours at page 590 of the Government's Appendix. My document does not state an amount for premium time, while Mr. Battaglin's document includes an additional amount for premium time at page 590 of the Government's Appendix.

9. LP had the following IQCs:

> 162630-96-B-0098, awarded June 3, 1996, for North Central IL area, zip codes 604, 605, 609;
> 162640-96-B-0094, awarded June 6, 1996, for Peoria, IL area, zip codes

613, 614, 615, 616, 617;
162640-94-B-0083, awarded May 18, 1994, for North Central IL area, zip codes 604, 605, 609.

App. 43, 52-54, 155-57. These IQCs had two-year terms.

10. I did not direct Mr. Battaglin to perform site visits and submit draft work orders at or near the end of the term of IQC 162640-94-B-0083 with the understanding that LP would receive a USPS work order for those projects. I never told Mr. Battaglin that LP would be issued work orders for projects, if LP performed site visits and submitted work orders for those projects. There was never any promise, guarantee, or statement by me to Mr. Battaglin that LP would receive a USPS work order if it made a site visit and prepared a draft work order, with or without my assistance.

11. On March 16, 1999, I was first appointed a Contracting Officer for the USPS. I have never promised or stated to Mr. Battaglin that LP would be issued a USPS work order if it made a site visit and prepared a draft work order for any project.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on APRIL, 06, 2005

Samuel W. Southern