No. 98-868C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L.P. CONSULTING GROUP, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION AND AMENDED MOTION TO STRIKE DRAFT WORK ORDERS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624
Attorneys For Defendant

May 12, 2005

## TABLE OF CONTENTS

ARGUMENT ........................................................ 2

I. The Original Draft Work Orders Are The Best Evidence ........................................ 2

II. The Draft Work Orders Also Are Not Precluded By RCFC 37(c) ................................... 11

CONCLUSION ...................................................... 19

## TABLE OF AUTHORITIES

### CASES

Bendix Corp. V. United States,
230 Ct.Cl. 507,
600 F.2d 1364 (1979) .................................. 6

Brubaker Amusement Co., Inc. v. United States,
304 F.3d 1349 (Fed. Cir. 2002) ......................... 16

Globe Savings Bank v. United States,
61 Fed. Cl. 91 (2004) .................................. 17

Hauschild v. United States,
53 Fed. Cl. 134 (2002) ................................. 16

Johnson Management Group CFC v. Martinez,
308 F.3d 1245 (Fed. Cir. 2002) ..................... 14, 18

Local Oklahoma Bank v. United States,
59 Fed. Cl. 713 (2004) ................................. 18

Markland v. Office of Personnel Management,
140 F.3d 1031 (Fed. Cir. 1998) ......................... 14

New American Shipbuilders, Inc. v. United States,
871 F.2d 1077 (Fed. Cir. 1989) ......................... 16

Nicolas v. Wal-Mart Stores, Inc.,
2002 WL 506424 (4th Cir. 2002) .......................... 6

Telecom Technical Services Inc. v. Rolm Co.,
388 F.3d 820 (11th Cir. 2004) ........................... 5

Tritek Technologies, Inc. v. United States,
63 Fed. Cl. 740 (2005) ......................... 12, 13, 14

United States v. Bennett,
363 F.3d 947 (9th Cir. 2004) ............................ 5

United States v. Levine,
546 F.2d 658 (5th Cir. 1997) ............................ 6

United States v. Phifer,
230 F.3d 113 (4th Cir. 2000) .......................... 6

Winfield Collection, Ltd. v. Sun Hill Industries, Inc.,
2002 WL 1009571 (E.D. Mich. 2002) .................... 16

**STATUTES**

Fed.R.Civ.P. 26(e) ..................................... 17

Fed.R.Evid. 1002 ................................... 2, 5, 7

Fed.R.Evid. 1004 ...................................... 7, 8

Table Of Contents Of Appendix

Page
1. March 14, 2004 Letter of Defendant's Counsel..............1
2. March 14, 2004 Trip Sheet Showing Receipt By Plaintiff's Counsel on March 14, 2004...................................2
3. May 10, 2005 Declaration of Samuel Southern...............3
4. Excerpts from Deposition of Richard Battaglin.............7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.P. CONSULTING GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-868C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Allegra) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION AND AMENDED MOTION TO STRIKE DRAFT WORK ORDERS

Plaintiff LP Consulting Group, Inc. ("LP") has moved to strike the two original draft work orders that were prepared by Samuel Southern, an employee of the United States Postal Service ("USPS"), during his site visit with LP's Richard Battaglin to the St. Anne Post Office, citing Rules 37(c)(1) and 26(e)(2) of the Rules of the Court of Federal Claims ("RCFC"). Discovery closed on October 29, 2004. In March 2005, Mr. Southern first located these original documents, and, by letter dated March 14, 2005, defendant provided LP with copies of the two original draft work orders that were prepared by Mr. Southern, with the assistance of Mr. Battaglin during their site visit at St. Anne, and also invited LP's counsel to examine the original documents. App. 1.[1] LP's counsel never responded to defendant's counsel's

1 "App." refers to the Appendix to this brief. Government counsel's letter dated March 14, 2005 was served by messenger and a copy of the messenger's receipt, which was signed by LP's counsel's office on March 14, 2005, also is enclosed. App. 2. LP's counsel does not deny receiving the letter and documents on March 14, 2005, and LP's statements in its original motion to strike that the documents were first provided by defendant on April 6, 2005, in defendant's opposition to plaintiff's motion

letter. The two documents that LP now wishes to strike from the record are the only original draft work order documents that relate to LP's allegations regarding the 12 projects. LP and Mr. Battaglin have no original documents that relate to LP's allegations with regard to any of the 12 projects at issue.

