**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **L.P. CONSULTING GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 98-868C** |
| | ) | |
| **THE UNITED STATES,** | ) | **(Judge Allegra)** |
| | ) | |
| **Defendant.** | ) | |

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION AND AMENDED MOTION TO STRIKE DRAFT WORK ORDERS**

Plaintiff, L.P. Consulting Group, Inc. ("LP"), through undersigned counsel, hereby submits its Reply To Defendant's Opposition to Plaintiff's Motion and Amended Motion to Strike Draft Work Orders proffered by Defendant United States ("USPS").

USPS contends that the draft work orders that LP has moved to strike must be produced under the best evidence rule, Fed.R.Evid. 1002, because LP does not have (and therefore has not produced) original draft work order documents. According to USPS, the draft work orders LP has moved to strike are "the original documents prepared at the time of [Mr. Southern's] site visit with Mr. Battaglin at St. Anne." Opposition, p. 7.

LP vigorously disputes that the draft work orders at issue are the originals of any documents produced by LP. As USPS acknowledges, the draft work orders at issue contain Mr. Southern's handwriting, while the corresponding draft work orders produced by LP contain Mr. Battaglin's handwriting. Opposition, p. 8. Because USPS failed to timely produce these draft work orders, LP was unable to question Mr. Southern (or other government witnesses) about them during his deposition in June 2004 regarding such issues as who created these documents, when they were created, whether they were altered, what relationship they had to other draft work orders produced in this case, or other issues regarding the substantive text of the documents.

Mr. Southern asserted in his declaration that the draft work orders at issue are "originals," Opposition, A3, and Mr. Battaglin testified that originals of draft work orders were in the possession of the government. Opposition, A23. However, it is quite a stretch to conclude, as USPS does based on those two statements, that the draft works orders at issue are the original documents required to be produced under the best evidence rule.

USPS argues further that LP has been offered the opportunity to view the purported "original documents" and could have requested permission to take further deposition testimony from Mr. Southern. Given the 7+ year history of this case, USPS should not be permitted to introduce this new evidence and put LP in the position of needing to conduct yet additional discovery concerning the draft work orders at issue and Mr. Southern's representations in regard thereto.

Also, USPS' reliance on Mr. Southern's health status as an excuse for the March 2005 production of the draft work orders at issue is unjustified. According to Mr. Southern's declaration, Opposition A5, he did not find the draft work orders at issue until March 2005, five months after he returned to work in October 2004 and nine months after his deposition in June 2004. While Mr. Southern indicates that since returning to work he is on pain medications and his activities are restricted, *id.*, Mr. Southern does not indicate that his medical condition impacted his ability to produce documents responsive to the subpoena *duces tecum*, or that his medical condition changed in any relevant way between the time he returned to work in October 2004 and March 2005 when he found the draft work orders and USPS produced them. In addition, according to the USPS November 3, 2004 letter to counsel, attached as Exhibit A, counsel had discussions with Mr. Southern (presumably in late October 2004/early November 2004 time frame, shortly after Mr. Southern returned to work) about potential additional responsive documents. Given this letter, it is a reasonably safe assumption that Mr. Southern

was adequately healthy at that time to respond to LP's long-outstanding document requests[1]. Importantly, this November 3, 2004 USPS letter to counsel makes no mention of any continuing health limitation on the part of Mr. Southern or, for that matter, the possibility that Mr. Southern might have been in possession of documents not yet produced.

When all the smoke is blown away, it is plain to see that USPS and Mr. Southern simply and inexcusably failed to produce the subject draft work orders at issue in timely fashion, and USPS is therefore trying to get these documents into the record at the 11th hour. Faced with LP's Motion to Strike these documents, USPS has now manufactured an argument that they must be produced pursuant to the best evidence rule. However, the substantial uncertainty surrounding the draft work orders at issue (especially what their relationship is to different draft works orders produced by LP) renders the best evidence rule inapplicable.

USPS's attempt to produce documents after the October 29, 2004 close of discovery is anything but an isolated occurrence.[2] USPS also claims no prejudicial error. Late discovery disclosures have become par for the case with the USPS, which has also produced documents after the close of discovery on November 3, 2004, November 9, 2004, November 12, 2004, and April 18, 2005. *See* correspondence attached hereto as Exs. A & C.

In addition, despite USPS' argument to the contrary, the draft work orders at issue must be precluded pursuant to RCFC 37(c)(1) because USPS failed to seasonably amend the document production pursuant to RCFC 26(e)(2) and Mr. Southern did not respond to a

---

1 LP's first requests for production of documents to USPS were issued on or about September 8, 1999, over 5 ½ years ago. *See* Exhibit B, hereto. Several of those requests, including numbers 1, 3, 4, 5, 7, 9, 10, 11, 12, and 23, directly pertain to the subject documents.