LP admits that the documents relate to LP's claim regarding St. Anne, but argues that Mr. Southern was required to produce the two draft work orders in response to the subpoena duces tecum issued in relation to his deposition on June 4, 2004, and that the failure to produce the documents during the discovery period was unjustified and prejudicial to LP, and therefore the Court should strike the documents. As we demonstrate below, LP's motion should be denied. We also respectfully request oral argument on LP's motion.

ARGUMENT

I. The Original Draft Work Orders Are The Best Evidence

Fed.R.Evid. 1002 provides: "To prove the contents of a writing...the original writing...is required, except as otherwise provided in these rules or by Act of Congress." The rule's application turns on "whether contents are sought to be proved." Fed.R.Evid. 1002 Advisory Committee's Note.

The contents of various draft work orders are part of what is sought to be proven by LP. For example, LP claims that

---

for summary judgment are inaccurate.

Battaglin Exhibit 55 is a copy of two scopes of work in the total amount of $41,691 that Mr. Battaglin prepared for the St. Anne Post Office. App. 10-11, 14 (Battaglin Dep. 107-09, 122). LP further claims that Battaglin Exhibits 59 and 60 are copies of two other scopes of work for St. Anne that Mr. Battaglin prepared with Mr. Southern at the time of their site visit at St. Anne,[2]

---

2 With regard to Exhibits 59 and 60, the draft work orders/scopes of work for St. Anne, Mr. Battaglin testified as follows:

> Q. Please take a look at what we've marked as Exhibit 59 to your deposition and tell me whether you recognize this.
> A. Yes.
> Q. What is Exhibit 59?
> A. It's a scope of work for the St. Anne Post Office.
> Q. Can you tell me generally what sort of work?
> A. Concrete.
> Q. Did you prepare this document?
> A. Yes.
> Q. This is your handwriting?
> A. Yea.
> Q. Can we refer to this as a scope of work for concrete work at St. Anne?
> A. Yes.
> Q. Please take a look at what we've marked as Exhibit 60 to your deposition. Do you recognize exhibit 60?
> A. Yes.
> Q. What is Exhibit 60?
> A. A St. Anne scope of work.
> Q. For what sort of work generally, sir?
> A. Interior construction.
> Q. Is this in your handwriting?
> A. Yes.
> Q. Did you prepare this document?
> A. Yes.
> Q. Now, if you could look at Exhibits 59 and 60, look at them together. You have both of them in front of you?
> A. Un-huh.
> Q. You told us about your visit to St. Anne with Mr.

that Mr. Battaglin gave the originals of those documents to Mr. Southern at the time of the site visit, and that LP expected to receive "a draft work order." App. 23 (Dep. 173)("And then they would produce the document called a draft work order for my review.")[3] Based upon the contents of these documents and

---

> Sam Southern.
> A. Un-huh.
> Q. Do these documents, Exhibits 59 and 60, relate to that site visit?
> A. Yes.
> Q. And did you prepare Exhibits 59 and 60 at the time of the site visit with Sam Southern?
> A. Yes.
> Q. Did you go about preparing them in the same way you told us about yesterday where you and Sam measured the various distances and put the measurements on the sheets?
> A. Yes.
> Q. Can we refer to these two documents as scopes of work for St. Anne?
> A. Yes.
> Q. Did you show these documents to Sam Southern at the time you were preparing them at the site visit?
> A. I took these documents and my sketch, Exhibit 56, and I believe it was one more for the inside that is not here, and he [Sam Southern] took it back to his office to discuss with Mr. Rigsby to send back to me whatever changes that they did, they may have added, subtracted to the scope. And then I would get a work order for my review and signature to do the work.

App. 17-18 (Dep. 149-52). Mr. Battaglin also testified that, at the time of the site visit, he talked over everything in the draft work orders/scopes of work (Exhibits 59 and 60) with Sam Southern. App. 18 (Dep. 154-55) ("Everything in here would have been talked over with Sam.").

3 Thus, Mr. Battaglin testified:

> Q. ...You were there with Sam at the site visit, correct?
> Q. Yes.

activities, LP claims that it possessed an implied contract to perform work totaling $41,691 at St. Anne. Sec. Am. Compl. ¶¶ 91-94.