2 As the Court will no doubt recall, this case has involved numerous stays and continuances. Discovery in this matter was ongoing for no less than six or seven years. As the Court directed government counsel reset discovery dates were "hard and fast" and could not be adjusted.

subpoena *duces tecum*. The draft work orders at issue should be struck pursuant to RCFC 37(c) and the test for applying the RCFC 37(c) exclusion provisions as set forth in *Tritek Technologies, Inc. v. United States*, 63 Fed. Cl. 724 (2005).[3]

USPS has failed to apply the *Tritek* factors or otherwise carry its burden of proof that its violation of 26(e)(2) was justified or harmless. First, applying the surprise factor under *Tritek*, the existence of the draft work orders at issue was a complete surprise to LP. USPS had not disclosed their existence prior to the March 14, 2005 letter to counsel, nor had they been mentioned in any deposition testimony. USPS does not dispute this failure. This factor weighs completely in favor of LP. Second, applying the importance of documents withheld factor, these documents are of some importance because they directly contradict other documents and material facts. USPS does not dispute the importance of these documents. LP is severely prejudiced by USPS' failure to produce these draft work orders until this late stage of the proceedings. Therefore, this factor is in favor of LP. Third, applying the explanation for failure to disclose factor under *Tritek*, as set forth above, the explanation provided by USPS is clearly insufficient. While LP does not question that Mr. Southern has experienced health issues, when all the circumstances are considered it is highly doubtful that Mr. Southern's health is the reason for the untimely production. To the contrary, it appears that USPS is merely offering Mr. Southern's health as a purported justification for the inexcusable failure of USPS and Mr. Southern to produce these draft work orders in a timely fashion. This factor also weighs strongly in LP's favor. As a result, with all the *Tritek* factors in favor of exclusion, the violation of Rule

3 According to USPS, LP asserted in its Amended Motion that this Court did not appear to have fashioned a test for applying these exclusionary provisions. USPS appears to have misread the Amended Motion, because LP notes therein that this Court adopted just such a test in *Tritek. See* Opposition, p. 12 and Amended Motion, ¶ 7-8. Also, it is unclear what point USPS is trying to make, because USPS does not take issue with *Tritek*'s applicability and cited *Tritek* in support of its argument on this issue. Opposition, p. 13.

26 was neither justified nor harmless and exclusion of the draft work orders at issue is mandatory pursuant to RCFC 37(c)(1).

USPS also contends that it did not violate RCFC 26(e)(2) with respect to the draft work orders at issue because USPS made the existence of these draft work orders known to LP in writing through the USPS March 14, 2005 letter to counsel. Opposition, p. 14. According to USPS, this letter brings the draft work orders at issue within the "otherwise made known to the other part[y] in writing" exception to RCFC 26(e)(2). To the contrary, the letter does not qualify for the RCFC 26(e)(2) exception because, unlike in *Tritek* (the case relied on by USPS for this point), here the untimely submission was so late (long after Mr. Southern's deposition and the close of discovery and shortly before submission of dispositive motions) that their use by USPS clearly causes extreme prejudice to LP. Also, as set forth above, USPS made no mention of the existence of these documents in its November 3, 2004 letter to counsel addressing communications with Mr. Southern on discovery issues. Contrast the present circumstances with *Tritek*, where this Court held that arguments submitted in an original motion for summary judgment provided sufficient notice when those arguments were reasserted over one year later in a renewed motion for summary judgment. According to this Court in *Tritek*, in those circumstances the disclosure met "the overriding purpose of broad discovery rules [] to prevent unfair surprise." *Id*. at 747. There is no such time lag involved here.

Finally, USPS suggests that LP could seek permission to take further deposition testimony from Mr. Southern. However, given the 7+ year history of this case, and USPS' inexcusable failure to produce the draft work orders at issue until March 2005, it would be unfair to require LP to incur the additional time and expense of further discovery and potential amendment of its summary judgment motion.

WHEREFORE, LP respectfully reiterates its request that this Court grant its Amended Motion and strike the draft work orders at issue and all USPS statements in reliance thereon.

Respectfully submitted,

BELL, BOYD & LLOYD, PLLC

By __/s/ Brian Cohen___________________

Brian Cohen
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300
(202) 463-0678 Facsimile
Attorney for Plaintiff

Of Counsel:
Lawrence M. Prosen, Esq.
Bell, Boyd, & Lloyd PLLC
1615 L Street, N.W.
Suite 1200
Washington, D.C. 20036

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 26th day of May 2005, a copy of the foregoing Reply to Defendant's Opposition To Plaintiff's Motion and Amended Motion to Strike Draft Work Orders was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Brian Cohen