Thus, the best evidence standard incorporated in Fed.R.Evid. 1002 applies to the introduction of any draft work orders, because LP is seeking to prove the contents of such draft work orders. United States v. Bennett, 363 F.3d 947, 953-54 (9th Cir. 2004) (Government's submission of testimony and failure to

---

> Q. And there was a scope of work that was being prepared, is that correct?
> A. Correct.
> Q. What did you do with it at the time of the site visit?
> A. Once the quantities were filled out, everything was given to Mr. Southern to take back to produce a draft work order for my signature.
> Q. And I take it there was only one copy of this scope of work; there were not like two copies, one for you and one for him, that you together prepared in the field?
> A. As I said before, if the facility had copying capabilities, which this one didn't either, to my recollection, we would make a copy in the field and I would have it on the spot. Otherwise, they would take it back and make a copy because they wanted the originals so that there would be no additions on my part, going back to my office and slipping in something. It left right from the field in their government hands to be produced into a work order. Then they would send it back to me in whatever form it came back. And maybe in a short amount of time later, I would get a work order, draft work order for my review so that I would agree with the quantities and time only. And then I would sign it if I agreed with it, or whatever needed to be done, and I'd send it back.

App. 10 (Dep. 105-06).

produce original was a violation of the best evidence rule and prejudicial); Telecom Technical Services Inc. v. Rolm Co., 388 F.3d 820, 830 (11th Cir. 2004); Nicolas v. Wal-Mart Stores, Inc., 2002 WL 506424 (4th Cir. 2002); United States v. Phifer, 230 F.3d 113, 120-21 (4th Cir. 2000); United States v. Levine, 546 F.2d 658, 668 (5th Cir. 1997); Bendix Corp. V. United States, 230 Ct.Cl. 507, 600 F.2d 1364, 1371-72 (1979). Accordingly, LP is required to produce the original draft work orders, unless LP can demonstrate that secondary evidence is otherwise allowed.

However, LP possesses no original draft work orders/scopes of work that relate to this litigation. The Government requested in discovery that LP produce any original draft work orders that it possessed, including any originals that contained changes in the documents initially prepared at the time of the site visits. App. 24 (Dep. 176-77). LP produced copies of various documents, but did not produce any original documents at all and claimed that all the original documents "went with the government." App. 23 (Dep. 175). Mr. Battaglin testified:

> Q. Do you have your original document, sir?
> A. No. All the originals would be taken with them [USPS] and then they would send me a copy back.
> Q. But Exhibit 55 is a document that your counsel provided me on Tuesday for the first time in this litigation. Do you have the originals that we can look at it?
> A. I only have the copies that he has somewhere. I never have an original. All my originals went with the government and I was

> sent back copies, and I have a copy of all my originals. I don't have any original work. The postal service has all the original work.

App. 23 (Dep. 175). Mr. Battaglin again emphasized that he had no original documents and stated: "I never kept the original document.... These are all copies of copies of copies. The originals were sent to the government." App. 26 (Dep. 186).

Mr. Southern has produced the original documents that were prepared at the time of his site visit with Mr. Battaglin at St. Anne. App. 3. LP's case involving St. Anne depends upon its proving the content of the various draft work orders/scopes of work that Mr. Battaglin and Mr. Southern developed together during their site visit. Because the contents of the documents prepared at the time of the St. Anne site visit must be proven, the original document must be produced. Fed.R.Evid. 1002 and cases cited pp. 5-6.

Further, the original is not required and a party may introduce a copy in circumstances where the party that has the original "does not produce the original at the hearing." Fed.R.Evid. 1004(3).[4] Here, the Government possesses the

---

4 Fed.R.Evid. 1004 states:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if-
>
> > (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them

original draft work orders for St. Anne and produced them "at the hearing." Id. Accordingly, LP's alleged "copies" are not admissible to prove the contents of the draft work orders/scopes of work for St. Anne. Id.

Moreover, there are substantial questions about the "copies" of documents that were prepared by Mr. Battaglin allegedly at the time of their site visit. Mr. Southern's originals are different from the copies produced in discovery by LP. App. 3-4 (Southern Decl. ¶ 1). Mr. Southern's original documents contain his own handwriting in the quantity column and elsewhere, while LP's documents are in Mr. Battaglin's handwriting. Id. There are also various discrepancies in the numbers contained in the quantity column for various items for the same projects. Id.

In addition, there are discrepancies among the various copies of draft work orders for St. Anne that LP produced in discovery. Mr. Battaglin was questioned about the various

---

in bad faith; or
(2) Original not obtainable. No original can be obtained by any available judicial process or procedures; or
(3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing;
(4) Collateral matters. The writing, recording, or photograph is not closely related to a controlling issue.

discrepancies in the quantity column of LP's copies of draft work orders/scopes of work for St. Anne. He attempted to explain the discrepancies by claiming that he had altered LP's copies at the request of Mr. Southern. Thus, Mr. Battaglin was questioned about the different numbers in the quantity columns for various items in Exhibit 55 versus the numbers that were contained in the quantity columns for the same items in Exhibits 59 and 60, the documents allegedly made by Mr. Battaglin during their site visit. Mr. Battaglin claimed that the quantities for various items in Exhibit 55 were different from the quantities for those same items in Exhibits 59 and 60 because he made the changes in LP's copies of the draft work orders in response to "stickies" sent to him by Mr. Southern.[5]

---

5 Mr. Battaglin testified:

> Q. Let's look at the third page of Exhibit 60 and the third page of Exhibit 55 together. Do you see on Exhibit 60 for St. Anne there is zero as the quantity for drywall casing bead? Do you see that?
> A. Yes.
> Q. And do you see that on Exhibit 55, there is now 275 for the drywall casing bead linear feet? Do you see that?
> A. Yes.
> Q. And did you make that change from zero to 275?
> A. Yes.
>
> * * *
>
> Q. So are you telling me that you and Sam together prepared Exhibit 60, he takes it back to the postal service, they mail it back to you so you have a copy identical to Exhibit 60, and then you make changes to it and send it to the postal service?
> A. Yeah, if they request it. Sometimes they don't. Sometimes it's no change; sometimes add this; sometimes

The fact that Mr. Battaglin made changes in LP's copies

---

delete that. And then I send it back to them, and then they prepare their - my work order.
Q. But do you remember in the case of St. Anne that actually happening, that Sam sent it to you back, Exhibit 60, then you made the changes, and do you remember making the changes and sending it back to Sam Southern?
A. Yes.

* * *

Q. Did he [Mr. Southern] tell you what adjustments to make?
Mr. Prosen: Objection, asked and answered.
A. Yes, add whatever was on his sticky pad, add or subtract. There may be items I removed from this as well that I didn't put quantities, too, that may be written on this document, that at one time we considered it and we just didn't include it but that don't even have numbers. It's very possible that if I took a minute to look through this, I would find something. That's how they conducted their business with me.
Q. So are you telling me that Sam told you to change the zero for drywall casing bead to - specifically to 275 for drywall casing bead?
Mr. Prosen: Object, misconstrues the testimony and asked and answered.
A. Yes. Otherwise, I wouldn't have put 275.

* * *

Q. Was this an oral conversation as opposed to a sticky, do you remember?
A. I remember it always was a sticky.
Q. Oh, so these are not conversations. Do you have any of these documents, these copies of the scopes of work with the stickies?
A. No. The sticky would have been - I would have made an immediate adjustment, as I said, to this. I would have peeled the sticky off and threw it away and I would have mailed this right back to him hoping to get the work order based on my adds and subtractions.

App. 20-21 (Dep. 162-66). Mr. Battaglin also testified that he made the other changes in the quantity column all at the same time and that he made the changes at the request of Mr. Southern. App. 21-23 (Dep. 167-74).

combined with the fact that LP's copies are different from the original documents produced by Mr. Southern raises genuine questions as to the authenticity of the copies. It would be unfair to admit alleged duplicates in lieu of the original draft work orders/scopes of work in these circumstances. Accordingly, the original draft work orders actually are essential evidence related to LP's claims.

## II. The Draft Work Orders Also Are Not Precluded By RCFC 37(c)

LP contends that (1) Mr. Southern and the Government failed to produce Mr. Southern's draft work orders at his deposition on June 4, 2004 or in response to LP's requests for production of documents as required by RCFC 26(e)(2),[6] and (2) the draft work

---

6 RCFC 26(e) Supplementation of Disclosures and Responses pertinently states as follows:

> A party who has made a disclosure under subdivision (a)...is under a duty to supplement or correct the disclosure or response to include information thereafter acquired ...in the following circumstances:
>
> > (1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing....
> > (2) A party is under a duty seasonably to amend a prior response to an interrogatory request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional

orders therefore must be struck because preclusion of the documents is automatic under RCFC 37(c)(1). LP Am. Mot. ¶ 9.[7]

LP asserts that the Federal Circuit does not appear to have fashioned a test for applying the exclusion provisions of RCFC 26 and 37, citing Tritek Technologies, Inc. v. United States, 63 Fed. Cl. 740, 750 (2005). LP contends, however, that RCFC 37(c) automatically requires the exclusion of a document unless the sanctioned party can show that its violation of Rule 26 was either justified or harmless, citing Tritek. In that patent case, Tritek moved to preclude the Government from relying upon certain arguments that had not been identified in response to Triket's contention interrogatories, and the Court denied Triket's motion. The Government had failed to supplement its response to the contention interrogatories; however, in a summary judgment motion, the Government had disclosed some of its

---

> or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

7 LP's statement that the original documents found by Mr. Southern were not "mentioned in any deposition testimony" is incorrect. LP Am. Mot. ¶ 9. Mr. Battaglin testified that Mr. Southern had the original draft work orders at the time of the St. Anne site visit and that Mr. Southern sketched the outside, while Mr. Battaglin sketched the inside. App. 9 (Dep. 103)("Q. Who made the sketches? A. I think I did the inside and Sam did the outside...."). Mr. Southern's originals include his sketch testified to by Mr. Battaglin. Id. See page 1055 of Defendant's Supplemental Appendix. Mr. Battaglin testified "everything was given to Mr. Southern to take back to produce a draft work order for my signature." App. 10 (Dep. 105).

arguments "in writing." 63 Fed. Cl. at 745. The Court reasoned that (1) the contention interrogatories requested identification of the arguments sought to be precluded, (2) the Government was required to supplement its responses to those interrogatories by RCFC 26(e)(2) and failed to do so, and (3) the Government made some of the information (i.e. "non-infringement arguments 1 and 5") requested otherwise known to plaintiff "in writing" in its original summary judgment motion. 63 Fed. Cl. at 746-47. The Government had not violated RCFC 26(e)(2) with regard to those arguments that were made known to Tritek "in writing," i.e. in its earlier summary judgment motion. Id. Other Government arguments were not otherwise made known to plaintiff "in writing," but the Court refused to strike them because it allowed plaintiff to amend its claim chart to address those matters. Id. at 753.

The Government did not violate of RCFC 26(e)(2) with regard to Mr. Southern's draft work orders for St. Anne. RCFC 26(e)(2) requires supplementation of responses to discovery "if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." RCFC 26(e)(2)(emphasis added). Mr. Southern first found the original draft work orders for St. Anne in March 2005. App. 5 (Southern Decl. ¶ 4). The

Government's March 14, 2005 letter and its enclosures immediately made the additional information and documents concerning Mr. Southern's original draft work orders for St. Anne known to LP "in writing." As this Court held in Tritek, the requirements of RCFC 26(e)(2) are met where the additional information or documents are made known to a party "in writing." 63 Fed. Cl. at 746-47.

Further, Mr. Southern did not violate the subpeona duces tecum directing him to produce documents at his deposition on June 4, 2004. As Mr. Southern explained, he previously had looked for relevant documents in his files during the discovery period but had not found his field notes for St. Anne. App. 5 (Southern Decl. ¶ 5). Mr. Southern first found these documents in March 2005, after returning to work with restrictions on his physical activities. App. (Southern Decl. ¶ 4). Prior to finding the documents, Mr. Southern did not remember that he had such documents or that he had made such field notes at St. Anne. Id. The Government made such documents available to LP "in writing" as soon as they were found and fulfilled its disclosure obligations under RCFC 26(b)(2). We met the disclosure requirements of RCFC 26(e)(2), because the documents were made known to LP "in writing" as soon as they were located. Tritek, 63 Fed. Cl. at 746-47.

Further, LP's motion to strike should be denied because it

has failed to demonstrate "undue prejudice." In Johnson Management Group CFC v. Martinez, 308 F.3d 1245, 1251 (Fed. Cir. 2002), the Government produced material documents 10 days before the hearing and the contracts appeals board refused to exclude them even though they were not previously produced in response to the contractor's discovery. The Federal Circuit held that the failure to strike the documents was not an abuse of discretion because the Government had not acted in bad faith and its actions had not resulted in "undue prejudice" because the contractor was given an opportunity to request additional time to examine and inspect the documents but had not done so. Id. Accord Markland v. Office of Personnel Management, 140 F.3d 1031, 1036 (Fed. Cir. 1998). Consequently, this Court has ample discretion in resolving discovery matters and is not required to automatically exclude or strike documents because they were not previously disclosed.

LP has failed to demonstrate "undue prejudice," and its motion to strike should be denied. LP did not respond to Government counsel's letter dated March 14, 2005 enclosing copies of the documents and never availed itself of the opportunity to examine the original documents. App. 1-2. After receipt of LP's motion to strike, Government counsel telephoned LP's counsel and advised LP of the incorrect statements contained in its motion to strike and again offered LP's counsel the opportunity to view the

original draft work orders. LP again failed to view the original documents. Having failed to even examine the original documents, LP's assertion in its motion to strike that it would require an additional deposition of Mr. Southern to examine him with regard to his original documents is specious. LP Am. Mot. ¶¶ 10-11.

Moreover, if LP really wanted to take another deposition of Mr. Southern with regard to his original documents, LP could have requested the Court's permission to do so. RCFC 56(f) specifically allows the Court to grant further discovery in the summary judgment context where a party files an affidavit stating "that it is unable to present by affidavit facts essential to justify the party's opposition." In such circumstances, the Court may "refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Id. See generally Brubaker Amusement Co., Inc. v. United States, 304 F.3d 1349, 1361 (Fed. Cir. 2002); New American Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1081 (Fed. Cir. 1989). The Court has ample discretion to allow further discovery in the summary judgment context.

Indeed, the Court has held that RCFC 56(f) is the proper vehicle for opening discovery in response to affidavits of witnesses not previously identified in discovery which are filed with summary judgment motions. In Hauschild v. United States, 53

Fed. Cl. 134, 141 (2002), the Court was presented with cross-motions for summary judgment and plaintiff also moved, pursuant to RCFC 37(c)(1), to strike the declarations of Government witnesses because they had not been previously disclosed to plaintiff allegedly in violation of RCFC 26(a) and 26(e)(2). The Court held that the affidavits actually supported plaintiff's allegations and the failure to disclose the witnesses earlier was harmless, and further ruled that "RCFC 56(f) is the appropriate rule by which to open discovery on the contents of those affidavits." 53 Fed. Cl. at 141. Accord Winfield Collection, Ltd. v. Sun Hill Industries, Inc., 2002 WL 1009571 (E.D. Mich. 2002) (denying plaintiff's motion to strike, pursuant to Fed.R.Civ.P. 26(e)and 37(c)(1), declarations submitted with defendant's opposition to plaintiff's summary judgment motion and reopening discovery for the limited purpose of deposing the declarants).

Finally, RCFC 26(a) and (e)(2) and 37(c)(1) must be construed consistently with Appendix A to this Court's rules. Appendix A - Post Discovery Procedures provides for a meeting of counsel and an exchange of a final list of witnesses and a final list of exhibits no later than 63 days before the pretrial conference. These rules would be superfluous if, as LP argues, a party had to have previously identified and produced all of its exhibits or suffer their preclusion. A final list of exhibits is

not required until there is an exchange of exhibit lists pursuant to Appendix A, paragraph 13(b), which has not yet occurred in this case. Further, in Globe Savings Bank v. United States, 61 Fed. Cl. 91, 100-01 (2004), plaintiff argued that, under RCFC 37(c)(1), the Government should be precluded from calling certain witnesses at trial because they were not identified in a supplemental disclosure as required by RCFC 26(e)(1). The Court rejected that argument because, among other things, the witnesses were timely identified in a witness list submitted pursuant to RCFC Appendix A, paragraph 13(b), and plaintiff could depose them pursuant to that rule even though the discovery period had closed. Id.

Finally, in opposing LP's cross-motion for summary judgment, we have demonstrated that there are numerous disputed issues of material fact which preclude the entry of summary judgment in favor of LP. If the Government's motion for summary judgment also is denied, this case then must proceed to trial. LP's motion to strike should be denied because LP cannot demonstrate "undue prejudice." Johnson Management Group, 308 F.3d at 1251. Accord Local Oklahoma Bank v. United States, 59 Fed. Cl. 713, 724 n.21 & n.25 (2004)(denying plaintiff's motion to strike an undisclosed Government document under RCFC 37(c) because genuine issues of material fact remained disputed). As noted above pp. 15-17, both RCFC 56(f) and the Court's pretrial procedures give

LP the opportunity to obtain further discovery from Mr. Southern with regard to his original draft work orders for St. Anne. Consequently, LP cannot demonstrate "undue prejudice" as a result of the Mr. Southern and the Government's not producing Mr. Southern's original draft work orders for St. Anne during the discovery period. Absent LP's demonstration of "undue prejudice," its motion to strike the original St. Anne draft work orders must be denied. Johnson Management Group, 308 F.3d at 1251 (a motion to preclude evidence must be denied where the movant has failed to demonstrate "undue prejudice").

CONCLUSION

For these reasons, the Court should deny LP's motion to strike draft work orders for St. Anne and defendant's reliance upon such draft work orders.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624
Attorneys For Defendant

May 12, 2005